This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

### Balkamp, Inc., Genuine Parts Company v. Harbor Industries, Inc., G.A. Richards Company, Hartford Underwriters Insurance Company

| | |
|---|---|
| Case Number | 32C01-2003-PL-000038 |
| Court | Hendricks Circuit Court |
| Type | PL - Civil Plenary |
| Filed | 03/12/2020 |
| Status | 03/12/2020 , Pending  (active) |

## Parties to the Case

Defendant  Harbor Industries, Inc.

| | |
|---|---|
| Address | 14130 172nd Avenue<br>Grand Haven, MI 49417 |
| Attorney | Patrick Philip Devine<br>*#1907545, Lead, Retained*<br><br>HINSHAW & CULBERTSON LLP<br>322 Indianapolis Blvd<br>Suite 201<br>Schererville, IN 46375<br>219-864-5051(W) |
| Attorney | Jennifer Kalas<br>*#1739664, Retained*<br><br>HINSHAW & CULBERTSON LLP<br>322 Indianapolis Blvd<br>Suite 201<br>Schererville, IN 46375<br>219-864-5051(W) |
| Attorney | Samer Samir Zabaneh<br>*#2666049, Retained*<br><br>322 Indianapolis Blvd., Suite 201<br>Schererville, IN 46375<br>219-322-5051(W) |

Defendant  G.A. Richards Company

| | |
|---|---|
| Address | 1060 Ken-O-Sha Industrial Drive SE<br>Grand Rapids, MI 49508 |
| Attorney | Jennifer Kalas<br>*#1739664, Retained*<br><br>HINSHAW & CULBERTSON LLP<br>322 Indianapolis Blvd<br>Suite 201<br>Schererville, IN 46375<br>219-864-5051(W) |

Defendant  Hartford Underwriters Insurance Company

| | |
|---|---|
| Address | One Hartford Plaza |
| | Hartford, CT 06155 |
| Attorney | Pamela A Paige |
| | *#1616349, Retained* |
| | |
| | 300 N Meridian ST |
| | STE 990 |
| | Indianapolis, IN 46204 |
| | 317-964-2730(W) |

---

| Plaintiff | Balkamp, Inc. | |
|---|---|---|
| | Address | 2601 Stout Heritage Parkway |
| | | Plainfield, IN 46168 |
| | Attorney | Meghan Eileen Ruesch |
| | | *#3247349, Retained* |
| | | |
| | | 501 Indiana Ave. |
| | | Ste:200 |
| | | Indianapolis, IN 46202 |
| | | 317-237-0500(W) |

---

| Plaintiff | Genuine Parts Company | |
|---|---|---|
| | Address | 2999 Wildwood Parkway |
| | | Atlanta, GA 30339 |
| | Attorney | Meghan Eileen Ruesch |
| | | *#3247349, Retained* |
| | | |
| | | 501 Indiana Ave. |
| | | Ste:200 |
| | | Indianapolis, IN 46202 |
| | | 317-237-0500(W) |

## Chronological Case Summary

| 03/12/2020 | **Case Opened as a New Filing** | |
|---|---|---|

---

| 03/13/2020 | **Appearance Filed** | |
|---|---|---|
| | Appearance of Meghan E. Ruesch and Jordan T. Crabtree | |
| | For Party: | Balkamp, Inc. |
| | For Party: | Genuine Parts Company |
| | File Stamp: | 03/12/2020 |

---

| 03/13/2020 | **Complaint/Equivalent Pleading Filed** | |
|---|---|---|
| | Complaint for Damages and Declaratory Judgment | |
| | Filed By: | Balkamp, Inc. |
| | Filed By: | Genuine Parts Company |
| | File Stamp: | 03/12/2020 |

---

| 03/13/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons - Harbor Industries, Inc. | |
| | Filed By: | Harbor Industries, Inc. |
| | Filed By: | Genuine Parts Company |
| | File Stamp: | 03/12/2020 |

| 03/13/2020 | **Subpoena/Summons Filed** |
|---|---|

Summons - G.A. Richards Company

| Filed By: | Balkamp, Inc. |
|---|---|
| Filed By: | Genuine Parts Company |
| File Stamp: | 03/12/2020 |

| 03/13/2020 | **Subpoena/Summons Filed** |
|---|---|

Summons - Hartford Underwriters Insurance Company

| Filed By: | Balkamp, Inc. |
|---|---|
| Filed By: | Genuine Parts Company |
| File Stamp: | 03/12/2020 |

| 03/17/2020 | **Document Filed** |
|---|---|

SERVICE RETURN - HARTFORD UNDERWRITERS

| Filed By: | Balkamp, Inc. |
|---|---|
| Filed By: | Genuine Parts Company |
| File Stamp: | 03/17/2020 |

| 03/17/2020 | **Document Filed** |
|---|---|

SERVICE RETURN - G.A. RICHARDS CO

| Filed By: | Balkamp, Inc. |
|---|---|
| Filed By: | Genuine Parts Company |
| File Stamp: | 03/17/2020 |

| 03/17/2020 | **Document Filed** |
|---|---|

SERVICE RETURN - HARBOR INDUSTRIES

| Filed By: | Balkamp, Inc. |
|---|---|
| Filed By: | Genuine Parts Company |
| File Stamp: | 03/17/2020 |

| 04/01/2020 | **Appearance Filed** |
|---|---|

Appearance of Patrick P. Devine

| For Party: | Harbor Industries, Inc. |
|---|---|
| For Party: | G.A. Richards Company |
| File Stamp: | 03/30/2020 |

| 04/01/2020 | **Appearance Filed** |
|---|---|

Appearance of Sam S. Zabaneh

| For Party: | Harbor Industries, Inc. |
|---|---|
| For Party: | G.A. Richards Company |
| File Stamp: | 03/30/2020 |

| 04/01/2020 | **Motion for Enlargement of Time Filed** |
|---|---|

Motion for Enlargement of Time

| Filed By: | Harbor Industries, Inc. |
|---|---|
| Filed By: | G.A. Richards Company |
| File Stamp: | 03/30/2020 |

| 04/01/2020 | **Order Granting Motion for Enlargement of Time** | |
|---|---|---|
| | Judicial Officer: | Zielinski, Daniel F |
| | Noticed: | G.A. Richards Company |
| | Noticed: | Hartford Underwriters Insurance Company |
| | Noticed: | Ruesch, Meghan Eileen |
| | Noticed: | Devine, Patrick Philip |
| | Order Signed: | 04/01/2020 |

| 04/02/2020 | **Automated Paper Notice Issued to Parties** |
|---|---|
| | Order Granting Motion for Enlargement of Time ---- 4/1/2020 : G.A. Richards Company;Hartford Underwriters Insurance Company |

| 04/02/2020 | **Automated ENotice Issued to Parties** |
|---|---|
| | Order Granting Motion for Enlargement of Time ---- 4/1/2020 : Meghan Eileen Ruesch;Patrick Philip Devine |

| 04/06/2020 | **Notice Issued to Parties** | |
|---|---|---|
| | W/ ORDER | |
| | Noticed: | G.A. Richards Company |

| 04/07/2020 | **Appearance Filed** | |
|---|---|---|
| | Appearance BY PAMELA PAIGE | |
| | For Party: | Hartford Underwriters Insurance Company |
| | File Stamp: | 04/06/2020 |

| 04/07/2020 | **Motion for Enlargement of Time Filed** | |
|---|---|---|
| | Motion for Enlargement of Time | |
| | Filed By: | Hartford Underwriters Insurance Company |
| | File Stamp: | 04/06/2020 |

| 04/08/2020 | **Order Granting Motion for Enlargement of Time** | |
|---|---|---|
| | Judicial Officer: | Zielinski, Daniel F |
| | Movant: | Paige, Pamela A |
| | Noticed: | G.A. Richards Company |
| | Noticed: | Ruesch, Meghan Eileen |
| | Noticed: | Devine, Patrick Philip |
| | Noticed: | Paige, Pamela A |
| | Order Signed: | 04/08/2020 |

| 04/08/2020 | **Notice Issued to Parties** | |
|---|---|---|
| | NTFD DEFT W/ ORDER BY MAIL | |
| | Noticed: | G.A. Richards Company |

| 04/09/2020 | **Automated Paper Notice Issued to Parties** |
|---|---|
| | Order Granting Motion for Enlargement of Time ---- 4/8/2020 : G.A. Richards Company |

| 04/09/2020 | **Automated ENotice Issued to Parties** |
|---|---|
| | Order Granting Motion for Enlargement of Time ---- 4/8/2020 : Meghan Eileen Ruesch;Patrick Philip Devine;Pamela A Paige |

| 04/09/2020 | **Appearance Filed** | |
|---|---|---|
| | Appearance of Jennifer Kalas | |
| | For Party: | Harbor Industries, Inc. |
| | For Party: | G.A. Richards Company |
| | File Stamp: | 04/09/2020 |

## Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

**Balkamp, Inc.**
Plaintiff

Balance Due (as of 04/14/2020)
**0.00**

Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 03/13/2020 | Transaction Assessment | 157.00 |
| 03/13/2020 | Electronic Payment | (157.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

Case 1:20-cv-01141-JMS-MJD    Document 1-3  Filed 03/04/20    Page 6 of 310 PageID #: 13
32C01-2003-PL-000038
Hendricks Circuit Court
Filed: 3/13/2020 2:57 PM
Clerk
Hendricks County, Indiana

| | | |
|---|---|---|
| **STATE OF INDIANA** | ) | **IN THE HENDRICKS CIRCUIT COURT** |
| | ) | **SS:** |
| **COUNTY OF HENDRICKS** | ) | **CASE NUMBER: 32C01-** |

BALKAMP, INC. AND GENUINE
PARTS COMPANY,

        Plaintiffs,

    vs.

HARBOR INDUSTRIES, INC., GA
RICHARDS COMPANY and HARTFORD
UNDERWRITERS INSURANCE
COMPANY,

        Defendants.

## E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

**This Appearance Form must be filed on behalf of every party in a civil case.**

1.  The party on whose behalf this form is being filed is:
    Initiating <u>X</u>       Responding <u>   </u>    Intervening <u>    </u> ; and
    the undersigned attorney and all attorneys listed on this form now appear in this case for the
    following parties:
    Name of parties <u>  Balkamp, Inc. and Genuine Parts Company            </u>

    Address of party  *(see Question # 5 below if this case involves a protection from abuse
    order, a workplace violence restraining order, or a no-contact order)*
    <u>Balkamp, Inc., 2601 Stout Heritage Parkway, Plainfield, IN         </u>
    <u>Genuine Parts Company, 2999 Wildwood Parkway, Atlanta, GA 30339    </u>
    Telephone # of party <u>                     </u>
    *(List on a continuation page additional parties this attorney represents in this case.)*

2.  Attorney information for service as required by Trial Rule 5(B)(2)

    | | | |
    |---|---|---|
    | Name: | Meghan E. Ruesch | Atty Number: 32473-49 |
    | | Jordan T. Crabtree | Atty Number: 35736-29 |
    | Address: | Lewis Wagner, LLP | |
    | | 501 Indiana Avenue, Suite 200 | |
    | | Indianapolis, IN 46204 | |
    | | 317-237-0500 | |
    | | 317-630-2790 | |
    | | mruesch@lewiswagner.com | |
    | | jcrabtree@lewiswagner.com | |

**IMPORTANT**:  Each attorney specified on this appearance:

(a)        certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

(b)        **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys regardless of the contact information listed above for the attorney**; and

(c)        understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3. This is a __Breach of Contract/Declaratory Judgment__ case type as defined in administrative Rule 8(B)(3).

4. This case involves child support issues. Yes _____ No _√_ *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on **light green paper**. Use Form TCM-TR3.1-4.)*

5. This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order.  Yes _____ No _√_ *(If Yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:

_____        Attorney's address
_____        The Attorney General Confidentiality program address
                         (contact the Attorney General at 1-800-321-1907 or e-mail address is **confidential@atg.in.gov**).
_____        Another address (provide)

_____

This case involves a petition for involuntary commitment.  Yes _____ No _√_

6. If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:

   a.  Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above: _____

   b.  State of Residence of person subject to petition: _____

   c.  At least one of the following pieces of identifying information:
      (i)  Date of Birth _____
      (ii)  Driver's License Number _____
            State where issued _____ Expiration date _____
      (iii)  State ID number _____
            State where issued _____ Expiration date _____
      (iv)  FBI number _____
      (v)  Indiana Department of Corrections Number _____

    (vi)  Social Security Number is available and is being provided in an attached confidential document Yes _____ No _____

7.   There are related cases: Yes _____ No __√__ *(If yes, list on continuation page.)*

8.   Additional information required by local rule:

   _____

9.   There are other party members: Yes   No X *(If yes, list on continuation page.)*

10. This form has been served on all other parties and Certificate of Service is attached:
    Yes__X__   No____

           LEWIS WAGNER, LLP

           /s/ Meghan E. Ruesch_____
           MEGHAN E. RUESCH, #32473-49
           JORDAN T. CRABTREE, #35736-29
           ***Counsel for Plaintiffs***

| | | |
|---|---|---|
| **STATE OF INDIANA** | ) | **IN THE HENDRICKS CIRCUIT COURT** |
| | ) | **SS:** |
| **COUNTY OF HENDRICKS** | ) | **CASE NUMBER:** |

BALKAMP, INC. AND GENUINE
PARTS COMPANY,

        Plaintiffs,

   vs.

HARBOR INDUSTRIES, INC., GA
RICHARDS COMPANY and HARTFORD
UNDERWRITERS INSURANCE
COMPANY,

        Defendants.

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

Come now Plaintiffs, Balkamp, Inc. and Genuine Parts Company, and for their complaint

for damages, declaratory judgment, and jury demand, alleges as follows:

### A. JURISDICTION AND VENUE

1.    This action is brought pursuant to Uniform Declaratory Judgment Act, Indiana

Code 34-14-1-1, et seq, and Ind. T.R. 57.

2.    Jurisdiction in this Court is appropriate under Indiana Code 34-14-1-1 and Ind. T.R.

4.

3.    Plaintiffs have standing to pursue declaratory relief pursuant to Indiana Code 34-

14-1-2 and 34-14-1-3.

4.    Personal jurisdiction over the non-resident parties is proper pursuant to Ind. T.R.

4.4(A)(1),(4)-(6).

5.    Venue in this Court is appropriate under Ind. T.R. 5.

## B. PARTIES

6.      Plaintiff, Balkamp, Inc. ("Balkamp"), is an Indiana corporation with its principal place of business located at 2601 Stout Heritage Parkway, Plainfield, Hendricks County, Indiana.

7.      Plaintiff, Genuine Parts Company ("Genuine Parts"), is a Georgia corporation with its principal place of business located at 2999 Wildwood Parkway, Atlanta, Georgia, 30339, and is the parent company of Balkamp.

8.      Defendant, Harbor Industries, Inc. ("Harbor"), was, at all relevant times, a Michigan corporation with its principal place of business located at 14130 172nd Avenue, Grand Haven, Michigan 49417.

9.      G.A. Richards Company is a Michigan corporation with its principal place of business located at 1060 Ken-O-Sha Industrial Drive, SE, Grand Rapids, Michigan 49508.

10.     Defendant, Hartford Underwriters Insurance Company ("Hartford"), is a Connecticut corporation with its principal place of business located at One Hartford Plaza, Hartford, Connecticut 06155.

## C. RELEVANT FACTUAL HISTORY

### The Relationship Between Balkamp and Harbor

11.     Balkamp purchased various goods and products from Harbor for use in various NAPA stores.

12.     In furtherance of these purchases, on September 30, 2004, Balkamp and Harbor executed an Indemnity Agreement . (A true and correct copy of said Agreement is attached hereto as Exhibit "A").

13.     The September 30, 2004 Indemnity Agreement was continually in effect from that date forward through the relevant dates set forth below.

14.     The Indemnity Agreement between Balkamp and Harbor contemplated that Balkamp would purchase certain goods and products from Harbor. (Exhibit "A," p. 1).

15.     Moreover, Indemnity Agreement provided that Harbor would protect, defend, and indemnify Balkamp and any of its affiliated companies from any and all liability, losses, damages, costs or expenses of any nature arising out of a claim that any of the products purchased by Balkamp from Harbor were defective, negligently designed or manufactured, or otherwise determined to be the cause of injury or death to persons or damage to property. (Exhibit "A," p. 1).

16.     The Indemnity Agreement also required Harbor to procure and maintain in full force and effect, a products liability insurance policy or policies naming Balkamp, NAPA, and any other affiliated entities as additional named insureds with coverage amounting to not less than Five Million Dollars ($5,000,000.00). (Exhibit "A," p. 2).

### Terms of the Policy Issued by Hartford

17.     Subsequent to the execution of the Indemnity Agreement, Harbor was purchased by G.A. Richards Company.

18.     G.A. Richards obtained a commercial general liability policy from Hartford Underwriters Insurance Company ("Hartford") identified by policy number 81 UUN BK0052 which was effective from December 31, 2016 through December 31, 2017 (the "Hartford Policy"). (A true and correct copy of said policy is attached hereto as Exhibit "B").

19.     The commercial general liability coverage was designated as form HG 00 01 09 16. (Exhibit "B").

20.     According to an Accord Certificate of Liability Insurance which identified Harbor as the insured effective from December 31, 2016 through December 31, 2017, Balkamp, NAPA,

and their member companies were named as additional insureds on the Hartford Policy.  (A true and correct copy of the Accord Certificate is attached hereto as Exhibit "C").

21.     The Accord Certificate of Liability Insurance specifically noted that Balkamp and NAPA along with their member companies were "shown as additional insured solely with respects to general liability coverage as per form HG 00 01 09 16 as evidenced herein as required by written contract with the named insured."  (Exhibit "C").

22.     The Hartford Policy general liability coverage provided additional insured coverage to certain entities when required by written contract, stating, in pertinent part, as follows:

> **5. Additional Insureds When Required By Written Contract, Written Agreement Or Permit**
> The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy. provided the injury or damage occurs subsequent to the execution of the contract or agreement.
> A person or organization is an additional Insured under this provision only for that period of time required by the contract or agreement. However, no such person or organization is an insured under this provision if such person or organization is included as an Insured by an endorsement issued by us and made a part of this Coverage Part.
> **a. Vendors**
> Any person(s) or organization(s) (referred to below as vendor), but only with respect to 'bodily injury" or "property damage" arising out of 'your products" which are distributed or sold in the regular course of the vendor's business and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard"….
>
> **f. Any Other Party**
> Any other person or organization who is not an additional insured under Paragraphs a. through e. above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:
> (1) In the performance of your ongoing operations;
> (2) In connection with your premises owned by or rented to you; or

 (3) In connection with "your work" and included within the "products-completed operations hazard", but only if

  (a) The written contract or agreement requires you to provide such coverage to such additional insured; and

  (b) This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products completed operations hazard".

 However:

 (1) The insurance afforded to such additional insured only applies to the extent permitted by law; and

 (2) If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

(Exhibit "B," p. 155).

 23. Moreover, although the policy excludes from coverage contractual liability, that exclusion does not apply to an "insured contract." (Exhibit "B," p. 145).

 24. An insured contract, is defined to include, in pertinent part: "[t]hat part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization provided the 'bodily injury' is caused, in whole or in part, by you or by those acting on your behalf." (Exhibit "B," p. 162).

**The MacCartee Litigation and Plaintiffs' Demands for Defense, Indemnity and Insurance**

 25. On or about January 9, 2018, a complaint for damages was filed in the Superior Court of the State of California for the County of San Diego (Central Judicial District) on behalf of Thomas MacCartee against Genuine Parts Company (d/b/a NAPA Auto Parts), G.A. Richards Group, and One Hundred John Doe Defendants (the "MacCartee Action"). (A true and correct copy of said complaint is attached hereto as Exhibit "D").

26.     According to the allegations of the Complaint, on or about February 19, 2017, MacCartee visited a NAPA Auto parts store in San Diego, California, for the purposes of purchasing automotive parts and tools, specifically a large socket wrench. (Exhibit "D," ¶13).

27.     MacCartee further alleged that a NAPA sales associate directed him to "a tall merchandise display panel, with affixed shelf brackets, holding merchandise. This particular display panel…was hung on 'barn door' type sliding roller mounts.  The 'barn door' feature allowed the panel to slide horizontally on roller mounts." (Exhibit "D," ¶13).

28.     MacCartee alleged that, when he located the socket wrench, he "in a reasonable and foreseeable manner, moved the sliding 'barn door' panel to the side" and "the display panel toppled down on top of" him, causing serious injury. (Exhibit "D," ¶13).

29.     Through investigation it was determined that Balkamp had purchased the "barn door" type sliding roller mounted display panel (hereinafter the "Display Panel") that allegedly injured MacCartee from Harbor.

30.     Accordingly, by letter dated June 13, 2018, Genuine Parts and Balkamp, by counsel, tendered their demand for defense and indemnity to Harbor in the MacCartee Action.  (A true and correct copy of said correspondence is attached hereto as Exhibit "E").

31.     On information and belief, Harbor, in turn, forwarded the tender to Hartford, presumably with the understanding that the tender was covered under the Hartford Policy.

32.     When no response to the demand was received, Genuine Parts filed a cross-complaint against Harbor in the MacCartee Action seeking indemnification and contribution.

33.     On May 10, 2019, Harbor's insurer, Hartford, finally responded to the demand for defense and indemnity by way of written correspondence.  (A true and correct copy of said correspondence is attached hereto as Exhibit "F").

34.    Hartford denied Balkamp's and Genuine Parts' request for defense and indemnity. (Exhibit "F," p.1).

35.    Within the correspondence denying the request, Hartford contended that 2007 Indemnity Agreement did not apply to the purchase of the Display Panel but, rather, the purchase was subject to certain terms and conditions which Harbor allegedly unilaterally imposed upon the purchase.  (Exhibit "F," p. 1).

36.    On May 16, 2019, counsel for Balkamp and Genuine Parts responded to Hartford's denial.  (A true and correct copy of said correspondence is attached hereto as Exhibit "G").

37.    Within said correspondence, Balkamp and Genuine Parts reiterated their demand for defense and indemnity based upon the Indemnity Agreement, and as an additional insured under the Hartford Policy, as evidenced by the Certificate of Insurance.  (Exhibit "G," p. 3).

38.    On June 7, 2019, by way of electronic mail, Hartford responded to the renewed demand for defense and indemnity, once again denying the request and relying upon unilaterally imposed "Terms & Conditions."   (A true and correct copy of said correspondence is attached hereto as Exhibit "H").

39.    Hartford also asserted that the Accord Certificate of Insurance did not support Balkamp's or Genuine Parts' status as an additional insured solely because it was issued two months after the date of loss.  (Exhibit "H").

40.    Both Hartford and Harbor have refused to honor their obligations under the Indemnity Agreement and the insurance policy naming Balkamp, NAPA, and their affiliates as named additional insureds.

41.    The defendants in the MacCartee Action globally resolved MacCartee's claims.

42.     Crossclaims in the underlying MacCartee Action remain pending in the California court.

43.     As a result of Harbor's wrongful rejection of its duty to defend and indemnify Balkamp and Genuine Parts, Balkamp and Genuine Parts have suffered actual damages in the form of costs, expenses, and amounts paid in the defense and settlement of the MacCartee Action, for which they are entitled to relief in this action.

44.     As a result of Hartford's wrongful denial of coverage for Balkamp and Genuine Parts, Balkamp and Genuine Parts have suffered actual damages in the form of costs, expenses, and amounts paid in the defense and settlement of the MacCartee Action, for which they are entitled to relief in this action.

### D.  CAUSES OF ACTION
### COUNT I
### BREACH OF CONTRACT (vs. HARBOR INDUSTRIES, INC., AND G.A. RICHARDS COMPANY)

45.     Plaintiffs incorporate by reference their allegations of paragraphs 1 through 50 of this Complaint as if fully set forth herein.

46.     According to the clear terms of the contract between Balkamp and Harbor, Harbor was required to protect, defend, and indemnify Balkamp and any of its affiliated companies from any and all liability, losses, damages, costs or expenses of any nature arising out of a claim that any of the products purchased by Balkamp from Harbor were defective, negligently designed or manufactured or otherwise determined to be the cause of injury or death to persons or damage to property.

47.     The MacCartee Action is premised upon the alleged failure of the Display Panel which Balkamp purchased from Harbor.

48.     As such, the MacCartee Action was covered by the terms of the Indemnity Agreement and Harbor and G.A. Richards are contractually required to defend and indemnify Balkamp and Genuine Parts.

49.     Harbor has wrongfully refused to defend and indemnify Plaintiffs in the MacCartee Action, in violation of the terms and conditions of the Indemnity Agreement.

50.     The Indemnity Agreement also required Harbor to procure and maintain in full force and effect, a product liability insurance policy or policies naming Balkamp, NAPA, and any other affiliated entities as additional named insureds with coverage amounting to not less than Five Million Dollars ($5,000,000.00).

51.     Although an Accord Certificate of Liability Insurance identifies Balkamp, NAPA, and their member companies named as additional insureds under a commercial general liability insurance policy issued to G.A Richards by Hartford, Hartford has denied coverage to Plaintiffs in the MacCartee Action.

52.     To the extent Plaintiffs are not entitled to coverage under the Hartford Policy as additional insureds, Harbor's failure to properly secure insurance coverage for Plaintiffs under the Hartford Policy is in violation of Harbor's obligations under the Indemnity Agreement.

53.     As a result of Harbor's wrongful refusal to defend and indemnify Plaintiffs in the MacCartee Action, and/or Harbor's failure to properly secure additional insured coverage for Plaintiffs, Plaintiffs have suffered actual damages in the form of costs, expenses, and amounts paid in the defense and settlement of the MacCartee Action, for which they are entitled to relief in this action.

54.     Plaintiffs are entitled to compensatory damages incurred as a result of Harbor's breaches of the Indemnity Agreement, including but not limited to the costs, expenses, and

amounts paid in the defense and settlement of the MacCartee Action, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT (vs. HARTFORD UNDERWRITERS INSURANCE COMPANY)

55.     Plaintiffs incorporate by reference their allegations of paragraphs 1 through 60 of this Complaint as if fully set forth herein.

56.     Hartford had a duty to defend and indemnify Plaintiffs in the MacCartee Action pursuant to the terms and conditions of the Hartford Policy.

57.     Hartford has wrongfully denied coverage to Plaintiffs and refused to defend and indemnify Plaintiffs in the MacCartee Action, in violation of the terms and conditions of the Hartford Policy.

58.     As a result of Hartford's wrongful refusal to provide coverage to and defend and indemnify Plaintiffs in the MacCartee Action, Plaintiffs have suffered actual damages in the form of costs, expenses, and amounts paid in the defense and settlement of the MacCartee Action, for which they are entitled to relief in this action.

59.     Plaintiffs are entitled to compensatory damages incurred as a result of Hartford's breaches of the Hartford Policy, including but not limited to the costs, expenses, and amounts paid in the defense and settlement of the MacCartee Action, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## COUNT III
## DECLARATORY RELIEF (vs. HARBOR INDUSTRIES, INC. AND G.A. RICHARDS COMPANY)

60.     Plaintiffs incorporate by reference their allegations of paragraphs 1 through 65 of this Complaint as if fully set forth herein.

61.     Under the Indemnity Agreement, Harbor was required to protect, defend, and indemnify Balkamp and any of its affiliated companies from any and all liability, losses, damages, costs or expenses of any nature arising out of a claim that any of the products purchased by Balkamp from Harbor were defective, negligently designed or manufactured or otherwise determined to be the cause of injury or death to persons or damage to property.

62.     The MacCartee Action arises out of a claim that products purchased by Balkamp from Harbor—the Display Panel—was defective, negligently designed or manufactured, or otherwise determined to be the cause of MacCartee's injuries.

63.     As such, the MacCartee Action was covered by the terms of the Indemnity Agreement and Harbor and G.A. Richards are contractually required to defend and indemnify Balkamp and Genuine Parts.

64.     Balkamp and Genuine Parts made timely and proper demand of Harbor and G.A. Richards that they fulfill their contractual obligations to defend and indemnify Plaintiffs.

65.     Despite the clear language of the Indemnity Agreement and Plaintiffs' timely demand, Harbor and G.A. Richards refused to comply with their obligations.

66.     Plaintiffs seek declaration from this Court that they are entitled to defense and indemnification from Harbor and G.A. Richards in the MacCartee Action.

## COUNT IV
## DECLARATORY RELIEF (vs. HARTFORD UNDERWRITERS INSURANCE COMPANY)

67.     Plaintiffs incorporate by reference their allegations of paragraphs 1 through 72 of this Complaint as if fully set forth herein.

68.     The Indemnity Agreement required Harbor to procure and maintain in full force and effect, a product liability insurance policy or policies naming Balkamp, NAPA, and any other

affiliated entities as additional named insureds with coverage amounting to not less than Five Million Dollars ($5,000,000.00).

69.     The Hartford Policy includes a provision providing additional insured coverage to, in pertinent part, Vendors and Any Other Party, where required by contract agreement between the insured and that party.

70.     The Accord Certificate of Liability Insurance identifies Balkamp, NAPA, and their member companies named as additional insureds under the Hartford Policy.

71.     Hartford has denied coverage to Plaintiffs in the MacCartee Action.

72.     On the date of loss giving rise to the MacCartee litigation, Hartford admits that it was the products liability insurer of Harbor Industries, Inc.  (See, Exhibit "E," p. 1).

73.     Despite Balkamp's and Genuine Parts' status as additional insureds, Hartford has refused to treat plaintiffs as such and has refused to provide a defense or indemnity as required by the policy.

74.     Plaintiffs seek declaration from this Court that they are entitled to defense and indemnification, and additional insured coverage in accordance with the terms and conditions of the Hartford Policy, from Hartford in the MacCartee Action.

### E.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, Balkamp, Inc. and Genuine Parts Company, respectfully request that this Court enter judgment in their favor and against Defendants:

1.  That Defendants Harbor and G.A. Richards breached their obligations under the Indemnity Agreement, and requiring Defendants Harbor and G.A. Richards to pay Plaintiffs all costs, expenses, fees, and payments incurred in defending and settling the MacCartee Action, plus pre- and post-judgment interest;

2.  That Defendant Hartford breached its obligations to Plaintiffs under the Hartford Policy and requiring Defendant Hartford to pay Plaintiffs all costs, expenses, fees, and payments incurred in defending and settling the MacCartee Action, plus pre- and post-judgment interest;

3.  Declaring that Defendants Harbor and G.A. Richards had a duty to defend and indemnify Plaintiffs in the MacCartee Action;

4.  Declaring that Defendant Hartford had a duty to defend and indemnify Plaintiffs in the MacCartee Action;

5.  Awarding actual, consequential and compensatory damages, costs of this action and attorney fees incurred in this action; and

6.  For such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

Respectfully submitted

/s/ Meghan E. Ruesch
MEGHAN E. RUESCH, Atty. No. 32473-49
JORDAN T. CRABTREE, Atty. No. 35736-29
Lewis Wagner, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46204
Tel. (317) 237-0500
Fax (317) 630-2790
mruesch@lewiswagner.com
jcrabtree@lewiswagner.com
**Counsel for Plaintiffs Balkamp, Inc. and Genuine Parts Company**

32C01-2003-PL-000038

Hendricks Circuit Court

## INDEMNITY AGREEMENT

This INDEMNITY AGREEMENT (this "Indemnity Agreement"), dated *Sept. 30* 200 *4*   is made by and between **BALKAMP, INC.**, an Indiana corporation (hereinafter "BALKAMP") and *Harbor Industries, Inc*, a *Michigan* [state] corporation/ limited liability company/ partnership (*circle one*) (hereinafter "SUPPLIER").

    **WHEREAS**, BALKAMP has purchased, or at some future time may purchase, goods and products (the "Products") from SUPPLIER; and

    **WHEREAS**, BALKAMP desires to be indemnified from, defended against, and held harmless from certain liability, losses, damages, costs, or expense which it may sustain or incur; and

    **WHEREAS**, SUPPLIER has agreed to indemnify, defend, and hold BALKAMP harmless as herein provided;

    **NOW, THEREFORE**, for and in consideration of the purchase by BALKAMP of goods and products from SUPPLIER and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending legally to be bound hereby, SUPPLIER and BALKAMP hereby agree as follows:

1. **INDEMNIFICATION**

    SUPPLIER will protect, defend and indemnify BALKAMP, its parent company and affiliated business entities, National Automotive Parts Association and its members, and their respective employees, agents, officers, directors and customers who purchase the Products (together, the "Indemnified Parties") from and hold them harmless against all liability, losses, damages, costs or expenses of any nature, including without limitation, reasonable attorney's fees, which they may at any time suffer, incur, or be required to pay resulting from or arising out of (i) any claim that the Products are defective, negligently designed or manufactured in any manner, or otherwise determined to be the cause of injury or death to persons, or damage to property, or both; (ii) any claim that the Products or the manufacture, sale or labeling of the Products fails to comply with any governmental requirement, or the labeling on any Products, or on or within the packaging for any Products (including any instructions or warnings thereon), is inadequate in any manner; (iii) any claim that the Products should have been recalled pursuant to any governmental requirement; (iv) SUPPLIER's negligence or willful misconduct in supplying the Products; or (v) any claim, action, suit or proceeding by any person, firm, governmental agency or corporation resulting from or arising out of (i) through (iv) above.  This indemnification shall not apply if and to the extent that such injury, death or damage is directly caused solely by any of the following:  (a) failure on the part of BALKAMP to furnish instruction materials provided by SUPPLIER for inclusion in packages in which Products are sold; (b) sale of Products by BALKAMP without packaging where packaging is provided by SUPPLIER and where such packaging contains the required labeling and instructions on the use of the Product; (c) alteration of any Products by BALKAMP; (d) negligent installation or repair of Products by BALKAMP; or (e) willful misconduct of BALKAMP.

2. **INTELLECTUAL PROPERTY INFRINGEMENT**

    SUPPLIER will protect, indemnify, defend and hold the Indemnified Parties harmless from and against all liability, losses, damages, costs or expenses which they may at any time suffer, incur or be required to pay by reason of any claim, action, suit, or proceeding that may be brought for damages or injunctive relief based upon any actual or alleged violation or infringement of any patent, trademark, copyright or other intellectual property right by any Product sold by SUPPLIER to BALKAMP.  Should any Products become the subject of such a claim of infringement, BALKAMP shall permit SUPPLIER, at its option and expense, either to procure for BALKAMP the right to continue selling Products, to replace or modify Products so that they become non-infringing, or to require return of Products in

2223

exchange for full credit.  SUPPLIER shall have no liability to BALKAMP with respect to any claim of infringement of any such patent, trademark, copyright or other intellectual property right based solely upon (a) the combination by BALKAMP of Products sold by SUPPLIER with equipment or devices not sold by SUPPLIER; or (b) Products supplied according to a design other than that of SUPPLIER and which is required by BALKAMP.

3.     **LEGAL ACTION**

BALKAMP will give SUPPLIER prompt notice of any claims, actions, suits, or proceedings instituted against BALKAMP with respect to the subject of the indemnity contained herein, and shall provide to SUPPLIER reasonable information and assistance in the defense thereof.  SUPPLIER agrees at its own expense to defend against any such claims, actions, suits or proceedings, rightfully or wrongfully instituted with legal counsel reasonably acceptable to BALKAMP; provided, however, that SUPPLIER shall not settle any claim, action, suit or proceeding which imposes upon BALKAMP any obligation, or in any way prejudices the rights of BALKAMP, other than as set forth herein, without BALKAMP's written consent.  SUPPLIER agrees to satisfy any and all judgments which may be rendered against the Indemnified Parties or SUPPLIER with respect thereto.  Notwithstanding the foregoing, BALKAMP shall have the option to employ attorneys, at the sole cost and expense of SUPPLIER, to defend any claim, action, suit, or proceeding in the event SUPPLIER fails to assume such defense.  SUPPLIER agrees to extend the terms of this indemnity to claims made against any party who has acquired any of the Products in the course of normal commercial sales, whether or not BALKAMP is the direct seller to such party.

4.     **REMEDIES**

In the event SUPPLIER refuses to defend any claim, action, suit or proceeding, or refuses to satisfy any settlement or judgment pursuant to the terms of this Indemnity Agreement, BALKAMP shall be entitled to retain from payments otherwise due to SUPPLIER such amounts as shall be reasonably considered necessary to satisfy any claim, action, suit, or proceeding for damages that fall within SUPPLIER's indemnity obligations set forth herein, until such claim, action, suit, or proceeding has been settled and satisfactory evidence to such effect has been furnished to BALKAMP.

In any litigation, arbitration, or other proceeding by which one party either seeks to enforce its rights under this Agreement (whether in contract, tort, or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party will be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

5.     **LIABILITY INSURANCE**

During the term of the business relationship between SUPPLIER and BALKAMP, SUPPLIER will procure and maintain in full force and effect a product liability insurance policy or policies, naming BALKAMP and National Automotive Parts Association and its member corporations as additional named insureds, covering all goods and products supplied to BALKAMP by SUPPLIER under this Indemnity Agreement.  Such policy or policies shall be written by a reputable insurance company or companies in the amount of not less than $5,000,000, or at the levels requested by BALKAMP if warranted by the nature or scope of the business relationship of the parties, and shall be on an occurrence basis.   Such policy shall contain a requirement that BALKAMP will be notified of any proposed cancellation or modification at least thirty (30) days prior to the effective date of such cancellation or modification.   Upon execution of this Agreement, SUPPLIER shall furnish to BALKAMP certificates of insurance evidencing compliance with the foregoing requirements. Maintenance of such insurance and the performance by SUPPLIER of its obligations under this paragraph shall not relieve SUPPLIER of liability under the indemnity set forth in this Indemnity Agreement.

2223

## 6.   BENEFIT

This Indemnity Agreement shall be binding upon and shall inure to the benefit of the parties, their legal representatives, successors and assigns.

## 7.   TERM; TERMINATION

This Indemnity Agreement shall continue in full force and effect while SUPPLIER is selling any Products to BALKAMP. This Indemnity Agreement may be terminated by any party upon ninety (90) days written notice; provided, however, that such termination shall only be effective upon the simultaneous termination of any supply agreement or other supply arrangement between BALKAMP and SUPPLIER. Termination shall not relieve SUPPLIER from liability assumed hereunder prior to such termination.

## 8.   MISCELLANEOUS

This Indemnity Agreement constitutes the entire agreement of the parties with respect to the matters hereto. This Indemnity Agreement shall be governed by the laws of the State of Indiana, without regard to conflict of law principles. No amendment, waiver or modification of the provisions hereof shall be valid unless in writing and signed by the parties hereto and then only to the extent therein set forth. Each party agrees to perform all further acts and execute, acknowledge, and deliver any documents reasonably necessary, appropriate or desirable, to carry out the provisions of this Indemnity Agreement. Every covenant, term, and provision of this Indemnity Agreement shall be construed simply according to its fair meaning and not strictly for or against any party. If any one or more of the provisions of the Indemnity Agreement shall be held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, the validity, legality, and enforceability of the remaining provisions of the Indemnity Agreement will not in any way be affected or impaired thereby. If any provision of this Indemnity Agreement is unenforceable for any reason whatsoever, such provision shall be appropriately limited and given effect to the extent that it may be enforceable. This Indemnity Agreement may be signed via facsimile and in one or more counterparts, each of which when executed shall be deemed an original, and all of which taken together shall constitute one and the same document.

Each party represents that the person executing this Indemnity Agreement has the power and authority to bind such party to the obligations herein.

**[Signatures Appear on Next Page]**

2223

IN WITNESS WHEREOF, the parties hereto have executed this Indemnity Agreement the day and year first written above.

BALKAMP, INC.

By: _____
Name: ARS BROWN
Title: SR. VP.

(Corporate Seal)

Harbor Industries, Inc.
_____ (SUPPLIER)

By: _____
Name: Frank Dambarello
Title: Vice President /CFO

(Corporate Seal)

**32C01-2003-PL-000038**

Hendricks Circuit Court

Prepare. Protect. Prevail.



**THE HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

July 12, 2019

Re:   Insured:            G A Richards Company
      Policy Number:      81 UUN BK0052
      Policy Term:        12/31/2016-12/31/2017
      Writing Company:    HARTFORD FIRE INSURANCE COMPANY
                          HARTFORD UNDERWRITERS INSURANCE COMPANY

This will verify that, to the best of the undersigned's knowledge, the attached is a complete and accurate representation of insurance policy referenced above. Documents and/or information produced herewith are kept and maintained in the ordinary course of business.

Lisa Dulan

Lisa Dulan
Operations Support Specialist
Clinton Business Center
Hartford Office Location

301 Woods Park Dr.
Clinton, NY 13323
Toll Free: 888-525-2652
Fax: 866-809-1178

# Special Multi-Flex

## Business Insurance Policy



**THE HARTFORD**

This SPECIAL MULTI-FLEX POLICY is provided by the stock insurance company(s) of The Hartford Insurance Group, shown below.

# COMMON POLICY DECLARATIONS

**POLICY NUMBER:** 81 UUN BK0052   K3

**THE HARTFORD**

**Named Insured and Mailing Address:**
**(No., Street, Town, State, Zip Code)**

```
G A RICHARDS COMPANY
SEE IH1204
520 32ND ST
GRAND RAPIDS        , MI 49508
(KENT COUNTY)
```

**Policy Period:**   **From** 12/31/16   **To** 12/31/17
12:01 A.M., Standard time at your mailing address shown above.

In return for the payment of the premium, and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy. The Coverage Parts that are a part of this policy are listed below. The Advance Premium shown may be subject to adjustment.

**Total Advance Premium:**   ██████████

**Coverage Part and Insurance Company Summary**

**Advance Premium**

```
PROPERTY CHOICE
HARTFORD FIRE INSURANCE COMPANY
ONE HARTFORD PLAZA
HARTFORD, CONNECTICUT 06155
```

████████████

LISTING OF ADDITIONAL COVERAGE PARTS CONTINUED ON THE FOLLOWING PAGE.

**Form Numbers of Coverage Parts, Forms and Endorsements that are a part of this policy and that are not listed in the Coverage Parts.**

```
HM0001 IL00171198 HM99011185 IH09850115 IH12040312 IH99400409 IH99410409
IL00210908 IL02860908 PC00010109 HC00051212 HC00100798 HC00200295
```

**Agent/Broker Name:** A J GALLAGHER RISK MGMT SRVCS INC

Countersigned by        *Susan L. Castaneda*        12/29/16
(Where required by law)   Authorized Representative   Date

**Form HM 00 10 01 07**        PAGE   1   (CONTINUED ON NEXT PAGE)

**COMMON POLICY DECLARATIONS (Continued)**

     **POLICY NUMBER:** 81 UUN BK0052

```
ADDITIONAL  COVERAGE  PARTS  (CONTINUED)

COVERAGE  PART  AND  INSURANCE  COMPANY  SUMMARY          ADVANCE  PREMIUM

COMMERCIAL  GENERAL  LIABILITY
EMPLOYEE  BENEFITS  LIABILITY
DATA  BREACH  COVERAGE  PART
HARTFORD  UNDERWRITERS  INSURANCE  COMPANY
ONE  HARTFORD  PLAZA
HARTFORD,  CONNECTICUT  06155                           ████████████
```

**POLICY NUMBER:** 81 UUN BK0052



**THIS ENDORSEMENT  CHANGES  THE POLICY.  PLEASE READ IT CAREFULLY.**

# INSTALLMENT PLAN

We and you agree that you will pay the premium  in installments  as shown below:

| Date | Premium | Date | Premium |
|---|---|---|---|
| 12/31/16 | | 05/31/17 | |
| 01/31/17 | | 06/30/17 | |
| 02/28/17 | | 07/31/17 | |
| 03/31/17 | | 08/31/17 | |
| 04/30/17 | | 09/30/17 | |

**POLICY NUMBER:** 81 UUN BK0052



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| TERRORISM PREMIUM | | |
|---|---|---|
| **Coverage:** | **Premium (if Covered):** | |
| PROPERTY | $ | |
| GENERAL LIABILITY | $ | |
| TOTAL | $ | |

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for "certified acts of terrorism" under TRIA. The portion of your premium attributable to such coverage is shown above in this endorsement.

**B. The following definition is added with respect to the provisions of this endorsement:**

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of TRIA, to be an act of terrorism under TRIA. The criteria contained in TRIA for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C. Disclosure Of Federal Share Of Terrorism Losses Under TRIA**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

© 2015 The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission)

**D. Cap On Insurer Liability for Terrorism Losses Under TRIA**

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**E. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, Coverage Part or Policy.

**F. All other terms and conditions remain the same.**

**POLICY NUMBER:** 81 UUN BK0052



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF THE DECLARATIONS - ADDITIONAL PERSONS OR ORGANIZATIONS DESIGNATED AS NAMED INSUREDS

The following person(s) or organization(s) are added to the Declarations as Named Insureds:

```
G A RICHARDS COMPANY
701 EAST SAVIDGE STREET LLC
BURNSIDE ACQUISITIONS LLC
CORLETT TURNER CO., INC.
G A RICHARDS PLANT 1.5 LLC
G A RICHARDS PLANT 2 LLC
G A RICHARDS PLANT 3 LLC
ICW ACQUISITION, LLC
STATE HEAT TREATING COMPANY
WOODMATIC ACQUISITIONS LLC
ZEICHMAN MANUFACTURING, INC.
```

**Form IH 12 04 03 12** SEQ.NO. 01

© 2012, The Hartford



**Named Insured**:   G A RICHARDS COMPANY

**Policy Number**:   81 UUN BK0052

**Effective Date**:   12/31/16          **Expiration Date**:   12/31/17

**Company Name**:   HARTFORD FIRE INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.

All other terms and conditions remain unchanged.

**Form IH 99 41 04 09**                                                                  **Page 1 of 1**

# PROPERTY CHOICE
# COVERAGE PART - DECLARATIONS



**POLICY NUMBER:** 81 UUN BK0052

**This PROPERTY CHOICE COVERAGE PART consists of:**

A.  **This Declarations;**
B.  **Property Choice Schedule of Premises and Coverages;**
C.  **Property Choice Conditions and Definitions;**
D.  **Property Choice Coverage Form;**
E.  **Property Choice Specialized Property Insurance Coverages;**
F.  **Property Choice Covered Causes of Loss and Exclusions Form; and**
G.  **Any other Coverage Forms, Conditions Forms, Endorsements and Schedules issued to be a part of this Coverage Part and listed below.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning.  Refer to Definitions found in the Property Choice Conditions and Definitions (Form Number PC 00 90).

<div align="center">

**ADVANCE PREMIUM:** 

</div>

**AUDIT PERIOD:**

Except in this Declarations, when we use the word "Declarations" in this Coverage Part, we mean this "Property Choice Declarations" or the "Common Policy Declarations".

All Schedules listed on this Declarations are part of this Declarations.

Form Numbers of Coverage Forms, Endorsements, and Schedules that are a part of this Coverage Part:

```
PC00910113  PC00020113T  PC50130113  PC20230109  PC20240109  PC20250109
PC00900113  IH09400115  PC26020113  PC00100113  PC00200113  PC00300113
PC10100113  PC10200113  PC10400113  PC10830113  PC25060109  PC25140113
PC00970109  PC00500109  PC30210108  PC31210704  PC40010109
```

**Form PC 00 01 01 09**

# PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES



**POLICY NUMBER:** 81 UUN BK0052

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
COVERAGE AND LIMITS OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INSURANCE APPLIES ON A BLANKET BASIS ONLY TO A COVERAGE FOR WHICH A LIMIT
OF INSURANCE IS SHOWN BELOW IN THE BLANKET DESCRIPTION OF COVERAGE OR
PROPERTY.  THE MAXIMUM WE WILL PAY FOR LOSS OR DAMAGE IN ANY ONE OCCURRENCE
IS THE SMALLEST APPLICABLE LIMIT OF INSURANCE SHOWN IN THE DECLARATIONS,
SCHEDULES, OR ENDORSEMENT(S).

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
BLANKET DESCRIPTION OF COVERAGE OR PROPERTY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INSURANCE THAT APPLIES TO A SPECIFIC INSURED PREMISES SEE:  PROPERTY
CHOICE - SCHEDULED PREMISES.

```
                                          LIMIT(S) OF INSURANCE
                                          IN ANY ONE OCCURRENCE

BUILDING                                  $69,577,840
BUSINESS PERSONAL PROPERTY                $37,068,761
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
VALUATION PROVISION:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REPLACEMENT COST (SUBJECT TO LIMITATIONS) APPLIES TO THE TYPES OF COVERED
PROPERTY INSURED UNDER THIS POLICY.  FOR VALUATION THAT APPLIES TO A
SPECIFIC PREMISES SEE:  PROPERTY CHOICE - SCHEDULED PREMISES.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION - BLANKET DESCRIPTION OF COVERAGE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INSURANCE THAT APPLIES TO A SPECIFIC PREMISES SEE:  PROPERTY CHOICE -
SCHEDULED PREMISES.

```
                                          LIMITS OF INSURANCE
                                          IN ANY ONE OCCURRENCE

SPECIAL BUSINESS INCOME:                  $17,340,000
  24 HOUR WAITING PERIOD APPLIES
  PAYROLL IS INCLUDED
```

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

**POLICY NUMBER:** 81 UUN BK0052

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
COINSURANCE PROVISION:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNLESS OTHERWISE ELSEWHERE STATED IN THIS POLICY, COINSURANCE DOES NOT
APPLY TO THE COVERAGES SHOWN ON THIS POLICY.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSES OF LOSS - EARTHQUAKE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INSURANCE THAT APPLIES TO A SPECIFIC PREMISES SEE:  PROPERTY CHOICE -
SCHEDULED PREMISES.

ALL COVERAGES AS PROVIDED AND LIMITED UNDER THIS POLICY AT ALL INSURED
SCHEDULED PREMISES IN TOTAL SITUATED IN:

|  | POLICY YEAR LIMIT OF INSURANCE |
|---|---|
| CALIFORNIA | NOT COVERED |
| ALABAMA | NOT COVERED |
| GEORGIA | NOT COVERED |
| LOUISIANA | NOT COVERED |
| NORTH CAROLINA | NOT COVERED |
| ALL OTHER STATES | $15,000,000 |

CAUSES OF LOSS - EARTHQUAKE DOES NOT APPLY TO ANY DEPENDENT PROPERTIES OR
ANY UNNAMED PREMISES OR ANY UTILITY SERVICES ADDITIONAL COVERAGE.
THE LARGEST POLICY YEAR LIMIT OF INSURANCE IS THE MOST WE WILL PAY UNDER
THIS POLICY IN TOTAL IN ANY ONE POLICY YEAR EVEN IF THE LOSS OR DAMAGE
INVOLVES MORE THAN ONE POLICY YEAR LIMIT OF INSURANCE.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSES OF LOSS - FLOOD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INSURANCE THAT APPLIES TO A SPECIFIC PREMISES SEE:  PROPERTY CHOICE -
SCHEDULED PREMISES.

                                         POLICY YEAR
                                         LIMIT OF INSURANCE

ALL COVERAGES AS PROVIDED AND LIMITED UNDER
THIS POLICY AT ALL INSURED SCHEDULED
PREMISES SITUATED IN ZONE PREFIXED (C)
AS DESIGNATED BY THE NATIONAL FLOOD INSURANCE
ACT OF 1968 (OR ANY SUBSEQUENT AMENDMENT):        $15,000,000

**Form PC 00 02 01 13 T**                    PAGE   2 (CONTINUED ON NEXT PAGE)

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

**POLICY NUMBER:** 81 UUN BK0052

CAUSES OF LOSS - FLOOD DOES NOT APPLY TO ANY DEPENDENT PROPERTIES OR ANY
UNNAMED PREMISES OR ANY UTILITY SERVICES ADDITIONAL COVERAGE.

THE LARGEST FLOOD POLICY YEAR LIMIT OF INSURANCE IS THE MOST WE WILL PAY
UNDER THIS POLICY IN TOTAL IN ANY ONE POLICY YEAR EVEN IF THE LOSS OR
DAMAGE INVOLVES MORE THAN ONE POLICY YEAR LIMIT OF INSURANCE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSES OF LOSS - ELECTRONIC VANDALISM
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELECTRONIC VANDALISM LIMIT OF INSURANCE IN ANY ONE OCCURRENCE:

    $100,000 IN TOTAL FOR ALL COVERED BUILDING OR BUSINESS PERSONAL PROPERT
    $100,000 IN TOTAL FOR ALL COVERED BUSINESS INCOME, RENTAL INCOME OR EXT
EXPENSE

  6 HOUR WAITING PERIOD APPLIES TO ELECTRONIC VANDALISM - BUSINESS INCOME
OR RENTAL INCOME LOSS.

THE FOLLOWING COVERAGES ARE FOUND IN THE CAUSES OF LOSS - ELECTRONIC
VANDALISM FORM AND ARE IN ADDITION TO THE CAUSES OF LOSS - ELECTRONIC
VANDALISM CAUSES OF LOSS - LIMIT OF INSURANCE IN ANY ONE OCCURRENCE:

DENIAL OF SERVICE - BUSINESS INCOME:              $25,000
12 HOUR WAITING PERIOD APPLIES TO DENIAL OF SERVICE - BUSINESS INCOME
LOSS.

GOOD FAITH ADVERTISING EXPENSE:              $25,000 IN ANY ONE
                                             POLICY YEAR

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSES OF LOSS - ADDITIONAL COVERAGE - EQUIPMENT BREAKDOWN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR INSURANCE THAT APPLIES TO A SPECIFIC PREMISES SEE:  PROPERTY CHOICE -
SCHEDULED PREMISES.

THE MOST WE WILL PAY IN ANY ONE EQUIPMENT BREAKDOWN ACCIDENT TO EQUIPMENT
BREAKDOWN PROPERTY IS THE LESSER OF THE APPLICABLE BUILDING, BUSINESS
PERSONAL PROPERTY AND BUSINESS INTERRUPTION LIMITS OF INSURANCE OR
$100,000,000.

COVERAGE EXTENSIONS:  THE FOLLOWING COVERAGE EXTENSIONS LIMITS OF INSURANCE
ARE INCLUDED IN THE CAUSES OF LOSS - ADDITIONAL COVERAGE - EQUIPMENT
BREAKDOWN LIMIT OF INSURANCE AND APPLY IN ANY ONE EQUIPMENT BREAKDOWN
ACCIDENT TO EQUIPMENT BREAKDOWN PROPERTY.

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** **(continued)**

      **POLICY NUMBER:** 81 UUN BK0052

```
                                          LIMITS OF INSURANCE

CFC REFRIGERANTS:                         INCLUDED IN THE LIMIT
                                          OF INSURANCE APPLICABLE
                                          TO EQUIPMENT BREAKDOWN
HAZARDOUS SUBSTANCES:                         $100,000
SPOILAGE:                                     $100,000
EXPEDITING EXPENSES:                          $100,000

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DEDUCTIBLES
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR DEDUCTIBLES THAT APPLY TO A SPECIFIC PREMISES SEE:  PROPERTY CHOICE -
SCHEDULED PREMISES.

THE FOLLOWING DEDUCTIBLE(S) SHALL APPLY TO LOSS OR DAMAGE:


BY EARTHQUAKE:
   IN ANY ONE OCCURRENCE:           $50,000
      AS RESPECTS BUSINESS INCOME COVERAGE,  72 HOUR WAITING PERIOD APPLIES.

BY FLOOD:

   ALL PREMISES IN ANY ONE OCCURRENCE
   SITUATED IN ZONE PREFIXED (C)
   AS DESIGNATED BY THE NATIONAL FLOOD
   INSURANCE ACT OF 1968 (OR ANY
   SUBSEQUENT AMENDMENT):           $50,000

AS RESPECTS BUSINESS INCOME COVERAGE,   72 HOUR WAITING PERIOD APPLIES.

TO PROPERTY IN TRANSIT:
   IN ANY ONE OCCURRENCE:           $2,500

BY ANY OTHER COVERED LOSS,
   IN ANY ONE OCCURRENCE:           $5,000
```

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

       **POLICY NUMBER:** 81 UUN BK0052

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - SCHEDULED PREMISES
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THE FOLLOWING LIMITS OF INSURANCE APPLY IN ANY ONE OCCURRENCE UNLESS
OTHERWISE STATED.


  * * * * * * * * * * * * *

  PREMISES NO.   1

  ADDRESS:

    1060 KEN-O-SHA  INDUSTRIAL  SE
    GRAND RAPIDS, MI  49508
    KENT  COUNTY

  OCCUPANCY:  STEEL  FABRICATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY              LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  BUILDING:                                      INCLUDED  IN BLANKET
                                                   BUILDING  LIMIT

  BUSINESS  PERSONAL  PROPERTY  (INCLUDING  STOCK):    INCLUDED  IN BLANKET
                                                   BUSINESS  PERSONAL
                                                   PROPERTY  LIMIT


  PROTECTIVE  SYSTEMS - FIRE APPLIES  TO THIS  PREMISES  FOR:
    AUTOMATIC  FIRE  EXTINGUISHING  SYSTEM
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS  INTERRUPTION         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  SPECIAL  BUSINESS  INCOME:                      INCLUDED  IN BLANKET
    24 HOURS  WAITING  PERIOD  APPLIES              SPECIAL  BUSINESS
                                                    INCOME  LIMIT

    PAYROLL  IS  INCLUDED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSE OF LOSS - FLOOD:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

      **POLICY NUMBER:** 81 UUN BK0052


    PREMISES   1   CONTINUED



                                            NOT COVERED


  * * * * * * * * * * * * * *

  PREMISES NO.   2

  ADDRESS:

    520 S 32ND STREET SE
    GRAND RAPIDS, MI   49548
    KENT   COUNTY

  OCCUPANCY:   MFG/HEAT TREATING

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY           LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                              INCLUDED IN BLANKET
                                      BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):    INCLUDED IN BLANKET
                                      BUSINESS PERSONAL
                                      PROPERTY LIMIT


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION        LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                INCLUDED IN BLANKET
    24 HOURS WAITING PERIOD APPLIES         SPECIAL BUSINESS
                                      INCOME LIMIT

    PAYROLL IS INCLUDED

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

      **POLICY NUMBER:** 81 UUN BK0052


* * * * * * * * * * * * * *

PREMISES NO.   3

ADDRESS:

  701 E SAVIDGE ST
  SPRING LAKE, MI  49456
  OTTAWA  COUNTY

OCCUPANCY:  STAMPING/WAREHOUSE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY      LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


BUILDING:                             INCLUDED IN BLANKET
                                      BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):   INCLUDED IN BLANKET
                                      BUSINESS PERSONAL
                                      PROPERTY LIMIT


PROTECTIVE SYSTEMS - FIRE APPLIES TO THIS PREMISES FOR:
  AUTOMATIC FIRE EXTINGUISHING SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION     LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:              INCLUDED IN BLANKET
  24 HOURS WAITING PERIOD APPLIES         SPECIAL BUSINESS
                                      INCOME LIMIT

  PAYROLL IS INCLUDED

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

        **POLICY NUMBER:** 81 UUN BK0052

```
* * * * * * * * * * * * * * *

PREMISES NO.   4

ADDRESS:

  6830 GRAND HAVEN RD
  NORTON SHORES, MI  49456
  OTTAWA   COUNTY

OCCUPANCY:   STAMPING/WAREHOUSE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION  OF  COVERAGE  OR  PROPERTY           LIMIT  OF  INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                        INCLUDED  IN  BLANKET
                                                   BUILDING  LIMIT

BUSINESS  PERSONAL  PROPERTY  (INCLUDING  STOCK):    INCLUDED  IN  BLANKET
                                                   BUSINESS  PERSONAL
                                                   PROPERTY  LIMIT


PROTECTIVE  SYSTEMS  -  FIRE  APPLIES  TO  THIS  PREMISES  FOR:
  AUTOMATIC  FIRE  EXTINGUISHING  SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY  CHOICE  -  BUSINESS  INTERRUPTION       LIMIT  OF  INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL  BUSINESS  INCOME:                        INCLUDED  IN  BLANKET
   24  HOURS  WAITING  PERIOD  APPLIES              SPECIAL  BUSINESS
                                                   INCOME  LIMIT

   PAYROLL  IS  INCLUDED
```

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

       **POLICY NUMBER:** 81 UUN BK0052

```
* * * * * * * * * * * * * *

PREMISES NO.   5

ADDRESS:

  1072 KEN-O-SHA INDUSTRIAL SE
  GRAND RAPIDS, MI  49508
  KENT   COUNTY

OCCUPANCY:  WOOD FABRICATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                   INCLUDED IN BLANKET
                                              BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):    INCLUDED IN BLANKET
                                              BUSINESS PERSONAL
                                               PROPERTY LIMIT


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION     LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                    INCLUDED IN BLANKET
   24 HOURS WAITING PERIOD APPLIES            SPECIAL BUSINESS
                                               INCOME LIMIT
   PAYROLL IS INCLUDED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSE OF LOSS - FLOOD:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                            NOT COVERED
```

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

    **POLICY NUMBER:** 81 UUN BK0052

    * * * * * * * * * * * * * *

PREMISES NO.   6

ADDRESS:

  3334 PRODUCTION CT
  ZEELAND, MI  49464
  OTTAWA   COUNTY

OCCUPANCY:  WOOD FABRICATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY      LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                  INCLUDED IN BLANKET
                          BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):    INCLUDED IN BLANKET
                          BUSINESS PERSONAL
                          PROPERTY LIMIT

PROTECTIVE SYSTEMS - FIRE APPLIES TO THIS PREMISES FOR:
  AUTOMATIC FIRE EXTINGUISHING SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION     LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:          INCLUDED IN BLANKET
  24 HOURS WAITING PERIOD APPLIES      SPECIAL BUSINESS
                          INCOME LIMIT

    PAYROLL IS INCLUDED

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

      **POLICY NUMBER:** 81 UUN BK0052

* * * * * * * * * * * * *

PREMISES NO.   7

ADDRESS:

  2500 104TH AVE
  ZEELAND, MI  49464
  OTTAWA   COUNTY

OCCUPANCY:   PRECISION  TURNED  PRODUCTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION  OF  COVERAGE  OR  PROPERTY      LIMIT  OF  INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                      INCLUDED  IN  BLANKET
                              BUILDING  LIMIT

BUSINESS  PERSONAL  PROPERTY  (INCLUDING  STOCK):      INCLUDED  IN  BLANKET
                              BUSINESS  PERSONAL
                              PROPERTY  LIMIT

PROTECTIVE  SYSTEMS - FIRE  APPLIES  TO  THIS  PREMISES  FOR:
  AUTOMATIC  FIRE  EXTINGUISHING  SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY  CHOICE - BUSINESS  INTERRUPTION      LIMIT  OF  INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL  BUSINESS  INCOME:           INCLUDED  IN  BLANKET
  24 HOURS  WAITING  PERIOD  APPLIES      SPECIAL  BUSINESS
                              INCOME  LIMIT

  PAYROLL  IS  INCLUDED

* * * * * * * * * * * * *

PREMISES NO.   8

ADDRESS:

  2520 104TH AVE
  ZEELAND, MI  49464
  OTTAWA   COUNTY

**Form PC 00 02 01 13 T**           PAGE   11 (CONTINUED  ON NEXT  PAGE)

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

      **POLICY NUMBER:** 81 UUN BK0052

  PREMISES  8  CONTINUED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                          INCLUDED IN BLANKET
                                                     BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):      INCLUDED IN BLANKET
                                                     BUSINESS PERSONAL
                                                     PROPERTY LIMIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION            LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                               NOT COVERED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSE OF LOSS - FLOOD:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                      NOT COVERED

* * * * * * * * * * * * * *

PREMISES NO.  9

ADDRESS:

  14130 172ND AVE
  GRAND HAVEN, MI  49417
  OTTAWA   COUNTY

OCCUPANCY:  WOOD PRODUCTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                          INCLUDED IN BLANKET
                                                     BUILDING LIMIT

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

**POLICY NUMBER:** 81 UUN BK0052


PREMISES   9   CONTINUED


BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):          INCLUDED IN BLANKET
                                                        BUSINESS PERSONAL
                                                         PROPERTY LIMIT


PROTECTIVE SYSTEMS - FIRE APPLIES TO THIS PREMISES FOR:
  AUTOMATIC FIRE EXTINGUISHING SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION          LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                         INCLUDED IN BLANKET
  24 HOURS WAITING PERIOD APPLIES                 SPECIAL BUSINESS
                                                   INCOME LIMIT

  PAYROLL IS INCLUDED


* * * * * * * * * * * * * *

PREMISES NO. 10

ADDRESS:

  14130 172ND AVE
  GRAND HAVEN, MI  49417
  OTTAWA  COUNTY

OCCUPANCY:  WAREHOUSE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY              LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                        INCLUDED IN BLANKET
                                                  BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):    INCLUDED IN BLANKET
                                                  BUSINESS PERSONAL
                                                   PROPERTY LIMIT

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES  (continued)**

     **POLICY NUMBER:** 81 UUN BK0052


  PREMISES  10   CONTINUED


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                              NOT COVERED


* * * * * * * * * * * * * * *

PREMISES NO.  12

ADDRESS:

  100 HARBOR DR
  CHARLEVOIX, MI  49720
  CHARLEVOIX  COUNTY

OCCUPANCY:  WOOD PRODUCTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY             LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUILDING:                                       INCLUDED IN BLANKET
                                                   BUILDING LIMIT

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):   INCLUDED IN BLANKET
                                                   BUSINESS PERSONAL
                                                   PROPERTY LIMIT


PROTECTIVE SYSTEMS - FIRE APPLIES TO THIS PREMISES FOR:
  AUTOMATIC FIRE EXTINGUISHING SYSTEM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION         LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                        INCLUDED IN BLANKET
  24 HOURS WAITING PERIOD APPLIES                 SPECIAL BUSINESS
                                                   INCOME LIMIT

  PAYROLL IS INCLUDED


**Form PC 00 02 01 13 T**                    PAGE   14 (CONTINUED ON NEXT PAGE)

**PROPERTY CHOICE - SCHEDULE OF PREMISES AND COVERAGES** (continued)

      **POLICY NUMBER:** 81 UUN BK0052

```
* * * * * * * * * * * * * *

PREMISES NO.  13

ADDRESS:

  17501 CRESCENT ST UNIT 206
  GRAND HAVEN, MI  49417
  OTTAWA   COUNTY

OCCUPANCY:  APARTMENT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DESCRIPTION OF COVERAGE OR PROPERTY          LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BUSINESS PERSONAL PROPERTY (INCLUDING STOCK):     INCLUDED IN BLANKET
                                                   BUSINESS PERSONAL
                                                    PROPERTY LIMIT


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
PROPERTY CHOICE - BUSINESS INTERRUPTION       LIMIT OF INSURANCE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SPECIAL BUSINESS INCOME:                          NOT COVERED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSE OF LOSS - EARTHQUAKE:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                  NOT COVERED

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CAUSE OF LOSS - FLOOD:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                  NOT COVERED
```

**POLICY NUMBER:** 81 UUN BK0052                                            **PROPERTY CHOICE**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY CHOICE - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE – SPECIALIZED PROPERTY INSURANCE COVERAGE ENDORSEMENT(S)**

**Schedule**

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| NEWLY ACQUIRED COVERED PROPERTY: BUILDINGS: | $3,000,000 |
| NEWLY ACQUIRED COVERED PROPERTY: BUSINESS PERSONAL PROPERTY: | $1,500,000 |
| ACCOUNTS RECEIVABLE: | $1,000,000 |
| DEBRIS REMOVAL: | $1,000,000 |
| ORDINANCE OR LAW: (DEMOLITION & INCREASED COST OF CONSTRUCTION) | $5,000,000 |
| PROPERTY IN TRANSIT: | $250,000 |
| UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY (INCLUDING STOCK): | $1,000,000 |

**Form  PC 20 24 01 09**                                                    **Page  1  of  1**

© 2009, The Hartford

**POLICY NUMBER:** 81 UUN BK0052        **PROPERTY CHOICE**



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY CHOICE BUSINESS INTERRUPTION - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE SPECIAL BUSINESS INCOME - ADDITIONAL COVERAGES**
**PROPERTY CHOICE BUSINESS INCOME - ADDITIONAL COVERAGES**
**PROPERTY CHOICE PROFESSIONAL BUSINESS INCOME - ADDITIONAL COVERAGES**
**PROPERTY CHOICE RENTAL INCOME - ADDITIONAL COVERAGES**
**PROPERTY CHOICE EXTRA EXPENSE - ADDITIONAL COVERAGES**

**Schedule**

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| BUSINESS INTERRUPTION: | |
| UTILITY SERVICES: | $1,000,000 |
| | |
| UNNAMED PREMISES: | |
|   EXTRA EXPENSE: | NOT COVERED |

© 2009, The Hartford

# COMMERCIAL GENERAL LIABILITY
# COVERAGE PART - DECLARATIONS



**POLICY NUMBER:** 81 UUN BK0052

This COMMERCIAL GENERAL LIABILITY COVERAGE PART consists of:

A.  This Declarations;
B.  Commercial General Liability Schedule;
C.  Commercial General Liability Coverage Form; and
D.  Any Endorsements issued to be a part of this Coverage Part and listed below.

## LIMITS OF INSURANCE

The Limits of Insurance, subject to all the terms of this Policy that apply, are:

| | |
|---|---|
| Each Occurrence Limit | $1,000,000 |
| Damage to Premises Rented to You Limit - Any One Premises | $300,000 |
| Medical Expense Limit - Any One Person | $10,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| General Aggregate Limit, (other than Products-Completed Operations) | $2,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |

**ADVANCE PREMIUM:** ███████████

**AUDIT PERIOD:** ANNUAL AUDIT

Except in this Declarations, when we use the word "Declarations" in this Coverage Part, we mean this "Declarations" or the "Common Policy Declarations."

Form Numbers of Coverage Forms, Endorsements and Schedules that are part of this Coverage Part:

| | | | | |
|---|---|---|---|---|
| HC70010605 | CG25020798 | HC00880916 | HC21960605 | HC23700115 |
| HC30060916 | HG00010916 | HG21020315 | CG20260413 | HC21370393 |
| HC21900608 | HG01680207 | HC12101185T | | |

**Form HC 00 10 07 98**

# DATA BREACH COVERAGE DECLARATIONS (CLAIMS-MADE)



**POLICY NUMBER:**   81 UUN BK0052

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE. IF A LIMIT IS SHOWN FOR PART II OF THIS COVERAGE PART, THE LIMITS OF INSURANCE WILL BE REDUCED OR EXHAUSTED BY PAYMENT OF ANY COMBINATION OF LOSS OR SUPPLEMENTARY PAYMENTS. PLEASE READ ALL PROVISIONS CAREFULLY, AND CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS.**

This DATA BREACH COVERAGE PART consists of:

A. This Declarations and the Common Policy Declarations;

B. The Data Breach Coverage Form;

C. The Common Policy Conditions and any state-specific Cancellation and/or Nonrenewal endorsements; and

D. Any Endorsements and Schedules issued to be a part of this Coverage Part and listed below.

**RETROACTIVE DATE**   This insurance does not apply to any "data breach" that occurs before the Retroactive Date, if any, shown below.

**Retroactive Date:**   12/31/16
If no date is entered, the Retroactive Date is the same as the effective date of this Coverage Part.

**LIMITS OF INSURANCE**

Subject to all terms of this Policy, the Limits of Insurance are:

**Part I – Data Breach Expenses**

| | |
|---|---|
| Data Breach Expenses Limit | $25,000 |
| Good Faith Advertising Services Limit | $5,000 |
| Legal and Forensic Services Limit | $5,000 |
| Deductible – Each Data Breach | $1,000 |

**Part II – Data Breach Defense and Liability** (Optional coverage - applies only when a limit is shown. If no limit is shown below, only Part I of this Coverage Part, Data Breach Expenses, applies).

| | |
|---|---|
| Data Breach Defense and Liability Limit | $50,000 |
| **Premium:** | ███████ |

Except in this Declarations, when we use the word "Declarations" in this Coverage Part, we mean this "Declarations" or the "Common Policy Declarations".

Form Numbers of Coverage Forms, Endorsements and Schedules that are part of this Coverage Part:

HC00061212       HC12101185T

© 2012, The Hartford

# EMPLOYEE BENEFITS LIABILITY
# COVERAGE PART - DECLARATIONS (CLAIMS MADE)



**POLICY NUMBER:** 81 UUN BK0052

This EMPLOYEE BENEFITS LIABILITY COVERAGE PART (CLAIMS MADE) consists of:

A. This Declarations;
B. Commercial General Liability Schedule;
C. Employee Benefits Liability Coverage Form; and
D. Any Endorsements issued to be a part of this Coverage Part and listed below.

**Retroactive Date:** 12/31/08 .  If no date is entered, the Retroactive Date is the Inception Date
of the Policy Period stated in the Common Policy Declarations.

## LIMITS OF INSURANCE

The Limits of Insurance, subject to all the terms of this Policy that apply, are:

Each Claim                    $1,000,000

Aggregate                     $1,000,000

**ADVANCE PREMIUM:**          ████

**AUDIT PERIOD:** ANNUAL AUDIT

Except in this Declarations, when we use the word "Declarations" in this Coverage Part, we mean this "Declarations" or
the "Common Policy Declarations."

Form Numbers of Coverage Forms, Endorsements and Schedules that are part of this Coverage Part:

HC23700115        HC70110286        HC00210799        HC12101185T

**Form HC 00 20 02 95**

# COMMERCIAL GENERAL LIABILITY SCHEDULE



**POLICY NUMBER:** 81 UUN BK0052

Entries herein, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy.

## RATING CLASSIFICATIONS

```
DESCRIPTION OF HAZARDS:        PREMISES/OPERATIONS  COVERAGE

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                               COVERAGE PART (FORM HC 00 10)

PRMS/BLDG. NO:                 001/001              TERR: 504
LOCATION:                      1060 KEN-O-SHA  INDUSTRIAL  SE
                               GRAND RAPIDS
                               MI.  49508

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:               56912
  METAL GOODS MFG. - STAMPING - NOT SIGNS

PREMIUM AND RATING BASIS:

EXPOSURE:

RATE:

ADVANCE PREMIUM:
```

```
DESCRIPTION OF HAZARDS:        PREMISES/OPERATIONS  COVERAGE

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                               COVERAGE PART (FORM HC 00 10)

PRMS/BLDG. NO:                 009/001              TERR: 505
LOCATION:                      14130 172ND AVE
                               GRAND HAVEN
                               MI.  49417

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:               61217
  BUILDINGS OR PREMISES - BANK OR OFFICE - MERCANTILE OR MANUFACTURING -
  MAINTAINED BY THE INSURED (LESSOR'S RISK ONLY) - OTHER THAN NOT-FOR-PROFIT
  - INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS - PRODUCTS/COMPLETED
  OPERATIONS LOSSES ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT

PREMIUM AND RATING BASIS:
```

**COMMERCIAL GENERAL LIABILITY SCHEDULE (Continued)**

**POLICY NUMBER:** 81 UUN BK0052

EXPOSURE:

RATE:

ADVANCE PREMIUM:



---

DESCRIPTION OF HAZARDS:        PREMISES/OPERATIONS  COVERAGE

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                              COVERAGE PART  (FORM HC 00 10)

PRMS/BLDG. NO:                012/001              TERR: 505
LOCATION:                     100 HARBOR DR
                              CHARLEVOIX
                              MI.  49720

CLASSIFICATION  CODE NUMBER
AND DESCRIPTION:              56912
  METAL GOODS MFG. - STAMPING - NOT SIGNS

PREMIUM AND RATING BASIS:

EXPOSURE:

RATE:

ADVANCE PREMIUM:



---

DESCRIPTION OF HAZARDS:        PREMISES/OPERATIONS  COVERAGE

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                              COVERAGE PART  (FORM HC 00 10)

PRMS/BLDG. NO:                012/001              TERR: 505
LOCATION:                     100 HARBOR DR
                              CHARLEVOIX
                              MI.  49720

CLASSIFICATION  CODE NUMBER
AND DESCRIPTION:              59985
  WOOD PRODUCTS MFG.

PREMIUM AND RATING BASIS:

EXPOSURE:



**Form HC 12 10 11 85T**                PAGE    2  (CONTINUED ON NEXT PAGE)

**COMMERCIAL GENERAL LIABILITY SCHEDULE (Continued)**

**POLICY NUMBER:** 81 UUN BK0052

RATE:

ADVANCE PREMIUM:



---

DESCRIPTION OF HAZARDS:        PREMISES/OPERATIONS   COVERAGE

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                              COVERAGE  PART  (FORM  HC  00  10)

PRMS/BLDG.  NO:               013/001                 TERR:  505
LOCATION:                     17501  CRESCENT  ST  UNIT  206
                              GRAND  HAVEN
                              MI.    49417

CLASSIFICATION  CODE  NUMBER
AND  DESCRIPTION:             60010
APARTMENT  BUILDINGS  -  INCLUDING  PRODUCTS  AND/OR  COMPLETED  OPERATIONS
-  PRODUCTS/COMPLETED  OPERATIONS  LOSSES  ARE  SUBJECT  TO  THE  GENERAL
AGGREGATE  LIMIT

PREMIUM  AND  RATING  BASIS:

EXPOSURE:

RATE:

ADVANCE  PREMIUM:



---

DESCRIPTION  OF  HAZARDS:     PRODUCTS/COMPLETED   OPERATIONS   COVERAGE

REFER  TO:                    COMMERCIAL  GENERAL  LIABILITY
                              COVERAGE  PART  (FORM  HC  00  10)

PRMS/BLDG.  NO:               001/001
LOCATION:                     1060  KEN-O-SHA  INDUSTRIAL  SE
                              GRAND  RAPIDS
                              MI.    49508

CLASSIFICATION  CODE  NUMBER
AND  DESCRIPTION:             56912
METAL  GOODS  MFG.  -  STAMPING  -  NOT  SIGNS

PREMIUM  AND  RATING  BASIS:

EXPOSURE:



**COMMERCIAL GENERAL LIABILITY SCHEDULE (Continued)**

**POLICY NUMBER:** 81 UUN BK0052

RATE:

ADVANCE PREMIUM:



---

DESCRIPTION OF HAZARDS:        PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:                      COMMERCIAL GENERAL LIABILITY
                               COVERAGE PART (FORM HC 00 10)

PRMS/BLDG. NO:                 012/001
LOCATION:                      100 HARBOR DR
                               CHARLEVOIX
                               MI. 49720

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:               56912
 METAL GOODS MFG. - STAMPING - NOT SIGNS

PREMIUM AND RATING BASIS:

EXPOSURE:

RATE:

ADVANCE PREMIUM:



---

DESCRIPTION OF HAZARDS:        PRODUCTS/COMPLETED OPERATIONS COVERAGE

REFER TO:                      COMMERCIAL GENERAL LIABILITY
                               COVERAGE PART (FORM HC 00 10)

PRMS/BLDG. NO:                 012/001
LOCATION:                      100 HARBOR DR
                               CHARLEVOIX
                               MI. 49720

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:               59985
 WOOD PRODUCTS MFG.

PREMIUM AND RATING BASIS:

EXPOSURE:

RATE:



**COMMERCIAL GENERAL LIABILITY SCHEDULE (Continued)**

**POLICY NUMBER:** 81 UUN BK0052

ADVANCE PREMIUM:                    █████████

DESCRIPTION OF HAZARDS:        ADDITIONAL  INSURED   CG2026
    NAME OF PERSON OR ORGANIZATION:
        STEELCASE,  INC
        C/O MY COI
        1075  BRAD  RIPPLE  AVE  STE  313
        INDIANAPOLIS,  IN   46220

REFER TO:                      COMMERCIAL  GENERAL  LIABILITY
                               COVERAGE  PART  (FORM  HC  00  10)

ADVANCE PREMIUM:               INCLUDED

DESCRIPTION OF HAZARDS:        EMPLOYEE  BENEFITS  COVERAGE

REFER TO:                      EMPLOYEE  BENEFITS  LIABILITY
                               COVERAGE  PART  (FORM  HC  00  20)

CLASSIFICATION  CODE  NUMBER
AND DESCRIPTION:               30195
 EMPLOYEE  BENEFITS

PREMIUM  AND  RATING  BASIS:   ██████████████████████████

EXPOSURE:

RATE:

ADVANCE  PREMIUM:

DESCRIPTION OF HAZARDS:        DATA  BREACH  EXPENSES

REFER TO:                      DATA  BREACH
                               COVERAGE  PART  (FORM  HC  00  05)

CLASSIFICATION  CODE  NUMBER
AND DESCRIPTION:               31006
                               DATA  BREACH  EXPENSES

ADVANCE  PREMIUM               ████████

**Form HC 12 10 11 85T**                    PAGE    5  (CONTINUED ON NEXT PAGE)

**COMMERCIAL GENERAL LIABILITY SCHEDULE (Continued)**

**POLICY NUMBER:** 81 UUN BK0052

---

DESCRIPTION OF HAZARDS:     DATA BREACH DEFENSE AND LIABILITY

REFER TO:                   DATA BREACH
                            COVERAGE PART (FORM HC 00 05)

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:            33106
                            DATA BREACH DEFENSE AND LIABILITY

ADVANCE PREMIUM             █████████

---

TOTAL ADVANCE PREMIUM:                 ██████████

---



# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1**. and **2**. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2**. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Lisa Levin, Secretary

Douglas Elliot, President



# U.S. DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by the United States. **Please read this Notice carefully.**

The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on U.S. foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.  OFAC acts under Presidential national emergency powers, as well as authority granted by specific legislation, to impose controls on transactions and freeze assets under U.S. jurisdiction.  OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries.  It also lists individuals, groups, and entities, such as terrorists and narcotics traffickers designated under programs that are not country-specific.  Collectively, such individuals and companies are called "Specially Designated Nationals and Blocked Persons" or "SDNs".  Their assets are blocked and U.S. persons are generally prohibited from dealing with them.  This list can be located on OFAC's web site at – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is an SDN, as identified by OFAC, the policy is a blocked contract and all dealings with it must involve OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 02 86 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is amended as follows:

**1.** Paragraph **1.** is replaced by the following:

The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

**2.** Paragraph **3.** is replaced by the following:

We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

**3.** Paragraph **5.** is replaced by the following:

If this policy is cancelled, we will send the first Named Insured any pro rata premium refund due.  The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

PROPERTY CHOICE



# QUICK REFERENCE
## PROPERTY CHOICE COVERAGE PART

### Property Choice Conditions and Definitions

A. General Conditions
   1. Abandonment
   2. Application of Waiting Period
   3. Appraisal
   4. Claim Settlement
   5. Concealment, Misrepresentation or Fraud
   6. Control of Property
   7. Coverage Territory
   8. Equipment Breakdown - Suspension
   9. Equipment Breakdown - Inspection
   10. If Two or More Coverages Apply
   11. Legal Action Against Us
   12. Liberalization
   13. Loss Payee - Standard
   14. Mortgageholders and Lender Loss Payees
   15. Contract of Sale and Building Owner Loss Payable Clauses
   16. No Benefit to Bailee
   17. Other Insurance
   18. Policy Period
   19. Recovered Property
   20. Standard Fire Policy
   21. Transfer of Rights (Subrogation)
B. General Duties in Event of Loss
   1. Your Duties
      a. Notify Police
      b. Notify Us
      c. Protect Property
      d. Take Inventory
      e. Permit us to Inspect Property, Books and Records
      f. Proof of Loss
      g. Cooperate
      h. Resumption of Business
   2. Our Right - Examine You Under Oath
C. General Definitions
   1. Building Glass
   2. Computer Equipment
   3. Electronic Data
   4. Fungus
   5. Money
   6. Policy Year
   7. Pollutants and Contaminants
   8. Scheduled Premises
   9. Securities
   10. Sinkhole Collapse
   11. Specified Causes of Loss
   12. Sprinkler Leakage
   13. Stock
   14. Tenant Improvements and Betterments
   15. Theft
   16. Valuable Papers
   17. Volcanic Action

### Property Choice Coverage Form

A. Coverage
   1. Covered Property Definitions
      a. Building
      b. Business Personal Property
   2. Property Not Covered
   3. Covered Causes of Loss - See separate form
B. Exclusions - See separate form
C. Limits of Insurance
D. Deductible
E. Loss Payment and Valuation Conditions
   1. Replacement Cost
   2. Actual Cash Value
   3. Specific Property Valuations
      a. Accounts Receivable
      b. Animals
      c. Building Glass
      d. Electronic Data and Valuable Papers

**Form PC 00 91 01 13**

© 2013, The Hartford

**Page 1 of 3**

e.  Fine Arts
f.  Party Wall
g.  Property of Others
h.  Stock
i.  Tenant Improvements and Betterments
j.  Transit

k.  Vehicles
4.  Value Enhancements
   a.  Architect and Engineering Fees
   b.  Customs Duty, Sales Tax
   c.  Extended Warranties

## Property Choice - Specialized Property Insurance Coverages

Section A.  Additional Coverages

1.  Accounts Receivable
2.  Brands and Labels
3.  Building Glass Repairs
4.  Business Travel Including Sales Representative Samples
5.  Claim Expenses
6.  Contract Penalties
7.  Debris Removal
8.  Employee Personal Effects
9.  Errors in Description
10. Exhibitions
11. Extra Expense and Expediting Expenses
12. Fine Arts
13. Fire Department Service Charge
14. Fire Device Recharge
15. Fungus, Wet Rot, Dry Rot, Bacteria and Virus –  Limited Coverage
16. Inflation Guard
17. Installment or Deferred Sales
18. Loss of Master Key

19. New Construction at Scheduled Premises
20. Newly Acquired Property
21. Non-Owned Detached Trailers
22. Ordinance or Law
23. Outdoor Trees, Shrubs, Sod, Plants and Lawns
24. Pairs or Sets
25. Pollutants and Contaminants Clean Up
26. Preservation of Property
27. Rewards
28. Sewer and Drain Backup
29. Transit
30. Transition to Replacement Premises
31. Unnamed Premises
32. Utility Service Interruption
33. Water Damage Building Tear Out and Repair
34. Water Seepage
35. Windblown Debris

Section B. - Combined Additional Protection

Section C. - Tenant Lease Coverage

## Property Choice - Covered Causes of Loss and Exclusions Form

A.  Covered Causes of Loss
B.  Exclusions

1.  a.  Acts Errors or Omissions
   b.  Animals
   c.  Collapse (Related to Earthquake or Flood)
   d.  Earth Movement
   e.  Water
   f.  Fungus, Wet Rot, Dry Rot, Bacteria or Virus
   g.  Governmental Action
   h.  Electronic Vandalism or Corruption of Electronic Data or Corruption of Computer Equipment
   i.  Nuclear Hazard
   j.  Ordinance or Law

k.  Pathogenic or Poisonous Biological or Chemical Materials
l.  Pollutants and Contaminants
m.  Utility Services Interruption
n.  War and Military Action

2.  We will not pay for loss or damage caused by or resulting from any of the following:

a.  Artificially Generated Electrical, Magnetic or Electromagnetic Energy
b.  Accounting Errors
c.  Changes of Temperature, Dampness or Dryness
d.  Delay, Loss of Use or Loss of Market
e.  Dishonest Acts
f.  Docks, Piers, Wharves

**Form PC 00 91 01 13**

g.  Loss Due To By-Products of Production or Processing Operations

h.  Mechanical Breakdown

i.  Missing Property

j.  Neglect to Protect Property

k.  Rain, Snow, Ice, Sleet to Property in the Open

l.  Settling, Cracking to Buildings or Structures

m.  Smoke (agricultural or Industrial)

n.  Steam Explosions

o.  Testing

p.  Theft of Laptops as Checked Baggage

q.  Unauthorized Transfer of Property

r.  Voluntary Parting

3.  We will not pay for loss or damage caused by or resulting from any of the following. But if direct physical loss or direct physical damage to Covered Property by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

a.  Wear and tear, or change in color, texture, or finish;

b.  Rust, corrosion, decay, or deterioration;

c.  Hidden or latent defect or any quality in property that causes it to damage or destroy itself;

d.  Maintenance;

e.  Smog; or

f.  Shrinkage, evaporation, or loss of weight of Stock.

C.  Limitations

D.  Additional Coverage –  Equipment Breakdown

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROPERTY CHOICE - SPECIALIZED PROPERTY INSURANCE COVERAGES FOR METALWORKERS

**SUMMARY of COVERAGE LIMITS and INDEX**
This is a summary of the limits of insurance and coverages provided by this endorsement.
No coverage is provided by this summary.

| Item No. | PROPERTY CHOICE COVERAGE FORM SECTION A. - ADDITIONAL COVERAGES | LIMIT OF INSURANCE (Apply in any one occurrence unless otherwise noted) | PAGE No. |
|---|---|---|---|
| 1. | **ACCOUNTS RECEIVABLE:** | **$250,000 at all "Scheduled Premises"; while in the due course of Transit; or while at Unnamed Premises.** | **3** |
| 2. | **BRANDS AND LABELS:** | **Included in the Limit of Insurance applicable to Business Personal Property - Stock.** | **3** |
| 3. | **BUILDING GLASS REPAIRS:** | **Included In the Building Limit of Insurance.** | **3** |
| 4. | **BUSINESS TRAVEL INCLUDING SALES REPRESENTATIVE SAMPLES:** | **$50,000.** | **3** |
| 5. | **CLAIM EXPENSES:** | **$50,000.** | **4** |
| 6. | **CONTRACT PENALTIES:** | **$50,000.** | **4** |
| 7. | **DEBRIS REMOVAL  -  (ADDITIONAL AMOUNT):** | **$250,000.** | **4** |
| 8. | **EMPLOYEE PERSONAL EFFECTS:** | **$50,000.** | **4** |
| 9. | **ERRORS IN DESCRIPTION:** | **See provision.** | **5** |
| 10. | **EXHIBITIONS:** | **$50,000. At any one Exhibition.** | **5** |
| 11. | **EXTRA EXPENSE AND EXPEDITING EXPENSES (OTHER THAN EQUIPMENT BREAKDOWN EXPEDITING EXPENSES):** | **$50,000.** | **5** |
| 12. | **FINE ARTS:** | **$50,000.** | **5** |
| 13. | **FIRE DEPARTMENT SERVICE CHARGE:** | **$50,000.** | **5** |
| 14. | **FIRE DEVICE RECHARGE:** | **$50,000.** | **6** |
| 15. | **FUNGUS, WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE:** | **$50,000. At Each Premises in any one "Policy Year".** | **6** |
| 16. | **INFLATION GUARD:** | **Consumer Price Index up to 8%.** | **6** |
| 17. | **INSTALLMENT OR DEFERRED SALES:** | **Up to $50,000.** | **7** |
| 18. | **LOSS OF MASTER KEY:** | **$25,000.** | **7** |
| 19. | **NEW CONSTRUCTION AT SCHEDULED PREMISES:** | **$2,000,000.** | **7** |
| 20. | **NEWLY ACQUIRED PROPERTY: BUILDINGS:** | **$2,000,000.** | **7** |
|  | **NEWLY ACQUIRED PROPERTY: BUSINESS PERSONAL PROPERTY:** | **$1,000,000.** | **7** |
| 21. | **NON OWNED DETACHED TRAILERS:** | **$50,000.** | **8** |
| 22. | **ORDINANCE OR LAW COVERAGE (VALUE OF THE UNDAMAGED BUILDING):** | **Included in the Limit of Insurance applicable to Building.** | **8** |
|  | **ORDINANCE OR LAW COVERAGE (DEMOLITION & INCREASED COST OF CONSTRUCTION):** | **$1,000,000.** | **8** |

© 2013, The Hartford

| 23. | OUTDOOR TREES, SHRUBS, SOD, PLANTS AND LAWNS: | $50,000. | 9 |
|-----|------------------------------------------------|----------|---|
| 24. | PAIRS AND SETS: | Included in the Limit of Insurance applicable to Business Personal Property - Stock. | 9 |
| 25. | POLLUTANTS AND CONTAMINANTS CLEANUP: | $50,000. at each "Scheduled Premises" in any one "Policy Year". | 9 |
| 26. | PRESERVATION OF PROPERTY: | 180 days. | 9 |
| 27. | REWARD COVERAGE: | $50,000. | 10 |
| 28. | SEWER AND DRAIN BACKUP: | Included in the Limit of Insurance. | 10 |
| 29. | TRANSIT: | $100,000. | 10 |
| 30. | TRANSITION TO REPLACEMENT PREMISES: | Included within the Limit of Insurance applicable to the Covered Property that is moved. | 11 |
| 31. | UNNAMED PREMISES: AT ALL UNNAMED PREMISES: BUILDINGS: | $100,000. | 11 |
|     | UNNAMED PREMISES: AT ALL UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY: | $100,000. | 11 |
|     | UNNAMED PREMISES: AT ALL UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY - INSTALLATION: | $25,000. At any one Installation. | 11 |
| 32. | UTILITY SERVICE INTERRUPTION: | $100,000. | 11 |
| 33. | WATER DAMAGE BUILDING TEAR OUT AND REPAIR: | Included. | 12 |
| 34. | WATER SEEPAGE: | $25,000. | 12 |
| 35. | WIND BLOWN DEBRIS: | $2,500. | 13 |
|     |  |  |  |
|     | SECTION B. - COMBINED ADDITIONAL PROTECTION: | Up to $250,000. | 13 |
|     |  |  |  |
| 1. | SECTION C. - TENANT LEASE COVERAGES: BUILDING GLASS: | Included in Business Personal Property Limit. | 13 |
| 2. | LEASE ASSESSMENT: | $2,500. | 14 |
| 3. | LEASEHOLD IMPROVEMENTS: | $25,000. | 14 |
| 4. | MISCELLANEOUS INTERIOR BUILDING PROPERTY: | $25,000. | 14 |
| 5. | THEFT DAMAGE: | Included in Business Personal Property Limit. | 14 |
| 6. | LEGAL LIABILITY - BUILDING COVERAGE FORM (PC 00 30) ATTACHES TO AND FORMS PART OF THIS POLICY<br>LEGAL LIABILITY - BUILDING LIMIT OF INSURANCE: | $25,000. In any one accident. | 14 |
|     |  |  |  |

| | | |
|---|---|---|
| **SECTION D. - PROPERTY CHOICE COMMON CRIME COVERAGE FORM IS ADDED:** | | **14** |
| **EMPLOYEE THEFT:** | **$100,000.** | |
| **FORGERY OR ALTERATION:** | **$25,000.** | |
| **MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY:** | **$25,000.** | |
| **INSIDE THE PREMISES - THEFT OF MONEY AND SECURITIES:** | **$25,000.** | |
| **OUTSIDE THE PREMISES - THEFT OF MONEY AND SECURITIES:** | **$25,000.** | |

For Insurance that applies to a Specific Scheduled Premises see: Property Choice - Scheduled Premises.

## SECTION A. - ADDITIONAL COVERAGES

The following Additional Coverages are added to the Property Choice Coverage Form unless otherwise indicated in the Property Choice Schedule of Premises and Coverages or by endorsement to this policy:

**1. ACCOUNTS RECEIVABLE**

**Coverage:** We will pay for direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to your records of Accounts Receivable. Accounts Receivable, means all amounts due from your customers that you are unable to collect; due to a covered direct physical loss or covered direct physical damage to inscribed, printed, written or electronic records of accounts receivable. We will also pay for:

**a.** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**b.** Collection expenses in excess of your normal collection expenses that are made necessary by the loss or damage; and

**c.** Other reasonable expenses that you incur to re-establish your records of accounts receivable.

**Limit of Insurance:** The most we will pay for direct physical loss or direct physical damage to records of Accounts Receivable in any one occurrence is $250,000 at all "Scheduled Premises"; while in the due course of Transit; or while at Unnamed Premises. This is an additional amount of Insurance.

**2. BRANDS AND LABELS**

**Coverage:** In the event of covered direct physical loss or covered direct physical damage to "Stock", and "Stock" is Covered Property that is branded or labeled, we will take all or part of the damaged "stock" at an agreed or appraised value. This will include:

**a.** Expenses incurred to:

**(1)** Stamp salvage on the "Stock" or its containers, if the stamp will not physically damage the merchandise; or

**(2)** Remove the brands or labels, if doing so will not physically damage the "Stock". You must relabel the "Stock" and its containers to comply with the law.

**b.** Any reduction in the salvage value of the damaged "Stock" as the result of the removal of the brand or label.

**Limit of Insurance:** The most we will pay under this Additional Coverage - Brands and Labels in any one occurrence is the limit of insurance applicable to Business Personal Property - "stock" where the direct physical loss or direct physical damage occurred.

**3. "BUILDING GLASS" REPAIRS**

**Coverage:** In the event of covered direct physical loss or covered direct physical damage to "Building Glass", we will pay in any one occurrence your expenses to:

**a.** Install temporary plates or board up openings if repair or replacement of damaged "Building Glass" is delayed.

**b.** Make necessary repairs or replace the frames immediately encasing the damaged "Building Glass".

**Limit of Insurance:** This Additional Coverage is included within the Limit of Insurance applicable to Building(s) where the direct physical loss or direct physical damage occurred.

**4. BUSINESS TRAVEL INCLUDING SALES REPRESENTATIVE SAMPLES**

**Coverage:** If a limit of insurance is shown in the Property Choice Schedule of Premises and Coverages for Business Personal Property, then we will pay for direct physical loss or direct physical damage by a Covered Cause of Loss to Business Personal Property including Sales

Representative Samples while in the custody of:

a.   Your sales representatives; or

b.   Any officer, employee or yourself;

while traveling anywhere in the world on authorized company business.

Business Travel Coverage does not include property owned by and for exclusive personal use by you or your officers, partners, employees, residents or students.

Property eligible for Business Travel Coverage is not eligible under any other Coverage in this Coverage Form.

**Limit of Insurance:** The most we will pay for direct physical loss or direct physical damage to Business Travel Including Sales Representative Samples in any one occurrence is $50,000. This is an additional limit of insurance.

**5.   CLAIM EXPENSES**

**Coverage:** You may extend the insurance provided by this Coverage Form to apply to the actual, necessary and reasonable expenses you incur in preparing claim data when we require it. Claim expenses as used in this Additional Coverage means the cost of taking inventories, making appraisals and preparing other documents that we request in writing to you.

**Limit of Insurance:** The most we will pay in any one occurrence for the preparation of claim data under this Additional Coverage is $50,000.   This is an additional amount of insurance.

We will not pay for any expenses incurred, directed or billed by and payable to insurance agents, brokers, adjusters or their affiliates or subsidiaries or any costs as provided in or incurred due to the GENERAL CONDITION - Appraisal.

**6.   CONTRACT PENALTIES**

**Coverage:** We will pay for written contract penalties you are required to pay due to your failure to provide your product or service which is the direct result of a Covered Cause of Loss during the policy period to "Stock" and "Stock" is Covered Property under this Coverage Part.

**Limit of Insurance:** The most we will pay for all penalties in any one occurrence resulting from a Covered Cause of Loss is $50,000. This is an additional amount of insurance.

**7.   DEBRIS REMOVAL**

a.   **Coverage:** We will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.   This additional coverage does not apply to:

(1)   Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

(2)   Remove property of others of a type that would not be Covered Property under this Coverage Form;

(3)   Remove deposits of mud or earth from the grounds of the described premises;

(4)   Costs to extract "pollutants" from land or water; or

(5)   Costs to remove restore or replace polluted land or water.

b.   **Limit of Insurance:**

(1)   Payment for Debris Removal is included within the applicable Limit of Insurance shown in the Property Choice Schedule of Premises and Coverages for the damaged Covered Property. The most we will pay under this Additional Coverage is 25% of the amount that we pay for the direct physical loss of or direct physical damage to Covered Property, plus the deductible in this policy applicable to that loss or damage.

(2)   When the debris removal expense exceeds the above 25% limitation or the sum of loss or damage to Covered Property and the expense for removal of the Covered Property debris exceeds the applicable Limit of Insurance for the damaged Covered Property, we will pay an additional amount for debris removal expense of up to $250,000 in total at all "Scheduled Premises" in any one occurrence.

(3)   However, if no Covered Property has sustained direct physical loss or direct physical damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each "Scheduled Premises".

**8.   EMPLOYEE PERSONAL EFFECTS**

**Coverage:** If a limit of insurance is shown in the Property Choice Schedule of Premises and Coverages for Business Personal Property, then we will pay for direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to your Employee Personal Effects at a "Scheduled Premises". Employee Personal Effects means personal effects owned by you or your officers, partners, employees, members, or managers and used exclusively by the individual owner for their own personal use such as personally owned laptops, Personal Digital Assistants and cell phones. This coverage does not apply at a place of residence.

**Limit of Insurance:** The most we will pay in total in any one occurrence for all direct physical loss or direct physical damage to all employee personal effects is $50,000. We will not pay more than $25,000 in total for direct physical loss or direct physical damage to personal effects belonging to any one employee in any one occurrence regardless of the number or types of personal effects lost or damaged.

Coverage for Employee Personal Effects is extended to apply up to 1000 feet outside the "Scheduled Premises" boundary.

This is an additional limit of insurance.

9.  **ERRORS IN DESCRIPTION**

Any unintentional error in the description of the occupancy or location address of Covered Property will not impair this insurance, provided you report the error to us as soon as the error becomes known to you.

10.  **EXHIBITIONS**

**Coverage:** If a limit of insurance is shown in the Property Choice Schedule of Premises and Coverages for Business Personal Property then we will pay for direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to Business Personal Property while on temporary public display, or being used, at fairs, exhibitions, expositions or trade shows or while in transit to and from these temporary sites.

**Limit of Insurance:** The most we will pay for all direct physical loss or direct physical damage at any one exhibition is $50,000. This is an additional limit of insurance. Property eligible for Exhibitions Coverage is not eligible under any other Coverage of this Coverage Form.

11.  **EXTRA EXPENSE AND EXPEDITING EXPENSES (OTHER THAN EQUIPMENT BREAKDOWN EXPEDITING EXPENSES)**

**Coverage:** In the event of a Covered Cause of Loss to Covered Property at a "Scheduled Premises" you may extend the insurance provided by this coverage form to apply to the actual, necessary and reasonable:

a.  Extra expenses you incur to continue as nearly as possible your normal business operations immediately following the covered loss or damage.

b.  Additional expenses you incur to:

(1)  Make temporary repairs of damaged covered property;

(2)  Expedite permanent repair or replacement of damaged covered property; or

(3)  Provide training on replacement machines or equipment that are covered property.

This includes overtime wages, the extra cost of express or other rapid means of transportation, and expenses to bring computer systems back to operational status.

c.  **Limit of Insurance:** The most we will pay in total for all expenses incurred under this Additional Coverage in any one occurrence is $50,000. This is an additional limit of insurance.

12.  **FINE ARTS**

**Coverage:** If a limit of insurance is shown in the Property Choice Schedule of Premises and Coverages for Business Personal Property, then we will pay for direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to Fine Arts. Fine Arts mean paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, porcelains, rare glass, bric-a-brac, and similar property, of rarity, historical value or artistic merit, owned by you or others in your care, custody or control.

Fine Arts do not include artwork that is computerized or classified as data.

**Limit of Insurance:** The most we will pay for direct physical loss or direct physical damage in any one occurrence is $50,000, regardless of the number or types of Fine Arts damaged. We will not pay more than $10,000 for any one item of Fine Arts in any one occurrence.  A pair or set will be deemed to be one item. This is an additional limit of insurance.

13.  **FIRE DEPARTMENT SERVICE CHARGE**

**Coverage:** In the event that the fire department responds to save or protect Covered Property from a Covered Cause of Loss, we will pay for your liability for fire department service charges:

a.  Assumed by contract or agreement prior to the covered loss event; or

b.  Required by local ordinance.

No deductible applies to this Additional Coverage.

**Limit of Insurance:** The most we will pay for Fire Department Service Charge in any one occurrence is $50,000. Such Limit is the most we will pay regardless of the number of responding fire departments or fire units and regardless of the number or type of services performed. This is an additional amount of insurance.

14.  **FIRE DEVICE RECHARGE**

a.  **Coverage:** In the event that a manual or automatic fire extinguishing device is discharged:

(1)  To fight a fire;

(2)  As the result of Covered Cause of Loss; or

(3) Due to accidental discharge;

we will pay expenses you incur to recharge such equipment.

b. We will not pay for:

(1) Any costs resulting from the enforcement of any ordinance or law that regulates the recharging, repair or replacement of such fire extinguishing device or fire fighting, suppressing or controlling substance;

(2) Halon;

(3) The recharge of any device used for demonstration or testing purposes; or

(4) Recharge due to maintenance of any device or system.

c. **Limit of Insurance:** The most we will pay for Fire Device Recharge in any one occurrence is $50,000. This is an additional limit of insurance.

## 15. "FUNGUS", WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE

a. The coverage described below only applies when the "fungus", wet or dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

(1) A "specified cause of loss" other than fire or lightning;

(2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises; or

(3) Flood, if the Causes of Loss Flood endorsement applies to the affected premises.

b. We will pay for loss or damage by "fungus", wet rot, dry rot, bacteria and virus. As used in this Limited Coverage, the term loss or damage means:

(1) Direct physical loss or direct physical damage to Covered Property caused by "fungus", wet rot, dry rot, bacteria or virus, including the cost of removal of the "fungus", wet rot, dry rot, bacteria or virus;

(2) The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet rot, dry rot, bacteria or virus; and

(3) The cost of testing performed after removal, repair, replacement or restoration of the damaged property is

completed, provided there is a reason to believe that "fungus", wet rot, dry rot, bacteria or virus is present.

c. The coverage described under this Limited Coverage is limited to $50,000 at each "Scheduled Premises". Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning), Equipment Breakdown Accident that occurs to Equipment Breakdown Property and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet rot, dry rot, bacteria or virus, we will not pay more than $50,000 at each "Scheduled Premises" in any one "Policy Year" applicable to "Fungus", Wet Rot, Dry Rot, Bacteria and Virus - Limited Coverage even if the "fungus", wet rot, dry rot, bacteria or virus continues to be present or active, or recurs, in a later policy period.

d. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet rot, dry rot, bacteria or virus, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet rot, dry rot, bacteria or virus, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot, bacteria or virus causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

The terms of this Limited Coverage do not increase or reduce the coverage provided under the Additional Coverage - Water Damage Repair of this Form.

## 16. INFLATION GUARD

**Coverage:** In the event of a Covered Cause of Loss or damage to Covered Property at a "Scheduled Premises", the Limits of Insurance that apply to the damaged Buildings and Business Personal Property at "Scheduled Premises" where the loss or damage occurs will automatically increase by a factor based on the accumulated U.S. Government Consumer Price Index (CPI) for the months from the inception of this policy until the date of loss.

**Limit of Insurance:** But in no event will we pay more than an additional 8% of the applicable Limit of Insurance.

## 17. INSTALLMENT OR DEFERRED SALES

**Coverage:** If a limit of insurance is shown in the Property Choice Schedule of Premises and Coverages for Business Personal Property, coverage is extended to apply to direct physical loss or direct physical damage by a Covered Cause of Loss to your financial interest in Business Personal Property that you have sold under a deferred or installment payment plan during the policy period and after you have made delivery to your customer during the policy period.

Direct physical loss or direct physical damage to such Business Personal Property must be by a Covered Cause of Loss during the policy period. Theft or conversion by your customer or failure of your customer to make payments under the payment plan are not Covered Causes of Loss.

**Limit of Insurance:** The most we will pay for Installment or Deferred Sales in any one occurrence is the lesser of your remaining financial interest in the Business Personal Property sold under a deferred or installment plan or $50,000. This is an additional limit of insurance.

## 18. LOSS OF MASTER KEY

We will pay for the reasonable and necessary costs you incur to replace keys, adjust locks to accept new keys or if required, install new locks, due to direct physical loss or direct physical damage to a master key or grand master key caused by or resulting from a Covered Cause of Loss.

**Limit of Insurance:** The most we will pay for Loss of Master Key in any one occurrence is $25,000. This is an additional limit of insurance.

## 19. NEW CONSTRUCTION AT "SCHEDULED PREMISES"

**a. Coverage:** We will pay for direct physical loss or direct physical damage, including the cost of labor, caused by or resulting from a Covered Cause of Loss to New Construction at "Scheduled Premises". New Construction at "Scheduled Premises" applies to buildings you begin to construct after the inception of this policy and will end when any of the following first occurs:

(1) This policy expires;

(2) 180 days expire after you begin to construct the building; or

(3) The building is specifically insured on this Coverage Form or elsewhere.

**b.** We will charge you additional premium from the date you begin to construct the building.

**c. Limit of Insurance:** The most we will pay for New Construction at "Scheduled Premises" in any one occurrence is $2,000,000. This is an additional limit of insurance.

## 20. NEWLY ACQUIRED COVERED PROPERTY

**a.** We will pay for direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to Newly Acquired Property. Newly Acquired Property means buildings or business personal property you acquire, purchase or lease after the inception of this policy, but does not include:

(1) Any property acquired through any foreclosure process;

(2) Any premises of others where you are temporarily working, such as installing property or performing maintenance or service work;

(3) Any property covered by any other part of this Coverage Form; or

(4) Any property that is not covered under this policy.

**b.** Coverage for Newly Acquired Covered Property will end when any of the following first occurs:

(1) This policy expires;

(2) 180 days expire after you newly acquire the Building;

(3) 180 days expire after you newly acquire the Business Personal Property at newly acquired premises;

(4) 60 days expire after you newly acquire Business Personal Property at "Scheduled Premises";

(5) You report values to us; or

(6) The property is specifically insured on this Coverage Form or elsewhere.

**c.** We will charge you additional premium from the date you acquire the property.

**d.** The most we will pay for Newly Acquired Covered Property in any one occurrence is:

(1) Buildings: $2,000,000.

(2) Business Personal Property: $1,000,000.

These are additional limits of insurance.

## 21. NON-OWNED DETACHED TRAILERS

**Coverage:** Business Personal Property coverage at "Scheduled Premises", Unnamed Premises and Newly Acquired Premises is extended to apply to detached trailers owned by others, that are in your care, custody or control, while being loaded, unloaded, awaiting transport or used for temporary storage or similar usage, including while the trailer is moved at your premises. This Additional Coverage does not apply to trailers leased by you on a temporary or long-term basis.

**Limit of Insurance:** The most we will pay for Non-Owned Detached Trailers in any one occurrence is $50,000. This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**22. ORDINANCE OR LAW**

Value of the Undamaged Buildings, Demolition Costs and Increased Cost of Construction Coverages described in **a.** and **b.** below, apply in the event there is a Covered Cause of Loss to covered Buildings at "Scheduled Premises" and to covered "Tenant Improvements and Betterments" at "Scheduled Premises" that results in the enforcement of an ordinance or law that:

**i.** Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the insured premises;

**ii.** Requires the demolition of parts of the same building that are not damaged by a Covered Cause of Loss; and

**iii.** Is in force at the time of that Covered Cause of Loss.

**a. Value of the Undamaged Buildings**

We will pay for the value of the undamaged portion of the building that was required to be demolished by a requirement to comply with a building, zoning or land use ordinance or law. We will do this on the same valuation basis that applies to the entire building. This does not include any increased costs to repair, replace or rebuild the property due to a requirement to comply with any ordinance or law.

**b. Demolition Costs and Increased Cost of Construction**

**(1)** We will pay the actual cost to demolish the undamaged portion of the covered building and to clear the site of the undamaged portion of the building when required to do so by a requirement to comply with a building, zoning or land use ordinance or law; and

**(2) (a)** If the covered building is subject to the Replacement Cost Valuation provision as shown in the Property Choice - Schedule of Premises and Coverages, and you rebuild the building, we will pay for the actual increased costs to repair, replace or rebuild the building at the same premises or at another premises, if it is a requirement to comply with an ordinance or law, for the same general size and same general use, to the minimum standards to comply with such ordinance or law.

**(b)** We will not pay for these increased costs until the building is actually repaired or replaced.

**(c)** You may choose to replace the Building at another premises, however, we will not pay more for

increased cost of construction at the new premises than the amount of such costs we would have paid to replace the building at the original premises.

**c. Ordinance or Law Exclusions:**

The following exclusions apply to both Value of Undamaged Buildings and Demolition and Increased Cost of Construction Coverages:

**(1)** We will not pay for the enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants and contaminants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot, dry rot, bacteria or virus.

**(2)** We will not pay for any costs associated with the enforcement of or compliance with any ordinance or law which requires you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants and Contaminants" or "fungus", wet rot, dry rot, bacteria or virus.

**(3)** We will not pay for loss due to any ordinance or law that you were required to comply with before the loss or damage, but you did not comply with, even though the building was undamaged at that time.

**(4)** We will not pay for the compliance of any ordinance or law unless the repairs or replacement are made as soon as reasonably possible after the loss or damage not to exceed two years. We may extend this period in writing during the two years.

**d. Ordinance or Law Limits of Insurance**

**(1)** As respects Value of the Undamaged Buildings, this is included within the Limit of Insurance applicable to the damaged Building or damaged "Tenant Improvements and Betterments" and applies in any one occurrence.

**(2)** As respects Demolition Costs and Increased Cost of Construction:

**(a)** For Building property, the most we will pay in any one occurrence as respects this Additional Coverage Ordinance or Law - Demolition Cost and Increased Cost of Construction is $1,000,000. This is an additional amount of insurance.

**(b)** For "Tenant Improvements and Betterments" property, the most we will pay in any one occurrence as

respects this Additional Coverage where "Tenant Improvements and Betterments" applies is 25% of the insured value of "Tenant Improvements and Betterments" up to $500,000. This is an additional amount of insurance.

## 23. OUTDOOR TREES, SHRUBS, SOD, PLANTS AND LAWNS

**a.** Outdoor trees, shrubs, sod, plants and lawns, when used for landscaping are covered only for direct physical loss or direct physical damage caused by or resulting from the following causes of loss:

   **(1)** Fire;

   **(2)** Lightning;

   **(3)** Explosion;

   **(4)** Riot or civil commotion;

   **(5)** Aircraft; or

   **(6)** Vehicles operated by persons other than you or your employees.

**b.** The most we will pay for direct physical loss or direct physical damage in any one occurrence under this Additional Coverage is $50,000, but not more than:

   **(1)** $10,000 for any one tree, shrub or plant;

   **(2)** $10,000 for lawns or sod in total at any one insured premises.

**c.** The Limit of Insurance applicable to these types of property includes their debris removal expense. Such debris removal expenses are not included in the Debris Removal - Additional Coverage.

**d.** These limits apply in any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

## 24. PAIRS OR SETS

**Coverage:** If parts of pairs or sets of covered Business Personal Property - "Stock" are damaged by a Covered Cause of Loss, we will pay the reduction in value of the undamaged parts of such damaged pairs or sets in any one occurrence.

**Limit of Insurance:** This Additional Coverage is included within the Limit of Insurance applicable to the damaged Business Personal Property - "Stock".

## 25. "POLLUTANTS AND CONTAMINANTS" CLEAN UP

**a.** **Coverage:** We will pay for your expense to extract "Pollutants and Contaminants" from land or water at a "Scheduled Premises", if the

discharge, dispersal, seepage, migration, release or escape of the "Pollutants and Contaminants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

**b.** This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "Pollutants and Contaminants". But we will pay for testing which is performed in the course of extracting the "Pollutants and Contaminants" from land or water.

**c.** **Limit of Insurance:** The most we will pay under this Additional Coverage at each "Scheduled Premises" is $50,000 for all covered expenses arising out of Covered Causes of Loss occurring during each "Policy Year". This is an additional amount of insurance.

## 26. PRESERVATION OF PROPERTY

**a.** **Coverage:** If it is necessary to move Covered Property to preserve it from imminent loss or damage by Flood or a Covered Cause of Loss, we will pay in any one occurrence for any direct physical loss or direct physical damage to that property while being moved to or while at the temporary storage location.

**b.** This Additional Coverage will end 180 days after the property is first moved.

**c.** **Limit of Insurance:** This Coverage is included within the Limit of Insurance applicable to the Covered Property that is moved.

## 27. REWARD COVERAGE

**a.** **Coverage:** We will reimburse you for rewards you have paid leading to:

   **(1)** The successful return of substantially undamaged stolen articles to a law enforcement agency; or

   **(2)** The arrest and conviction of any persons for having damaged or stolen any of your Covered Property.

**b.** **Limit of Insurance:** We will pay 25% of the covered loss (prior to the application of any applicable deductible and recovery of any stolen articles) up to $50,000 for Reward Coverage in any one occurrence for the payments of rewards you make. These reward payments must be documented. No deductible applies to this Additional Coverage. This is an additional amount of insurance.

## 28. SEWER AND DRAIN BACKUP

**Coverage:** This insurance is extended to apply to direct physical loss or direct physical damage to Covered Property at "Scheduled Premises", Newly Acquired Premises and Unnamed Premises caused by or resulting from water that backs up from a sewer or drain.

**Limit of Insurance:** The most we will pay in any one occurrence is the Limit of Insurance applicable to the Covered Property where the direct physical loss or direct physical damage occurred. This Additional Coverage is included within the Covered Property Limits of Insurance.

**THIS IS NOT FLOOD INSURANCE.**

This Additional Coverage does not apply to loss or damage caused by or resulting from Flood regardless of the proximity of the back-up or overflow to such conditions.

Flood as used in this Additional Coverage means:

a. Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not; or

b. Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.

c. Water under the ground surface pressing on, or flowing or seeping through:

(1) Foundations, walls, floors or paved surfaces;

(2) Basements, whether paved or not; or

(3) Doors, windows or other openings.

d. Flood includes water or other material that backs up or overflows from any sewer or septic tank or drain, if such back-up is caused by any of the conditions in **a.** or **c.** above regardless of the proximity of the back-up to such conditions.

e. All flooding in a continuous or protracted event will constitute a single flood.

## 29. TRANSIT

a. **Coverage:** This insurance is extended to apply to direct physical loss or direct physical damage by a Covered Cause of Loss to the following Covered Property while in the due course of transit:

(1) Your Business Personal Property; and

(2) Business Personal Property owned by others.

b. Exclusions **B.1.d. Earth Movement** and **B.1.e. Water** as found in the Property Choice - Covered Causes Of Loss And Exclusions Form do not apply to this Additional Coverage - TRANSIT.

c. This Coverage will continue to apply to such property in the due course of transit, after the expiration or cancellation of this policy, until arrival at and accepted by an authorized representative at the invoiced destination, but for no longer than 30 days after the date of the shipment origination.

d. We will not pay for loss or damage to covered property:

(1) Where you are responsible for loss or damage to property as a carrier for hire; or

(2) Where you are in the business of arranging transportation or consolidations for others.

e. You must retain accurate records of all shipments of Covered Property for one year.

f. **Transit Coverage Extensions**

(1) **F.O.B. Shipments**

We will pay for covered direct physical loss or covered direct physical damage to outgoing shipments, which you have sold under conditions where the risk of loss or damage is transferred to the buyer when such property leaves your premises.

You must use all reasonable means to collect the amount due you from the buyer before making a claim under this Coverage.

We will not make payment under this Coverage until you grant us the right of recovery against the buyer.

(2) **Repack and Reship**

We will pay the necessary additional expenses you incur to inspect, repackage and reship property damaged by a Covered Cause of Loss.

(3) **General Average and Salvage Charges**

In accordance with applicable law and usage, we will pay General Average and Salvage Charges that may be assessed against your covered shipments that are waterborne.

(4) **Loading and Unloading**

We will also pay for covered direct physical loss or covered direct physical damage to Covered Property during loading and unloading of the transporting conveyance.

(5) **Return Shipments**

We will also pay for covered direct physical loss or covered direct physical damage to outgoing shipments that have been rejected by the consignee or are not deliverable, while being returned to you.

g. **Limit of Insurance:** The most we will pay for direct physical loss or direct physical damage to Business Personal Property in the due course of transit is $100,000. This is an additional limit of insurance.

## 30. TRANSITION TO REPLACEMENT PREMISES

If Covered Business Personal Property is moved to new premises from a "Scheduled Premises" being vacated, the Limit of Insurance applicable to that vacated premises will apply proportionately to both premises as the property is moved. This coverage ends when any one of the following first occurs:

a. 90 days after the move begins;

b. the move is completed; or

c. this policy expires.

## 31. UNNAMED PREMISES

a. **Coverage:** You may extend the insurance that applies to Building (if Building is Covered Property) and to Business Personal Property (if Business Personal Property is Covered Property) to pay for direct physical loss or direct physical damage by a Covered Cause of Loss to Buildings and Business Personal Property while at:

   (1) Premises that you own, lease, or occupy other than at a "Scheduled Premises";

   (2) Premises not described in the Property Choice Schedule of Premises and Coverages, which you do not own, lease or occupy;

   (3) Premises where you are temporarily performing work or installing Business Personal Property.

   (4) Coverage as respects you installing Business Personal Property continues until one of the following first occurs:

      (a) the installation is accepted by the customer;

      (b) this policy expires; or

      (c) the installation is specifically insured on this policy or elsewhere.

   (5) Unnamed Premises does not include any:

      (a) Premises or property insured under any other Coverage or Additional Coverage of this Coverage Form;

      (b) Waste disposal or transfer sites;

      (c) Property while in the due course of transit;

      (d) Intermediate site while in the due course of transit;

      (e) Premises of a Web Site or Communication Services provider; or

      (f) Premises or property that is not covered or excluded from coverage under this Coverage Part.

b. **Limits of Insurance:**

   (1) The most we will pay as respects Building in any one occurrence in total at all Unnamed Premises is $100,000. This is an additional limit of insurance.

   (2) The most we will pay as respects Business Personal Property in any one occurrence in total at all Unnamed Premises (Except premises where you are temporarily performing work or installing Business Personal Property) is $100,000. This is an additional limit of insurance.

   (3) The most we will pay as respects Business Personal Property in any one occurrence in total at all Unnamed Premises where you are temporarily performing work or installing Business Personal Property is $25,000. This is an additional limit of insurance.

## 32. UTILITY SERVICE INTERRUPTION

a. **Coverage:** We will pay for direct physical loss or direct physical damage to Covered Property at "Scheduled Premises", caused by or resulting from the interruption of the following utility services:

   (1) Water Supply Services, meaning the following types of property supplying water to the "Scheduled Premises":

      (a) Pumping stations; and

      (b) Water mains.

   (2) Communication Supply Services, meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:

      (a) Communication transmission lines, including optic fiber transmission lines;

      (b) Coaxial cables; and

      (c) Microwave radio relays except satellites.

   (3) Power Supply Services, meaning the following types of property supplying electricity, steam or gas to the described premises:

      (a) Utility generating plants;

      (b) Switching stations;

      (c) Substations;

(d) Transformers; and

(e) Transmission lines.

**b.** As used in this Additional Coverage, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**c.** The interruption must be caused by or result from direct physical loss or direct physical damage by a Covered Cause of Loss to utility services property. We will not pay for any resulting loss or damage due to temperature change or spoilage to business personal property.

**d. Limit of Insurance:** The most we will pay for all Utility Service Interruption in total in any one occurrence is $100,000. This is an additional limit of insurance.

## 33. WATER DAMAGE BUILDING TEAR OUT AND REPAIR

**a. Coverage:** When we pay for direct physical loss or direct physical damage caused by the escape of water or other liquid, powder, or molten material, we will also pay the cost to tear out and replace the parts of the building or structure (whether or not such property is damaged) to repair the broken or cracked system or appliance from which such substances escaped.

**b.** We will not pay the cost to repair any defect to the system or appliance from which such substances escaped. But we will pay the cost to repair or replace damaged parts of Automatic Fire Extinguishing Systems if the damage:

(1) Results in discharge of any substance from an automatic fire protection system; or

(2) Is directly caused by freezing.

**c. Limit of Insurance:** This Coverage is included within the applicable Covered Property Limit of Insurance.

**d.** Automatic Fire Extinguishing System means:

(1) Any automatic fire protective or extinguishing system, including connected:

(a) Sprinklers and discharge nozzles;

(b) Ducts, pipes, valves and fittings;

(c) Tanks, their component parts and supports; and

(d) Pumps and private fire protective mains.

(2) Non-automatic fire protective systems, hydrants, standpipes and outlets, all when supplied from an automatic fire protective system.

## 34. WATER SEEPAGE

**a. Coverage:** This insurance is extended to apply to direct physical loss or direct physical damage to Covered Property at "Scheduled Premises", Newly Acquired Premises and Unnamed Premises caused by or resulting from water under the ground surface pressing on, or flowing or backing up or seeping through:

(1) Foundations, walls, floors or paved surfaces;

(2) Basements, whether paved or not;

(3) Doors, windows or other openings; or

(4) Septic or sump systems.

**b.** This Additional Coverage does not apply to loss or damage resulting from sewer or drain back up.

**c. THIS IS NOT FLOOD INSURANCE.**

This Additional Coverage does not apply to loss or damage caused by or resulting from Flood regardless of the proximity of the ground surface pressing on, or flowing or seeping through to such conditions.

**d.** Flood as used in this Additional Coverage means:

(1) Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not;

(2) Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground; or

(3) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

If such water under the ground surface pressing on, or flowing or seeping through is caused by any of the conditions in **d. (1)** or **d. (2)** above regardless of the proximity of the foundations, walls, floors or paved surfaces; basements, whether paved or not; or doors, windows or other openings to such conditions.

(d) Flood includes water or other material that backs up or overflows from any sewer or septic tank or drain, if such back-up is caused by any of the conditions in **d. (1)** or **d. (2)** above regardless of the proximity of the back-up to such conditions.

(e) All flooding in a continuous or protracted event will constitute a single flood.

**e. Limit of Insurance:** The most we will pay for Water Seepage in any one occurrence is $25,000. This is an additional amount of insurance.

## 35. WINDBLOWN DEBRIS

**Coverage:** We will pay your expense to remove debris (including trees) windblown onto "Scheduled Premises" from the premises of others that occurs during the policy period.

**Limit of Insurance:** The most we will pay in any one occurrence in total for the removal of all windblown debris under this Additional Coverage is $2,500. This is an additional amount of insurance.

## SECTION B. - COMBINED ADDITIONAL PROTECTION

1. If covered direct physical loss or if covered direct physical damage exceeds the Limits of Insurance for one or more of the following Coverages or Additional Coverages at a "Scheduled Premises":

   **a.** Accounts Receivable;

   **b.** Building;

   **c.** Business Personal Property;

   **d.** Debris Removal - Covered Property;

   **e.** Employee Personal Effects;

   **f.** Fine Arts;

   **g.** Leasehold Improvements (Tenant Lease Coverage);

   **h.** Legal Liability - Building (Legal Liability - Building Coverage Form (PC 00 30) which attaches to and forms part of this policy.);

   **i.** Outdoor Trees, Shrubs, Sod, Plants and Lawns;

   **j.** Pairs or Sets;

2. **Limit of Insurance:**

   We will pay up to the lesser of:

   **a.** 25% of the total Scheduled Premises Building and Business Personal Property Limits of Insurance; or

   **b.** $250,000. in total in any one occurrence regardless of the number of items lost or damaged or Coverages or Additional Coverages involved in any one occurrence for the sum of all such uninsured loss or damage in excess of the applicable deductible. You may apportion this limit among the applicable coverages as you choose.

   **c.** As respects item **i.** Outdoor Trees, Shrubs, Sod, Plants and Lawns the most we will pay for any one item is still limited to:

   (1) $10,000 for any one tree, shrub or plant;

   (2) $10,000 for lawns or sod in total at any one insured premises.

   **d.** As respects items **1. b.** Buildings and **1. c.** Business Personal Property listed above, this Combined Additional Protection does not apply to Buildings and Business Personal Property at "Scheduled Premises" that were not insured under this Coverage Part for limits equal to their full Replacement Cost or Actual Cash Value as applicable at the inception date of this Coverage Part.

## SECTION C. - TENANT LEASE COVERAGES

These Coverages apply to your interest as a tenant or to your responsibility as a tenant under a written lease agreement as a tenant at "Scheduled Premises":

1. **"Building Glass"**

   Your Business Personal Property is extended to apply to damage to "Building Glass" caused by any cause of loss. This Coverage is included in the applicable Business Personal Property Limit of Insurance where the covered loss or covered damage occurs.

2. **Lease Assessment**

   **a.** Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to building property which is not paid in the building owners policy, as agreed to in your written lease agreement.

   **b.** This Coverage is subject to a separate deductible of $500 in any one occurrence. No other deductible applies.

   **c.** We will not pay more than $2,500 in any one occurrence for Lease Assessment. This is an additional amount of insurance.

3. **Leasehold Improvements**

   **a.** If your lease is canceled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant and you cannot legally remove "Tenant Improvements and Betterments" we will extend Business Personal Property coverage to apply to the unamortized value of the "Tenant Improvements and Betterments" that remains and you were forced to abandon.

   **b.** The most we will pay in any one occurrence for loss under this Additional Coverage is $25,000 for Leasehold Improvements. This is an additional amount of insurance.

4. **Miscellaneous Interior Building Property**

   Business Personal Property is extended to apply to miscellaneous interior Building property items that pertain only to the area you occupy as a

tenant and you are required to insure as a tenant. The most we will pay in any one occurrence for direct physical loss or direct physical damage under this Additional Coverage is $25,000. This Coverage is included in the applicable Business Personal Property Limit of Insurance where the covered loss or covered damage occurs and applies in any one occurrence.

5. **Theft Damage**

   Your Business Personal Property is extended to apply to damage to the building where you are a tenant and you are liable for such damages, caused by or resulting from actual or attempted "theft". This Coverage is included in the applicable Business Personal Property Limit of Insurance where the covered loss or damage occurs and applies in any one occurrence.

6. **Legal Liability - Building**

   Legal Liability - Building Coverage Form (PC 00 30) attaches to and forms part of this policy. The most we will pay in any one accident is $25,000.

## SECTION D. - BUSINESS CRIME IS ADDED

The Property Choice Common Crime Coverages Form is made a part of this policy and is subject to the following stated Limits of Insurance:

| Coverage | Limit of Insurance |
|---|---|
| Employee Theft | $100,000. |
| Forgery or Alteration | $25,000. |
| Inside the Premises - Theft of Money and Securities | $25,000. |
| Outside the Premises - Theft of Money and Securities | $25,000. |
| Money Orders and Counterfeit Paper Currency | $25,000. |

As respects coverage for employee theft, the employee benefits plans provision applies to any welfare or pension benefit plan that is subject to the employee retirement income security act of 1974 (ERISA).

These Limits are in addition to any other Limit of Insurance that may be shown in the Property Choice Schedule of Premises and Coverages applicable to these Business Crime Coverages.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GREEN CHOICE - ADDITIONAL COVERAGES

This endorsement modifies insurance provided under the following:

PROPERTY CHOICE COVERAGE FORM
PROPERTY CHOICE SPECIAL BUSINESS INCOME COVERAGE FORM
PROPERTY CHOICE BUSINESS INCOME COVERAGE FORM
PROPERTY CHOICE PROFESSIONAL BUSINESS INCOME COVERAGE FORM

**Schedule information if not stated here, will be stated in the Property Choice - Schedule of Premises and Coverages.**

**Schedule**

**Green Choice Limit of Insurance**

**A.** The following Additional Coverage is added to the PROPERTY CHOICE COVERAGE FORM:

**Costs to Upgrade to "Green" Alternatives**

1. If direct physical loss or direct physical damage by a Covered Cause of Loss occurs to Covered Property we will also pay for the reasonable additional costs that you incur to:

   **a.** Repair or replace the lost or damaged Covered Property using products or materials that are "Green" alternatives to the lost or damaged Covered Property, in accordance with:

      **(1)** The minimum standards of a "Green Authority" if the "Scheduled Premises" where the loss or damage occurred was not "Green" certified by a "Green Authority" prior to the loss or damage; or

      **(2)** The standards of a "Green Authority" consistent with the pre-loss "Green" certification level, if the "Scheduled Premises" where the loss or damage occurred was "Green" certified prior to the loss or damage, provided that the "Green"

   alternatives are otherwise of comparable quality and function to the lost or damaged Covered Property.

   **b.** Employ "Green" methods or processes of construction, disposal or recycling including ventilation or flush out of air systems, in the course of the repair and replacement of the lost or damaged Covered Property, in accordance with:

      **(1)** The minimum standards of a "Green Authority" if the "Scheduled Premises" where the loss or damage occurred was not "Green" certified by a "Green Authority" prior to the loss or damage; or

      **(2)** The standards of a "Green Authority" consistent with the pre-loss "Green" certification level, if the "Scheduled Premises" where the loss or damage occurred was "Green" certified prior to the loss or damage.

   **c.** Hire a design professional(s) accredited by a "Green Authority" to participate in

**Form PC 20 23 01 09**

**Page 1 of 3**

© 2009, The Hartford

the reconstruction, replacement or repair of the Covered Property;

**d.** Hire an engineer(s) accredited by a "Green Authority" to supervise the repair or replacement of the Covered Property to verify that replacement systems and mechanicals have been installed and configured to perform to building design or manufacturer's specifications;

**e.** Apply to a "Green Authority" for certification of your "Scheduled Premises" in connection with the repair or replacement of the lost or damaged Covered Property.

**2.** Costs to Upgrade to "Green" Alternatives applies only if replacement cost valuation applies to the lost or damaged Covered Property and then only if the lost or damaged property is actually repaired or replaced as soon as reasonably possible after the loss or damage (not to exceed two years from the date of loss or damage).

**3.** This Additional Coverage does not apply to any expenses incurred to exceed your pre-loss level of certification, if you had attained certification by a "Green Authority" for the Covered Property prior to the Covered Cause of Loss.

**4.** This Additional Coverage does not require you to pursue, nor guarantee success of, certification by a "Green Authority".

**5. a.** The most we will pay in any one occurrence for Costs to Upgrade to "Green" Alternatives under this endorsement is $100,000 for all "Scheduled Premises" unless a different limit of insurance is shown in the above Schedule.

**b.** If a different limit of insurance is shown in the above Schedule then that different limit of insurance is the most we will pay in any one occurrence for all "Scheduled Premises" for Costs to Upgrade to "Green" Alternatives.

**c.** The limit for Costs to Upgrade to "Green" Alternatives applies in any one occurrence, regardless of the number of "Scheduled Premises" or buildings damaged in that occurrence.

**d.** If a Green Choice - Limit of Insurance is shown as applying to a "Scheduled Premises" in the Property Choice Schedule of Premises and Coverages, then that limit of insurance is the most

we will pay in any one occurrence at that "Scheduled Premises" for Costs to Upgrade to "Green" Alternatives.

**e.** This is an additional amount of insurance.

**B.** This section **B.** applies only when any of the following are attached to this policy:

PROPERTY CHOICE SPECIAL BUSINESS INCOME COVERAGE FORM

PROPERTY CHOICE BUSINESS INCOME COVERAGE FORM

PROPERTY CHOICE PROFESSIONAL BUSINESS INCOME COVERAGE FORM

The following Additional Coverage is added:

**Green Alternatives – Increased Period of Restoration**

**1.** If direct physical loss or direct physical damage by a Covered Cause of Loss occurs to covered building property at a "Scheduled Premises", Business Income coverage is revised to include the actual loss of income you sustain during the reasonable and necessary increase in the period of restoration that is actually incurred to:

**a.** Repair or replace the lost or damaged Covered Property as stated in A.1.a.

**b.** Employ "Green" methods or processes of construction, disposal or recycling in the course of the repair and replacement of the lost or damaged Covered Property as stated in A.1.b.

**2.** The Increased Period of Restoration provided by this endorsement is subject to a maximum period of up to 30 consecutive days from the date the period of restoration would have otherwise ended had "Green" alternatives not been used.

**3.** This Additional Coverage Green Alternatives – Increased Period of Restoration is included in, and does not increase the applicable Limit of Insurance in the above referenced Coverage Forms.

**4.** The term Period of Restoration as found in the above referenced Coverage Forms and as used in this endorsement does not include any increased Period of Restoration due to:

**a.** Review and/or approval by a "Green Authority" regarding your application for certification of your "scheduled Premises", should you elect to pursue certification; or

    **b.** Conducting test and balance analysis of the heating, ventilation or air conditioning systems to confirm that they have been installed properly and meet manufacturer's and design professional's standards.

## C. ADDITIONAL EXCLUSIONS

1. Coverage provided by this endorsement does not apply to any "Scheduled Premises" where:

   **a.** Replacement Cost valuation does not apply;

   **b.** Ordinance or Law Additional Coverage does not apply; or

   **c.** Building(s) are vacant.

2. This endorsement does not apply to "stock".

3. Coverage provided by this endorsement does not include any increase in costs, loss or damage attributable to any "Green" standards for which you were under order or mandate from an existing authority, but you did not comply with, before the loss or damage.

## D. ADDITIONAL DEFINITIONS

As used in this endorsement:

1. "Green" means products, materials, methods and processes that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize their impact on the environment.

2. "Green Authority" means the United States Green Building Council (LEED® Green Building Rating System); the Green Building Initiative™ (Green Globes™ Assessment And Rating System); or the Environmental Protection Agency and the Department of Energy (EnergyStar® requirements).

**Form PC 20 23 01 09**

PROPERTY CHOICE



# PROPERTY CHOICE CONDITIONS AND DEFINITIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to section **C. DEFINITIONS**.

The following conditions apply to all coverages that are a part of the Property Choice Coverage Part or Property Choice Policy and are in addition to the Common Policy Conditions unless stated otherwise in coverage forms and endorsements.

**A. GENERAL CONDITIONS**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Application of Waiting Period**

In the event that more than one Waiting Period is applicable, we will apply only the longest waiting period.

**3. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim on the grounds that it is not covered under this policy.

**4. Claim Settlement**

**a.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**b.** We will pay for covered loss or damage within 30 days after we receive your sworn proof of loss, if you have complied with all of the terms of this Coverage Part; and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**5. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this coverage at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Part;

**b.** The property covered under this insurance;

**c.** Your interest in the property covered under this insurance; or

**d.** A claim under this Coverage Part.

**6. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more premises will not affect coverage at any premises where, at the time of loss or damage, the breach of condition does not exist.

**7. Coverage Territory**

The coverage territory is the United States of America (including its territories and possessions); Puerto Rico; and Canada.

**Exceptions for the following Additional Coverages:**

**a. Business Travel**

For the Business Travel Additional Coverage, the Coverage Territory is anywhere in the world.

**Form PC 00 90 01 13**                                                                                   **Page 1 of 6**

© 2013, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

**b. Exhibitions**

For the Exhibition Additional Coverage, the Coverage Territory is anywhere in the world.

**c. Transit**

For the Transit Additional Coverage, the Coverage Territory is within or between the United States of America, (including its territories and possessions), Puerto Rico and Canada; however, waterborne shipments are covered only if on inland waterways or in territorial waters, within 12 miles of land.

**8. Equipment Breakdown - Suspension**

When any Equipment Breakdown Property is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an Equipment Breakdown Accident to that equipment. We can do this by mailing or delivering a written notice of suspension to your address as stated in the Property Choice Schedule of Premises and Coverages, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**9. Equipment Breakdown - Jurisdictional Inspections**

If any Equipment Breakdown Property requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**10. If Two or More Coverages Apply**

If two or more coverages in this policy apply to the same loss or damage, we will not pay more than the actual amount of loss or damage.

**11. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**a.** There has been full compliance with all of the terms of this Coverage Part; and

**b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

For coverage under the Business Crime Coverage Forms, the words **the direct physical loss or damage occurred** are replaced by the words **you discover the loss**.

**12. Liberalization**

If we adopt any revision that would broaden this Coverage Part, without additional premium, within 45 days prior to inception of this policy or during this policy period, the broadened coverage will immediately apply to you.

**13. Loss Payee**

**a.** For Covered Property in which both you and the Loss Payee as stated in the Property Choice - Schedule of Premises and Coverages or by endorsement have an insurable interest, we will:

**(1)** Adjust losses with you; and

**(2)** Pay any claim for loss or damage jointly to you and the loss payee, as interests may appear.

**b.** If we cancel this policy, we will give written notice to the loss payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(3)** If we elect not to renew this policy, we will give written notice to the loss payee at least 10 days before the expiration date of this Coverage Part.

**14. Mortgageholders and Lender Loss Payees**

**a.** We will pay each of the following for their interest in covered loss or damage, as stated in the Property Choice - Schedule of Premises and Coverages or by endorsement in the order of their precedence, as their interest may appear:

**(1)** **Mortgageholder** for their interest in buildings or structures. The term mortgageholder includes trustees.

**(2)** **Lender** for their interest as a creditor, established by such written instruments as warehouse receipts, a contract for deed, bills of lading, financing statements; or mortgages, deeds of trust, or security agreements.

**b.** The applicable mortgageholder or lender has the right to receive loss payment even if they have started foreclosure or similar action on the property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the applicable mortgageholder or lender will still have the right to receive loss payment if such mortgageholder or lender:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder or lender.

All of the terms of this Coverage Part will then apply directly to the mortgageholder or lender.

**d.** If we pay the mortgageholder or lender for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's or lender's right to recover the full amount of their applicable claims will not be impaired.

At our option, we may pay to the mortgageholder or lender the whole principal on the mortgage or debt plus any accrued interest. In this event:

**i.** For mortgageholder relationships, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us;

**ii.** For lender relationships, you will pay your debt to us.

**e.** If we cancel this policy, we will give written notice to the mortgageholder or lender at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**f.** If we elect not to renew this policy, we will give written notice to the mortgageholder or lender at least 10 days before the expiration date of this Coverage Part.

**15. Contract Of Sale and Building Owner Loss Payable Clauses**

We will pay each of the following for their interest in covered loss or damage, as stated in the Property Choice - Schedule of Premises and Coverages or by endorsement in the order of their precedence, as their interest may appear:

**a. Contract Of Sale Loss Payable Clause**

If the Loss Payee shown in the Property Choice - Schedule of Premises and Coverages or by endorsement is a person or organization you have entered a contract with for the sale of Covered Property:

**(1)** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**(a)** Adjust losses with you; and

**(b)** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**(2)** The following is added to the **Other Insurance** Loss Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**b. Building Owner Loss Payable Clause -** If the Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant:

**(1)** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**(2)** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**16. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**17. Other Insurance**

**a.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**b.** If there is other insurance covering the same loss or damage, other than that described in **17. a.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**18. Policy Period**

In this Coverage Part, we only cover direct physical loss or direct physical damage which occurs during the policy period stated in the Declarations.

**19. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the applicable Limit of Insurance.

You will pay us the amount of all recoveries of Accounts Receivable you receive for a loss paid by us. But any recoveries in excess of the amount we have paid belong to you.

**20. Standard Fire Policy**

If the Standard Fire Policy (165 Lines) is required by state statute to be attached to this policy, only the provisions of the Standard Fire Policy that are broader than the provisions contained in this policy shall apply.

**21. Transfer of Rights of Recovery Against Others To Us (Subrogation)**

If any person or organization to whom or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**a.** Prior to a covered loss or damage, or

**b.** After a covered loss only if, at time of loss, that party is one of the following:

   **(1)** Someone insured by this insurance;

   **(2)** A business firm that you own or control;

   **(3)** A business firm or individuals, that owns or controls you; or

   **(4)** Your tenant.

This written waiver will not restrict your insurance.

**Exceptions:**

**(i)** For their interest in building repair or construction, you may not waive your rights to recover damages from architects or engineers except as agreed to in writing by us.

**(ii)** For property in the due course of transportation, we will not pay for loss or damage if you impair our rights to recover damages from any carrier for hire, bailee or third party.

However, you may accept bills of lading, receipts or contracts of transportation from carriers for hire, which contain a limitation of value.

**B. YOUR GENERAL DUTIES IN EVENT OF LOSS**

**1.** In event of loss or damage, you must see that the following are done:

**a. Notify Police**

Notify the police if a law may have been broken.

**b. Notify Us**

Give us prompt notice of the loss or damage. Include a description of the property involved.

As soon as possible, give us a description of how, when and where the loss or damage occurred.

We will not deny coverage due to your unintentional failure to notify us about the occurrence of loss or damage provided notice is give as soon as practicable after you become aware of such loss or damage.

**c. Protect Property**

Take all reasonable steps to protect the property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the applicable Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.

Also, if feasible, set the damaged property aside and in the best possible order for examination.

**d. Take Inventory**

At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**e. Inspect Property, Books and Records**

As often as may be reasonably required, permit us to:

   **(1)** Inspect the damaged and undamaged property and take samples for testing and analysis.

   **(2)** Examine and make copies of your books and records Including electronic records and data.

**f. Proof of Loss**

Send us a signed, sworn proof of loss containing the information we request during our investigation of your claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**g. Cooperate**

Cooperate with us in the investigation or settlement of the claim.

**h. Resumption of Business**

If you intend to continue in business, you must resume all or part of your business operations as quickly as possible.

**2. Examination Under Oath**

We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**C. DEFINITIONS**

**1. "Building Glass"** means glass that is part of the building or structure, including glass building blocks, skylights, glass doors and windows and their encasement frames, alarm tape, lettering and ornamentation.

This does not include art glass, half tone screens, lenses, memorial windows, mosaic art, rotogravure screens or any stained glass.

**2. "Computer Equipment"** includes the following equipment:

**a.** Computer hardware, laptops, Personal Digital Assistants, including micro-processors and related component parts;

**b.** Peripheral equipment, such as printers and modems;

**c.** Computer network equipment; and

**d.** Electronic communications equipment.

**3. "Electronic data"** means:

Information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4. "Fungus"** means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**5. "Money"** means:

**a.** Currency, coins and bank notes; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**6. "Policy Year"** means the period of time that:

**a.** Begins with the inception or anniversary date of this policy; and

**b.** Ends at the expiration or at the next anniversary date of this policy.

**7. "Pollutants and Contaminants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste, or any other material which causes or threatens to cause physical loss, damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

**8. "Scheduled Premises"** means any premises listed by location address in the Scheduled Premises section of the Property Choice Schedule of Premises and Coverage.

**9. "Securities"** means negotiable and non-negotiable instruments or contracts representing either "Money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter); and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not of your own issue;

but does not include "Money".

Lottery tickets held for sale and Postage stamps in current usage are not "Securities".

**10. "Sinkhole Collapse"** means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations.

This cause of loss does not include:

**a.** The cost of filling sinkholes; or

**b.** Sinking or collapse of land into man-made underground cavities.

**11. "Specified Causes of Loss"** means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; "Sinkhole Collapse"; "Volcanic Action"; falling objects; weight of snow, ice or sleet; water damage, "Sprinkler Leakage"; "Theft"; or "Building Glass" breakage.

a. Falling objects does not include loss or damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall or the building structure is first damaged by a falling object.

b. Water damage means:

(1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the "Scheduled Premises" and contains water or steam; and

(2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "Scheduled Premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear. But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear. To the extent that accidental discharge or leakage of water falls within the criteria set forth in **b.(1)** or **b.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

12. **"Sprinkler Leakage"** means a leakage or discharge of a substance (except halon) from an Automatic Fire Extinguishing System, including collapse of a tank that is part of the system.

13. **"Stock"** means merchandise held in storage or for sale, raw materials, and goods in-process or finished.

14. **"Tenant Improvements and Betterments"** means fixtures, alterations, installations or additions made a part of the Building you occupy but do not own; and:

a. Made at your expense; or

b. You acquired from the prior tenant at your expense; and

you cannot legally remove.

Tenant Improvements and Betterments includes fences, signs, and radio or television towers, antennas and satellite dishes (including attached equipment).

15. **"Theft"** means any act of stealing except as defined in the Property Choice Common Crime Coverages Form.

16. **"Valuable Papers"** means: Inscribed, printed or written documents, manuscripts, patterns or records including abstracts, books, deeds, drawings, films, maps or mortgages.

**"Valuable Papers"** does not mean:

(1) "Money" or "Securities", whether or not in current circulation.

(2) Property that cannot be replaced with other property of like kind and quality.

(3) Fine Arts or Accounts Receivable.

(4) "Electronic data".

17. **"Volcanic Action"** means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

a. Airborne volcanic blast or airborne shock waves;

b. Ash, dust or particulate matter; or

c. Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to property.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

**A. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, as amended (TRIA) exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

**B. Cap On Insurer Liability For Terrorism Losses**

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism under TRIA.  The criteria contained in TRIA for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed $100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of Terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, the Pathogenic or Poisonous Biological or Chemical Materials Exclusion, the "Pollutants and Contaminants" Exclusion and the War And Military Action Exclusion.

© 2015, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

PROPERTY CHOICE



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PROPERTY CHOICE SPECIAL BUSINESS INCOME - ADDITIONAL COVERAGES

This endorsement modifies insurance under the following:
**PROPERTY CHOICE SPECIAL BUSINESS INCOME COVERAGE FORM**
SUMMARY of COVERAGE LIMITS and INDEX
This is a summary of the limits of insurance and coverages provided by this endorsement.
No coverage is provided by this summary.

| Item No. | PROPERTY CHOICE SPECIAL BUSINESS INCOME COVERAGE FORM -  ADDITIONAL COVERAGES: | LIMIT OF INSURANCE (Apply in any one occurrence unless otherwise noted) | Starts on Page No. |
|---|---|---|---|
| 1. | **BUSINESS TRAVEL:** | **Included in Special Business Income Limit of Insurance.** | 2 |
| 2. | **CIVIL AUTHORITY (72 HOUR WAITING PERIOD APPLIES):** | **30 Days.** | 2 |
| 3. | **DEPENDENT PROPERTIES INCLUDING WORLDWIDE COVERAGE TERRITORY (72 HOUR WAITING PERIOD APPLIES):** | **$100,000. From All Dependent Properties.** | 2 |
| 4. | **SECONDARY DEPENDENCIES - CONTRIBUTING AND RECIPIENT LOCATIONS** | **Included in Dependent Properties Limit of Insurance.** | 3 |
| 5. | **EXTENDED INCOME (180 DAYS):** | **Included in Special Business Income Limit of Insurance.** | 4 |
| 6. | **FUNGUS, WET ROT, DRY ROT, BACTERIA AND VIRUS - LIMITED COVERAGE:** | **Actual Loss Sustained for 30 Days.** | 5 |
| 7. | **FUTURE EARNINGS:** | **Included in Special Business Income Limit of Insurance.** | 5 |
| 8. | **INGRESS AND EGRESS (24 HOUR WAITING PERIOD APPLIES):** | **$50,000.** | 5 |
| 9. | **LESSOR'S TENANT MOVE BACK EXPENSE:** | **$10,000.** | 6 |
| 10. | **MACHINERY TESTING AND TRAINING:** | **Included in Special Business Income Limit of Insurance.** | 6 |
| 11. | **NEWLY ACQUIRED PREMISES:** | **Included in Special Business Income Limit of Insurance.** | 6 |
| 12. | **ORDINANCE OR LAW COVERAGE (INCREASED PERIOD OF RESTORATION):** | **Included in Special Business Income Limit of Insurance.** | 6 |
| 13. | **POLLUTANTS AND CONTAMINANTS CLEANUP:** | **$25,000. In any one "Policy Year".** | 7 |
| 14. | **SEWER AND DRAIN BACKUP:** | **Included in Special Business Income Limit of Insurance.** | 7 |
| 15. | **TRANSIT:** | **$100,000.** | 7 |

© 2013, The Hartford

| 16. | UNNAMED PREMISES: | $100,000. | 8 |
| | UNNAMED PREMISES:  AT ANY ONE INSTALLATION: | Included in Special Business Income Limit of Insurance. | 8 |
| | UNNAMED PREMISES:  AT ANY ONE EXHIBITION: | Included in Special Business Income Limit of Insurance. | 8 |
| 17. | UTILITY SERVICE INTERRUPTION (24 HOUR WAITING PERIOD APPLIES): | $25,000. | 8 |
| 18. | WEB SITE AND INTERNET SERVICES (12 HOUR WAITING PERIOD APPLIES): | Lesser of Actual Loss Sustained for 30 days or $100,000. | 9 |

For Insurance that may apply to a Specific Scheduled Premises see: Property Choice - Scheduled Premises.

**A. ADDITIONAL COVERAGES -** The following Additional Coverages are added to the Property Choice Special Business Income Coverage Form unless otherwise indicated in the Property Choice Schedule of Premises and Coverage or by endorsement to this policy:

**1. Business Travel**

    **a.** We will pay for the actual loss of Business Income and the actual, necessary and reasonable Extra Expenses your incur due to direct physical loss or direct physical damage by a Covered Cause of Loss to Your Business Personal Property including Sales Representative Samples while in the custody of:

        **(1)** Your sales representatives; or

        **(2)** Any officer, employee or yourself;

        while traveling on authorized company business.

    **b.** This Additional Coverage is Included within the Special Business Income Limit of Insurance.

**2. Civil Authority**

    **a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "Scheduled Premises".

    **b.** The coverage for Business Income will begin after a Waiting Period of 72 hours (unless a different Waiting Period is either shown in the Property Choice Schedule of Premises and Coverage or is shown by endorsement) after the order of a civil authority and coverage will end at the earlier of:

        **(1)** When access is permitted to your "Scheduled Premises"; or

        **(2)** 30 consecutive days after the order of the civil authority.

    **c.** The coverage for Extra Expense will begin immediately after the order of a civil authority and coverage will end at the earlier of:

        **(1)** When access is permitted to your "Scheduled Premises"; or

        **(2)** 30 consecutive days after the order of the civil authority.

This Additional Coverage is included within the Special Business Income Limit of Insurance.

**3. Dependent Properties**

    **a.** We will pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary suspension of your operations during the Period of Restoration. The suspension must be caused by direct physical loss of or direct physical damage to a Dependent Property caused by or resulting from a Covered Cause of Loss. However, coverage under this Additional Coverage does not apply when the only loss to a Dependent Property is loss or damage to "Electronic Data", including destruction or corruption of "Electronic Data". If the Dependent Property sustains loss or damage to "Electronic Data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt or replaced. The term "Electronic Data" has the meaning set forth in the Coverage Form to which this endorsement applies.

    **b.** Period of Restoration, with respect to dependent property means the period of time that:

**(1)** Begins 72 hours (unless a different Waiting Period is either shown in the Property Choice Schedule of Premises and Coverage or is shown by endorsement) after the time of the Covered Cause of Loss occurred for Business Income Coverage;

**(2)** Begins immediately after the time of the Covered Cause of Loss for Extra Expense Coverage;

**(3)** Ends on the earlier of:

**(a)** the date when the property at the premises of the Dependent Property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(b)** when the applicable limit of insurance is exhausted.

Period of Restoration does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

The expiration date of this policy will not cut short the Period of Restoration.

**c.** Dependent Properties means property at premises owned and operated by others that you depend on to:

**(1)** Deliver materials or services to you, or to others for your account (Contributing Location);

But any property which delivers any of the following services is not a Contributing Location with respect to such services:

**(a)** Water supply services;

**(b)** Power supply services; or

**(c)** Wastewater removal services; or

**(d)** Communication supply services, including services relating to internet access or access to any electronic network;

**(2)** Accept your products or services (Recipient Location);

**(3)** Manufacture products for delivery to your customers under contract of sale (Manufacturing Location); or

**(4)** Attract customers to your business premises (Leader Locations).

**d.** With respect to the coverage provided under this provision (Dependent Properties), the Coverage Territory General Condition found in the Property Choice Conditions and Definitions form does not apply.

**e.** The most we will pay for the sum of all actual loss of Business Income and actual, necessary and reasonable Extra Expense you incur in any one occurrence regardless of the types or number of Dependent Properties involved in any one occurrence under this Additional Coverage is $100,000. This is an additional amount of insurance.

**4. Secondary Dependencies - Contributing and Recipient Locations**

**a.** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the Period of Restoration. The suspension must be caused by direct physical loss of or direct physical damage to property at a secondary contributing location or at a secondary recipient location, caused by or resulting from a Covered Cause of Loss, which in turn results in partial or complete interruption of the materials or services provided to you by a dependent property, thereby resulting in the suspension of your operations.

**b.** This Additional Coverage does not apply when the only loss at the secondary contributing location or secondary recipient location is loss or damage to "Electronic Data", including destruction or corruption of "Electronic Data". If the secondary contributing location or secondary recipient location sustains loss or damage to "Electronic Data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt or replaced. The term "Electronic Data" has the meaning set forth in the Coverage Part to which this provision applies.

**c.** With respect to a suspension of your operations covered under this provision, the maximum amount payable is the Limit of Insurance applicable to Dependent Properties. This provision,

does not increase the Limit Of Insurance for Dependent Properties, as any amount payable under this provision is considered part of, not in addition to, such Dependent Properties Limit of Insurance, even if the suspension of your operations is caused by direct physical loss of or damage to dependent property and property at one or more secondary contributing locations or secondary recipient locations.

**d.** Secondary contributing location is an entity which:

**(1)** Is not owned or operated by a Contributing Location; and

**(2)** Delivers materials or services to a Contributing Location, which in turn are used by that Contributing Location in providing materials or services to you.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary contributing location.

**e.** Any property which delivers any of the following services is not a secondary contributing location with respect to such services:

**(1)** Water supply services;

**(2)** Power supply services;

**(3)** Wastewater removal services; or

**(4)** Communication supply services, including services relating to Internet access or access to any electronic network.

**f.** Secondary recipient location is an entity which:

**(1)** Is not owned or operated by a Recipient Location; and

**(2)** Accepts materials or services from a Recipient Location, which in turn accepts your materials or services.

A road, bridge, tunnel, waterway, airfield, pipeline or any other similar area or structure is not a secondary recipient location.

**g.** With respect to the coverage provided under this provision (Secondary Dependencies - Contributing and Recipient Locations), the Coverage Territory General Condition found in the Property Choice Conditions and Definitions form does not apply.

**5. Extended Income**

**a.** If the necessary suspension of your operations (applies to all operations except educational institutional operations) produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(1)** Begins on the date property (except "Stock" you have finished manufacturing) is actually repaired, rebuilt or replaced and business operations are resumed; and

**(2)** Ends on the earlier of:

**(a)** The date you could restore your business operations, with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or direct physical damage had occurred; or

**(b)** 180 days that immediately follows after the date determined in **a. (1)** above.

**b.** As respects educational operations, the following applies:

In the event of a covered Business Income loss, we will pay for the actual loss of Business Income you sustain during the school term following the date the property is actually repaired, rebuilt or replaced, if that date is 60 days or less before the scheduled opening of the next school term.

**c.** However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the insured premises are located.

**d.** Loss of Business Income must be caused by direct physical loss or direct physical damage at the insureds premises caused by or resulting from a Covered Cause of Loss.

**e.** This Additional Coverage is included within the Special Business Income Limit of Insurance.

6. **"Fungus", Wet Rot, Dry Rot, Bacteria and Virus - Limited Coverage**

   a. The coverage described below only applies when the "fungus", wet rot, dry rot, bacteria or virus is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

      (1) A "specified cause of loss" other than fire or lightning;

      (2) Equipment breakdown accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the effected premises; or

      (3) Flood, if the Causes of Loss - Flood endorsement applies to the effected premises.

   b. The following applies only if Business Income and/or Extra Expense coverage applies to the "Scheduled Premises" and only if the necessary interruption of your business operations satisfies all terms and conditions of this Coverage Part.

      (1) If the loss which results in "fungus", wet rot, dry rot, bacteria or virus does not in itself necessitate a necessary interruption of your business operations, but such interruption is necessary due to loss or damage to property caused by "fungus", wet rot, dry rot, bacteria or virus, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

      (2) If a covered necessary interruption of your business operations was caused by loss or damage other than "fungus", wet rot, dry rot, bacteria or virus prolongs the Period of Restoration, we will pay for loss and/or expense sustained during the delay (regardless of when such delay occurs during the Period of Restoration), but such coverage is limited to 30 days in total. The days need not be consecutive.

      (3) This Additional Coverage is included within the Special Business Income Limit of Insurance.

7. **Future Earnings**

   a. In the event of a covered Business Income loss at "Scheduled Premises", we will pay for the actual loss of Business Income you subsequently and necessarily sustain after the Period of Restoration and the Extended Income period ends and that the actual loss in Business Income is directly attributable to the Covered Cause of Loss occurrence.

   b. However, Future Earnings does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the insured premises are located.

   c. This coverage will apply to the actual loss of business income you sustain within 2 years from the date the Covered Cause of Loss occurred.

   d. This Additional Coverage is included within the Special Business Income Limit of Insurance.

8. **Ingress or Egress**

   a. This insurance is extended to apply to the actual loss of Business Income you sustain when ingress or egress to your "Scheduled Premises" is specifically prohibited as the direct result of a Covered Cause of Loss to property at premises that is contiguous to your "Scheduled Premises".

   b. Coverage for Business Income will begin after a Waiting Period of 24 hours (unless a different Waiting Period applicable to this Additional Coverage is shown by endorsement) after the time of the Covered Cause of Loss and will end at the earlier of:

      (1) When ingress or egress is permitted to or from your "Scheduled Premises"; or

      (2) 30 consecutive days.

   c. This Additional Coverage does not apply if:

      (1) The direct physical loss or direct physical damage is caused by or results from flood or earthquake even if flood or earthquake are Covered Causes of Loss; or

      (2) The ingress to or egress from your "Scheduled Premises" is prohibited by civil authority.

d. The most we will pay for loss in any one occurrence under this Additional Coverage is $50,000. This Additional Coverage is Included within the Special Business Income Limit of Insurance.

9. **Lessor's Tenant Move Back Expenses**

a. In the event that your tenants must temporarily vacate the covered Building property at "Scheduled Premises" due to untenantability caused by direct physical loss or direct physical damage by a Covered Cause of Loss to the covered Building, we will pay for the following expenses you actually incur to move those tenants back into your covered Building. We will only pay for the following expenses:

(1) Packing, transporting and unpacking the tenants' Business Personal Property, including the cost of insuring the move back and any necessary assembly or setup of furniture and equipment, and

(2) The net cost to re-establish the tenants' utility and telephone services, after any refunds due the tenants.

b. We will only pay for these expenses that you actually incur within 60 days from the date that the damaged building has been repaired or rebuilt and if needed a certificate of occupancy has been granted.

c. The most we will pay the sum in any one occurrence of covered loss under this Additional Coverage is $10,000. This is an additional amount of insurance.

10. **Machinery Testing and Training**

In the event it was necessary to replace machinery damaged by a Covered Cause of Loss, we will extend the Period of Restoration to include:

a. The additional time to test that replacement machinery; and

b. The additional time to train employees on the differences in operating the damaged machinery and the replacement machinery.

This Additional Coverage is included within the Special Business Income Limit of Insurance.

11. **Newly Acquired Premises**

a. We will pay for the actual loss of Business Income you sustain due to direct physical loss or direct physical damage caused by or resulting from a Covered Cause of Loss to Newly Acquired Premises. Newly Acquired Premises means premises you acquire, purchase or lease after the inception of this policy, but does not include:

(1) Any premises acquired through any foreclosure process;

(2) Any premises of others where you are temporarily working, such as installing property or performing maintenance or service work; or

(3) Any premises covered by any other part of this Coverage Form.

b. Insurance for each Newly Acquired Premises will end when any of the following first occurs, but will not cut short the Period of Restoration:

(1) This policy expires;

(2) 180 days expire after you acquire the property;

(3) You report values to us: or

(4) The property is more specifically insured.

We will charge you additional premium from the date you acquire the premises.

c. This Additional Coverage is included within the Special Business Income Limit of Insurance.

12. **Ordinance or Law - Increased Period of Restoration**

a. If a Covered Cause of Loss occurs to property at "Scheduled Premises", coverage is extended to include the amount of the actual loss of Business Income and the actual, necessary and reasonable Extra Expense you incur during the increased period of suspension of operations caused by or resulting from a requirement to comply with any ordinance or law that:

(1) Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the insured premises;

(2) Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss; and

(3) Is in force at the time of loss.

**b.** Coverage is not extended under this Additional Coverage to include loss caused by or resulting from the enforcement of or compliance with any ordinance or law:

   **(1)** Which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot, bacteria or virus; or

   **(2)** Which requires any Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "Pollutants and Contaminants", "fungus", wet or dry rot, bacteria or virus.

**c.** Period of Restoration is revised to include any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss that regulates the construction or repair, or requires the tearing down of any property.

**d.** This Additional Coverage is included within the Special Business Income Limit of Insurance.

**13. "Pollutants and Contaminants" Clean Up**

**a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur if business operations are interrupted due to the enforcement of any ordinance or law that requires you to extract "Pollutants and Contaminants" from land or water at "Scheduled Premises" caused by or resulting from a Covered Cause of Loss that occurs during the policy period.

**b.** Such loss must be reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

**c.** The most we will pay for the sum of all Business Income and Extra Expense in any one "Policy Year" under this Additional Coverage is $25,000. This is an additional amount of insurance.

**14. Sewer and Drain Backup**

**a.** We will pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to direct physical loss of or direct physical damage to property at "Scheduled Premises", Newly Acquired Premises and Unnamed Premises caused by or resulting from water that backs up from a sewer or drain.

**b.** This Additional Coverage is included within the Special Business Income Limit of Insurance.

**c.** **THIS IS NOT FLOOD INSURANCE.**

This Additional Coverage does not apply to loss or damage caused by or resulting from Flood regardless of the proximity of the back-up or overflow to such conditions.

Flood as used in this provision means:

   **(1)** Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not; or

   **(2)** Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.

   **(3)** Water under the ground surface pressing on, or flowing or seeping through:

      **(a)** Foundations, walls, floors or paved surfaces;

      **(b)** Basements, whether paved or not; or

      **(c)** Doors, windows or other openings.

   **(4)** Flood includes water or other material that backs up or overflows from any sewer or septic tank or drain, if such back-up is caused by any of the conditions in **(1)** or **(3)** above regardless of the proximity of the back-up to such conditions.

   **(5)** All flooding in a continuous or protracted event will constitute a single flood.

**15. Transit**

**a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur caused by direct physical loss of or direct physical damage to the following property while in the due course of transit:

**(1)** Your Business Personal Property; and

**(2)** Business Personal Property owned by others.

**b.** This Coverage will continue to apply to such property in the due course of transit, after the expiration or cancellation of this policy, until arrival at and accepted by an authorized representative at the invoiced destination, but for no longer than 30 days after the date of the shipment origination, but this will not cut short the Period of Restoration.

**c.** You must retain accurate records of all shipments of Covered Property for one year.

**d.** The most we will pay for the sum of all Business Income and Extra Expense in any one occurrence under this Additional Coverage is $100,000. This is an additional amount of insurance.

**16. Unnamed Premises**

**a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur caused by direct physical loss of or direct physical damage by a Covered Cause of Loss to Property while at:

**(1)** Premises that you own, lease, or occupy other than at a "Scheduled Premises";

**(2)** Premises not described in the Property Choice Schedule of Premises and Coverages, which you do not own, lease or occupy;

**(3)** Premises where you are temporarily performing work or installing Business Personal Property and your insurable interest continues until the installation is accepted by the customer.

**b.** Unnamed Premises does not include any:

**(1)** Premises or property covered under any other coverage of this Coverage Form;

**(2)** Waste disposal or transfer sites;

**(3)** Intermediate site while in the due course of transit; or

**(4)** Premises of a Web Site or Internet Services provider.

**c.** The most we will pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur in any one occurrence under this Additional Coverage at all unnamed premises other than at any one installation or at any one exhibition is $100,000.

**d.** The most we will pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur in any one occurrence under this Additional Coverage at any one installation is the limit of insurance applicable to Special Business Income. This is included in the Special Business Income Limit of Insurance.

**e.** The most we will pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur in any one occurrence under this Additional Coverage at any one exhibition is the limit of insurance applicable to Special Business Income Limit. This is included in the Special Business Income Limit of Insurance.

**17. Utility Service Interruption**

**a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur at "Scheduled Premises", "Newly Acquired Premises" and Unnamed Premises caused by the interruption of specific services.

The interruption must result from direct physical loss or direct physical damage by a Covered Cause of Loss to property outside the insured premises boundary and which provides the following services:

**(1)** Water Supply Property, meaning the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the described premises, other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities.

Coverage under this endorsement does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

    **(3)** Communication Supply Property, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

        **(a)** Communication transmission lines, including optic fiber transmission lines;

        **(b)** Coaxial cables; and

        **(c)** Microwave radio relays except satellites.

    **(4)** Power Supply Property, meaning the following types of property supplying electricity, steam or gas to the described premises:

        **(a)** Utility generating plants;

        **(b)** Switching stations;

        **(c)** Substations;

        **(d)** Transformers; and

        **(e)** Transmission lines.

**b.** As used in this endorsement, the term transmission lines includes all lines which serve to transmit communication service or power, including lines which may be identified as distribution lines.

**c.** This Additional Coverage does not include any loss or damage due to temperature change or spoilage.

**d.** This Additional Coverage does not apply to the Dependent Properties Additional Coverage.

**e.** We will not pay for Business Income loss you sustain during the 24 hours (unless a different Waiting Period is either shown in the Property Choice Schedule of Premises and Coverage or is shown by endorsement) that immediately follow after the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**f.** The most we will pay for the sum of all actual loss of Business Income and the actual, necessary and reasonable Extra Expense you incur in any one occurrence under this Additional Coverage is $25,000. This is an additional amount of insurance.

**18. Web Site and Internet Services**

**a.** This insurance is extended to apply to the actual loss of Business Income you sustain and the actual necessary and reasonable Extra Expense you incur caused by direct physical loss or direct physical damage by a Covered Cause of Loss to property that you depend on for Website and Internet Services.

Website and Internet Services means:

    **(1)** Internet access, e-mail, web hosting and application software services at the premises of others, or

    **(2)** Router infrastructure services, including cable and wireless, located outside your premises boundary.

**b.** We will not pay for any Business Income loss under this Coverage that you sustain during the 12 hours (unless a different Waiting Period for this Coverage is indicated in the Property Choice Schedule of Premises or Coverages or by endorsement) that immediately follow the time when you first discovered the Covered Cause of Loss. This Waiting Period does not apply to Extra Expense.

**c.** The most we will pay for the actual loss of Business Income or necessary and reasonable Extra Expense in any one occurrence under this Additional Coverage is the lesser of:

    **(1)** The amount of the actual loss of Business Income you sustain during the 30 day period immediately following the Waiting Period and the necessary and reasonable Extra Expense you incur when you first discovered the Covered Cause of Loss (during the Waiting Period) and for a 30 day period immediately following the Waiting Period; or

    **(2)** $100,000.

**d.** With respect to Web Sites, this coverage applies only if you have a back-up copy of your Web Page stored at a location other than the site of the Web Site vendor.

**e.** This is an additional amount of insurance.



# PROPERTY CHOICE COVERAGE FORM

### (PROPERTY)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Property Choice Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Form PC 00 90 **PROPERTY CHOICE CONDITIONS AND DEFINITIONS** for definitions.

## A. COVERAGE

We will pay for direct physical loss of or direct physical damage to the following types of Covered Property caused by or resulting from a Covered Cause of Loss. Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.** Covered Property for which a Limit of Insurance and a premises address is shown in the Property Choice - Schedule of Premises and Coverages.

### 1. Covered Property

**a. Building** means buildings or structures that:

**(1)** You own; or

**(2)** Are responsible for insuring.

Building also includes:

**(1)** Buildings or structures in the course of construction;

**(2)** Alterations, repairs or additions to the building;

**(3)** Foundations;

**(4)** Underground pipes, flues or drains necessary for the service of the building;

**(5)** Excavations, grading, backfilling or filling that are necessary to repair, rebuild or replace the building or its foundation;

**(6)** Permanently installed machinery and equipment;

**(7)** Awnings, "Building Glass" and floor coverings;

**(8)** Materials, equipment and supplies, used in the construction, alteration or repair of buildings;

**(9)** Radio or television towers, antennas and satellite dishes (including attachments), fences, signs and other outdoor fixtures;

**(10)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(11)** Property owned by you for the maintenance or service of the building or its premises, including fire extinguishing equipment, alarm, communication and monitoring systems, and lawn maintenance or snow removal equipment;

**(12)** Retaining walls attached to buildings;

**(13)** Swimming pools whether or not attached to the building;

**(14)** Appurtenant structures whether or not attached to the building;

**(15)** Electronic car charging stations;

**(16)** Solar panels attached to the building;

**(17)** Walks, roadways, patios or other paved surfaces at a "Scheduled Premises".

**b. Business Personal Property**

**(1)** Business Personal Property means:

**(a)** All of Your Business Personal Property owned by your business; and

**(b)** Business Personal Property owned by others, that is in your

---

© 2013, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

care, custody or control (including leased property as provided in a written lease agreement);

(2) Business Personal Property also includes:

    (a) Furniture, fixtures, machinery and equipment;

    (b) "Stock";

    (c) "Computer Equipment";

    (d) "Electronic Data" and "Valuable Papers";

    (e) Patterns, dies, molds and forms;

    (f) Your interest in the labor, materials or services furnished or arranged by you on Business Personal Property you have installed or repaired;

    (g) "Tenant Improvements and Betterments";

    (h) Tools and equipment owned by your employees that are used in your business operations;

    (i) Building components while removed from the premises for service or repair;

    (j) Lottery tickets held for sale and postage stamps in current usage;

    (k) Electronic car charging stations if not covered under Building.

(3) Coverage applies to Business Personal Property up to 1000 feet outside the premises boundary.

**2. Property Not Covered**

Covered Property does not include the following unless an endorsement is added to this Coverage Part:

a. Accounts, bills, currency, food stamps or other evidences of debt, "money", notes or "securities".

b. Animals, except animals inside buildings, and:

    (1) Owned by others and boarded by you; or

    (2) Owned by you as "Stock".

c. Property owned by and for exclusive personal use by you or your officers, members, partners or employees.

d. Property owned by your residents, patients, or students.

e. Property owned by your tenants.

f. Contraband, or property in the course of illegal transportation or trade.

g. Growing crops or standing timber.

h. Grain, hay, straw or other crops which have been harvested, but are outside of buildings or structures.

i. Outdoor trees, shrubs, plants and sod (other than those held for sale) and lawns.

j. Land (including land on which the property is located), land values, water (except water contained within any storage tank, for use in your manufacturing or processing operations), dams, underground mines, and caverns.

k. Vehicles, and self-propelled machines, including aircraft and watercraft, except the following are Covered Property:

    (1) Vehicles and self-propelled machines, (including aircraft and watercraft) that you manufacture, process, warehouse or hold for sale (except automobiles held for sale) while located at insured premises;

    (2) Vehicles and self-propelled machines, (except aircraft and watercraft) that you operate principally on your insured premises, that are not licensed or registered for use on public roads; and

    (3) Canoes and rowboats while out of the water at insured premises.

l. Business Personal Property that you have sold under:

    (1) Conditional sale;

    (2) Trust agreement;

    (3) Installment payment;

    (4) Other deferred payment plan; or

    (5) Other agreement under which you have retained a security interest;

m. Property that is more specifically covered, insured or described under another coverage form of this policy or any other policy, except for the excess of the amount due (whether you can collect on it or not) from that other insurance.

**n.** Live eggs and embryos.

**o.** Retaining walls not attached to the building.

**3. Covered Causes of Loss**

See Property Choice - Covered Causes of Loss and Exclusions Form.

**B. EXCLUSIONS**

See the Property Choice - Covered Causes of Loss and Exclusions Form.

**C. LIMITS OF INSURANCE**

The most we will pay for loss or damage in any one occurrence is the smallest applicable Limit of Insurance shown in the Property Choice Declarations, Schedules, Coverage Form(s) or Endorsement(s).

**D. DEDUCTIBLE**

We will not pay for direct physical loss or direct physical damage in any one occurrence until the amount of loss or damage exceeds the applicable Deductible stated in the Property Choice Schedule of Premises and Coverages or Endorsement(s). We will then pay the amount of loss in excess of the Deductible, up to the applicable Limit of Insurance.

When claim is made for loss or damage to more than one type of property, coverage, premises, or Cause of Loss and different deductible amounts apply in the same occurrence, we will only apply the largest applicable deductible for the item for which claim is made unless specified by endorsement.

**E. LOSS PAYMENT AND VALUATION CONDITIONS**

Covered Property will be valued at either Replacement Cost or Actual Cash Value, as stated in the Property Choice Schedule of Premises and Coverages and as described below except for the items listed below in item **3. Specific Property Valuations**. We will not pay more than your financial interest in the lost or damaged property.

**1. Replacement Cost**

In the event of covered loss or damage, we will determine the value of Covered Property at the actual amount spent to repair, replace or rebuild the damaged property as of the time of the loss or damage, at the same site or another site, subject to the following:

**a.** We will not pay more for lost or damaged property than the least of

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The amount it costs to replace, on the same premises, the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount you actually spend that is necessary and reasonable to repair or replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose.

(4) In the event of a total loss to Building property, you may choose to replace your Building property at another premises, however, we will not pay more than the cost to replace the Building property at the original premises.

(5) In the event of a total loss to Business Personal Property, we retain our right to salvage such Business Personal Property.

(6) Replacement Cost does not include any increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**b.** We will pay you on an Actual Cash Value basis until the lost or damaged property is actually repaired, rebuilt or replaced.

**c.** If you do not repair, replace or rebuild on the same site or another site within 2 years of the date of loss, we will pay you on an Actual Cash Value basis.

**d.** Patterns, dies, molds and forms not in current usage at actual cash value. If loss is paid on an actual cash value basis and within 60 months from the date of the covered loss and you need to repair or replace them, we will pay you, subject to the Conditions of this insurance, the difference between actual cash value and replacement cost when the patterns, dies, molds and forms are actually repaired or replaced.

**2. Actual Cash Value**

**a.** We will pay you on an Actual Cash Value basis if:

(1) The valuation of the lost or damaged property is designated in the Property Choice Schedule of Premises and Coverages as Actual Cash Value.

(2) You elect Actual Cash Value as the basis for loss payment at the time of loss or damage.

**b.** In the event of covered loss or damage, at our option, we will do one of the following, but not pay more than the Limit of Insurance applicable to the lost or damaged property:

    **(1)** Pay the value of the lost or damaged property at the time of loss;

    **(2)** Take all or any part of the property at an agreed or appraised value; or

    **(3)** Repair, rebuild or replace the property with other property of like kind and quality, or pay you the cost to do so.

**c.** In the event of a total loss to Business Personal Property, we retain our right to salvage such Business Personal Property.

**d.** Actual Cash Value does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**e.** If the actual amount spent to repair, replace or rebuild the damaged property as of the time of the loss is $25,000 or less (after the application of the applicable deductible), we pay the loss or damage on the basis of the Replacement Cost provisions described in **E.1.** above. This Exception does not apply to the following Specific Property Valuations.

**3. Specific Property Valuations**

    **a. Accounts Receivable**

    We will determine the amount of Accounts Receivable loss as follows:

    **(1)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

        **(a)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss occurs; and

        **(b)** Adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss occurred or for any demonstrated variance from the average for that month.

    **(2)** The following will be deducted from the total amount of accounts receivable, however that amount of accounts receivable is established:

        **(a)** The amount of the accounts for which there is no loss;

        **(b)** The amount of the accounts that you are able to re-establish or collect;

        **(c)** An amount to allow for probable bad debts that you are normally unable to collect; and

        **(d)** All unearned interest and service charges.

**b. Animals**

    We will determine the value of animals at the cost of replacement with animals of like kind and quality as when originally acquired by you.

**c. "Building Glass"**

    We will determine the value of "Building Glass" at the cost of replacement with safety glazing material if required by law.

**d. "Electronic Data" and "Valuable Papers"**

    We will determine the value of "Electronic Data" and "Valuable Papers" at your incurred cost of:

    **(1)** Blank materials for reproducing the records (including blank prepackaged programs when replaced); and

    **(2)** Labor to transcribe or copy the records and to research, replace or restore the lost information, copy the records, including research and development documentation.

**e. Fine Arts**

    We will determine the value of Fine Arts, at the lesser of:

    **(1)** The market value at the time of loss or damage;

    **(2)** The reasonable cost of repair or restoration to the condition immediately before the covered loss or damage; or

    **(3)** The cost of replacement with substantially identical property.

    For pairs or sets, we will either:

    **(1)** Repair or replace any part to restore the value and condition of the pair or set to that immediately before the covered loss or damage; or

    **(2)** Pay the difference between the value of the pair or set before and after the covered loss or damage.

**f. Party Wall**

    A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we

will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**g.  Property of Others**

**(1)** If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the lesser of:

**(a)** amount for which you are liable under such contract;

**(b)** the replacement cost of the property; or

**(c)** the applicable Limit of Insurance.

**(2)** If no such contract exists we will not pay more than your financial interest in Personal Property of Others not to exceed:

**(a)** the Actual Cash Value of such property: or

**(b)** the applicable Limit of Insurance.

**(3)** At your option, we may adjust losses with the owners of lost or damaged property if other than you.  If we pay the owners:

**(a)** Such payments will only be for the account of the owner of the property and will satisfy your claims against us for the owners' property;

**(b)** We will not pay more than their financial interest in the property.

**(4)** We may elect to defend you against suits arising from claims of owners of property.  We will do this at our expense.

**h.  "Stock"**

**(1) Manufactured Stock (including Selling Price)**

We will determine the value of "Stock" you have manufactured at the selling price less discounts and expenses you otherwise would have incurred. This also applies to component parts manufactured by others that will become a part of your finished product.

**(2) Mercantile Stock**

We will determine the value of "Stock", which you have purchased for resale and have sold but not delivered, at the selling price less discounts and expense you otherwise would have had.  This does not apply to "Stock" you have manufactured.

**(3) Stock in Process**

We will determine the value of "Stock" in process of manufacture at the replacement cost of the raw materials, plus labor expended and the proper proportion of overhead charges.

**(4) Commodity Stock**

For "Stock" that is bought and sold at an established market exchange, we will determine the value at:

**(a)** The posted market price as of the time and place of loss;

**(b)** Less discounts and expenses you otherwise would have had.

**i.  "Tenant Improvements and Betterments"**

**(1)** If you do not repair or replace lost or damaged "Tenant Improvements and Betterments" within 2 years, we will pay the pro rata of the Actual Cash Value based on the duration of the lease and the installation date of the property.

**(2)** If others pay for repairs or replacement, we will not make loss payment to you.

**j.  Transit**

We will determine the value of covered property in due course of transit at:

**(1)** The amount of invoice plus accrued costs, prepaid charges and charges since shipment; or

**(2)** In the absence of an invoice, the valuation provision otherwise applicable to that type of Covered Property as of the time of loss or damage.

**k.  Vehicles**

(1)  We will determine the value of covered vehicles and self-propelled machines, including aircraft, automobiles, contractor's equipment and watercraft on an Actual Cash Value basis.  This also applies to coverage provided for trailers under the Non-Owned Detached Trailer Additional Coverage.

(2)  New vehicles and machines you have manufactured will be subject to the valuation applicable to covered "Stock".

**4.  Value Enhancements**

**a.  Architect and Engineering Fees**

The value of Covered Property will include reasonable architect and engineering fees you incur in the course of repairing or reconstructing damaged property.

**b.  Customs Duty, Sales Tax**

The value of Covered Property will include the cost of customs duties and sales taxes to repair or replace the property.

**c.  Extended Warranties**

The value of Covered Property, that is a total loss during the policy period, will include the unused pro rata portion of non-refundable optional extended warranties or service contracts which you purchased for the damaged property prior to the covered loss or damage.



# PROPERTY CHOICE - SPECIAL BUSINESS INCOME COVERAGE FORM
### (BUSINESS INTERRUPTION)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Form PC 00 90 **PROPERTY CHOICE CONDITIONS AND DEFINITIONS** for definitions.

**A. COVERAGE**

We will pay up to the Special Business Income Limit of Insurance stated in the Property Choice - Schedule of Premises and Coverages for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at "Scheduled Premises" where a limit of insurance is shown for Special Business Income. If you are a tenant, this Coverage applies to that portion of the building which you rent, lease or occupy, and extends to common service areas and access routes to your area.

**Definitions**

1. Business Income means:

   **a.** Net Income (Net Profit or Net Loss before income taxes), including Rental Income and Royalties, that would have been earned or incurred; and

   **b.** Continuing normal operating expenses incurred, including Payroll Expenses.

   **c.** For educational operations, Business Income also includes income from:

      **(1)** Tuition and related student fees including room, board, laboratories and other similar fees;

      **(2)** Bookstores;

      **(3)** Athletic events; or

      **(4)** Activity related to research grants.

   **d.** For manufacturing businesses, Net Income also includes the net sales value of production.

   **e.** For research and development operations, Business Income also includes awarded contract revenues, licensing fees, consulting fees, funding grants and progress (milestone) payments.

   **f.** As respects all insureds if you are operating at a Net Loss, continuing normal operating expenses will be offset by the Net Loss.

2. Extra Expense means the actual, necessary and reasonable expenses you incur during the Period of Restoration that you would not have incurred if there had been no direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at "Scheduled Premises". We will pay Extra Expense (other than the expense to repair or replace property) to:

   **a.** Avoid or minimize the suspension of business and to continue operations at a "Scheduled Premises" or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

   **b.** Minimize the suspension of business if you cannot continue operations. We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

   **c.** Extra Expense Coverage does not apply to any expense related to any recall of products you manufacture, handle or distribute.

© 2013, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

3. Interruption means the slowdown or cessation of any part of your business activities or the partial or total untenantability of the premises.

4. Payroll Expenses include:

   a. Payroll;

   b. Special compensation such as bonuses and other incentive compensation;

   c. Employee benefits, if directly related to payroll;

   d. FICA payments you pay;

   e. Union dues you pay; and

   f. Workers' compensation premiums.

5. a. Period of Restoration means the period of time that:

   (1) Begins at the time the Covered Cause of Loss occurred; and

   (2) Ends on the earlier of:

      (a) The date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (b) The date when business is resumed at a new permanent location.

   The expiration date of this policy will not cut short the Period of Restoration.

   b. For buildings under construction or undergoing additions or alterations, if the direct physical loss or direct physical damage delays the start of business operations, the Period of Restoration will begin the date business operations would have begun had the direct physical loss or direct physical damage not occurred.

   c. For educational institutions, the Period of Restoration ends on the earlier of:

      (1) The day before the opening of the next school term following the date the property should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when the school term is resumed at a new permanent location.

   d. Period of Restoration does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

   (1) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "Pollutants and Contaminants", except as covered in the "Pollutants and Contaminants" Clean Up Additional Coverage; or

   (2) Regulates the construction, use or repair, or requires the tearing down of any property, except as covered in the Ordinance or Law Additional Coverage.

6. Rental Income/Rental Value means Business Income that consists of:

   a. Net Income (Net Profit or Net Loss before income taxes) that would have been earned or incurred as income from tenant occupancy of the "Scheduled Premises" as furnished and equipped by you including fair rental value of any portion of the "Scheduled Premises" which is occupied by your tenants or you as a tenant; and

   b. Continuing normal operating expenses incurred in connection with that premises including:

      (1) Payroll Expenses; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

   c. If you are operating at a Net Loss, continuing normal operating expenses will be offset by the Net Loss.

**B. COVERED CAUSES OF LOSS, EXCLUSIONS AND LIMITATION**

1. See Property Choice - Covered Causes of Loss and Exclusions Form.

2. The following **Exclusions** apply in addition to the **Exclusions** found in the Property Choice - Covered Causes of Loss and Exclusions Form attached to this Coverage Part:

   a. **Contract, Lease or License Cancellation**

   We will not pay for any increase of loss caused by or resulting from suspension, lapse or cancellation of any contract, lease or license (including consultation and funding grants). But if such

suspension, lapse or cancellation is directly caused by a covered interruption of business operations, we will pay for such loss that affects your Business Income during the Period of Restoration and any extension of the Period of Restoration in accordance with the terms of the Extended Income Additional Coverage or the Future Earnings Additional Coverage.

**b. Manufactured "Stock"**

We will not pay for any loss caused by or resulting from damage or destruction of or the time required to reproduce "Stock" you have finished manufacturing.

**c. Satellite Communications**

We will not pay for any loss caused by or resulting from the disruption of communications or service to or from any satellite however caused. But this exclusion does not apply to land based satellite dishes.

**d. Strike Interference**

We will not pay for any increase of loss caused by or resulting from delay in rebuilding, repairing or replacing the property or resuming business operations, due to interference at the location of the rebuilding, repair or replacement by strikers or other persons.

**3. Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a suspension of operations is caused by destruction or corruption of "Electronic Data", or any loss or damage to "Electronic Data".

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a suspension of operations caused by destruction or corruption of "Electronic Data", or any loss or damage to "Electronic Data".

**c.** This Additional Limitation does not apply when loss or damage to "Electronic Data" involves only "Electronic Data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**C. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the smallest applicable Limit of Insurance shown in the Property Choice

Declarations, Schedules, Coverage Form(s) or Endorsement(s).

**D. DEDUCTIBLE**

We will not pay for the actual loss of Business Income you sustain in any one occurrence until the necessary interruption of your business operations exceeds the Waiting Period as stated in the Property Choice Schedule of Premises and Coverages or by Endorsement(s). We will not pay for the actual loss of Business Income you sustain in any one occurrence during such Waiting Period. No other deductible applies to Business Income coverage. No deductible or Waiting Period applies to Extra Expense.

**E. LOSS CONDITIONS**

The following Conditions apply in addition to the Common Policy Conditions and all of the Conditions as found in the Property Choice Conditions and Definitions Form:

**1. Resumption of Business**

If you intend to continue in business, you must resume all or part of your business operations as quickly as possible.

**2. Loss Determination**

**a. Business Income**

The amount of Business Income loss will be determined based on:

**(1)** The Net Income of the business before the direct physical loss or direct physical damage occurred;

**(2)** The likely Net Income of the business if no physical loss or no physical damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses.

**(3)** The operating expenses, including payroll expenses, necessary to resume business operations with the same quality of service that existed just before the direct physical loss or direct physical damage, and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b. Extra Expense**

The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been incurred by business operations during the Period of Restoration if no direct physical loss or if no direct physical damage had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the Period of Restoration, once business operations are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance.

**(2)** All actual, necessary and reasonable expenses that reduce the Business Income loss otherwise incurred.

**3. Reductions in Amount We Pay**

**a.** We will reduce the amount of the Business Income loss payment to the extent you can resume your business operations, in whole or in part, by using:

**(1)** Damaged or undamaged property (including merchandise or "stock") at the insured premises or elsewhere;

**(2)** Any other available source of materials or other outlet for your products.

**b.** We will reduce the amount of Extra Expense loss payment to the extent you can return operations to normal and discontinue Extra Expenses.

**c.** If you do not resume business operations, or do not resume business operations as quickly as possible, we will pay based on the length of time it would have taken to resume business operations as quickly as possible.

**d.** We will reduce the amount of the Business Income loss payment to the extent that the reduction in volume of business income from the affected income channel is offset by an increase in the volume of business from other income channels.

PROPERTY CHOICE



# LEGAL LIABILITY - BUILDING COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance. Other words and phrases that appear in quotation marks have special meaning. Refer to Form PC 00 90 **PROPERTY CHOICE CONDITIONS AND DEFINITIONS** for definitions.

## A. COVERAGE

We will pay up to the applicable Legal Liability - Building Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages or in an endorsement attached to this Coverage Part for those sums that you become legally obligated to pay as damages because of direct physical loss or direct physical damage, including loss of use, to Covered Building Property caused by accident and arising out of a Covered Cause of Loss. We will have the duty to defend any suit seeking those damages. Suit includes an arbitration proceeding to which you must submit or submit with our consent. However, we have no duty to defend you against a suit seeking damages for direct physical loss or damage to which this insurance does not apply. We may investigate and settle any claim or suit at our discretion. But our duty to defend ends when we have used up the Legal Liability Building Limit of Insurance in the payment of judgments or settlements.

1. **Covered Building Property**

   Covered Building Property means buildings or structures of others in your care, custody or control.

2. **Covered Causes Of Loss**

   See the Property Choice - Covered Causes of Loss and Exclusions Form.

3. **Additional Coverages**

   a. **Supplementary Payments**

      We will pay, with respect to any claim or any suit against you that we defend:

      (1) All expenses we incur.

      (2) The cost of bonds to release attachments, but only for bond amounts within our Limit of

Insurance. We do not have to furnish these bonds.

      (3) All reasonable expenses incurred by you at our request, including actual loss of earnings up to $250 a day because of time off from work.

      (4) All costs taxed against you in the suit.

      (5) Prejudgment interest awarded against you on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

      (6) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

      Payments under this Additional Coverage are in addition to the applicable Limit of Insurance.

   b. **Additional Insureds**

      Throughout this Coverage Form, if the Named Insured stated in the Property Choice Declarations is:

      (1) A partnership or corporation, the words "you" and "your" include partners, executive officers, trustees, directors and stockholders of such partnership or corporation;

      (2) A limited liability company, the words "you" and "your" include member and manager;

      but only with respect to their duties as such.

© 2013, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

The existence of one or more Additional Insureds does not increase the Limit of Insurance.

**c. Newly Acquired Organizations**

Throughout this Coverage Form, the words "you" and "your" also include any organization (other than a partnership, joint venture or limited liability company) you newly acquire or form and over which you maintain ownership or majority interest if there is no other similar insurance available to that organization.

This Additional Coverage ends:

**(1)** 90 days after you acquire or form the organization; or

**(2)** At the end of the policy period stated in the Property Choice Declarations;

whichever is earlier.

This Additional Coverage does not apply to direct physical loss or direct physical damage that occurred before you acquired or formed the organization.

The existence of one or more Newly Acquired Organizations does not increase the Limit of Insurance.

**d. Newly Acquired Building Property**

**(1)** You may extend the insurance that applies to Covered Building Property, as used in this Coverage Form, to apply to your liability for Building property of others that comes under your care, custody or control after the beginning of the current policy period. This Additional Coverage is subject to all terms and Conditions of this Coverage Form.

The most we will pay as the result of any one accident for loss or damage to buildings covered under this Additional Coverage is $25,000 at each building.

**(2)** Insurance under this Additional Coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 180 days expire after the building property has come under your care, custody or control;

**(c)** You report values to us; or

**(d)** The property is more specifically insured.

We will charge you additional premium for values reported from the date the property comes under your care, custody or control.

**(3)** This Additional Coverage does not apply to direct physical loss or direct physical damage that occurred before the building property came under your care, custody or control.

**B. EXCLUSIONS AND LIMITATIONS**

**1.** See the Property Choice - Covered Causes of Loss and Exclusions Form.

**2.** The following additional exclusions apply to insurance under this Coverage Form:

**a. Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(1)** Your assumption of liability was executed prior to the accident; and

**(2)** The building is Covered Property under this Coverage Form.

**b. Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. LIMITS OF INSURANCE**

The most we will pay in damages as the result of any one accident is the applicable Limit of Insurance shown for Legal Liability – Building Limit of Insurance as shown in the Property Choice Schedule of Premises and Coverages or in an endorsement to this Coverage Part.

Payments under the Additional Coverages are in addition to the Limits of Insurance.

The existence of one or more:

**1.** Additional Insureds, or

**2.** Newly Acquired Organizations,

does not increase the Limit of Insurance.

**D. DEDUCTIBLE**

No deductible provision applies to this Coverage Form.

**E. PROPERTY CHOICE CONDITIONS CHANGES**

For Coverage provided under this Coverage Form, the following changes are made to the Property Choice Conditions:

**1. Duties In The Event Of Accident, Claim Or Suit**

The General Duties in Event of Loss Condition is replaced by the following:

**a.** You must see to it that we are notified promptly of any accident that may result in a claim. Notice should include:

**(1)** How, when and where the accident took place; and

**(2)** The names and addresses of any witnesses.

Notice of an accident is not notice of a claim.

**b.** If a claim is made or suit is brought against you, you must see to it that we receive prompt written notice of the claim or suit.

**c.** You must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or suit; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to you because of damage to which this insurance may also apply.

**d.** You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**2. Legal Action Against Us**

The **Legal Action Against Us General Condition** is replaced by the following:

No person or organization has a right under this Coverage Form:

**a.** To join us as a party or otherwise bring us into a suit asking for damages from you; or

**b.** To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against you obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Form or that are in excess of the Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, you and the claimant or the claimant's legal representative.

**3. Transfer Of Rights (Subrogation)**

The **Transfer of Rights of Recovery Against Others To Us General Condition** is replaced by the following:

If you have rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. You must do nothing after loss to impair them. At our request, you will bring suit or transfer those rights to us and help us enforce them.

**F. ADDITIONAL CONDITIONS**

The following conditions are added and apply in addition to the Common Policy Conditions, and the Property Choice Conditions:

**1. Bankruptcy**

Bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Coverage Form.

**2. Separation Of Insureds**

The insurance under this Coverage Form applies separately to you and each additional insured, except with respect to the Limits of Insurance.

PROPERTY CHOICE



# PROPERTY CHOICE - COVERED CAUSES OF LOSS AND EXCLUSIONS FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Form PC 00 90 **PROPERTY CHOICE CONDITIONS AND DEFINITIONS** for definitions.

**A. COVERED CAUSES OF LOSS**

Covered Causes of Loss means direct physical loss or direct physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy.

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage:

   **a. Acts, Errors or Omissions**

   Acts, errors or omissions by you or others, whether before or after the acquisition of any Covered Property, in any of the following activities:

   **(1)** Planning, zoning, developing, surveying, testing or siting property;

   **(2)** Establishing or enforcing any building code, or any standard, ordinance or law about the construction, use or repair of any property or materials, or requiring the tearing down of any property, including the removal of its debris; or

   **(3)** Any of the following as to any part of land, buildings, roads, water or gas mains, sewers, drainage ditches, levees, dams, other structures or facilities, or to or for any Covered Property:

   **(a)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; or

   **(b)** Furnishing of work, materials, parts or equipment in connection with the design, specifications, workmanship, repair, construction, renovation, remodeling, grading or compaction.

   The Acts, Errors or Omissions Exclusion applies whether or not the property or facilities described above are Covered Property under this policy or on or away from a "Scheduled Premises".

   But if direct physical loss or direct physical damage to Covered Property by fire, explosion or "Sprinkler Leakage" results, we will pay for the resulting loss or damage caused by that fire, explosion or "Sprinkler Leakage".

   **b. Animals**

   We will not pay for loss or damage to animals unless caused by a "Specified Cause of Loss". All other loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

   **c. Collapse**

   **(Related to Earth Movement or Flood)**

   Collapse, cracking, separating, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral movement or other movement, or other loss or damage to buildings or structures, including concrete or paved surfaces, which would not have occurred but for Earth Movement or Flood.

© 2013, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

**d. Earth Movement**

   **(1)** Earthquake, meaning a shaking or trembling of the earth's crust, including tremors and aftershocks, resulting in breaking, shifting, rising, settling, sinking or lateral movement or other movement, including any related earth sinking, rising or shifting;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine Subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than "Sinkhole Collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other part of buildings or structures. Soil conditions include contraction, expansion, freezing, thawing, erosion, improper compaction of soil and the action of water under the ground surface.

This Exclusion applies regardless of whether any of the above is caused by weather, an act of nature or by an artificial, man-made or other cause.

But if direct physical loss or direct physical damage to Covered Property by fire or explosion results, we will pay for the resulting loss or damage caused by that fire or explosion.

**e. Water**

   **(1)** Flood, which means surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man-made body of water from its boundaries, all whether driven by wind or not (including storm surge).

   **(2)** Mudslide or mudflow, directly or indirectly caused by flooding or the accumulation of water under the ground.

   **(3)** Water or other material that backs up or overflows from any sewer, septic tank, sump or drain.

   **(4)** Release of water held by a dam, levee or dike, or by a water or flood control device.

   **(5)** Water under the ground surface pressing on, or flowing or seeping through:

     **(a)** Foundations, walls, floors or paved surfaces;

     **(b)** Basements, whether paved or not; or

     **(c)** Doors, windows or other openings.

   **(6)** Waterborne material or other property carried or otherwise moved by any of the water referred to in Paragraphs **(1)**, **(3)** or **(4)**, or by mudslide or mudflow.

But if direct physical loss or direct physical damage to Covered Property by fire, explosion or "Sprinkler Leakage" results, we will pay for the resulting loss or damage caused by that fire, explosion or "Sprinkler Leakage".

This Exclusion applies regardless of whether any of the above, in Paragraphs **(1)** though **(6)**, is caused by weather, an act of nature or by an artificial, man-made, or other cause.

**f. "Fungus", Wet Rot, Dry Rot, Bacteria or Virus**

Presence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, bacteria or virus.

But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss".

This Exclusion does not apply:

   **(1)** When "fungus," wet rot, dry rot, bacteria or virus results from fire or lightning; or

   **(2)** To the extent that coverage is provided in the Additional Coverage(s) - "Fungus," Wet Rot, Dry Rot, Bacteria or Virus - Limited Coverage with respect to loss or damage by a cause of loss other than fire or lightning.

**g. Governmental Action**

   **(1)** Seizure or destruction of property by order of governmental authority.

   **(2)** But we will pay for direct physical loss or direct physical damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(3)** This Exclusion does not apply to coverage as provided under the Ordinance or Law Additional Coverage(s).

**h. Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment"**

Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment" which means:

**(1)** A virus, malicious code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

**(2)** Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as "theft";

**(3)** Errors or omissions in programming or processing "electronic data";

**(4)** Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system or network to which your system is connected or on which your system depends (including "electronic data");

**(5)** Manipulation of your computer system, including "electronic data", by an employee, volunteer worker or contractor, for the purpose of diverting or destroying "electronic data" or causing fraudulent or illegal transfer of any property;

**(6)** Interruption in normal computer function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

**(7)** Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including "electronic data" and the inability to access or properly manipulate the "electronic data";

**(8)** Complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause;

**(9)** The inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

**i. Nesting or Infestation**

**(1)** We will not pay for loss or damage caused by, resulting from, or arising out of nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(2)** If direct physical loss or direct physical damage by a Covered Cause of Loss ensues to Covered Property, we will pay only for such ensuing loss or damage.

**(3)** This Exclusion does not apply to:

**(a)** "Computer Equipment", "Computer Media and Data" and "Valuable Papers"; and

**(b)** Accounts Receivable and Fine Arts Additional Coverages.

**j. Nuclear Hazard**

**(1)** Nuclear reaction, nuclear radiation or radioactive contamination, however caused, whether intentional or unintentional. This includes, but is not limited to, the release, dispersal or application of radioactive material, or the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination or radioactive force.

**(2)** When state standard fire policy law requires that we cover any resulting fire damage, we will pay only for the resulting damage caused by that resulting fire. We will pay only the Actual Cash Value for the damaged property. Therefore, we will not pay for any indirect or related loss(es), such as business income, extra expenses, legal liability, or leasehold interest loss(es).

**k. Ordinance or Law**

**(1)** The enforcement of, or compliance with, any ordinance or law:

**(a)** Regulating the construction, use or repair of any property; or

**(b)** Requiring the tearing down of any property, including the cost of removing its debris.

**(2)** This Exclusion applies whether the loss results from:

    **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

    **(b)** The increased costs incurred to comply with an ordinance or law while in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**l.  Pathogenic or Poisonous Biological or Chemical Materials**

    **(1)** The deliberate or intentional dispersal or application of any pathogenic or poisonous biological or chemical materials.

    **(2)** But if direct physical loss or direct physical damage to Covered Property by fire results, we will pay for the resulting loss or damage caused by that fire.

**m.  "Pollutants and Contaminants"**

    **(1)** Discharge, dispersal, seepage, migration, release or escape of "Pollutants and Contaminants".

    **(2)** But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss".

    **(3)** This Exclusion does not apply if the discharge, dispersal, seepage, migration, release or escape is itself caused by a "Specified Cause of Loss".

    **(4)** This Exclusion does not apply to:

        **(a)** "Computer Equipment" and "Valuable Papers";

        **(b)** Accounts Receivable, Business Travel, Exhibitions, Fine Arts and Transit Additional Coverages; or

        **(c)** The accidental or malicious application of chemicals to glass that is a part of a building, structure or showcase.

**n.  Utility Services Interruption**

The failure of power, communication, water or other utility service supplied to a "Scheduled Premises" if the failure:

**(1)** Originates away from a "Scheduled Premises"; or

**(2)** Originates at a "Scheduled Premises", but only if such failure involves equipment used to supply the utility service to the "Scheduled Premises" from a source away from the "Scheduled Premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

Communication services include but are not limited to service relating to internet access or access to any electronic, cellular or satellite network.

But if the failure of power, communication, water or other utility service supplied to the insured premises results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss to Covered Property.

**(3)** This Exclusion does not apply to:

    **(a)** "Valuable Papers",

    **(b)** Accounts Receivable and Fine Arts Additional Coverages; and

    **(c)** Coverage provided under the Utility Service Additional Coverage(s).

**o.  War and Military Action**

    **(1)** War, including undeclared war;

    **(2)** Hostile or warlike action, in time of peace or war, including action in hindering, combating or defending against an actual or expected attack; by any of the following:

        **(a)** Government or sovereign power (including quasi and de facto forms), or by any authority maintaining or using military, naval or air forces;

        **(b)** Military, naval or air forces; or

        **(c)** An agent of any such government, power, authority or forces.

    **(3)** Invasion, insurrection, rebellion, revolution, civil war, usurped power, including action in hindering,

combating or defending against any such actual or expected event by any government, power, authority, forces or agents described in Paragraph **(2)(a)-(c)**.above.

Exclusions **B.1.a.** through **B.1.o.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

    a. **Artificially Generated Electrical, Magnetic or Electromagnetic Energy**

        Artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network.

        For the purpose of this Exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

        (1) Electrical current, including arcing;

        (2) Electrical charge produced or conducted by a magnetic or electromagnetic field;

        (3) Pulse of electromagnetic energy; or

        (4) Electromagnetic waves or microwaves.

        But if direct physical loss or direct physical damage to Covered Property by fire results, we will pay for the resulting loss or damage caused by that fire.

    b. **Accounting Errors**

        Errors or omissions in accounting, arithmetic, bookkeeping, or billing.

    c. **Change of Temperature, Dampness or Dryness**

        (1) Dampness or dryness of atmosphere; or

        (2) Changes in or extremes of temperature.

        But if direct physical loss or direct physical damage to Covered Property by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

        (3) This Exclusion does not apply to:

            (a) "Computer Equipment" and "Valuable Papers";

            (b) Accounts Receivable and Fine Arts Additional Coverages; and

    (c) Coverage provided for Spoilage under the Equipment Breakdown - Additional Coverage.

    d. **Delay, Loss of Use or Loss of Market**

        We will not pay for loss or damage caused by, resulting from, or arising out of delay, loss of use, or loss of market.

    e. **Dishonest Acts**

        Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees, or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

        This Exclusion:

        (1) Applies whether or not an act occurs during your normal hours of operation;

        (2) Does not apply to:

            (a) Acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered; or

            (b) Property entrusted to carriers for hire.

    f. **Docks, Piers, Wharves**

        (1) Action of water or ice to bulkheads, docks, piers, seawalls, wharves, or property on such structures.

        (2) But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

    g. **Loss Due To By-Products of Production or Processing Operations**

        (1) We will not pay for loss or damage to "Scheduled Premises", caused by or resulting from smoke, vapor, gas or any substance released in the course of production operations or processing operations performed at the "Scheduled Premises". This

exclusion applies regardless of whether such operations are:

**(a)** Legally permitted or prohibited;

**(b)** Permitted or prohibited under the terms of the lease; or

**(c)** Usual to the intended occupancy of the premises.

This exclusion does not apply to loss or damage by fire or explosion that results from the release of a by-product of the production or processing operation.

**(2)** If the loss or damage described in Paragraph **(1)** results in Business Income loss or Extra Expense, there is no coverage for such loss or expense under the business income and/or extra expense forms listed in this policy, or under any other business interruption insurance if provided under this policy.

**(3)** The conduct of an insured or tenant production or processing operations will not be considered to be vandalism of the premises regardless of whether such operations are:

**(a)** Legally permitted or prohibited;

**(b)** Permitted or prohibited under the terms of a lease; or

**(c)** Usual to the intended occupancy of the premises.

**h. Mechanical Breakdown**

Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the direct physical loss or direct physical damage caused by that elevator collision.

**i. Missing Property**

Disappearance of property when there is no clear evidence to show what happened to it. This would include a shortage disclosed on taking inventory or auditing records. This Exclusion does not apply to property in the custody of a carrier for hire.

**j. Neglect to Protect Property**

Neglect to use all reasonable means to save and preserve property from further damage at and after time of the direct physical loss or damage.

**k. Rain, Snow, Ice, Sleet to Property in the Open**

Rain, snow, ice or sleet to personal property while in the open. This Exclusion does not apply to property in the custody of a carrier for hire.

**l. Settling, Cracking to Buildings or Structures**

**(1)** Settling, cracking, shrinking or expansion of buildings or structures, bridges, roadways, walks, patios or concrete or paved surfaces.

**(2)** But if direct physical loss or damage to Covered Property by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

**m. Smoke (Agricultural or Industrial)**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**n. Steam Explosions**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**o. Testing**

**(1)** A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

**(2)** An insulation breakdown test of any type of electrical equipment.

**(3)** But if direct physical loss or damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss."

**p. Theft of Laptops as Checked Baggage**

"Theft" of laptop, palmtop and similar portable equipment while as checked baggage.

**q. Unauthorized Transfer of Property**

Unauthorized transfer of property that has been transferred to any person or to any place outside your premises on the basis of unauthorized instructions.

**r.  Voluntary Parting**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.f.** But if direct physical loss or direct physical damage to Covered Property by a Covered Cause of Loss results, we will pay for the resulting loss or damage caused by that Covered Cause of Loss.

**a.** Wear and tear, or change in color, texture, or finish;

**b.** Rust, corrosion, decay, or deterioration;

**c.** Hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**d.** Maintenance;

**e.** Smog; or

**f.** Shrinkage, evaporation, or loss of weight of "Stock".

**C.  Limitations**

The following limitations apply to all policy forms and endorsements:

We will not pay for loss of or damage to property, as described and limited below. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited below.

**1.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**2.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**3.** The interior of any building or structure, or personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**a.** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**b.** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**D.  Additional Coverage - Equipment Breakdown**

The definition of Covered Causes of Loss includes Equipment Breakdown Accident to Equipment Breakdown Property, as defined and limited below:

**1.  Equipment Breakdown**

**a.** Equipment Breakdown Accident means direct physical loss or direct physical damage as follows:

**(1)** Mechanical breakdown, including rupture or bursting caused by centrifugal force;

**(2)** Artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

**(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**(4)** Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

**(5)** Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

**b.** Equipment Breakdown Property means property:

**(1)** that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

**(2)** which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

Equipment Breakdown Property may utilize conventional design and technology or new or newly commercialized design and technology.

**c.** The following is not Equipment Breakdown Property:

**(1)** Any structure, foundation, cabinet, or compartment;

**(2)** Any insulating or refractory material;

**(3)** Any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**(4)** Any draglines, excavation or construction equipment;

**(5)** Any equipment manufactured by you for sale;

**(6)** Any satellite, or any equipment mounted on a satellite; or

**(7)** Any vehicle or any equipment mounted on a vehicle. As used here, vehicle means any machine or apparatus that is used for transportation or moves under its own power. Vehicle includes, but is not limited to, car, truck, bus, trailer, train, aircraft, spacecraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a "Scheduled Premises" and that receives electrical power from an external power source will not be considered a vehicle.

**d.** **Limit of Insurance**: The most we will pay in any one Equipment Breakdown Accident to Equipment Breakdown Property is the lesser of the applicable Limit of Insurance for:

**(1)** Building and Business Personal Property or Business Interruption as shown in the Property Choice Schedule of Premises and Coverages or

**(2)** Equipment Breakdown Limit of Insurance as shown in the Property Choice Schedule of Premises and Coverages.

**2.** **Equipment Breakdown Coverage Extensions**

The following Coverage Extensions apply to loss or damage to Covered Property caused by or resulting from an Equipment Breakdown Accident to Equipment Breakdown Property:

**a.** **CFC Refrigerants**

We will pay for the additional costs to repair or replace Covered Property beyond what would have been necessary had no refrigerant containing CFC (chlorinated fluorocarbon) substances been involved in the Equipment Breakdown Accident.

The most we will pay for each occurrence of covered loss or damage under this Coverage Extension is the CFC Refrigerants Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages, but not more than the least amount to:

**(1)** Repair the damaged property and replace any lost CFC refrigerant;

**(2)** Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

**(3)** Replace the system with one using a non-CFC refrigerant.

This Coverage Extension is included within the Covered Property Limit of Insurance.

**b.** **Hazardous Substances**

We will pay for the additional costs to repair or replace Covered Property beyond what would have been necessary had the Equipment Breakdown Accident not caused contamination by a Hazardous Substance. This includes the additional expenses to clean up or dispose of such property.

As used in this Coverage Extension, Hazardous Substance means any substance that has been declared to be hazardous to health by a governmental agency.

The most we will pay for each occurrence of covered loss or damage under this Coverage Extension is the Hazardous Substances Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages.

This Coverage Extension is included within the Covered Property Limit of Insurance.

**c.** **Spoilage**

We will pay for your loss of perishable goods due to:

**(1)** Spoilage; or

**(2)** Contamination caused by the release of refrigerants, including but not limited to ammonia; caused by or resulting from an Equipment Breakdown Accident to Equipment

Breakdown Property located at the premises.

We will not pay for loss or damage as a result of your failure to use all reasonable means to protect the perishable goods from damage following an Equipment Breakdown Accident.

We will also pay any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

If you are unable to replace the perishable goods before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the perishable goods at the time of the Equipment Breakdown Accident, less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

As used in this Coverage Extension, perishable goods means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

The most we will pay for in any one occurrence under this Coverage Extension is the Spoilage Limit of Insurance as stated in the Property Choice Schedule of Premises and Coverages.

This is included within the Covered Property Limit of Insurance.

**d.  Expediting Expenses**

**(Related to Equipment Breakdown)**

**(1)** In the event of a loss or damage caused by or resulting from an Equipment Breakdown Accident to Equipment Breakdown Property at "Scheduled Premises", "Newly Acquired Premises", and "Unnamed Premises", we will pay for the reasonable and necessary additional expenses you incur to:

**(a)** Make temporary repairs;

**(b)** Expedite permanent repair or replacement of damaged property; or

**(c)** Provide training on replacement machines or equipment.

**(2)** This includes overtime wages, the extra cost of express or other rapid means of transportation, and expenses to bring computer systems back to operational status.

**(3)** The most we will pay under this Coverage Extension is the applicable limit of insurance as shown in Property Choice Schedule of Premises and Coverages - Causes Of Loss – Additional Coverage - Equipment Breakdown Expediting Expenses. This is an additional amount of insurance.

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAUSES OF LOSS - EARTHQUAKE

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

**A. COVERED CAUSES OF LOSS**

When Causes of Loss – Earthquake is added to the Property Choice Coverage Part, Covered Causes of Loss is revised to include for designated "Scheduled Premises" and applicable coverages as indicated in the Property Choice Schedule of Premises and Coverages:

Earthquake, meaning a shaking or trembling of the earth's crust, caused by underground tectonic forces resulting in breaking, shifting, rising, settling, sinking or lateral movement or other movement.

All earthquake shocks that occur within any 168-hour period will be deemed to be a single Earthquake occurrence.  The expiration of this policy will not reduce the 168-hour period.

**B. EXCLUSIONS**

1. Earthquake does not apply as a Covered Cause of Loss to the following Additional Coverages found in the Property Choice Specialized Property Insurance Coverage(s) forms and/or any applicable Business Interruption Additional Coverages Form:

   **a.** Dependent Properties;

   **b.** Newly Acquired Premises, except as provided by this endorsement;

   **c.** Unnamed Premises; or

   **d.** Utility Service Interruption.

2. We will not pay for loss or damage caused directly or indirectly by Flood, as defined by the Flood Exclusion found in the Property Choice Covered Causes of Loss and Exclusions Form, even if attributable to an Earthquake.

3. This Coverage does not apply to any Earthquake occurrence that began prior to the inception of this Endorsement.

4. Under this Coverage Part, as set forth under Property Not Covered in the Property Choice Coverage Form to which this endorsement is attached, land is not covered property. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land.

5. Earthquake coverage as provided by this endorsement does not apply to the following Coverage Forms even if these Coverage Forms are attached to the Property Choice Coverage Part:

   **a.** Legal Liability - Building Coverage Form, PC 00 30.

   **b.** Mortgageholders Errors and Omissions Coverage Form, PC 00 40.

   **c.** 12 Month Business Income and Expense Coverage Form, PC 00 23.

**C. DEDUCTIBLE**

We will not pay for loss or damage in any one occurrence until the total amount of loss or damage for all coverages exceeds the applicable Deductible shown in the Property Choice Schedule of Premises and Coverages or by endorsement. We will then pay the amount of loss or damage in excess of the deductible up to the applicable Limit of Insurance.

**D. LIMITS OF INSURANCE**

The following is added to section **C.** Limits of Insurance of the Property Choice Coverage Form

The most we will pay for loss or damage caused by any Earthquake is:

1. The Earthquake "Policy Year" Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages is the most we will pay for all Earthquake loss or damage that occurs during any one "Policy Year", regardless of the number of premises

**Form PC 10 20 01 13**

© 2013, The Hartford

covered under this policy, or the number of occurrences during the "Policy Year". Any amounts payable under any Coverage or Additional Coverage contained in this Coverage Part do not increase that Limit of Insurance except for Newly Acquired Property, as contained in this endorsement.

2. If two or more Earthquake "Policy Year" limits of Insurance are shown in the Property Choice Schedule of Premises and Coverages, the most we will pay under this policy in total in any one "Policy Year" is the largest Earthquake "Policy Year" limit of insurance even if the loss or damage involves more than one Earthquake "Policy Year" limit of insurance.

3. The Earthquake "Policy Year" Limit of Insurance as stated in the Property Choice Schedule of Premises and Coverages, is a part of and is included in the Limit of Insurance which applies to your "Scheduled Premises" as stated in the Property Choice Schedule of Premises and Coverage. The Earthquake "Policy Year" Limit of Insurance is not an additional Limit of Insurance.

4. If a Cause of Loss (such as fire) is covered by means of an exception to the Earth Movement Exclusion, in the Property Choice Covered Causes of Loss and Exclusions Form, we will also pay for the loss or damage caused by that other Covered Cause of Loss. But the most we will pay, for the total of all loss or damage caused by the Earthquake and other Covered Cause of Loss, is the Limit of Insurance applicable to such other Covered Cause of Loss. We will **not** pay the sum of the two Limits.

5. The most we will pay for loss or damage for Newly Acquired Premises under this endorsement is $250,000 in any one "Policy Year".

Insurance for each newly acquired premise you acquire by purchase or lease will end when any of the following first occurs:

a. This policy expires;

b. 180 days expire after you acquire the property;

c. You report values to us; or

d. The property is more specifically insured.

We will charge you additional premium for values reported from the date you acquire the property

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAUSES OF LOSS - FLOOD

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

**A. COVERAGE**

Flood is added as a Covered Cause of Loss applicable to the coverages provided under the Property Choice Coverage Part as stated in the Property Choice Schedule of Premises and Coverages. This Cause of Loss applies only to "Scheduled Premises" as shown in the Property Choice Schedule of Premises and Coverages.

Flood means:

**1.** Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not; or

**2.** Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.

**3.** Water under the ground surface pressing on, or flowing or seeping through:

   **a.** Foundations, walls, floors or paved surfaces;

   **b.** Basements, whether paved or not; or

   **c.** Doors, windows or other openings.

**4.** Flood includes water or other material that backs up or overflows from any sewer or septic tank or drain, if such back-up is caused by any of the conditions in **1.** or **3.** above regardless of the proximity of the back-up to such conditions.

All flooding in a continuous or protracted event will constitute a single flood.

**B. EXCLUSIONS**

**1.** Flood does not apply as a Covered Cause of Loss under the following Additional Coverages found in the Property Choice Specialized Property Insurance Coverages Forms and/or any applicable Business Interruption Additional Coverage Forms:

   **a.** Dependent Properties;

**b.** Newly Acquired Premises, except as provided by this endorsement;

**c.** Unnamed Premises; or

**d.** Utility Service Interruption.

**2.** The following items of property are not Covered Property under this Endorsement, whether or not they are Covered Property:

   **a.** Bulkheads, pilings, seawalls, docks, piers, wharves, retaining walls (whether or not attached to covered buildings), fences, and outdoor swimming pools.

   **b.** Open structures located on or partially over water.

   **c.** Personal property in the open or in open buildings or structures.

   **d.** Underground structures or underground equipment, and those portions of walls, driveways and other paved or poured surfaces outside the foundation walls of a covered structure.

   **e.** Structures which are primarily containers and their contents including storage tanks or similar equipment.  But we will pay for loss of or damage to silos and grain storage buildings and their contents.

   **f.** Any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 *et seq.* and the Coastal Barrier Improvement Act of 1190, Pub. L. 101-591, 16 U.S.C. 3501 *et seq.*

**3.** This Coverage does not apply to any Flood that began before the inception of this insurance.

**4.** Flood coverage as provided by this endorsement does not apply to the following Coverage Forms even if these Coverage Forms are attached to the Property Choice Coverage Part:

**Form PC 10 40 01 13**

© 2013, The Hartford

**a.** Legal Liability - Building Coverage Form, PC 00 30

**b.** Mortgageholders Errors and Omissions Coverage Form, PC 00 40.

**c.** Property Choice - 12 Month Business Income and Expense Coverage Form, PC 00 23.

**5.** To the extent that a tsunami causes the overflow of tidal waters, the exclusion of earthquake, in the Earth Movement Exclusion, does not apply.

## C. DEDUCTIBLE

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage for all coverages exceeds the applicable deductible shown in the Property Choice Schedule of Premises and Coverages. This deductible applies to all coverages including but not limited to Business Income and Extra Expense if such coverages are provided under this Coverage Part. We will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

**2.** If an hourly deductible is stated in the Property Choice Schedule of Premises and Coverage as applicable to Flood, then that hourly deductible is the only deductible that will apply to the Business Income loss caused by or resulting from Flood.

**3.** We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.

**4.** If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

## D. LIMITS OF INSURANCE

**1.** The Flood "Policy Year" Limit of Insurance stated in the Property Choice Schedule of Premises and Coverages is the most we will pay for all Flood loss or damage that occurs during any one "Policy Year", regardless of the number of premises covered under this policy, or the number of occurrences during the "Policy Year". Any amounts payable under any Coverage or Additional Coverage contained in this Coverage Part do not increase that Limit of Insurance except for Newly Acquired Property, as contained in this endorsement.

**2.** If two or more Flood "Policy Year" limits of Insurance are shown in the Property Choice Schedule of Premises and Coverages, the most we will pay under this policy in total in any one "Policy Year" is largest Flood "Policy Year" limit of insurance even if the loss or damage involves more than one Flood "Policy Year" limit of insurance.

**3.** The Flood "Policy Year" Limit of Insurance as stated in the Property Choice Schedule of Premises and Coverages is a part of and is included in the Limit of Insurance which applies to your "Scheduled Premises" as stated in the Property Choice Schedule of Premises and Coverage. The Flood "Policy Year" Limit of Insurance is not an additional Limit of Insurance.

**4.** In the event of covered ensuing loss, for example, loss caused by fire, explosion or sprinkler leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to Fire. We will **not** pay the sum of the Fire and Flood Limits.

**5. Excess of Loss Limitation**

If EXCESS OF LOSS LIMITATION APPLIES is stated in the Property Choice Schedule of Premises and Coverages at a "Scheduled Premises" and if the flood loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Property Choice Schedule of Premises and Coverage.

This provision does not apply to loss which cannot be covered under provisions of the above Act or amendments. If we pay for loss subject to this provision, the benefit of any recovery or salvage on such loss is ours to the extent of our payment.

**6. Newly Acquired Premises**

The most we will pay for loss or damage for Newly Acquired Premises under this endorsement is $250,000 which applies to all such loss or damage in any one "Policy Year" regardless of the number of premises covered under this policy, or the number of occurrences during the "Policy Year". Insurance for each newly acquired property you acquire will end when any of the following first occurs:

a. This policy expires;

b. 180 days expire after you acquire the property;

c. You report values to us; or

d. The property is more specifically insured.

We will charge you additional premium for values reported from the date you acquire the property.

### E. ADDITIONAL COVERAGE- DEBRIS REMOVAL

With respect to Flood Coverage, the Debris Removal Additional Coverage (and any additional limit for Debris Removal under a Limit of Insurance clause or an endorsement) is not applicable and is replaced by the following:

**Debris Removal**

1. We will pay your expense to remove debris of Covered Property and other debris that is on the "Scheduled Premises", when such debris is caused by or results from Flood.

   However, we will not pay to remove deposits of mud or earth from the grounds of the "Scheduled Premises".

2. We will also pay the expense to remove debris of Covered Property that has floated or been hurled off the "Scheduled Premises" by Flood.

3. This coverage for Debris Removal, as set forth in **E.1.** and **E.2.** above, does not increase the applicable Limit of Insurance for Flood. Therefore, the most we will pay for the total of debris removal and loss or damage to Covered Property (and if applicable Business Income or Extra Expense) is the Limit of Insurance for Flood that applies to the affected "Scheduled Premises" covered under this endorsement.

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAUSES OF LOSS - ELECTRONIC VANDALISM

This endorsement modifies insurance provided under the following:
**PROPERTY CHOICE COVERAGE PART**

## A.  COVERED CAUSES OF LOSS

**1.  Electronic Vandalism**

**a.**  Electronic Vandalism, as defined and limited below, is added as a Covered Cause of Loss.

**b.**  We will not pay for any Business Income loss or Rental Income loss caused by Electronic Vandalism that you sustain during the 6 hours (unless a different Waiting Period for Electronic Vandalism is indicated in the Property Choice Schedule of Premises or Coverages or by endorsement) that immediately follow the time when you first discovered the Electronic Vandalism. This Waiting Period serves as a deductible.   No other deductible applies to Business Income or Rental Income coverage.  This Waiting Period does not apply to Extra Expense.

**c.**  Electronic Vandalism as used in this Cause of Loss means:

**(1)**  The willful or malicious alteration, manipulation or destruction of "Electronic Data" whether or not there has been any physical loss or physical damage to "Electronic Data"; or

**(2)**  The addition of a virus, malicious code or similar instruction that disrupts the normal operation of "Computer Equipment" whether or not there has been any physical loss or physical damage to "Computer Equipment" or "Electronic Data".

**2.  Denial of Service – Business Income, Rental Income or Extra Expense**

Denial of Service Attack, as defined and limited below, is added as a Covered Cause of Loss with respect to the following coverages, if applicable: Business Income, Rental Income and Extra Expense. Denial of Service Attack means the malicious direction of a high volume of worthless inquiries to web site or e-mail destinations, effectively denying or limiting legitimate access.

This Coverage applies to Denial of Service Attacks:

**a.**  That originate anywhere in the world; and

**b.**  Whether or not there has been any physical loss or physical damage to "Electronic Data".

**c.**  We will not pay for any loss of Business Income or Rental Income that you sustain during the 12 hours (unless a different Waiting Period for this Coverage is indicated in the Property Choice Schedule of Premises or Coverages or by endorsement) that immediately follow the time when you first discovered the Denial of Service Attack. This Waiting Period serves as a deductible.   No other deductible applies to Business Income or Rental Income coverage.  This Waiting Period does not apply to Extra Expense.

**Form PC 10 83 01 13**

© 2013, The Hartford

    **d.** The most we will pay for the sum of all loss in any one occurrence due to Denial of Service Attack is $25,000.

  **3.** **Good Faith Advertising Expense**

    **a.** If we make payment for loss or damage caused by or resulting from Denial of Service or Electronic Vandalism as provided under the Denial of Service Attack, Electronic Vandalism or Web Site and Internet Services Coverages, we will pay for the reasonable advertising expenses you incur solely to regain customer good faith.

    **b.** The most we will pay for the sum of all reasonable advertising expenses under this provision in any one "Policy Year" is $25,000.

**B. VALUATION**

  **1.** Loss or damage to "Electronic Data" will be valued at your incurred cost of restoration or replacement, including the cost of data entry, reprogramming and computer consultation services. But we will not pay the cost to duplicate research that led to the development of your "Electronic Data" or any proprietary or confidential information or intellectual property in any form. To the extent that "Electronic Data" is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the "Electronic Data" was stored, with blank media of substantially identical type.

  **2.** If you recover, from a licenser or lessor, for loss or damage to "Electronic Data", our loss payment to you will be reduced by the amount of such recovery.

**C. LIMIT OF INSURANCE**

  **1.** Regardless of the number of coverages applicable, the most we will pay for all loss or all damage caused by or resulting from Electronic Vandalism in any one occurrence is the Limit of Insurance for Electronic Vandalism as stated in the Property Choice Schedule of Premises and Coverages, except as provided in **2.** below.

  **2.** The Limits of Insurance applicable to Web Site and Internet Services - Business Income, Rental Income or Extra Expense, and Good Faith Advertising Expense are in addition to the limit of insurance applicable to Electronic Vandalism Limit of Insurance.

**PROPERTY CHOICE**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - BUSINESS INCOME
### (BUSINESS INCOME)

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME COVERAGE FORMS**

The following exclusion applies to the "Scheduled Premises" stated for **Business Income Exclusion** in the Property Choice - Schedule of Premises and Coverages.

Coverage under any applicable Business Income Coverage Form does not apply to loss caused by or resulting from a Covered Cause of Loss at the specified "Scheduled Premises".  This includes loss at other premises which are interdependent with the designated "Scheduled Premises".

**Form PC 25 06 01 09**

**Page 1 of 1**

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLOOD - BUSINESS INCOME WAITING PERIOD

This endorsement modifies insurance under the following:

**PROPERTY CHOICE SPECIAL BUSINESS INCOME COVERAGE FORM**
**PROPERTY CHOICE BUSINESS INCOME COVERAGE FORM**
**PROPERTY CHOICE PROFESSIONAL BUSINESS INCOME COVERAGE FORM**
**PROPERTY CHOICE 12 MONTH BUSINESS INCOME COVERAGE FORM**
**CAUSES OF LOSS - FLOOD**

**Schedule Information if not stated below, is stated in the Property Choice Schedule of Premises and Coverages**

**Schedule**

| Scheduled Premises Number | Waiting Period: Number of Hours |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**A.** The following is added to **COVERAGE**:

   **1.** Coverage for Business Income will begin after the number of hours as indicated in the above Schedule after the time of direct physical loss or direct physical damage caused by or resulting from Flood at the above Scheduled Premises where the loss or damage occurred.

   **2.** The waiting periods as respects Additional Coverages: Civil Authority, Dependent Properties, Electronic Vandalism, Web Site and Communication Services, Utility Service Interruption are not changed.

© 2013, The Hartford

PROPERTY CHOICE



# QUICK REFERENCE
## BUSINESS CRIME

**Property Choice Common Crime Coverages Form**

A. Insuring Agreements

B. Additional Coverage – Claim Expense

C. Limit of Insurance

D. Deductible

E. Exclusions

F. Crime Common Conditions

    1. Conditions applicable to all Insuring Agreements

        a. Additional Premises or Employees

        b. Concealment, Misrepresentation or Fraud

        c. Consolidation – Merger or Acquisition

        d. Cooperation

        e. Duties in the Event of Loss

        f. Employee Benefit Plan(s)

        g. Extended Period to Discover Loss

        h. Joint Insured

        i. Legal Action Against Us

        j. Other Insurance

        k. Ownership of Property; Interests Covered

        l. Policy Bridge – Discovery Replacing Loss Sustained

        m. Records

        n. Recoveries

        o. Territory

        p. Transfer of Your Rights of Recovery Against Others to Us

        q. Valuation - Settlement

    2. Conditions Applicable to Insuring Agreement A.1. Employee Theft.

    3. Conditions Applicable to Insuring Agreement A.2. Forgery or Alteration.

    4. Condition Applicable To Insuring Agreement A.4. Outside the Premises – Theft of Money and Securities.

    5. Conditions Applicable To Insuring Agreement A.5. Computer Fraud.

G. Definitions



# PROPERTY CHOICE COMMON CRIME COVERAGES FORM
## (BUSINESS CRIME)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **G. Definitions**.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a corresponding Limit of Insurance is shown in the Property Choice Schedule of Premises and Coverages, or Endorsements and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Property Choice Declarations or during the period of time provided in the Extended Period To Discover Loss - CRIME COMMON CONDITION **F.1.g.**:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery or Alteration

**a.** We will pay for loss resulting from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st. Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2. a.** above, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses you incur and pay in that defense. The amount that we will pay is in addition to the limit of Insurance applicable to this Insuring Agreement.

### 3. Inside the Premises - Theft of Money and Securities

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premise" resulting from "theft", disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

### 4. Outside the Premises – Theft of Money and Securities

We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

©2009, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**5. Computer Fraud**

We will pay for loss of or damage to "money", "securities", and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

**a.** To a person (other than a "messenger") outside those "premises"; or

**b.** To a place outside those "premises".

**6. Money Orders and Counterfeit Paper Currency**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit" paper currency that is acquired during the regular course of business.

**B. Additional Coverage - Claim Expense**

**1.** In the event of covered loss or damage we will pay for reasonable expenses incurred by you at our specific request to assist us in:

**a.** The investigation of a claim or suit; or

**b.** The determination of the amount of loss, such as taking inventory or auditing business records.

**2.** The most we will pay in any one occurrence is $10,000. This is an additional amount of insurance.

**C. Limit of Insurance**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations, Schedules or Endorsements.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**D. Deductible**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the applicable Deductible Amount shown in the Declarations, Schedules or Endorsements. We will then pay for the amount of loss in excess of the Deductible amount, up to the Limit of Insurance. In the event that more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount will be applied.

**E. Exclusions**

**1.** This insurance does not apply to:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Of Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1. Employee Theft.**

**d. Confidential Information**

Loss resulting from:

**(1)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f.  Indirect Loss**

Loss that is an indirect result of any act or occurrence covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Property.

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g.  Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action except when covered under insuring Agreement **A. 2. Forgery or Alteration.**

**h.  Nuclear Hazard**

Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

**i.  Pollutants and Contaminants**

We will not pay for loss or damage caused by, resulting from, arising out of, or in any way related to the discharge, dispersal, seepage, migration, release or escape of Pollutants and Contaminants.

Pollutants and Contaminants as used in this exclusion means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste, or any other material which causes or threatens to cause physical loss, damage, impurity to property, unwholesomeness, undesirability, loss of marketability, loss of use of property or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

**j.  War and Similar Actions**

Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

**2.** Insuring agreement **A.1. Employee Theft** does not apply to:

**a.  Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit or loss computation.

However, were you to establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount claimed.

**b.  Trading**

Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

**c.  Warehouse Receipts**

Loss resulting from fraudulent or dishonest signing, issuing, canceling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3. Inside the Premises - Theft of Money and Securities -** and **A.4. Outside the Premises – Theft of Money and Securities,** do not apply to:

**a.  Accounting Or Arithmetic Errors Or Omissions**

Loss resulting from accounting or accounting or arithmetical errors or omissions.

**b.  Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c.  Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d.  Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e.  Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f. Transfer or Surrender Of Property**

**(1)** Loss of or damage to property that has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person; or

**(c)** As a result of a threat to do damage to any property.

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.4. Outside the Premises – Theft of Money and Securities** to loss of "money", or "securities" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.5. Computer Fraud** does not apply to:

**a. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b. Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer pay or deliver "funds" from your "transfer account".

**c. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit or loss computation.

**F. CRIME COMMON CONDITIONS**

The following Conditions apply in addition to the Common Policy Conditions:

**1. Conditions applicable to all Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Property Choice Declarations.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

**c. Consolidation – Merger or Acquisition**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons who become "Employees" or you acquire the use and control of any additional premises:

**(1)** You must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises". We may condition our consent upon payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties in the Event of Loss**

After you discover a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreements **A.1. Employee Theft** or **A.2. Forgery or Alteration**) involves a violation of a law you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Produce for our examination all pertinent records.

**(4)** Give us a detailed, sworn proof of loss within 120 days.

**(5)** Cooperate with us in the investigation and settlement of any claim.

**f. Employee Benefit Plan(s)**

**(1)** The "employee benefit plan(s)" shown in the Declarations, Schedules or endorsements are included as Insureds under Insuring agreement **A.1. Employee Theft**.

**(2)** If any "employee benefit plan(s)" is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1. Employee Theft** that is sufficient to provide a limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to losses sustained or "discovered" by any such Plan, Insuring Agreement **A.1. Employee Theft** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make to that Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** of commingled "funds" or "other property" of two or more Plans;

that arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limits of Insurance of all plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring agreement **A.1. Employee**

**Theft** does not apply to loss sustained by any "employee benefit plan(s)".

**g. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation or expiration. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "Employee" of any Insured is considered to be an "Employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the

coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**i. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1)** Primary Insurance

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations, Schedules or Endorsements bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

(ii) The Deductible Amount shown in the Declarations, Schedules or Endorsements;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

(2) Excess Insurance

(a) When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

(b) However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, Schedules or Endorsements, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

k. **Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

(1) That you own or lease;

(2) That you hold for others; or

(3) For which you are legally liable, except for property inside a premises of a "client" of yours.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

l. **Policy Bridge – Discovery Replacing Loss Sustained**

(1) If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this insurance became effective:

(a) We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the

extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

(b) However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations, Schedules or Endorsements.

We will not apply the Deductible Amount shown in the Declarations, Schedules or Endorsements to this excess loss.

(2) The Other Insurance Condition **E.1.k.** does not apply to this Condition.

m. **Records**

You must keep records of all Covered Property so we can verify the amount of any loss.

n. **Recoveries**

(1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this insurance.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**o. Territory**

This insurance covers acts committed or events occurring within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**p. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**q. Valuation - Settlement**

(1) Subject to Section **B. Limit of Insurance**, we will pay for:

(a) Loss of "Money" but only up to and including its face value. We may, at our option; pay for loss of "Money" issued by any country other than the United States of America:

(i) At face value of the "Money" issued by that country; or

(ii) In the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day the loss was discovered.

(b) Loss of "Securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(i) Pay the value of such "Securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "Securities"; or

(ii) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "Securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

i. Value of the "Securities" at the close of business on the day the loss was discovered; or

ii. Limit of Insurance.

(c) Loss of or damage to "other property" for the replacement cost of the property without deduction for depreciation as of the time of loss. However, we will not pay more than the least of the following:

(i) The Limit of Insurance applicable to the lost or damaged property;

(ii) The cost to replace the lost or damaged property with other property of comparable material and quality and used for the same purpose; or

(iii) The amount you actually spent that is necessary to repair or replace the lost or damaged property.

We will not pay on a replacement cost basis for any loss:

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

(2) We may, at our option, pay for loss of, or loss from damage to, property other than "Money":

(a) In the "Money" of the country in which the loss occurred; or

(b) In the United States of America dollar equivalent of the "Money" of the country in which the loss occurred determined by the rate of exchange published in the Wall Street Journal on the day the loss was discovered.

(3) Any property that we pay for or replace becomes our property.

2. **Conditions Applicable to Insuring Agreement A.1. Employee Theft**

   a. **Termination As To Any Employee**

   This Insuring Agreement terminates as to any "employee":

   (1) As soon as:

      (a) You; or

      (b) Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

   learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

   (2) On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

   We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

   b. **Territory**

   We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.n.** for a period of not more than 90 days.

3. **Conditions Applicable to Insuring Agreement A.2. Forgery or Alteration:**

   a. **Deductible Amount**

   The Deductible amount does not apply to legal expenses paid under Insuring Agreement **A.2. Forgery or Alteration.**

   b. **Electronic and Mechanical Signatures**

   We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

   c. **Proof of Loss**

   You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

   d. **Territory**

   We will cover loss you sustain anywhere in the world. The Territory Condition **E.1.n.** does not apply to Insuring Agreement **A.2. Forgery or Alteration.**

4. **Condition Applicable to Insuring Agreement A.4. Outside the Premises – Theft of Money and Securities**

   **Special Limit Of Insurance For Specified Property**

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

   (1) Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

   (2) Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

5. **Conditions Applicable To Insuring Agreement A.5. Computer Fraud**

   a. **Special Limit Of Insurance For Specified Property**

   We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

   b. **Territory**

   We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. COMMON CRIME CONDITION - Territory - **F.1.o.** does not apply to Insuring Agreement **A.6.**

G. **Definitions**

   1. "Banking Premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

   2. "Client" means any entity for whom you perform services under a written agreement.

   3. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

   4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

   5. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance

has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

6. "Employee":

  a. "Employee" means:

    (1) Any natural person:

      (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

      (b) Who you compensate directly by salary, wages or commissions; and

      (c) Who you have the right to direct and control while performing services for you;

    (2) Any natural person who is furnished temporarily to you:

      (a) To substitute for a permanent "employee" as defined in Paragraph (1) above, who is on leave; or

      (b) To meet seasonal or short-term workload conditions;

      while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

    (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph (2) above;

    (4) Any Natural person who is:

      (a) A trustee, officer, employee, administrator or manager who is an independent contractor, of any "employee benefit plan; and

      (b) A director or trustee of yours while that person is engaged in

handling "funds" or "other property" of any "employee benefit plan";

    (5) Any natural person who is a former "employee", director, partner, "member", "manager", representative or trustee retained as a consultant while performing services for you;

    (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the "premises".

    (7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

    (8) Any of your "managers", directors or trustees while:

      (a) Performing acts within the scope of the usual duties of an "employee"; or

      (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

  b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **5.a.**

7. "Employee benefit plan(s)" means any welfare or pension benefit plan shown in the Declarations, Schedules or endorsements, that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

8. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

9. "Fraudulent instruction" means:

  a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

  b. A written instruction (other than those described in Insuring Agreement **A.2.**

**Forgery or Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**10.** "Funds" means "money" and "securities".

**11.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**12.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**13.** "Messenger" means you, or a relative of yours, or any partners or "members", or any "employee" while having care custody of property outside the "premises".

**14.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**15.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1. Money and Securities**:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2. Forgery or Alteration**:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under All Other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the policy Period shown in the Declarations, before such Policy Period or both.

**16.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property excluded under this insurance.

**17.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**18.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**19.** "Theft" means the unlawful taking of "money", "securities', or "other property" to the deprivation of the Insured.

**20.** "Transfer Account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2. Forgery or Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**21.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

**A.** Paragraphs **1., 2., 3.** and **5.** of the **Cancellation** Common Policy Condition are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured, with postage fully prepaid, written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us or our authorized agent.

5. If this policy is canceled, we will send the first Named Insured any pro rata premium refund due.  The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

**B. NONRENEWAL**

The following is added and supersedes any other provisions to the contrary:

If we decide not to renew this policy, we will mail or deliver to the first Named Insured's last mailing address known to us or our authorized agent, written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing shall be sufficient proof of notice.

**Form PC 30 21 01 08**                                          **Page 1 of 1**

© 2007, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission)

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

### PROPERTY CHOICE COVERAGE PART

**A.** The following provision is added to the **CLAIM SETTLEMENT** Condition and the **MORTGAGEHOLDERS AND LENDER LOSS PAYEES** Condition:

If a municipality has elected to apply the provisions of 1998 Michigan Public Act 217, a part of our payment for fire, explosion, vandalism, windstorm or hail, or riot or civil commotion loss or damage to your covered real property in that municipality will be withheld if the loss or damage is subject to the provisions of the Act.  The withheld amount will be paid either to:

**1.** The municipality;

**2.** You and the mortgageholder, if any; or

**3.** With your consent, the licensed contractor hired by you to perform repair, replacement, or removal services on the lost or damaged real property;

according to the provisions of Public Act 217. We will notify you, any mortgageholder, and the municipality of any loss subject to the provisions of Public Act 217.

**B.** The following applies to insurance provided under the Innkeepers Coverage Form, the Mortgageholders Errors and Omissions Coverage Form and the Legal Liability - Building Coverage Form:

**1.** The paragraphs relating to prejudgment interest in the **SUPPLEMENTARY PAYMENTS** provisions are replaced by the following:

Prejudgment interest awarded against the insured on that part of the judgment we pay.

**2.** Paragraphs relating to **DUTIES IN THE EVENT OF LOSS**, and **DUTIES IN THE EVENT OF ACCIDENT, CLAIM OR SUIT** are replaced by the following:

If a claim is made or "suit" is brought against you, you must see to it that we receive prompt notice of the claim or "suit".

The following is required under Innkeepers Coverage only:

**a.** Send us immediately, copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**b.** Authorize us to obtain records and other information; and

**c.** Cooperate with us in the defense, investigation or settlement of the claim or "suit";

**3.** Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

**4.** Failure to:

**a.** Give us prompt notice of an accident, claim or "suit"; or

**b.** Immediately send us copies of demands, notices, summonses or legal papers received in connection with a claim or "suit";

shall not invalidate a claim made by you if it shall be shown that it was not reasonably

**Form PC 31 21 07 04**  
**Page 1 of 2**

© 2004, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

possible to give us prompt notice or to immediately send us copies, and that you gave us notice and sent us copies as soon as was reasonably possible.

**C.** The following is added to the **LEGAL ACTION AGAINST US** Condition:

The time for commencing an action against us is tolled from the time you notify us of the loss or damage until we formally deny liability for the claim.

**D.** The **Appraisal** Condition is replaced by the following:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and independent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim on the grounds that it is not covered under this policy.

PROPERTY CHOICE



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PROTECTIVE SYSTEMS - FIRE

This endorsement modifies insurance provided under the following:

**PROPERTY CHOICE COVERAGE PART**

**1. Condition**

As a condition of this insurance, you are required to maintain the protective systems stated for the "Scheduled Premises" as stated in the Property Choice - Schedule of Premises and Coverages.

If any change in the system is made, report the change to us immediately.

The following descriptions **1.a.** through **1.d.** apply to the protective systems referenced in the Property Choice - Schedule of Premises and Coverages.

**a. Automatic Fire Extinguishing System** means:

**(1)** Any automatic fire protective or extinguishing system, including connected:

**(a)** Sprinklers and discharge nozzles;

**(b)** Ducts, pipes, valves and fittings;

**(c)** Tanks, their component parts and supports; and

**(d)** Pumps and private fire protective mains.

**(2)** Non-automatic fire protective systems, hydrants, standpipes and outlets, all when supplied from an automatic fire protective system.

Including any related supervisory services.

**b. Automatic Fire Alarm** is a system protecting the entire building, that is:

**(1)** Connected to a central station; or

**(2)** Reporting to a public or private fire alarm station.

**c. Security Service** is a system having recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**d. Service Contract** is a contract with a privately owned fire department providing fire protection service to the "Scheduled Premises".

**2. Exclusion**

We will not pay for loss or damage caused by or resulting from fire, if, prior to the fire, you:

**a.** Knew of any suspension or impairment of any protective system so described in the Property Choice - Schedule of Premises and Coverages and failed to notify us of that fact; or

**b.** Failed to maintain any protective safeguard so described in the Property Choice - Schedule of Premises and Coverages, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

© 2009, The Hartford



# DATA BREACH COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE. PLEASE READ ALL PROVISIONS CAREFULLY, AND CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this coverage part the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to the **DEFINITIONS** Sections.

# PART I - DATA BREACH EXPENSES

**UNDER PART ONE OF THIS COVERAGE PART, COVERAGE ONLY APPLIES WHEN A DATA BREACH OCCURS ON OR AFTER THE RETROACTIVE DATE AND BEFORE THE END OF THE POLICY PERIOD, AND THE DATA BREACH IS FIRST DISCOVERED DURING THE POLICY PERIOD AND REPORTED TO US WITHIN 30 DAYS OF THAT DISCOVERY. DATA BREACH EXPENSES WITHIN THE DEDUCTIBLE AMOUNT MUST BE PAID BY YOU AND DO NOT REDUCE THE LIMITS OF INSURANCE. COVERED DATA BREACH EXPENSES ABOVE THE DEDUCTIBLE ARE PAYABLE UNDER PART ONE OF THIS COVERAGE PART AND REDUCE THE LIMITS OF INSURANCE.**

## SECTION A - COVERAGES
### DATA BREACH EXPENSES
**1. Insuring Agreement**

   **a.** We will pay for "data breach expenses" that you incur as a result of a "data breach" of "personally identifiable information" to which this insurance applies. The amount we pay for "data breach expenses" is subject to a deductible and limited as described in Section **C** – Limits Of Insurance And Deductible.

   No other obligation or liability to pay sums or perform acts or services is covered.

   **b.** This insurance applies to "data breach expenses" only if:

     **(1)** The "data breach" involves "personally identifiable information" That is:

       **(a)** Held by you or on your behalf in the United States of America (including its territories and possessions), Puerto Rico or Canada; or

       **(b)** Stored in a laptop, notebook, netbook, smartphone, tablet or other similar electronic data storage device when such device is taken outside of the territory described in subparagraph **(a)** above by you or an employee on a business trip of ten (10) or fewer days duration;

     **(2)** The "data breach" occurs on or after the "retroactive date" and before the end of the "policy period";

     **(3)** The insured first becomes aware of the "data breach" during the "policy period";

     **(4)** At the time you applied for this insurance you had no knowledge of the "data breach"; and

     **(5)** The "data breach" is reported to us as soon as practicable, but in no event later than thirty (30) days after it is first discovered by the insured.

**2. Exclusions**

   Additional exclusions applicable to this coverage are located in Section **A** – Exclusions, under Part **III** – Terms And Conditions Common To Parts I and II. The exclusions that follow only apply to Part I.

   This insurance does not apply to:

   **a.** "Data breach expenses" incurred in connection with any criminal investigations or proceedings.

   **b.** Any costs or losses incurred by a person whose "personally identifiable information" was the subject of a "data breach", except as provided under the definition of "data breach expenses".

© 2012, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

c. "Data breach expenses" arising out of information that is stored or processed outside of the United States of America (including its territories and possessions), Puerto Rico or Canada and whose security is compromised in that jurisdiction

This exclusion does not apply to information stored in a laptop, notebook, netbook, smartphone, tablet or other similar electronic data storage device when such device is taken outside of the territory described above by you or an employee on a business trip of ten (10) or fewer days duration.

## SECTION B – WHO IS AN INSURED

The Who Is An Insured provisions applicable to this coverage are located in Section **B** – Who Is An Insured, under Part **III** – Terms And Conditions Common To Parts I and II.

## SECTION C – LIMITS OF INSURANCE AND DEDUCTIBLE

### 1. Limits Of Insurance

a. The Data Breach Expenses Limit shown in the Data Breach Coverage Declarations is the most we will pay for the sum of all "data breach expenses", regardless of the number of:

(1) Insureds;

(2) "Data breaches" that occur on or after the "retroactive date" and before the end of the "policy period"; or

(3) Persons impacted by "data breaches".

b. Subject to Paragraph **a.** above, sublimits apply for the following "data breach expenses":

(1) The most we will pay for "good faith advertising services" arising out of any one "data breach" is the Good Faith Advertising Services Limit shown in the Data Breach Coverage Declarations.

(2) The most we will pay for "legal and forensic services" arising out of any one "data breach" is the Legal and Forensic Services Limit shown in the Data Breach Coverage Declarations.

The Limits of Insurance described in this Section apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed part of the "policy period" for determining the Limits of Insurance.

### 2. Deductible

a. We will not pay for "data breach expenses" as a result of any one "data breach" until the amount of the "data breach expenses" exceeds the Deductible amount shown in the Data Breach Coverage Declarations, regardless of the number of persons impacted by any such "data breach". Subject to any applicable limits or sublimits described in Paragraph **1.** above, we will then pay the amount of "data breach expenses" in excess of the Deductible, up to the applicable Limit of Insurance.

b. The terms of this insurance, including those with respect your duties in the event of a "data breach", apply irrespective of the application of the deductible amount.

## SECTION D – CONDITIONS

Additional conditions applicable to this coverage are located in Section **C** – Conditions, under Part **III** – Terms And Conditions Common To Parts I and II. The conditions that follow only apply to Part I.

### 1. Duties In The Event Of A Data Breach

a. You must report any "data breach" to us within thirty (30) days of your discovery of the "data breach", and you must:

(1) Immediately record the specifics of the "data breach", and the date discovered;

(2) Cooperate with us in the investigation of the "data breach";

(3) Assist us, upon our request, in the enforcement of any right against any person or organization which may have accessed, lost, stolen or disclosed the information or data giving rise to a "data breach"; and

(4) Comply with any other conditions described in the Duties In The Event Of A Data Breach condition in Part III.

b. You have up to one year from the date of the discovery of a "data breach" to initiate the services provided to you by the provider(s) described in Paragraph **2.** below.

### 2. Approved Third-Party Providers

"Data breach expenses" will only be paid if provided by our designated third-party provider(s) or by a third-party provider that is approved by us prior to the start of any services. You will have a direct relationship with the provider and all services providers work for you.

We are not liable for any act or omission by any third-party provider of services.

**DATA BREACH COVERAGE FORM**

**SECTION E – DEFINITIONS**

Additional definitions applicable to this coverage are located in Section **D** – Conditions, under Part **III** – Terms And Conditions Common To Parts I and II. The definitions that follow only apply to Part I.

1. "Data breach expenses" include reasonable:

   a. Expenses incurred to notify a person whose "personally identifiable information" was the subject of a "data breach". This includes overtime wages and other costs of your employees above and beyond their normal compensation, the costs of other persons or organizations you hire to assist you with the notification process, and the development, preparation, production and distribution costs of printed matter used in the notification process. Printed matter includes matter in an electronic document format intended to be capable of being printed.

   b. Fees and costs you incur due to the use of professional crisis management, law, public relations, media relations or similar firms in order to mitigate any negative publicity and restore your image in the public's eye in the wake of a "data breach".

   c. Monitoring service expenses that are reasonable and necessary to provide victims with credit, fraud, public records or other monitoring alerts for up to one year from the date the victim enrolls in such services, if determined to be warranted by us or the service provider.

   d. "Good faith advertising services"; and

   e. "Legal and forensic services".

2. "Good faith advertising services" means the costs you incur for advertising or any other radio, television, Internet, or print media responses that are reasonable and necessary to mitigate any negative publicity and restore your image in the public's eye in the wake of a "data breach".

3. "Legal and forensic services" mean costs you incur after a "data breach" to:

   a. Obtain the opinion of legal counsel as to the specific form, content and method of notification and costs associated with verifying that you are in compliance with any applicable statutes or regulations; and

   b. Obtain information technology services or other services to determine the nature and extent of the "data breach" and what type and whose "personally identifiable information" may have been accessed or compromised. This includes the investigation of computer hacking incidents, database fraud or a determination of whether the "data breach" resulted in any lost or stolen property.

# PART II - DATA BREACH DEFENSE AND LIABILITY

> **PART TWO OF THIS COVERAGE PART APPLIES ONLY IF A LIMIT IS SHOWN FOR DATA BREACH – DEFENSE AND LIABILITY IN THE DATA BREACH COVERAGE DECLARATIONS. IF NO LIMIT IS SHOWN, ONLY PARTS I AND III OF THIS COVERAGE PART APPLY.**

> **UNDER PART TWO OF THIS COVERAGE PART, COVERAGE ONLY APPLIES TO DATA BREACH CLAIMS WHEN THE DATA BREACH OCCURS ON OR AFTER THE RETROACTIVE DATE AND BEFORE THE END OF THE POLICY PERIOD. DATA BREACH CLAIMS MUST BE FIRST MADE DURING THE POLICY PERIOD AND REPORTED TO US WITHIN 30 DAYS OF YOUR FIRST NOTICE OF THE CLAIM, AND IN NO EVENT LATER THAN 30 DAYS AFTER THE END OF THE POLICY PERIOD. THE LIMITS OF INSURANCE WILL BE REDUCED OR EXHAUSTED BY PAYMENT OF ANY COMBINATION OF LOSS OR SUPPLEMENTARY PAYMENTS. WHEN WE HAVE PAID OUR LIMITS OF INSURANCE, OUR RIGHT AND DUTY TO DEFEND ANY INSURED AGAINST A SUIT ENDS.**

## SECTION A - COVERAGES

### DATA BREACH DEFENSE AND LIABILITY

1. **Insuring Agreement**

    a. We will pay, on behalf of the insured, for "loss" resulting from a "data breach claim" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" that results from a "data breach claim". However, we will have no duty to defend the insured against any "suit" resulting from any "data breach claim" to which this insurance does not apply. We may, at our discretion, investigate any "data breach" and settle any "data breach claim" or "suit" that may result. But:

       (1) The amount we pay for "loss" and Supplementary Payments is limited as described in Section **C** – Limits Of Insurance; and

       (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "loss" and Supplementary Payments.

       No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b. This insurance applies to "loss" only if:

       (1) The "data breach claim" arises out of a "data breach" that takes place in the "coverage territory";

       (2) The "data breach" occurs on or after the "retroactive date" and before the end of the "policy period";

       (3) A "data breach claim" is first made against any insured, in accordance with Paragraph **(4)** below, during the "policy period" or any Extended Reporting Period we provide under Section **E** – Extended Reporting Periods; and

       (4) As a condition precedent to coverage, you provide us with notice of any "data breach claim" as soon as practicable, but no later than thirty (30) days from the day any such "data breach claim" is received, and in no event later than thirty (30) days after the end of the "policy period".

    c. All "data breach claims" arising out of the same "data breach" shall be considered as one "data breach claim", and shall be deemed to have been first made on the earliest date that notice of the "data breach" was provided:

       (1) To us pursuant to Paragraph **b.(4)** above and the Duties In The Event Of A Data Breach conditions; or

       (2) Pursuant to any other insurance policy.

    d. All "data breach(es)" arising out of or resulting from the same or related, or series of related, facts, circumstances, situations, transactions or events shall be considered to be a single "data breach", regardless of the number of:

       (1) Persons whose "personally identifiable information" is accessed or compromised;

       (2) Claimants who file "data breach claims"; or

       (3) Parties that obtained access to the "personally identifiable information".

2. **Exclusions**

    Additional exclusions applicable to this coverage are located in Section **A** – Exclusions, under Part **III** – Terms And Conditions Common To Parts I and II. The exclusions that follow only apply to Part II.

    This insurance does not apply to "loss":

**DATA BREACH COVERAGE FORM**

**a.** Arising out of bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This exclusion does not apply to claims alleging mental injury, mental tension, mental anguish or emotional distress as a result of a covered "data breach claim".

**b.** Arising out of "property damage" or "personal and advertising injury".

**c.** In connection with any "suit" seeking only non-monetary damages.

**d.** Arising out of any shortcoming in a computer system that you knew about prior to the inception date of the policy but failed to correct. This includes any failure to maintain or upgrade computer system hardware or software for known flaws or deficiencies.

**e.** Arising out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**f.** Arising out of any discrimination of any kind, including but not limited to race, creed, religion, age, handicap, sex, marital status or financial condition.

**g.** In connection with any injury or damage alleged by:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**h.** Arising out of any intentional or knowing violation of the insured's privacy policy.

**i.** Arising out of the rendering of or failure to render any professional services for others, including without limitation, services performed by the insured for or on behalf of a customer or client.

**j.** Arising out of any breach of any express, implied, actual or constructive contract, warranty, guarantee or promise, including liability of others assumed by you under any contract or agreement or breach of contract. This exclusion does not apply to liability for damages that the insured would have in the absence of any such contract or agreement.

**k.** Arising out of a "data breach" involving information that is stored or processed by you or a vendor outside of the United States of America (including its territories and possessions), Puerto Rico or Canada.

This exclusion does not apply to information stored in a laptop, notebook, netbook, smartphone, tablet or other similar electronic data storage device when such device is taken outside of the territory described above by you or an employee on a business trip of ten (10) or fewer days duration.

**3. Supplementary Payments**

We will pay, with respect to any "data breach claim" we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "data breach claim" or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**d.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

e.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will reduce the limits of insurance.

## SECTION B – WHO IS AN INSURED

The Who Is An Insured provisions applicable to this coverage are located in Section **B** – Who Is An Insured, under Part **III** – Terms And Conditions Common To Parts I and II.

## SECTION C – LIMITS OF INSURANCE

The Data Breach Defense and Liability Limit shown in the Data Breach Coverage Declarations is the most we will pay for the sum of all "loss" resulting from "data breach claims" and all Supplementary Payments, regardless of the number of:

1.  Insureds;

2.  "Data breaches" that occur on or after the "retroactive date" and before the end of the "policy period"; or

3.  Persons impacted by "data breaches".

The Limits of Insurance described in this Section apply separately to each "policy period". If the "policy period" is extended after issuance for an additional period, such additional period will be deemed part of the "policy period" for determining the Limits of Insurance.

## SECTION D – CONDITIONS

Additional conditions applicable to this coverage are located in Section **C** – Conditions, under Part **III** – Terms And Conditions Common To Parts I and II. The conditions that follow only apply to Part II.

1.  **Duties In The Event Of A Data Breach**

    a.  If, during the "policy period", you become aware of any "data breach" that may lead to a "data breach claim", and, if written notice of such "data breach" is provided to us during the "policy period", then any "data breach claims" arising out of that "data breach" shall be deemed to be a "data breach claim" first made during the "policy period", on the date when we receive such notice, provided that the notice to us contains all of the information described in the Duties In The Event Of A Data Breach condition in Part III.

    b.  You must cooperate with us in the investigation, settlement or defense of the "data breach claim", and assist us, upon our request, in the enforcement of any right of recovery regarding any payment of "loss" under this Coverage Part. You shall execute any and all papers required, and do everything necessary to secure and preserve such rights, including the execution of any documents needed to enable us to bring suit in your name. You shall do nothing to prejudice our position or any potential or actual rights of recovery.

2.  **Refusal To Settle**

    If you refuse to consent to a settlement or compromise recommended by us and elect to contest the "data breach claim", our liability shall not exceed the amount for which we would have been liable for "loss" if the "data breach claim" had been so settled when and as so recommended, and we shall have the right to withdraw from the further defense of the "data breach claim" by tendering control of the defense of it to you.

3.  **Separation Of Insureds**

    Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    a.  As if each Named Insured were the only Named Insured; and

    b.  Separately to each insured against whom a "data breach claim" is made or a "suit" is brought.

## SECTION E – EXTENDED REPORTING PERIODS

1.  **Basic Extended Reporting Period**

    We will automatically provide a Basic Extended Reporting Period if this Coverage Part is:

    a.  Cancelled or not renewed; or

    b.  Renewed or replaced by us with insurance that:

        (1)  Has a "retroactive date" later than the date shown in the Data Breach Coverage Declarations; or

        (2)  Does not apply on a claims-made basis.

    The Basic Extended Reporting Period begins with the end of the "policy period" and lasts for thirty (30) days. The Basic Extended Reporting Period is provided at no charge.

    Under this provision, you have thirty (30) days after the end of the "policy period" to report to us in writing "data breach claims" first made against any of you during the "policy period".

**DATA BREACH COVERAGE FORM**

**2. Supplemental Extended Reporting Period**

A Supplemental Extended Reporting Period is available, but only by endorsement and for an extra premium charge. This supplemental period, if purchased, will run concurrently with the automatic Basic Extended Reporting Period set forth in Paragraph **1.** above.

You must give us a written request for the endorsement within thirty (30) days after the end of this "policy period". The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates.

**3. Extended Reporting Periods:**

  **a.** Do not reinstate or increase the Limits of Insurance;

  **b.** Do not extend the "policy period" or change the scope of coverage provided. They apply only to "data breach claims" for "data breaches" that occur on or after the "retroactive date" and before the end of the "policy period"; and

  **c.** Once in effect, may not be canceled.

**SECTION F – DEFINITIONS**

Additional definitions applicable to this coverage are located in Section **D** – Definitions, under Part **III** – Terms And Conditions Common To Parts I and II. The definitions that follow only apply to Part II.

**1.** "Coverage territory" means all parts of the world if the insured's liability for the "loss" is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits, according to the substantive law of United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to.

**2.** "Data breach claim" means a written demand for monetary or non-monetary relief based upon a "data breach" or a "suit" against an insured commenced by the filing of a complaint, indictment or similar document, seeking monetary or non-monetary relief based upon a "data breach".

**3.** "Loss" means civil awards, settlements and judgments (including any award) that you are legally obligated to pay as a result of a "data breach claim". "Loss" does not include fines, penalties or punitive damages, the cost of non-monetary relief or any amounts for matters deemed uninsurable pursuant to applicable law.

**4.** "Personal and advertising injury" means injury arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies;

  **d.** Disparagement, libel or slander;

  **e.** Publication, in any manner, of material that violates a person's right of privacy; or

  **f.** Any actual or alleged infringement or violation of any intellectual property right, such as advertising idea, copyright, patent, misappropriation of ideas, trade dress, slogan, title, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

**5.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property; or

  **b.** Loss of use of tangible property that is not physically injured.

**6.** "Suit" means a civil proceeding in which monetary damages are sought for a "data breach claim" to which this insurance applies. "Suit" includes an arbitration proceeding in which monetary damages are sought, and to which the insured must submit, or does submit with our consent, or any other alternative dispute resolution proceeding in which such damages are sought and to which the insured submits with our consent.

DATA BREACH COVERAGE FORM

# PART III - TERMS AND CONDITIONS COMMON TO PARTS I AND II

## SECTION A - EXCLUSIONS

The exclusions that follow apply to both Parts I and II of this Coverage Part.

This insurance does not apply to:

1. "Data breach expenses" or "loss" arising out of a "data breach" that was known to any insured prior to the "policy period".

2. "Data breach expenses" related to a "data breach", or "loss" arising out of a criminal, fraudulent or dishonest act, error or omission, any intentional or knowing violation of the law by any insured, or your intentional or willful participation in a "data breach".

3. Any fines, penalties, surcharges or any civil actions by a regulatory authority.

4. Any expenses arising out of any criminal investigations or proceedings or arising out of governmental action for the seizure or destruction of property by order of a governmental authority.

5. "Data breach expenses" or "loss" arising out of a failure to comply with any state, federal or self-regulatory requirement around minimum data security standards or requirements.

6. Any costs to correct a deficiency in your information systems, including but not limited to data security, data storage or physical security and procedures.

7. "Data breach expenses" related to a "data breach", or "loss" arising out of any failure to apply or improper application of necessary software patches.

8. "Data breach expenses" related to a "data breach", or "loss" arising out of any virus, worm, Trojan horse, logic bomb, bot or other malicious code, software, spyware or malware that is, on the date the "data breach" occurred, named and recognized by the CERT Coordination Center or any industry acceptable third-party antivirus, antimalware or other solution that monitors malicious code activity.

9. "Data breach expenses" or "loss", however caused, arising, directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

10. "Data breach expenses" or "loss" arising out of fire, smoke, explosion, lightning, wind, water, flood, tidal wave, tsunami, earthquake, volcanic eruption, landslide, mudslide, hail, solar activity, electromagnetic activity, other natural or weather-related disasters or acts of God, however caused.

11. Any expense incurred in anticipating or reacting to the threat of a "data breach", or payment made, or other expense incurred, to meet any extortion, blackmail or ransom demand.

12. "Data breach expenses" or "loss" arising out of nuclear reaction or radiation or radioactive contamination, however caused.

## SECTION B – WHO IS AN INSURED

These Who Is An Insured provisions apply to both Parts I and II of this Coverage Part.

If you are designated in the Declarations as:

1. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

2. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

3. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

4. An organization, other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors.

5. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

## SECTION C - CONDITIONS

The conditions that follow apply to both Parts I and II of this Coverage Part.

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**DATA BREACH COVERAGE FORM**

**2. Cancellation Or Nonrenewal**

Any cancellation or nonrenewal provisions or endorsements applicable to the policy in which this Coverage Part is included also apply to this Coverage Part.

**3. Duties In The Event Of A Data Breach**

**a.** Upon your discovery of a "data breach" or receipt of a "data breach claim", you must, as soon as possible, give us, and/or our agent, a description of how, when and where the "data breach" occurred, including but not limited to all of the following information as it becomes known to you:

**(1)** The method of "data breach";

**(2)** The approximate date and time of the "data breach";

**(3)** The approximate number of files compromised as a result of the "data breach";

**(4)** A detailed description of the type and nature of the information that was compromised;

**(5)** Whether or not the information was encrypted, and, if so, the level of encryption;

**(6)** Whether or not law enforcement has been notified;

**(7)** If available, a list of the states in which a person(s) whose "personally identifiable information" was the subject of a "data breach" are domiciled;

**(8)** If available, a list of who received the information contained in the "data breach" and

**(9)** Any other access, information or documentation we reasonably require to investigate or adjust the "loss".

**b.** You must take all reasonable steps to protect "personally identifiable information" remaining in your care, custody or control.

**c.** You must preserve, and permit us to inspect, all evidence of the "data breach".

**d.** Immediately upon discovery of a "data breach", you must take all reasonable steps to mitigate potential damages to third parties by providing reasonable and necessary notification, monitoring and other services, as directed through our designed third-party provider or by a third-party provider that is approved by us.

**e.** You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for "data breach expenses" we cover under Part **I** of this Coverage Part or "loss" we cover under Part **II** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If other insurance is also primary, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

This insurance is excess over any property or similar first-party insurance policies purchased by the insured that also provide coverage for "data breach expenses" resulting from a "data breach", whether primary, excess, contingent or on any other basis.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6. Representations**

By accepting this policy, you agree that:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**DATA BREACH COVERAGE FORM**

c. We have issued this policy in reliance upon your representations.

**7. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**SECTION D - DEFINITIONS**

The definitions that follow apply to both Parts I and II of this Coverage Part.

1. "Data breach" means the loss, theft, accidental release or accidental publication of "personally identifiable information", or circumstances objectively giving rise to a substantial risk that such a loss, theft, release or publication has occurred.

2. "Personally identifiable information" means an individual's:

   a. Social Security number;

   b. Driver's license number;

c. Fingerprints or other biometric data used to verify the identity of that individual;

d. Bank, brokerage, credit union or similar account numbers;

e. Credit or debit account numbers; or

f. Patient medical history, including any diagnosis received and a listing of medications prescribed.

"Personally identifiable information includes" the transaction history, PIN numbers or passwords connected with of any of the accounts described above, or any other applicable private information that may be defined by or protected under state or federal law.

3. "Policy period" means the time beginning with the effective date shown in the Declarations and ending with the earlier of:

   a. The date of termination or cancellation; or

   b. The expiration date shown in the Declarations.

4. "Retroactive date" means the date displayed as the Retroactive Date on the Data Breach Coverage Declarations. If no date is entered on that page, the "retroactive date" is the same as the effective date.



# QUICK REFERENCE
# COMMERCIAL GENERAL LIABILITY COVERAGE PART
# OCCURRENCE

## READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**

Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

**Beginning on Page**

**SECTION I - COVERAGES**

| | | |
|---|---|---|
| Coverage A - | Insuring Agreement | 1 |
| Bodily Injury | | |
| and Property | Exclusions | 2 |
| Damage Liability | | |
| Coverage B - | Insuring Agreement | 5 |
| Personal and | | |
| Advertising | Exclusions | 6 |
| Injury Liability | | |
| Coverage C - | Insuring Agreement | 7 |
| Medical Payments | Exclusions | 8 |
| Supplementary Payments Coverages A And B | | 8 |

**SECTION II - WHO IS AN INSURED** ........................................................... 9

**SECTION III - LIMITS OF INSURANCE** ..................................................... 12

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** ......... 13

Bankruptcy ........................................................................................... 13
Duties in The Event Of Occurrence, Offense, Claim or Suit  ............... 13
Legal Action Against Us ....................................................................... 13
Other Insurance ................................................................................... 14
Premium Audit ...................................................................................... 15
Representations ................................................................................... 15
Separation of Insureds ......................................................................... 15
Transfer of Rights of Recovery Against Others To Us  ......................... 15
When We Do Not Renew ...................................................................... 15

**SECTION V - DEFINITIONS** .................................................................... 15

**COMMON POLICY CONDITIONS**

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS**

These form numbers are shown on the Coverage Part - Declarations Page or on the Common Policy Declarations Page.

**Form HC 70 01 06 05**

© 2005, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

POLICY NUMBER: 81  UUN  BK0052

**COMMERCIAL GENERAL LIABILITY**
**CG 25 02 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

|  | Limits Of Insurance | |
|---|---|---|
| General Aggregate Limit | $_____ | |
| Products-Completed Operations Aggregate Limit | $_____ | |
| Personal & Advertising Injury Limit | $_____ | |
| Each Occurrence Limit | $_____ | |
| Damage To Premises Rented To You Limit | $_____ | Any One Premises |
| Medical Expense Limit | $_____ | Any One Person |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The limits of insurance shown in the Declarations are replaced by the limits designated in the Schedule or in the Declarations as subject to this endorsement with respect to which an entry is made.

**CG 25 02 07 98**          Copyright, Insurance Services Office, Inc., 1997          **Page 1 of 1**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CYBERFLEX
# AMENDMENT OF COVERAGE B - PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement broadens coverage for "your web site" or internet-related activities.

**A.** **Section V - Definitions** is changed as follows:

    **1.** **Definition Of Advertisement - Internet**

        The following is added to Paragraph **a.** of the definition of "advertisement":

        "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

        **a.** **(6)** The Internet;

    **2.** **Definition of Personal And Advertising Injury**

        **a.** **Your Web Site**

            Paragraphs **f.** and **g.** of the definition of "personal and advertising injury" are replaced by the following:

            "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

            **f.** Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement"; or

            **g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site".

        **b.** **Publication By Those With Unauthorized Access**

            The following is added to the definition of "personal and advertising injury":

            As used in this definition, oral, written or electronic publication includes publication of material in your care,

custody or control by someone not authorized to access or distribute that material.

    **3.** **Definition of Your Web Site**

        The following definition is added:

        "Your web site" means a web page or set of interconnected web pages prepared and maintained by you, or by others on your behalf, for the purpose of promoting your business or promoting your goods, products or services, that is accessible over an internet.

**B.** Paragraph **2.**, **Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability** is amended as follows:

    **1.** Exclusions **f.**, **g.** and **i.** are replaced by the following:

        **f.** **Breach Of Contract**

            "Personal and advertising injury" arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site";

        **g.** **Quality Or Performance Of Goods - Failure To Conform To Statements**

            "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

        **i.** **Infringement Of Intellectual Property Rights**

            **(1)** "Personal and advertising injury" arising out any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade

© 2016, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

name, trade secret, trade dress, service mark or other designation of origin or authenticity; or

**(2)** Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

**(1)** Infringement, in your "advertisement" or on "your web site", of:

  **(a)** Copyright;

  **(b)** Slogan; or

  **(c)** Title of any literary or artistic work; or

  **(2)** Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement".

**2.** Exclusions **k.** - Electronic Chatrooms Or Bulletin Boards does not apply.

**3.** Subparagraphs **(1)**, **(2)** and **(3)** of Exclusion **p.** - Internet Advertisements And Content Of Others do not apply.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE - LEGAL LIABILITY FOR DAMAGE TO PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **a.** of the definition of "insured contract" in the **Definitions** Section is replaced by the following:
"Insured contract" means:

**a.**  A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

© 2005 The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM
DATA BREACH COVERAGE FORM
EDUCATORS PROFESSIONAL CHOICE POLICY
EMPLOYEE BENEFITS LIABILITY COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
LIBRARY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
MANUFACTURERS' ERRORS AND OMISSIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRINTER'S ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
PRODUCT RECALL EXPENSE COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

**A. Disclosure Of Federal Share Of Terrorism Losses**

The United States Department of the Treasury will reimburse insurers for a portion of such insured losses as indicated in the table below that exceeds the applicable insurer deductible:

| Calendar Year | Federal Share of Terrorism Losses |
|---|---|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 or later | 80% |

However, if aggregate insured losses attributable to "certified acts of terrorism" under the federal Terrorism Risk Insurance Act, as amended (TRIA) exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States Government has not charged any premium for their participation in covering terrorism losses.

**B. Cap On Insurer Liability For Terrorism Losses**

A "certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism under TRIA.  The criteria contained in TRIA for a "certified act of terrorism" include the following:

1. The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2. The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and

3. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA exceed

© 2015, The Hartford
(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

$100 billion in a calendar year and we have met, or will meet, our insurer deductible under TRIA we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro-rata basis in accordance with procedures established by the Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with Treasury procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, the inapplicability or omission of a terrorism exclusion, or the inclusion of Terrorism coverage, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, Pollution Exclusion, or War Exclusion.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DISCRIMINATION - AMENDMENT OF PERSONAL AND ADVERTISING INJURY DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Paragraph **h.** is added to the definition of "Personal and advertising injury" as follows:

**h.**  Discrimination that results in humiliation or other injury to the feelings or reputation of a natural person, provided that such discrimination is not committed by or at your direction, or the direction of any partner, member, manager, "executive officer", director, stockholder or trustee of the insured.

© 2016, The Hartford



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**d.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**e. Incidental Medical Malpractice And Good Samaritan Coverage**

  "Bodily injury" arising out of the rendering of or failure to render the following health care services by any "employee" or "volunteer worker" shall be deemed to be caused by an "occurrence" for:

© 2016 The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**(1)** Professional health care services such as:

**(a)** Medical, surgical, dental, laboratory, x-ray or nursing services or treatment, advice or instruction, or the related furnishing of food or beverages;

**(b)** Any health or therapeutic service, treatment, advice or instruction; or

**(c)** The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or

**(2)** First aid services, which include:

**(a)** Cardiopulmonary resuscitation, whether performed manually or with a defibrillator; or

**(b)** Services performed as a Good Samaritan.

For the purpose of determining the limits of insurance, any act or omission together with all related acts or omissions in the furnishing of these services to any one person will be considered one "occurrence".

However, this Incidental Medical Malpractice And Good Samaritan Coverage provision applies only if you are not engaged in the business or occupation of providing any of the services described in this provision.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the

operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

**(b)** Not being used to carry persons for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment"; or

**(6)** An aircraft that is not owned by any insured and is hired, chartered or loaned with a paid crew. However, this exception does not apply if the insured has any other insurance for such "bodily injury" or "property damage", whether the other insurance is primary, excess, contingent or on any other basis.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement,

enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors

working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" arising from the use of elevators.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at the job site.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Access or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any "employment-related practices"; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r. Asbestos**

**(1)** "Bodily injury" or "property damage" arising out of the "asbestos hazard".

**(2)** Any damages, judgments, settlements, loss, costs or expenses that:

**(a)** May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

**(b)** Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

**(c)** Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating,

detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

**s. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**Damage To Premises Rented To You - Exception For Damage By Fire, Lightning Or Explosion**

Exclusions **c.** through **h.** and **j.** through **n.** do not apply to damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or

settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication, in any manner, of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

### g. Quality Or Performance Of Goods - Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

### i. Infringement Of Intellectual Property Rights

**(1)** "Personal and advertising injury" arising out of any actual or alleged infringement or violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, trade dress, service mark or other designation of origin or authenticity; or

**(2)** Any injury or damage alleged in any clam or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

**(1)** Infringement, in your "advertisement", of:

    **(a)** Copyright;

    **(b)** Slogan; or

    **(c)** Title of any literary or artistic work; or

**(2)** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.**, **b.** and **c.** of the definition of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the

insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Internet Advertisements And Content Of Others**

"Personal and advertising injury" arising out of:

(1) An "advertisement" for others on your web site;

(2) Placing a link to a web site of others on your web site;

(3) Content, including information, sounds, text, graphics, or images from a web site of others displayed within a frame or border on your web site; or

(4) Computer code, software or programming used to enable:

(a) Your web site; or

(b) The presentation or functionality of an "advertisement" or other content on your web site.

**q. Right Of Privacy Created By Statute**

"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

**r. Violation Of Anti-Trust law**

"Personal and advertising injury" arising out of a violation of any anti-trust law.

**s. Securities**

"Personal and advertising injury" arising out of the fluctuation in price or value of any stocks, bonds or other securities.

**t. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**u. Employment-Related Practices**

"Personal and advertising injury" to:

(1) A person arising out of any "employment-related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the injury-causing event described in the definition of "employment-related practices" occurs before employment, during employment or after employment of that person;

(2) Whether the insured may be liable as an employer or in any other capacity; and

(3) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**v. Asbestos**

(1) "Personal and advertising injury" arising out of the "asbestos hazard".

(2) Any damages, judgments, settlements, loss, costs or expenses that:

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

**w. Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, such costs do not include attorneys' fees, attorneys' expenses, witness or expert fees, or any other expenses of a party taxed to the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been

assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

   **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a. Employees And Volunteer Workers**

Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or that

"volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(1)(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

If you are not in the business of providing professional health care services:

**(a)** Subparagraphs **(1)(a)**, **(1)(b)** and **(1)(c)** above do not apply to any "employee" or "volunteer worker" providing first aid services; and

**(b)** Subparagraph **(1)(d)** above does not apply to any nurse, emergency medical technician or paramedic employed by you to provide such services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b. Real Estate Manager**

Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c. Temporary Custodians Of Your Property**

Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d. Legal Representative If You Die**

Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e. Unnamed Subsidiary**

Any subsidiary, and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of the Coverage Part.

The insurance afforded herein for any subsidiary not named in this Coverage Part as a named insured does not apply to injury or damage with respect to which such insured is also a named insured under another policy or would be a named insured under such policy but for its termination or the exhaustion of its limits of insurance.

**3. Newly Acquired Or Formed Organization**

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain financial interest of more than 50% of the voting stock, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**4. Nonowned Watercraft**

With respect to watercraft you do not own that is less than 51 feet long and is not being used to carry persons for a charge, any person is an insured while operating such watercraft with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the watercraft, and only if no other insurance of any kind is available to that person or organization for this liability.

However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person operating the watercraft; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**5. Additional Insureds When Required By Written Contract, Written Agreement Or Permit**

The following person(s) or organization(s) are an additional insured when you have agreed, in a written contract, written agreement or because of a permit issued by a state or political subdivision, that such person or organization be added as an additional insured on your policy, provided the injury or damage occurs subsequent to the execution of the contract or agreement.

A person or organization is an additional insured under this provision only for that period of time required by the contract or agreement.

However, no such person or organization is an insured under this provision if such person or organization is included as an insured by an endorsement issued by us and made a part of this Coverage Part.

**a. Vendors**

Any person(s) or organization(s) (referred to below as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business  and only if this Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

**(1)** The insurance afforded the vendor is subject to the following additional exclusions:

This insurance does not apply to:

**(a)** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** Any express warranty unauthorized by you;

**(c)** Any physical or chemical change in the product made intentionally by the vendor;

**(d)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**(f)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(h)** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

    **(i)** The exceptions contained in Sub-paragraphs **(d)** or **(f)**; or

    **(ii)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**(2)** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**b. Lessors Of Equipment**

**(1)** Any person(s) or organization(s) from whom you lease equipment; but only with respect to their liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

**(2)** With respect to the insurance afforded to these additional insureds this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**c. Lessors Of Land Or Premises**

Any person or organization from whom you lease land or premises, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

With respect to the insurance afforded these additional insureds the following additional exclusions apply:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to lease that land; or

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**d. Architects, Engineers Or Surveyors**

Any architect, engineer, or surveyor, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or

omissions of those acting on your behalf:

**(1)** In connection with your premises; or

**(2)** In the performance of your ongoing operations performed by you or on your behalf.

With respect to the insurance afforded these additional insureds, the following additional exclusion applies:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**1.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**2.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services by or for you.

**e. Permits Issued By State Or Political Subdivisions**

Any state or political subdivision, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

With respect to the insurance afforded these additional insureds, this insurance does not apply to:

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or municipality; or

**(2)** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**f. Any Other Party**

Any other person or organization who is not an additional insured under Paragraphs **a.** through **e.** above, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**(1)** In the performance of your ongoing operations;

**(2)** In connection with your premises owned by or rented to you; or

**(3)** In connection with "your work" and included within the "products-completed operations hazard", but only if

**(a)** The written contract or agreement requires you to provide such coverage to such additional insured; and

**(b)** This Coverage Part provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

However:

**(1)** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**(2)** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

With respect to the insurance afforded to these additional insureds, this insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**(1)** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(2)** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional services by or for you.

The limits of insurance that apply to additional insureds is described in Section **III** - Limits Of Insurance.

How this insurance applies when other insurance is available to the additional insured is described in the Other Insurance Condition in Section **IV** - Commercial General Liability Conditions.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1. The Most We Will Pay**

The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. General Aggregate Limit**

The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

**3. Products-Completed Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4. Personal And Advertising Injury Limit**

Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5. Each Occurrence Limit**

Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6. Damage To Premises Rented To You Limit**

Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

In the case of damage by fire, lightning or explosion, the Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

**7. Medical Expense Limit**

Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

**8. How Limits Apply To Additional Insureds**

If you have agreed in a written contract or written agreement that another person or organization be added as an additional insured on your policy, the most we will pay on behalf of such additional insured is the lesser of:

**a.** The limits of insurance specified in the written contract or written agreement; or

**b.** The Limits of Insurance shown in the Declarations.

Such amount shall be a part of and not in addition to Limits of Insurance shown in the Declarations and described in this Section.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a. Notice Of Occurrence Or Offense**

You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b. Notice Of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You or any additional insured must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c. Assistance And Cooperation Of The Insured**

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d. Obligations At The Insureds Own Cost**

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e. Additional Insureds Other Insurance**

If we cover a claim or "suit" under this Coverage Part that may also be covered by other insurance available to an additional insured, such additional insured must submit such claim or "suit" to the other insurer for defense and indemnity.

However, this provision does not apply to the extent that you have agreed in a written contract or written agreement that this insurance is primary and non-contributory with the additional insured's own insurance.

**f. Knowledge Of An Occurrence, Offense, Claim Or Suit**

Paragraphs **a.** and **b.** apply to you or to any additional insured only when such "occurrence", offense, claim or "suit" is known to:

**(1)** You or any additional insured that is an individual;

**(2)** Any partner, if you or the additional insured is a partnership;

**(3)** Any manager, if you or the additional insured is a limited liability company;

**(4)** Any "executive officer" or insurance manager, if you or the additional insured is a corporation;

**(5)** Any trustee, if you or the additional insured is a trust; or

**(6)** Any elected or appointed official, if you or the additional insured is a political subdivision or public entity.

This duty applies separately to you and any additional insured.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If other insurance is also primary, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1) Your Work**

That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2) Premises Rented To You**

That is fire, lightning or explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(3) Tenant Liability**

That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(4) Aircraft, Auto Or Watercraft**

If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability;

**(5) Property Damage To Borrowed Equipment Or Use Of Elevators**

If the loss arises out of "property damage" to borrowed equipment or the use of elevators to the extent not subject to Exclusion **j.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability;

**(6) When You Are Added As An Additional Insured To Other Insurance**

Any other insurance available to you covering liability for damages arising out of the premises or operations, or products and completed operations, for which you have been added as an additional insured by that insurance; or

**(7) When You Add Others As An Additional Insured To This Insurance**

Any other insurance available to an additional insured.

However, the following provisions apply to other insurance available to any person or organization who is an additional insured under this coverage part.

**(a) Primary Insurance When Required By Contract**

This insurance is primary if you have agreed in a written contract or written agreement that this insurance be primary. If other insurance is also primary, we will share with all that other insurance by the method described in **c.** below.

**(b) Primary And Non-Contributory To Other Insurance When Required By Contract**

If you have agreed in a written contract, written agreement, or permit that this insurance is primary and non-contributory with the additional insured's own insurance, this insurance is primary and we will not seek contribution from that other insurance.

Paragraphs **(a)** and **(b)** do not apply to other insurance to which the additional insured has been added as an additional insured.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

**a. When You Accept This Policy**

By accepting this policy, you agree:

**(1)** The statements in the Declarations are accurate and complete;

**(2)** Those statements are based upon representations you made to us; and

**(3)** We have issued this policy in reliance upon your representations.

**b. Unintentional Failure To Disclose Hazards**

If unintentionally you should fail to disclose all hazards relating to the conduct of your business that exist at the inception date of this Coverage Part, we shall not deny coverage under this Coverage Part because of such failure.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

**a. Transfer Of Rights Of Recovery**

If the insured has rights to recover all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b. Waiver Of Rights Of Recovery (Waiver Of Subrogation)**

If the insured has waived any rights of recovery against any person or organization for all or part of any payment, including Supplementary Payments, we have made under this Coverage Part, we also waive that right, provided the insured waived their rights of recovery against such person or organization in a contract, agreement or permit that was executed prior to the injury or damage.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the

nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. **"Advertisement"** means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   a. **(1)** Radio;

      **(2)** Television;

      **(3)** Billboard;

      **(4)** Magazine;

      **(5)** Newspaper; or

   b. Any other publication that is given widespread public distribution.

   However, "advertisement" does not include:

   a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

   b. An interactive conversation between or among persons through a computer network.

2. **"Advertising idea"** means any idea for an "advertisement".

3. **"Asbestos hazard"** means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

4. **"Auto"** means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

5. **"Bodily injury"** means physical:

   a. Injury;

   b. Sickness; or

   c. Disease

   sustained by a person and, if arising out of the above, mental anguish or death at any time.

6. **"Coverage territory"** means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in **a.** above;

      **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit" on the merits according to the substantive law in such territory or in a settlement we agree to.

7. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

8. **"Employment-Related Practices"** means:

   a. Refusal to employ that person;

   b. Termination of that person's employment; or

   c. Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.

9. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

10. **"Hostile fire"** means one which becomes uncontrollable or breaks out from where it was intended to be.

11. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

12. **"Insured contract"** means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is subject to the Damage to

Premises Rented To You Limit described in Section III - Limits of Insurance;

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, including an easement or license agreement in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

However, Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(1)** above and supervisory, inspection, architectural or engineering activities.

**13. "Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**14. "Loading or unloading"** means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15. "Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17. "Personal and advertising injury"** means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral, written or electronic publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral, written or electronic publication, in any manner, of material that violates a person's right of privacy;

**f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

**18. "Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**19. "Products-completed operations hazard"**:

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**20. "Property damage"** means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

As used in this definition, computerized or electronically stored data, programs or software are not tangible property. Electronic data means information, facts or programs:

**a.** Stored as or on;

**b.** Created or used on; or

**c.** Transmitted to or from;

computer software, including systems and applications software, hard or floppy disks, CD-

ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

22. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

23. **"Volunteer worker"** means a person who

   **a.** Is not your "employee";

   **b.** Donates his or her work;

   **c.** Acts at the direction of and within the scope of duties determined by you; and

   **d.** Is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

24. **"Your product"**:

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **(a)** You;

       **(b)** Others trading under your name; or

       **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

25. **"Your work"**:

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - SILICA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM
EDUCATORS PROFESSIONAL CHOICE POLICY
EMPLOYERS LIABILITY AND STOP GAP COVERAGE FORM
ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
MANUFACTURERS' ERRORS AND OMISSIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF TRANSPORTATION

**A.**   The following exclusion is added:

This insurance does not apply to:

**Silica**

Any injury, damage, loss, cost or expense, including but not limited to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or relating to, in whole or in part, the "silica hazard".

**B.**   The following is added to the **Definitions** Section:

"Silica hazard" means an exposure to, inhalation of or contact with, or threat of exposure to, inhalation of or contact with, the actual or alleged properties of silica or any silica containing materials and includes the mere presence of silica or any silica containing materials in any form.

Silica includes all forms of the compound silicon dioxide, including but not limited to quartz.

© 2015, The Hartford

**COMMERCIAL GENERAL LIABILITY**



# QUICK REFERENCE
# EMPLOYEE BENEFITS LIABILITY COVERAGE PART
# CLAIMS MADE

### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**
    Named Insured and Mailing Address
    Policy Period
    Description of Business and Location
    Coverages and Limits of Insurance

**SECTION I - COVERAGES**                                            **Beginning on Page**

| | | |
|---|---|---:|
| Coverage EB | Insuring Agreement | 1 |
| | Exclusions | 1 |
| | Supplementary Payments | 2 |

**SECTION II - WHO IS AN INSURED** .................................................. **2**

**SECTION III - LIMITS OF INSURANCE** .................................................. **2**

**SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS** .......... **3**
    Bankruptcy .................................................................................. **3**
    Duties in the Event of Employee Benefits Injury, Claim or Suit ...... **3**
    Legal Action Against Us ............................................................... **3**
    Other Insurance .......................................................................... **3**
    Premium Audit ............................................................................. **4**
    Representations .......................................................................... **4**
    Separation of Insureds ................................................................ **4**
    Transfer of Rights of Recovery Against Others To Us ................... **4**

**SECTION V - EXTENDED REPORTING PERIOD** ............................... **4**

**SECTION VI - DEFINITIONS** ............................................................... **5**

**COMMON POLICY CONDITIONS**
    Cancellation
    Changes
    Examination of Your Books and Records
    Inspections and Surveys
    Premiums
    Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS**
    These form numbers are shown on the Coverage Part - Declarations Page or on the Common Policy Declarations Page.

**Form HC 70 11 02 86**    Printed in U.S.A. **(NS)**

Copyright Hartford Fire Insurance Company, 1986



# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

**COVERAGE EB PROVIDES CLAIMS MADE COVERAGE.**
**PLEASE READ THE ENTIRE FORM CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words, "you" and "your" refer to the Named Insured shown in the Declarations. The words "we" "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning.

Refer to SECTION VI - DEFINITIONS.

## SECTION I - COVERAGE EB

**1. INSURING AGREEMENT.**

a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "employee benefits injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGE EB.** This insurance does not apply to "employee benefits injury" which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy period. The negligent act, error or omission must take place in the "coverage territory".

We will have the right and duty to defend any "claim" or "suit" seeking such "damages". But:

(1) The amount we will pay for "damages" is limited as described in **SECTION III - LIMITS OF INSURANCE;**

(2) We may, at our discretion, investigate any alleged act, error or omission and settle any "claim" or "suit" that may result; and

(3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage EB. This applies both to "claims" and "suits" pending at that time and to those filed thereafter.

b. This insurance applies to an "employee benefits injury" only if:

(1) A "claim" for "damages" because of the "employee benefits injury" is first made against any insured during the policy period; and

(2) At the time you applied for this insurance you had no knowledge of any "claim" or "suit" or of any "employee benefits injury" which might reasonably be expected to result in a "claim" or "suit," except as you had reported to us in writing at the time you so applied.

c. A "claim" by a person or organization seeking "damages" will be deemed to have been made when notice of such "claim" is received and recorded by an insured or by us, whichever comes first.

d. All "claims" for "damages" because of "employee benefits injury" to the same person or organization will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. EXCLUSIONS**

This insurance does not apply to:

a. Any civil or criminal liability imposed on the insured, arising out of:

(1) Any failure by the insured to comply with

© 1999, The Hartford

(Includes copyrighted material of Insurance Services Office
with its permission.  Copyright, Insurance Services Office, 1982, 1986, 1988, 1992)

**EMPLOYEE BENEFITS LIABILITY COVERAGE FORM**

any federal or state statutory or regulatory reporting requirement relating to an "employee benefits program;" or

(2) The commission or omission by an insured of any activity in connection with the management of assets of the "employee benefits program" which is prohibited under any federal or state statute or regulation.

For the purposes of this exclusion, civil or criminal liability includes pre or post judgement costs or expenses.

b. "Bodily injury," "property damage," "personal and advertising injury."

c. Any dishonest, fraudulent, criminal or malicious act.

d. The failure of any investment or saving program to perform as represented by an insured.

e. An "employee benefits injury" that arises out of advice given by any insured to an "employee" whether to participate or not to participate in any "employee benefits program."

f. The failure of any insured to:

(1) Perform any obligation;

(2) Fulfill any guarantee;

with respect to:

(1) The payment of benefits under any "employee benefits program;" or

(2) The providing, handling or investing of funds relating to any of these.

**3. SUPPLEMENTARY PAYMENTS - COVERAGE EB**

We will pay, with respect to any "claim" or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the "claim" or "suit," including actual loss of earnings up to $250 a day because of time off from work.

d. All costs taxed against the insured in the "suit."

e. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited

in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

b. Coverage EB does not apply to "employee benefits injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. "Claims" made or "suits" brought; or

   c. Person or organizations making "claims" or bringing "suit."

2. The Employee Benefits Liability Aggregate Limit is the most we will pay for all "damages" to which this insurance applies.

3. Subject to 2. above the Each Claim Limit is the most we will pay for all "damages" with respect to any one "claim".

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate    will   not relieve us of our obligations under this Coverage Part.

2. **Duties in The Event of Employee Benefits Injury, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "employee benefits injury" which may result in a "claim".  To the extent possible, notice should include:

      (1) How, when and where the "employee benefits injury" took place; and

      (2) The names and addresses of any injured persons and witnesses.

      Notice of an "employee benefits injury" is not notice of a "claim".

   b. If a written "claim" is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the "claim" or "suit".

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "employee benefits injury" to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

   If other valid and collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then we will share with all that other insurance by the method described in c. below.

**EMPLOYEE BENEFITS LIABILITY COVERAGE FORM**

b. Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, that is effective prior to the beginning of the policy period shown in the Declarations of this Coverage Part and applies to "damages" on other than a claims-made basis, if:

(1) No retroactive date is shown in the Declarations of this Coverage Part; or

(2) The other insurance has a policy period which continues after the Retroactive Date shown in the Declara-tions of this Coverage Part.

When this insurance is excess, we will have no duty to defend any "claim" or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon represen-tations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom "claim" is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

# SECTION V - EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:

a. This Coverage Part is cancelled or not renewed; or

b. We renew or replace this Coverage Part with insurance that:

(1) Has a Retroactive Date later than the date shown in the Declaration of this Coverage Part; or

(2) Does not apply to "employee benefits injury" on a claims-made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

a. One year for "claims" arising out of an "employee benefits injury" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of **SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS;** or

b. Sixty days for all other "claims".

The Basic Extended Reporting Period does not apply to "claims" that are covered under any subsequent insurance you purchase, or that would be covered but for exhaustion of the amount of insurance applicable to such "claims".

3. A Supplemental Extended Reporting Period of three years duration is available, but only by an endorsement and for an extra charge. This supplemental period starts:

a. One year after the end of the policy period for "claims" arising out of an "occurrence" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of **SECTION IV - EMPLOYEE BENEFITS LIABILITY CONDITIONS;** or

b. Sixty days after the end of the policy period for all other "claims".

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

a. The exposures insured;

b. Previous types and amount of insurance;

c. Limits of Insurance available under this Coverage Part for future payment of "damages," and

d. Other related factors.

The additional premium will not exceed 200% of the annual premium for this Coverage Part.

This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.

4. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" for "employee benefits injury" that occur before the end of the policy period (but not before the Retroactive Date, if any, shown in the Declarations).

"Claims" for such injury which are first received and recorded during the Basic Extended Reporting Period (or during the Supplemental Extended Reporting Period, if it is in effect) will be deemed to have been made on the last day of the policy period.

Once in effect, Extended Reporting Periods may not be cancelled.

5. Extended Reporting Periods do not reinstate or increase the Limits of Insurance applicable to any "claim" to which this Coverage Part applies, except to the extent described in paragraph 6. of this Section.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for "claims" first received and recorded during the Supplemental Extended Reporting Period.

The separate aggregate limit of insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period.

Paragraph 2. of **SECTION III - LIMITS OF INSURANCE** will be amended accordingly.

## SECTION VI - DEFINITIONS

As used in this coverage part:

1. "Administration" means:

a. Giving counsel to your employees or their dependents and beneficiaries, with respect to interpreting the scope of your "employee benefits program" or their eligibility to participate in such programs; and

b. Handling records in connection with "employee benefits program".

2. "Advertisement" means a dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

**EMPLOYEE BENEFITS LIABILITY COVERAGE FORM**

    **a.** **(1)** Radio;

        **(2)** Television;

        **(3)** Billboard;

        **(4)** Magazine;

        **(5)** Newspaper; or

    **b.** Any other publication that is given widespread public distribution.

    However, "advertisement" does not include the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products.

3. "Advertising idea" means any idea for an "advertisement".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

5. "Claim" means a written demand received by any insured for "damages" alleging "employee benefits injury", including the institution of a "suit" for such "damages" against any insured.

6. "Coverage territory" means:

    a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

    b. International waters or airspace, provided the "employee benefits injury" does not occur in the course of travel or transportation to or from any place not included in **a.** above.

7. "Damages" include prejudgment interest awarded against the insured on that part of the judgment we pay. "Damages" do not include:

    1. Fines;

    2. Penalties; or

    3. Damages for which insurance is prohibited by the law applicable to the construction of this Coverage Part.

8. "Employee" includes a "leased worker" which is not covered under a labor leasing firm's "employee benefits program". "Employee" does not include a "temporary worker".

9. "Employee benefits injury" means injury that arises out of any negligent act, error or omission in the "administration" of your "employee benefits programs".

10. "Employee benefits program" means a formal program or programs of employee benefits maintained in connection with your business or operation, such as but not limited to:

    a. Group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such insurance or plans; and

    b. Unemployment insurance, social security benefits, workers' compensation and disability benefits.

11. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication of material that violates a person's right of privacy.

    f. Copying, in your "advertisement", a person's or organization's "advertising ideas" or style of "advertisement" or

    g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

15. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

**EMPLOYEE BENEFITS LIABILITY COVERAGE FORM**

15. "Suit" means a civil proceeding in which damage because of "employee benefits injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

16. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**POLICY NUMBER**: 81 UUN BK0052

COMMERCIAL GENERAL LIABILITY
CG 20 26 04 13

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| **Name Of Additional Insured Person(s) Or Organization(s):** |
| --- |
|  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 26 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 1**

COMMERCIAL GENERAL LIABILITY



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
FARM LIABILITY COVERAGE

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to person or property which arises out of or would not have occurred in whole or in part but for the lead hazard; or

b. Arise out of any request, demand or order to:

   1. Identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize or mitigate or in any way respond to or assess the effects of the lead hazard; or

   2. As a result of such effects, repair, replace or improve any property.

c. Arise out of any claim or any "suit" for damages because of:

   1. Identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing or mitigating or in any way responding to or assessing the effects of the lead hazard; or

   2. As a result of such effects, repairing, replacing or improving any property.

As used in this exclusion, lead hazard means an exposure or threat of exposure to the actual or alleged properties of lead and includes the mere presence or suspected presence of lead in any form or combination.

Form HC 21 37 03 93

© 1993, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - FUNGI, BACTERIA AND VIRUSES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    MANUFACTURERS' ERRORS AND OMISSIONS LIABILITY COVERAGE PART
    EDUCATORS LEGAL LIABILITY COVERAGE FORM
    CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE FORM

This insurance does not apply to:

1.  Injury or damage arising out of or related to the presence of, suspected presence of, or exposure to:

    a.  Fungi, including but not limited to mold, mildew, and yeast;

    b.  Bacteria;

    c.  Viruses; or

    d.  Dust, spores, odors, particulates or byproducts, including but not limited to mycotoxins and endotoxins, resulting from any of the organisms listed in a., b., or c. above;

    from any source whatsoever.

2.  Any loss, cost or expense arising out of the testing for, monitoring of, cleaning up of, removal of, containment of, treatment of, detoxification of, neutralization of, remediation of, disposal of, or any other response to or assessment of, the effects of any of the items in 1.a., b., c. or d. above, from any source whatsoever.

However, this exclusion does not apply to "bodily injury" or "property damage" caused by the ingestion of food.

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MICHIGAN CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
CONDOMINIUM AND COOPERATIVE DIRECTORS AND OFFICERS LIABILITY COVERAGE PART
COUNSELING PROFESSIONAL ERRORS AND OMISSIONS LIABILITY COVERAGE PART
PRODUCT/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** For insurance provided under the following Coverage Parts:

COMMERCIAL GENERAL LIABILITY

PRODUCTS/COMPLETED OPERATIONS LIABILITY

The paragraph relating to prejudgment interest in **SUPPLEMENTARY PAYMENTS**, in **SECTION I – COVERAGES** is replaced by the following:

Prejudgment interest awarded against the insured on that part of the judgment we pay.

**B.** The following are added to the Duties Condition in the Conditions Section and supercede any provisions to the contrary:

**1. Notice To Our Agent**

Notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

**2. Failure To Give Timely Notice**

Failure to give any notice required by this Condition within the time period specified shall not invalidate any claim made by you if it shall be shown not to have been reasonably possible to give notice within the prescribed time period and that notice was given as soon as was reasonably possible.

**Form HG 01 68 02 07**

© 2007, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

## IMPORTANT NOTICE TO POLICYHOLDER

## DISCLOSURE FORM
## CLAIMS MADE POLICY

## EMPLOYEE BENEFITS LIABILITY

**THIS DISCLOSURE FORM IS NOT YOUR POLICY.   IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS MADE POLICY.  READ YOUR POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED.  ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.**

Your policy is a claims made policy.  It applies only to claims made against you after the inception date and before the end of the policy period involving injury or damage that occurs after the policy Retroactive Date.   Upon termination of your policy, an Extended Reporting Period may be available.

### OCCURRENCE VS. CLAIMS MADE
There is no difference in the kinds of injury and damage covered by either an "occurrence" policy or a "claims made" policy.  Claims for damages may be assigned to different policy periods, however, depending on which policy you have purchased.

In an "occurrence" policy, coverage is provided for liability that **occurs during the policy period, no matter when the claim is made.**

In your "claims made" policy, coverage is provided for liability **if the claim for damages is first made during the policy period.**  The claim must be a demand for damages by an injured party but it does not have to be in writing. Under most circumstances, a claim is considered made when it is received and recorded by you or by us; but sometimes, a claim may be deemed made at an earlier time.  This can happen when another claim for the same injury has already been made or when the claim is received and recorded during an extended reporting period.

### PRINCIPAL BENEFITS
This policy provides coverage for up to the maximum dollar limit specified in the policy.

The principal benefits and coverages are explained in detail in your claims made policy.  Please read it carefully and consult your agent about any questions you might have.

### EXCEPTIONS, REDUCTIONS AND LIMITATIONS
Your claims made policy contains certain exceptions, reductions and limitations.  Please read them carefully and consult your agent about any questions you might have.

### RENEWALS, TAILS AND EXTENDED REPORTING PERIODS
Your claims made policy has some unique features relating to renewal, extended reporting periods, and coverage of occurrences with long periods of exposure.  These special claims made provisions are described below:

---

**Form G-2974-3 (9/01 Edition)**                                                                                                      **Page 1 of 2**
© 2001, The Hartford

**"Special Claims Made" provisions**

Two concepts relating to continuity of coverage under the "claims made" policy are especially important to understand. These involve the **Retroactive Date** and the **Extended Reporting Period.**

1. **RETROACTIVE DATE**

   When you have a Retroactive Date entered on the Declarations page, **there is no coverage for injury or damage that occurred before the Retroactive Date, even if the claim is first made during the policy period.**

   If there is no Retroactive Date entered on the Declarations page, the Retroactive Date is the Inception Date of the Policy Period stated in item 2 of the Common Policy Declarations. If previous "occurrence" type policy also applies to the same injury or damage, your "claims made" policy will be excess - that is, it will apply only after the previous Limit of Liability is exhausted.

   A Retroactive Date normally **cannot be moved ahead in time, except under certain circumstances,** e.g., you changed insurers; there is a substantial change in your operations that increases your exposure to loss; you failed to provide us with information you knew about the nature of your business or premise, and then only with your written consent. It is important to understand how the "claims made" coverage Extended Reporting Period guarantee continuity or coverage if you are offered a renewal or replacement policy with a later Retroactive Date than the one in your current policy.

2. **EXTENDED REPORTING PERIODS OR "TAILS"**

   **WARNING:** If a claim is made **after** the termination of your claims made policy, you may not have coverage for that claim unless you purchase an Extended Reporting Period or "tail" endorsement, which must be offered to you with at least the aggregate limits of your terminated policy, for at least one year, at a premium not to exceed 200% of your terminated policy premium.

   Carefully review the policy provisions regarding the available Extended Reporting Period, especially the length of coverage and price, **and** the time during which you must purchase or accept any offered extended reporting period.

**AVAILABILITY OF LOSS INFORMATION**

Upon your written request and within 30 days thereafter, we will furnish you:

   a. Information on closed claims as respects the date of claim and the amount(s) paid, if any; and

   b. Information on open claims as respects the date of claim and the amount of reserve, if any. Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

**THE FOLLOWING APPLIES ONLY IF YOUR EBL COVERAGE HAS BEEN RENEWED WITH THE HC 00 21 11 93 EDITION OF THE EBL COVERAGE FORM**

1. We removed the "any liability" wording from exclusion a., and substituted "civil or criminal liability". This change clarifies our coverage grant. We intend to pay for liability due to your errors in handling records with respect to your employee benefits programs and in the giving of counsel with respect to interpreting the scope of such programs and eligibility to participate in any such program (refer to exclusion e).

2. We modified exclusion f. for purposes of clarity.

3. We removed paragraph c. from definition 1. since paragraph c. has been confused with exclusion e.

4. We broadened coverage by adding "mental anguish" to definition 3.

5. We added new definitions for:

   a. "employee";

   b. "executive officer";

   c. "leased worker"; and

   d. "temporary worker".



# NOTICE TO MICHIGAN POLICYHOLDERS

**This policy or bond is exempt from the filing requirements of section 2236, 2401 and 2601 of the insurance code of 1956, 1956 PA 218, MCL 500.2236.**

© 2003, The Hartford



## PRODUCER COMPENSATION NOTICE

You can review and obtain information on The Hartford's producer compensation practices at
www.TheHartford.com or at 1-800-592-5717.

**Form G-3418-0**



# IMPORTANT NOTICE TO POLICYHOLDERS
# THE HARTFORD CYBER CENTER WEBSITE ACCESS

Thank you for choosing The Hartford for your business insurance needs.

You are receiving this Notice because you purchased a general liability or property policy from The Hartford, which includes access to The Hartford Cyber Center. This portal was created because we recognize that businesses face a variety of cyber-related exposures and need help managing the related risks. These exposures include data breaches, computer virus attacks and cyber extortion threats.

Through the Hartford Cyber Center, you have access to:

- o   A panel of third party incident response service providers
- o   Third party cybersecurity pre-incident service providers and a list of approved services to help protect your business before a cyber-threat occurs
- o   Risk management tools, including self-assessments, best practice guides, templates, sample incident response plans, and data breach cost calculators
- o   White papers, blogs and webinars from leading privacy and security practitioners
- o   Up-to-date cyber-related news and events, including examples of privacy and security related events

Accessing The Hartford Cyber Center is easy

1. Visit www.thehartford.com/cybercenter
2. Enter policyholder information
3. Access code: 952689
4. Login to The Hartford Cyber Center

Please be aware that:

- o   The Hartford Cyber Center is a proprietary web portal exclusively provided to customers of The Hartford. Please do not share the access code with anyone outside your organization.
- o   Registration is required to access the Cyber Center. You may register as many users as necessary.
- o   Contacting a service provider about any issue does not constitute providing The Hartford notice of a claim as required under your insurance policy. Read your insurance policy and discuss any questions with your agent or broker.
- o   The Hartford Cyber Center provides third party service provider references and materials for educational purposes only. The Hartford does not specifically endorse any such service provider within The Hartford Cyber Center and hereby disclaims all liability with respect to use of or reliance on such service providers. All service providers are independent contractors and not agents of The Hartford. The Hartford does not warrant the performance of the service providers, even if such services are covered under your policy. We strongly encourage you to conduct your own assessments of the service providers' services and the fitness or adequacy of such services for your particular needs. This Notice does not amend or otherwise affect the provisions of your policy.

The Hartford offers a variety of endorsements to your policy that can help protect your business from a broad range of cyber-related threats. Please review your coverage with your insurance agent or broker to determine the most appropriate cyber coverages and limits for your business.

If you have a claim, you can report it by calling The Hartford's toll-free claims line at **1-800-327-3636.**

Should you have any questions, please contact your insurance agent, broker or you may contact us directly.

We appreciate your business and look forward to being of continued service to you.

© 2016, The Hartford

POLICY NUMBER: 81  UUN  BK0052                          **COMMERCIAL GENERAL LIABILITY**
                                                        **CG 25 02 07 98**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF LIMITS OF INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

|                                               | **Limits Of Insurance** |                  |
| --------------------------------------------- | ----------------------- | ---------------- |
| General Aggregate Limit                       | $2,000,000              |                  |
| Products-Completed Operations Aggregate Limit | $2,000,000              |                  |
| Personal & Advertising Injury Limit           | $1,000,000              |                  |
| Each Occurrence Limit                         | $1,000,000              |                  |
| Damage To Premises Rented To You Limit        | $1,000,000              | Any One Premises |
| Medical Expense Limit                         | $10,000                 | Any One Person   |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The limits of insurance shown in the Declarations are replaced by the limits designated in the Schedule or in the Declarations as subject to this endorsement with respect to which an entry is made.

**POLICY NUMBER**: 81 UUN BK0052

**COMMERCIAL GENERAL LIABILITY**
**CG 20 26 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): |
|---|
| STEELCASE INC.<br>C/O MY COI<br>1075 BROAD RIPPLE AVE STE 313<br>INDIANAPOLIS, IN  46620 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**1.** In the performance of your ongoing operations; or

**2.** In connection with your premises owned by or rented to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**CG 20 26 04 13**

© Insurance Services Office, Inc., 2012

**Page 1 of 1**

The Hartford
PO BOX 33015
San Antonio  TX 78265



G A RICHARDS  COMPANY
520 32ND ST
GRAND  RAPIDS  MI 49508



**THE HARTFORD**

# POLICYHOLDER   NOTICE

Date:  09/11/17

Policy  Number:  81UUNBK0052

Renewal  Date: 12/31/17

The Hartford  Company:  Trumbull  Insurance  Company

Your  Hartford  Agent:  A J GALLAGHER  RISK  MGMT  SRVCS  INC

Your  Hartford  Agency  Code:  81150164

Dear Valued Hartford  Customer,

Your  current  policy  provided  by The Hartford  will expire  shortly.  The purpose  of this notice  is to advise  you
of changes  to your policy  for the upcoming  policy  term. This is not a request  for payment.  You will  receive  a
separate  bill for all or part of the premium  due for your upcoming  policy.

A.  <u>Policy   Premium</u>

The  premium  indicated  below  is based  on the underwriting  information  that we currently  have  on file and
may  be subject  to change  based  on additional  information  that may be developed  during  the underwriting
process.  If you  desire  additional  information  regarding  your premium  determination,  please  contact  your
agent  or broker,  or you may  contact  us directly.

Renewal  Premium  = $

B.  <u>Coverage   Changes  (if  applicable)</u>

Your  policy  for the upcoming  term will include  certain  reductions  or additional  restrictions  in coverage,  as
indicated  by an (x) below.

( )  Increase  in Deductible  to:

( ) Reduction  in Limits  to:

( )  Reductions  in Coverage:

(X) Other  Changes,  Clarifications  or Restrictions  in Coverage:

REFER  TO ADVISORY  NOTICE  OF COVERAGE  REDUCTION  REGARDING  RIDESHARING  IN
YOUR  UPCOMING  RENEWAL.

You  may  receive  other  notices  of coverage  changes  for the upcoming  policy  term  under  separate
cover.  Those  other  changes  will apply  in addition  to the changes  described  above.

C.  <u>Transfer  to Another  Company  of The Hartford</u>

( ) Your  policy  for  the  upcoming  term  will  be  written  by  another  insurance  company  of The Hartford.

Some  states  consider  the  change(s)  described  in this  notice  to be a nonrenewal  of your  prior  policy,  in which  case  this  is  our  notice  to you in compliance  with  the  applicable  law.

If  you  would  like  more  information  about  this  notice  or your  policy,  please  contact  your  agent  or broker,  or you  may  contact  us  directly.  We  look  forward  to continuing  our  relationship  and  fulfilling  your  insurance  needs.

Thank  you  for  your  business.



**THE HARTFORD**

# ADVISORY NOTICE OF COVERAGE REDUCTION REGARDING RIDESHARING

No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you have been provided. If there is any conflict between the Policy and this summary, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL.

Your policy for the upcoming term will include reduction in coverage as described below. This Notice provides information concerning ride-sharing arrangements through Transportation Network Companies (TNCs) and the resulting insurance implications for TNC drivers.

TNCs typically offer a ride-sharing service which uses smart-phone applications and other Internet-based platforms to connect passengers with drivers for the purpose of providing prearranged transportation services for compensation.

We are introducing mandatory exclusionary endorsement Public Or Livery Passenger Conveyance Exclusion. The endorsement is being attached to all new and renewal commercial auto policies, that are not already rated as public or livery risks. This endorsement provides that there is no coverage under this policy for any "loss" or "accident" that occurs during any period of time a covered "auto" is being used by an "insured" that is logged into a "transportation network platform". We are taking this action as commercial rideshare programs such as Uber, Lyft and Sidecar are becoming more common. Such TNC livery and passenger conveyance exposure is not contemplated in our current pricing and requires us to properly underwrite and price within our program guidelines.

Similar exclusions will also apply to Medical Payments Coverage, Personal Injury Protection, Uninsured/Underinsured Motorists Coverage, Uninsured Motorists Property Damage Coverage or coverage for damage to your auto if those coverages are present on your Commercial Auto Policy.

You should review your Commercial Auto policy carefully. If you have any questions regarding this Notice please contact us at the phone number listed on your Declarations page.

CAF-4498-0                                        © 2016, The Hartford
(Ed.03/17)          (Includes copyrighted material of Insurance Services Office with its permission.)

The Hartford
PO BOX 33015
San Antonio TX 78265



G A RICHARDS  COMPANY
520 32ND ST
GRAND RAPIDS MI 49508

**THE HARTFORD**

DATE: 09/11/17                                                    RENEWAL  DATE:  12/31/17

POLICY  NUMBER:  81UUNBK0052

YOUR HARTFORD  AGENT: A J GALLAGHER   RISK MGMT SRVCS INC

AGENCY  CODE:  81150164

INSURED:  G A RICHARDS  COMPANY

ADDRESS:  520 32ND ST, GRAND RAPIDS  MI 49508

Dear Hartford   Policyholder:

ADVANCE  CONDITIONAL   RENEWAL  NOTICE:  PROPERTY  CHOICE  UPDATES  AND CHANGES

State law provides that policyholders  receive advance  notice of any changes  to a renewal policy that may constitute  a reduction in coverage  from the expiring  policy. This notice is intended to provide you, as a valued  Hartford  insured,  with information   concerning   such changes to assist you in making  an informed  choice regarding  your continued  insurance  coverage.

The Property  coverage  contained  in your renewal policy contains  changes  that will be effective  for all policies  written  in your state. These changes  include both enhancements  and restrictions  in coverage and other changes to policy wording and format. A copy of the revised  forms will be attached to your renewal policy,  which will be sent to you in a later mailing.

PLEASE  REFER  TO THE ATTACHED  EXPLANATORY   NOTICE  (FORM G-4116).

In some states, changes  of this nature are considered  to be nonrenewals,  and if you choose not to accept these changes,  this letter constitutes  our notice of nonrenewal  to you. However, The Hartford desires  to provide  you with continued  coverage  under the new policy terms.

Important:  You may receive  notices of other changes  to your renewal policy coverages  and/or premium in addition to this one. Please note that all notices you receive will apply independently.

If you have any questions  about the renewal of your policy or your overall  insurance  program,  please contact  your Hartford  agent or broker.

Applicable   in New Jersey  and Virginia.  If you wish  to request  a review  of this change  in coverage,  you may address  it to the following:   New Jersey  Department   of Banking  and Insurance,  Division  of Enforcement  and Consumer  Protection,  P.O. Box  325, Trenton,  New Jersey  08625-0325.  Virginia  - Commissioner   of Insurance,  Bureau  of Insurance,  State  Corporation Commission,   P.O. Box 1157, Richmond,  VA 23218. Note: New Jersey  requires  an immediate  request  and Virginia  allows  15 days from  your receipt  of this notice.

IH 72 26 01 18                                        The Hartford

Hartford   Plaza, Hartford,  CT. 06115

# IMPORTANT  NOTICE
# PROPERTY  CHOICE  CHANGES

Thank you for trusting The Hartford with your Business Insurance needs.

You are receiving this Notice because your new policy includes some changes to the Property Insurance coverage available from The Hartford. These updates include changes that broaden coverage, reduce coverage, or clarify coverage. Below is a summary of coverage changes that have been made to your policy. For the complete details of all of your coverages, terms and conditions please refer to your new policy. If there is any conflict between your policy and this summary, the provisions of your policy shall prevail.

Please note that you have access to additional optional coverages not previously available to you under your prior policy. Please contact your Hartford representative if you have any questions.

## SUMMARY OF CHANGES

Section I. The following changes were made to the Property Choice Coverage Form:

1.  We have added that unmanned aircraft (drones), human tissues and bodily fluids are excluded.

2.  We separated the valuation provision applicable to Electronic Data and Valuable Papers.

3.  The revised Electronic Data valuation provision clarifies that we will not cover costs or expenses to identify or remediate vulnerabilities or to update, restore, replace, upgrade, maintain or improve Computer Equipment or computer systems, or to update, replace, restore or improve Electronic Data to a level beyond the condition in which it existed before the loss.

Section II. The following changes were made to the Property Choice - Specialized Property Insurance Coverages (SPICE) form, Industry Specific Specialized Property Insurance Coverage Forms and Specialized Property Insurance Coverages (SPICE PLUS) forms:

1.  Coverage is extended to include an ordinance enacted after a loss but before building permits are issued.

2.  New Construction at Scheduled Premises requires that Building coverage be provided for this Additional Coverage to apply.

3.  Sewer and Drain Back Up has been broadened to include "or other materials" that back up from a sewer or drain in addition to water.

4.  Transit requires that Business Personal Property coverage be provided for this Additional Coverage to apply.

5.  Transit Coverage Extension - FOB Shipments has been simplified by deleting the requirement that you must use all reasonable means to collect the amount due you from the buyer before making a claim. Coverage would only apply when you can not collect from the consignee.

Section III. The following changes were made to the following forms if attached to your policy:

Property Choice Business Income and Extra Expense - Additional Coverages
Property Choice Business Income - Additional Coverages
Property Choice Professional Business Income - Additional Coverages
Property Choice 12 Month Business Income - Additional Coverages
Property Choice Rental Income - Additional Coverages
Property Choice Extra Expense - Additional Coverages

Ingress Egress was revised from 30 days or $50,000 to 30 days. The limit is now included in the Business Income limit of insurance.

Section IV. The following changes were made to Property Choice - Covered Causes of Loss and Exclusions:

1.  Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment" exclusion has been revised so resulting loss caused by fire, explosion and sprinkler leakage is covered.

2.  Removed Exclusion for Theft of Laptops as Checked Baggage.

3.  Added limitation for theft of Electronic Data.

4.  Equipment breakdown coverage has been moved to its own cause of loss form with no change in coverage.

5.  The revised workmanship and repair exclusion provides for loss or damage that results from a specified cause of loss or by equipment breakdown.

Section V. The following changes were made to the Property Choice Cause of Loss - Electronic Vandalism form:

1.  The Electronic Vandalism definition has been revised to match the Electronic Vandalism exclusion found in the Covered Causes of Loss and Exclusions form.

2.  We deleted the Interruption of Computer Limitation and replaced it with a Limitation providing that coverage for Business Income, Rental Income or Extra Expense applies when the suspension of operations is caused by a network outage caused by or resulting from Electronic Vandalism.

3.  The revised Electronic Data valuation provision clarifies that we will not cover costs or expenses to identify or remediate vulnerabilities or to update, restore, replace, upgrade, maintain or improve Computer Equipment or computer systems, or to update, replace, restore or improve Electronic Data to a level beyond the condition in which it existed before the Electronic Vandalism.

4.  Under the revised Extra Expense provision, we will not cover costs or expenses to update or improve any Computer Equipment or computer system, to identify or remediate vulnerabilities in any Computer Equipment or computer system unrelated to the loss, or for any contractual liability or value of any contract. As respects Extra Expense, we clarified that we will not pay for ransom monies except as covered in the Electronic Extortion Demand Coverage Extension.

5.  We clarified that we will not pay for loss caused by theft, observation, publication, unauthorized access or loss of confidentiality of Electronic Data.

6.  We revised the form to state that the most we will pay in any one Policy Year from all occurrences is the lesser of the Limits applicable to Building, Business Personal Property, Business Income or Rental Income or Extra Expense or the Electronic Vandalism Policy Year Limit of Insurance. The Denial of Service Coverage Extension is now a Policy Year Limit of Insurance. The Limits of Insurance applicable to any Coverage, Additional Coverage, or Coverage Extension are included in the Electronic Vandalism Policy Year Limit of Insurance.

7.  We added a definition for Electronic Vandalism occurrence.

Form G-4116-0 (01/18)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

This endorsement forms a part of the Policy numbered below:



**POLICY NUMBER:** 81 UUN BK0052   K3

CHANGE  NUMBER:   003

**Policy Change Effective Date:** 02/06/17

**Named Insured:**  G A RICHARDS  COMPANY
　　　　　　　　SEE IH1204

**Producer's Name:**  A J GALLAGHER  RISK MGMT SRVCS INC

**Pro Rata Factor:**  ▇▇▇

**Description of Change(s):**


ANY CHANGES  IN YOUR PREMIUM WILL BE REFLECTED  IN YOUR NEXT BILLING
STATEMENT.  IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR
BANK ACCOUNT,  CHANGES  IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
　　　　　　　　THIS IS NOT A BILL.

ADDITIONAL  PREMIUM DUE AT THE CHANGE EFFECTIVE  DATE:    ▇▇▇▇▇
*INCLUDES ADDITIONAL  TERRORISM  PREMIUM OF   ▇▇▇

```
        ADDITIONAL  PREMIUM DUE         02/06/17
        REVISED  INSTALLMENT DUE         02/28/17
        REVISED  INSTALLMENT DUE         03/31/17
        REVISED  INSTALLMENT DUE         04/30/17
        REVISED  INSTALLMENT DUE         05/31/17
        REVISED  INSTALLMENT DUE         06/30/17
        REVISED  INSTALLMENT DUE         07/31/17
        REVISED  INSTALLMENT DUE         08/31/17
        REVISED  INSTALLMENT DUE         09/30/17
```

PROPERTY  CHOICE

HARTFORD  FIRE  INSURANCE  COMPANY

PROPERTY  CHOICE  COVERAGE  PART  IS  CHANGED

PROPERTY  CHOICE  - ADDITIONAL  COVERAGES



GENERAL  LIABILITY

HARTFORD  UNDERWRITERS  INSURANCE  COMPANY



Countersigned by　　　*Susan L. Castañeda*　　　　08/15/17
(Where required by law)　　Authorized Representative　　　Date

**Form  HM 12 01 01 07T**　　　　　　　　　　PAGE   1  (CONTINUED  ON NEXT  PAGE)

**POLICY CHANGES (Continued)**

**POLICY NUMBER**: 81 UUN BK0052   K3

FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS ADDED TO THIS POLICY
AT ENDORSEMENT ISSUE:  SEE ABOVE FOR COMPANY NAME

   GENERAL LIABILITY: HC12111185  (APPLIES TO HM0010)

FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS REVISED
AT ENDORSEMENT ISSUE:  SEE ABOVE FOR COMPANY NAME

   PROPERTY: PC20240109

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER:   003

**PROPERTY CHOICE**



<div style="text-align:center">

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROPERTY CHOICE - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

</div>

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE – SPECIALIZED PROPERTY INSURANCE COVERAGE ENDORSEMENT(S)**

<div style="text-align:center">

**Schedule**

</div>

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| NEWLY ACQUIRED COVERED PROPERTY: BUILDINGS: | $3,000,000 |
| NEWLY ACQUIRED COVERED PROPERTY: BUSINESS PERSONAL PROPERTY: | $1,500,000 |
| ACCOUNTS RECEIVABLE: | $1,000,000 |
| DEBRIS REMOVAL: | $1,000,000 |
| ORDINANCE OR LAW: (DEMOLITION & INCREASED COST OF CONSTRUCTION) | $5,000,000 |
| PROPERTY IN TRANSIT: | $250,000 |
| UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY (INCLUDING STOCK): | $1,000,000 |

**Form PC 20 24 01 09**

**Page 1 of 1**

© 2009, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE CHANGES



> **POLICY NUMBER:** 81 UUN BK0052
> CHANGE NUMBER:   003

It is agreed that the Schedule (Form HC 12 10) is changed as follows:

THE FOLLOWING IS ADDED:

DESCRIPTION OF HAZARDS:      PREMISES/OPERATION  COVERAGE

REFER TO:                    COMMERCIAL  GENERAL  LIABILITY
                             COVERAGE  PART  (FORM  HC  00  10)

PRMS/BLDG  NO:               015/001        TERR: 002
LOCATION:                    296 CAYUGA  DR
                             MOORESVILLE
                             NC   28117

CLASSIFICATION  CODE NUMBER
AND  DESCRIPTION:            61226
 BUILDINGS  OR  PREMISES - OFFICE - NOC - INCLUDING PRODUCTS AND/OR
 COMPLETED  OPERATIONS - PRODUCTS/COMPLETED  OPERATIONS LOSSES ARE SUBJECT
 TO THE  GENERAL  AGGREGATE  LIMIT

PREMIUM  AND  RATING  BASIS:   ███████████████████████████

EXPOSURE:

RATE:

ANNUAL  PREMIUM:

PREMIUM  CHANGE:

---

  TOTAL  PREMIUM  CHANGE
FOR  THIS  POLICY  CHANGE:     ████████

---

**Form HC 12 11 11 85T**  Printed in U.S.A.  (NS)

**POLICY NUMBER:**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# PER LOCATION - AMENDMENT OF GENERAL AGGREGATE SUBJECT TO MAXIMUM ANNUAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**LIMITS OF INSURANCE:**
The Limits of Insurance shown in the Declarations are amended by the following:

The Limits of Insurance, subject to all the terms of this policy that apply, are:

| | |
|---|---|
| Each Occurrence Limit | $ See Declarations Page |
| Personal and Advertising Injury Limit | $ See Declarations Page |
| Damage to Premises Rented to You – Any One Premises | $ See Declarations Page |
| Medical Expense Limit - Any One Person | $ See Declarations Page |
| General Aggregate Limit | $ |
| Location General Aggregate Limit | $ |
| Maximum Annual Aggregate Limit | $ |
| Products-Completed Operations Aggregate Limit | $ See Declarations Page |

In return for the payment of the premium when due and subject to all the terms of the Commercial General Liability Coverage Part not expressly modified herein, we agree with you as follows:

**A.  The LIMITS OF INSURANCE (SECTION III)** is deleted in its entirety and replaced with the following:

**1.  The Most We Will Pay**

The Limits of Insurance shown in the above Schedule and the rules below fix the most we will pay regardless of the number of:

**a.**  Insureds;

**b.**  Claims made or "suits" brought; or

**c.**  Persons or organizations making claims or bringing "suits".

**2.  Maximum Annual Aggregate**

The Maximum Annual Aggregate Limit is the most we will pay for the sum of:

**a.**  Damages under the General Aggregate Limit; and

**b.**  Damages under any one or more Location General Aggregate Limit(s), as described in paragraph **4.** below.

**3.  General Aggregate Limit**

Subject to **2.** above, the General Aggregate Limit is the most we will pay for the sum of:

**a.**  Damages under **Coverage B Personal and Advertising Injury Liability**; and

Form HS 25 30 06 08

Page 1 of 3

**b.** Damages under **Coverage C Medical Payments**, **and Coverage A Bodily Injury and Property Damage Liability**, with the following exceptions:

    **(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

    **(2)** "Bodily injury" or "property damage" attributed solely to ongoing operations at a single "location";

**c.** "Property damage" included as **Damage to Premises Rented to You**.

**4.** **Location General Aggregate Limit**

Subject to **2.** above:

**a.** A separate Location General Aggregate Limit applies to each single "location", in lieu of and not in addition to, the General Aggregate. Such Location General Aggregate is the most we will pay for all damages under **Coverage A Bodily Injury and Property Damage Liability**, or **Coverage C Medical Payments**, with the following exceptions:

    **(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

    **(2)** "Property damage" included in the Damage to Premises Rented to You coverage; or

    **(3)** "Bodily injury", "property damage", or medical expenses under **Coverage C**, which cannot be attributed solely to the ongoing operations at a single "location". Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**b.** The Location General Aggregate Limit:

    **(1)** Applies only to "occurrences" attributed solely to ongoing operations at a single "location"; and

    **(2)** Does not include damages for **Coverage B Personal and Advertising Injury Liability,** no matter where or in how many "locations" the offense or offenses may be committed. Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**c.** Any payments made under this paragraph **4.,** for damages for "bodily injury", "property damage", or medical expenses under Coverage **C**, shall reduce the Maximum Annual Aggregate Limit and the Location General Aggregate for that "location". Such payments shall not reduce the General Aggregate Limit or the Products-Completed Operations Aggregate Limit nor shall they reduce any other Location General Aggregate Limit.

**5.** **Products-Completed Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**6.** **Personal And Advertising Injury Limit**

Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B Personal and Advertising Injury Liability** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**7.** **Occurrence Limit**

Subject to **3., 4.,** or **5.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under "bodily injury" or "property damage" arising out of any one "occurrence".

**8.** **Damage To Premises Rented To You Limit**

Subject to **7.** above, the Damage to Premises Rented to You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

In the case of damage by fire, lightning or explosion, the Damage to Premises Rented to You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

The Damage to Premises Rented to You Coverage is not subject to any Location General Aggregate Limit, but will erode the General Aggregate Limit.

**9.** **Medical Expense Limit**

Subject to **3.** or **4.** above, whichever applies, the Medical Expense Any One Person Limit is the most we will pay under **Coverage C Medical Payments** for all medical expenses because of "bodily injury" sustained by any one person.

Such Medical Payments Coverage is subject to either the Location General Aggregate Limit or

the General Aggregate Limit as provided in paragraphs **3.** or **4.** above.

**10. How Limits Apply When To Additional Insureds**

If you have agreed in a written contract or written agreement that another person or organization be added as an additional insured on your policy, the most we will pay on behalf of such additional insured is the lesser of:

    **(1)** The limits of insurance specified in the written contract or written agreement; or

    **(2)** The Limits of Insurance shown in the Declarations.

Such amount shall be a part of and not in addition to Limits of Insurance shown in the Declarations and described in this Section.

**11. If More Than One Limit of Insurance Applies**

If more than one limit of insurance under this Coverage Part and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this Coverage Part and such endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit".

However, this paragraph **11.** does not apply to the Medical Expense Limit for Coverage **C.**

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**B.** For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right of way of a railroad.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

This endorsement forms a part of the Policy numbered below:

**POLICY NUMBER:** 81 UUN BK0052   K3
CHANGE NUMBER:  002

**Policy Change Effective Date:** 12/31/16

**Named Insured:**  G A RICHARDS COMPANY
        SEE IH1204

**Producer's Name:**   A J GALLAGHER RISK MGMT SRVCS INC

**Pro Rata Factor:**

**Description of Change(s):**

```
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT.  IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR
BANK ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
            THIS IS NOT A BILL.

NO PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE.

MAILING ADDRESS IS CHANGED TO READ:  1060 KEN-O-SHA INDUSTRIAL DR SE
                    GRAND RAPIDS, MI  49508
                    (KENT COUNTY)

PROPERTY CHOICE

HARTFORD FIRE INSURANCE COMPANY

PROPERTY CHOICE COVERAGE PART IS CHANGED

PROPERTY CHOICE - ADDITIONAL COVERAGES




GENERAL LIABILITY

HARTFORD UNDERWRITERS INSURANCE COMPANY




FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS ADDED TO THIS POLICY
AT ENDORSEMENT ISSUE:  SEE ABOVE FOR COMPANY NAME

  GENERAL LIABILITY: HS25300608 (APPLIES TO HC0010)
  HC22030914 (APPLIES TO HC0010)
```

Countersigned by   *Susan L. Castaneda*        08/15/17
(Where required by law)   Authorized Representative   Date

Form  HM 12 01 01 07T                         PAGE   1 (CONTINUED ON NEXT PAGE)

**POLICY CHANGES (Continued)**

**POLICY NUMBER**: 81 UUN BK0052    K3

FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS REVISED
AT ENDORSEMENT ISSUE:   SEE ABOVE FOR COMPANY NAME

   PROPERTY: PC20240109
   IH12040312

**Form  HM 12 01 01 07T**                          PAGE    2

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER: 002



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF THE DECLARATIONS - ADDITIONAL PERSONS OR ORGANIZATIONS DESIGNATED AS NAMED INSUREDS

The following person(s) or organization(s) are added to the Declarations as Named Insureds:

```
G A RICHARDS COMPANY
701 EAST SAVIDGE STREET LLC
BURNSIDE ACQUISITIONS LLC
CORLETT TURNER CO., INC.
G A RICHARDS PLANT 1.5 LLC
G A RICHARDS PLANT 2 LLC
G A RICHARDS PLANT 3 LLC
ICW ACQUISITION, LLC
STATE HEAT TREATING COMPANY
WOODMATIC ACQUISITIONS LLC
ZEICHMAN MANUFACTURING, INC.

HARBOR INDUSTRIES, INC.
GA RICHARDS COMPRESSION MOLD
```

© 2012, The Hartford

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER:   002

**PROPERTY CHOICE**



### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY CHOICE - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE – SPECIALIZED PROPERTY INSURANCE COVERAGE ENDORSEMENT(S)**

**Schedule**

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| NEWLY ACQUIRED COVERED PROPERTY: BUILDINGS: | $3,000,000 |
| NEWLY ACQUIRED COVERED PROPERTY: BUSINESS PERSONAL PROPERTY: | $1,500,000 |
| ACCOUNTS RECEIVABLE: | $1,000,000 |
| DEBRIS REMOVAL: | $1,000,000 |
| ORDINANCE OR LAW: (DEMOLITION & INCREASED COST OF CONSTRUCTION) | $5,000,000 |
| PROPERTY IN TRANSIT: | $250,000 |
| UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY (INCLUDING STOCK): | $1,000,000 |

**Form  PC 20 24 01 09**

© 2009, The Hartford

**Page  1  of  1**



# IMPORTANT NOTICE TO POLICYHOLDERS
# REDUCTION OF COVERAGE

**TITLE OF FORM:**   EXCLUSION - AIRCRAFT PRODUCTS

**FORM NUMBER:**   HC22030914

**COVERAGES:**

**THE FORM CITED ABOVE HAS BEEN ADDED TO YOUR POLICY AND HAS THE EFFECT OF REDUCING YOUR INSURANCE COVERAGE.  YOU SHOULD REVIEW YOUR POLICY AND CONTACT YOUR HARTFORD AGENT OR YOUR BROKER IF YOU HAVE ANY QUESTIONS.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

This endorsement forms a part of the Policy numbered below:

**POLICY NUMBER:** 81 UUN BK0052   K3

CHANGE NUMBER:   001

**Policy Change Effective Date:** 02/06/17

**Named Insured:** G A RICHARDS  COMPANY

**Producer's Name:**   A J GALLAGHER  RISK MGMT SRVCS  INC

**Pro Rata Factor:** ███

**Description of Change(s):**

                                                CHANGE  NO.:   001

ANY CHANGES  IN YOUR PREMIUM WILL  BE REFLECTED  IN YOUR NEXT BILLING
STATEMENT.  IF YOU ARE ENROLLED  IN REPETITIVE  EFT DRAWS FROM YOUR
BANK ACCOUNT,  CHANGES  IN PREMIUM WILL  CHANGE FUTURE  DRAW AMOUNTS.
                        THIS  IS NOT A BILL.

CHANGE NO: 001  IS CANCELLED.

Countersigned by             *Susan L. Castaneda*                  08/15/17
(Where required by law)      Authorized Representative                 Date

**Form  HM 12 01 01 07T**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGES

This endorsement forms a part of the Policy numbered below:

**POLICY NUMBER:** 81 UUN BK0052   K3

CHANGE NUMBER:   001

**Policy Change Effective Date:** 02/06/17

**Named Insured:** G A RICHARDS COMPANY
            SEE IH1204

**Producer's Name:**   A J GALLAGHER RISK MGMT SRVCS INC

**Pro Rata Factor:**   ███

**Description of Change(s):**

ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT. IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR
BANK ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
            THIS IS NOT A BILL.

ADDITIONAL PREMIUM DUE AT THE CHANGE EFFECTIVE DATE:      ██████
*INCLUDES ADDITIONAL TERRORISM PREMIUM OF      ████

      ADDITIONAL PREMIUM DUE      02/06/17      ██████

PROPERTY CHOICE

HARTFORD FIRE INSURANCE COMPANY

PROPERTY CHOICE COVERAGE PART IS CHANGED

PROPERTY CHOICE - ADDITIONAL COVERAGES


GENERAL LIABILITY

HARTFORD UNDERWRITERS INSURANCE COMPANY


FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS ADDED TO THIS POLICY
AT ENDORSEMENT ISSUE:  SEE ABOVE FOR COMPANY NAME

   GENERAL LIABILITY: HC12111185 (APPLIES TO HM0010)


Countersigned by        *Susan L. Castaneda*            03/09/17
(Where required by law)   Authorized Representative        Date

**Form HM 12 01 01 07T**                    PAGE   1 (CONTINUED ON NEXT PAGE)

**POLICY CHANGES (Continued)**

**POLICY NUMBER**: 81 UUN BK0052    K3

FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS REVISED
AT ENDORSEMENT ISSUE:   SEE ABOVE FOR COMPANY NAME

   PROPERTY:  PC20240109

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER:   001



## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY CHOICE - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE – SPECIALIZED PROPERTY INSURANCE COVERAGE ENDORSEMENT(S)**

### Schedule

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| NEWLY ACQUIRED COVERED PROPERTY: BUILDINGS: | $3,000,000 |
| NEWLY ACQUIRED COVERED PROPERTY: BUSINESS PERSONAL PROPERTY: | $1,500,000 |
| ACCOUNTS RECEIVABLE: | $1,000,000 |
| DEBRIS REMOVAL: | $1,000,000 |
| ORDINANCE OR LAW: (DEMOLITION & INCREASED COST OF CONSTRUCTION) | $5,000,000 |
| PROPERTY IN TRANSIT: | $250,000 |
| UNNAMED PREMISES: BUSINESS PERSONAL PROPERTY (INCLUDING STOCK): | $1,000,000 |

**Form  PC 20 24 01 09**

**Page  1  of  1**

© 2009, The Hartford

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE CHANGES



**POLICY NUMBER:** 81 UUN BK0052

CHANGE NUMBER:   001

It is agreed that the Schedule (Form HC 12 10) is changed as follows:

THE FOLLOWING IS ADDED:

DESCRIPTION OF HAZARDS:        PREMISES/OPERATION COVERAGE

REFER TO:                      COMMERCIAL GENERAL LIABILITY
                               COVERAGE PART (FORM HC 00 10)

PRMS/BLDG NO:                  015/001         TERR: 002
LOCATION:                      296 CAYUGA DR
                               MOORESVILLE
                               NC  28117

CLASSIFICATION CODE NUMBER
AND DESCRIPTION:        61226
 BUILDINGS OR PREMISES - OFFICE - NOC - INCLUDING PRODUCTS AND/OR
 COMPLETED OPERATIONS - PRODUCTS/COMPLETED OPERATIONS LOSSES ARE SUBJECT
 TO THE GENERAL AGGREGATE LIMIT

PREMIUM AND RATING BASIS:

EXPOSURE:

RATE:

ANNUAL PREMIUM:

PREMIUM CHANGE:

   TOTAL PREMIUM CHANGE
FOR THIS POLICY CHANGE:        

**Form HC 12 11 11 85T**  Printed in U.S.A.  (NS)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

This endorsement forms a part of the Policy numbered below:

**POLICY NUMBER:** 81 UUN BK0052   K3

CHANGE NUMBER:   002

**Policy Change Effective Date:** 12/31/16

**Named Insured:** G A RICHARDS COMPANY
                SEE IH1204

**Producer's Name:**   A J GALLAGHER RISK MGMT SRVCS INC

**Pro Rata Factor:**

**Description of Change(s):**

```
ANY CHANGES IN YOUR PREMIUM WILL BE REFLECTED IN YOUR NEXT BILLING
STATEMENT. IF YOU ARE ENROLLED IN REPETITIVE EFT DRAWS FROM YOUR
BANK ACCOUNT, CHANGES IN PREMIUM WILL CHANGE FUTURE DRAW AMOUNTS.
                    THIS IS NOT A BILL.

NO PREMIUM DUE AT POLICY CHANGE EFFECTIVE DATE.

MAILING ADDRESS IS CHANGED TO READ:  1060 KEN-O-SHA INDUSTRIAL DR SE
                                     GRAND RAPIDS, MI  49508
                                     (KENT COUNTY)

PROPERTY CHOICE

HARTFORD FIRE INSURANCE COMPANY

PROPERTY CHOICE COVERAGE PART IS CHANGED

PROPERTY CHOICE - ADDITIONAL COVERAGES




GENERAL LIABILITY

HARTFORD UNDERWRITERS INSURANCE COMPANY




FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS ADDED TO THIS POLICY
AT ENDORSEMENT ISSUE:  SEE ABOVE FOR COMPANY NAME

  GENERAL LIABILITY: HS25300608 (APPLIES TO HC0010)
  HC22030914 (APPLIES TO HC0010)
```

Countersigned by   *Susan L. Castaneda*                      08/15/17
(Where required by law)     Authorized Representative              Date

**Form  HM 12 01 01 07T**                          PAGE   1 (CONTINUED ON NEXT PAGE)

**POLICY CHANGES (Continued)**

**POLICY NUMBER:** 81 UUN BK0052    K3

FORM NUMBERS OF COVERAGE PARTS AND ENDORSEMENTS REVISED
AT ENDORSEMENT ISSUE:   SEE ABOVE FOR COMPANY NAME

  PROPERTY: PC20240109
  IH12040312

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER:  002



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF THE DECLARATIONS - ADDITIONAL PERSONS OR ORGANIZATIONS DESIGNATED AS NAMED INSUREDS

The following person(s) or organization(s) are added to the Declarations as Named Insureds:

```
G A RICHARDS COMPANY
701 EAST SAVIDGE STREET LLC
BURNSIDE ACQUISITIONS  LLC
CORLETT TURNER CO., INC.
G A RICHARDS PLANT 1.5 LLC
G A RICHARDS PLANT 2 LLC
G A RICHARDS PLANT 3 LLC
ICW ACQUISITION, LLC
STATE HEAT TREATING COMPANY
WOODMATIC ACQUISITIONS  LLC
ZEICHMAN MANUFACTURING,  INC.

HARBOR INDUSTRIES, INC.
GA RICHARDS COMPRESSION MOLD
```

**Form IH 12 04 03 12** SEQ.NO. 01

© 2012, The Hartford

**POLICY NUMBER:** 81 UUN BK0052
CHANGE NUMBER:  002

PROPERTY CHOICE



### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROPERTY CHOICE - ADDITIONAL COVERAGES - REVISED LIMITS OF INSURANCE

This Endorsement modifies insurance provided under the following:

**PROPERTY CHOICE – SPECIALIZED PROPERTY INSURANCE COVERAGE ENDORSEMENT(S)**

**Schedule**

The following Revised Limit of Insurance is the most we will pay for that particular Additional Coverage:

| Additional Coverage | Revised Limit of Insurance |
|---|---|
| NEWLY ACQUIRED COVERED PROPERTY:<br>  BUILDINGS: | $3,000,000 |
| NEWLY ACQUIRED COVERED PROPERTY:<br>  BUSINESS PERSONAL PROPERTY: | $1,500,000 |
| ACCOUNTS RECEIVABLE: | $1,000,000 |
| DEBRIS REMOVAL: | $1,000,000 |
| ORDINANCE OR LAW:<br>(DEMOLITION & INCREASED<br>COST OF CONSTRUCTION) | $5,000,000 |
| PROPERTY IN TRANSIT: | $250,000 |
| UNNAMED PREMISES:<br>  BUSINESS PERSONAL PROPERTY<br>    (INCLUDING STOCK): | $1,000,000 |

**Form PC 20 24 01 09**

**Page 1 of 1**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - AIRCRAFT PRODUCTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following Exclusion is added:

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operation hazard" and arising out of:

**1.** "Aircraft products";

**2.** Reliance upon any representation or warranty made with respect to "aircraft products";

**3.** The "grounding" of any "aircraft"; or

**4.** Liability assumed by you under any contract or agreement if such liability arises out of "aircraft products".

**B. LIMITED EXCEPTION**

This exclusion does not apply to "bodily injury" to persons operating, maintaining, repairing or installing any "aircraft products" provided such "bodily injury" does not occur while the "aircraft" is in motion.

**C.** For the purposes of this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Aircraft" includes but is not limited to:

    **a.** Heavier-than-air flying vehicles;

    **b.** Lighter-than-air flying vehicles;

    **c.** Helicopters;

    **d.** Gliders;

    **e.** Missiles; or

    **f.** Spacecraft.

**2.** "Aircraft products" means:

    **a.** "Aircraft"; or

    **b.** Any other goods or products, other than real property, designed, manufactured, sold, handled or distributed, or services produced or recommended by:

      **(1)** You; or

      **(2)** Others trading under your name;

      for use in the manufacture, repair, operation, maintenance or use of any "aircraft".

**3.** "Grounding" means:

    **a.** The withdrawal of one or more "aircraft" from flight operations; or

    **b.** The imposition of speed, passenger or load restrictions on "aircraft".

© 2014, The Hartford



# IMPORTANT NOTICE TO POLICYHOLDERS
# REDUCTION OF COVERAGE

**TITLE OF FORM:**    EXCLUSION  -  AIRCRAFT  PRODUCTS

**FORM NUMBER:**    HC22030914

**COVERAGES:**

**THE FORM CITED ABOVE HAS BEEN ADDED TO YOUR POLICY AND HAS THE EFFECT OF REDUCING YOUR INSURANCE COVERAGE.  YOU SHOULD REVIEW YOUR POLICY AND CONTACT YOUR HARTFORD AGENT OR YOUR BROKER IF YOU HAVE ANY QUESTIONS.**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - AIRCRAFT PRODUCTS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following Exclusion is added:

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operation hazard" and arising out of:

**1.** "Aircraft products";

**2.** Reliance upon any representation or warranty made with respect to "aircraft products";

**3.** The "grounding" of any "aircraft"; or

**4.** Liability assumed by you under any contract or agreement if such liability arises out of "aircraft products".

**B. LIMITED EXCEPTION**

This exclusion does not apply to "bodily injury" to persons operating, maintaining, repairing or installing any "aircraft products" provided such "bodily injury" does not occur while the "aircraft" is in motion.

**C.** For the purposes of this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Aircraft" includes but is not limited to:

    **a.** Heavier-than-air flying vehicles;

    **b.** Lighter-than-air flying vehicles;

    **c.** Helicopters;

    **d.** Gliders;

    **e.** Missiles; or

    **f.** Spacecraft.

**2.** "Aircraft products" means:

    **a.** "Aircraft"; or

    **b.** Any other goods or products, other than real property, designed, manufactured, sold, handled or distributed, or services produced or recommended by:

        **(1)** You; or

        **(2)** Others trading under your name;

    for use in the manufacture, repair, operation, maintenance or use of any "aircraft".

**3.** "Grounding" means:

    **a.** The withdrawal of one or more "aircraft" from flight operations; or

    **b.** The imposition of speed, passenger or load restrictions on "aircraft".

© 2014, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

Exclusion **j.** is replaced by the following:

**j.(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**POLICY NUMBER:** 81 UUN BK0052



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# PER LOCATION - AMENDMENT OF GENERAL AGGREGATE SUBJECT TO MAXIMUM ANNUAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**LIMITS OF INSURANCE:**
The Limits of Insurance shown in the Declarations are amended by the following:

The Limits of Insurance, subject to all the terms of this policy that apply, are:

| | | |
|---|---|---|
| Each Occurrence Limit | $ | See Declarations Page |
| Personal and Advertising Injury Limit | $ | See Declarations Page |
| Damage to Premises Rented to You – Any One Premises | $ | See Declarations Page |
| Medical Expense Limit - Any One Person | $ | See Declarations Page |
| General Aggregate Limit | $ | 2,000,000 |
| Location General Aggregate Limit | $ | 2,000,000 |
| Maximum Annual Aggregate Limit | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | See Declarations Page |

In return for the payment of the premium when due and subject to all the terms of the Commercial General Liability Coverage Part not expressly modified herein, we agree with you as follows:

**A. The LIMITS OF INSURANCE (SECTION III)** is deleted in its entirety and replaced with the following:

    **1. The Most We Will Pay**

        The Limits of Insurance shown in the above Schedule and the rules below fix the most we will pay regardless of the number of:

        **a.** Insureds;

        **b.** Claims made or "suits" brought; or

        **c.** Persons or organizations making claims or bringing "suits".

    **2. Maximum Annual Aggregate**

The Maximum Annual Aggregate Limit is the most we will pay for the sum of:

    **a.** Damages under the General Aggregate Limit; and

    **b.** Damages under any one or more Location General Aggregate Limit(s), as described in paragraph **4.** below.

    **3. General Aggregate Limit**

        Subject to **2.** above, the General Aggregate Limit is the most we will pay for the sum of:

        **a.** Damages under **Coverage B Personal and Advertising Injury Liability**; and

@ 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**b.** Damages under **Coverage C Medical Payments**, and **Coverage A Bodily Injury and Property Damage Liability**, with the following exceptions:

    **(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

    **(2)** "Bodily injury" or "property damage" attributed solely to ongoing operations at a single "location";

**c.** "Property damage" included as **Damage to Premises Rented to You**.

**4.** **Location General Aggregate Limit**

Subject to **2.** above:

**a.** A separate Location General Aggregate Limit applies to each single "location", in lieu of and not in addition to, the General Aggregate. Such Location General Aggregate is the most we will pay for all damages under **Coverage A Bodily Injury and Property Damage Liability**, or **Coverage C Medical Payments**, with the following exceptions:

    **(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

    **(2)** "Property damage" included in the Damage to Premises Rented to You coverage; or

    **(3)** "Bodily injury", "property damage", or medical expenses under **Coverage C**, which cannot be attributed solely to the ongoing operations at a single "location". Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**b.** The Location General Aggregate Limit:

    **(1)** Applies only to "occurrences" attributed solely to ongoing operations at a single "location"; and

    **(2)** Does not include damages for **Coverage B Personal and Advertising Injury Liability,** no matter where or in how many "locations" the offense or offenses may be committed. Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**c.** Any payments made under this paragraph **4.,** for damages for "bodily injury", "property damage", or medical expenses under Coverage **C**, shall reduce the Maximum Annual Aggregate Limit and the Location

General Aggregate for that "location". Such payments shall not reduce the General Aggregate Limit or the Products-Completed Operations Aggregate Limit nor shall they reduce any other Location General Aggregate Limit.

**5.** **Products-Completed Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**6.** **Personal And Advertising Injury Limit**

Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B Personal and Advertising Injury Liability** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**7.** **Occurrence Limit**

Subject to **3., 4.,** or **5.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under "bodily injury" or "property damage" arising out of any one "occurrence".

**8.** **Damage To Premises Rented To You Limit**

Subject to **7.** above, the Damage to Premises Rented to You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

In the case of damage by fire, lightning or explosion, the Damage to Premises Rented to You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

The Damage to Premises Rented to You Coverage is not subject to any Location General Aggregate Limit, but will erode the General Aggregate Limit.

**9.** **Medical Expense Limit**

Subject to **3.** or **4.** above, whichever applies, the Medical Expense Any One Person Limit is the most we will pay under **Coverage C Medical Payments** for all medical expenses because of "bodily injury" sustained by any one person.

Such Medical Payments Coverage is subject to either the Location General Aggregate Limit or

the General Aggregate Limit as provided in paragraphs **3.** or **4.** above.

**10. How Limits Apply When To Additional Insureds**

If you have agreed in a written contract or written agreement that another person or organization be added as an additional insured on your policy, the most we will pay on behalf of such additional insured is the lesser of:

    **(1)** The limits of insurance specified in the written contract or written agreement; or

    **(2)** The Limits of Insurance shown in the Declarations.

Such amount shall be a part of and not in addition to Limits of Insurance shown in the Declarations and described in this Section.

**11. If More Than One Limit of Insurance Applies**

If more than one limit of insurance under this Coverage Part and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this Coverage Part and such endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit".

However, this paragraph **11.** does not apply to the Medical Expense Limit for Coverage **C.**

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**B.** For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right of way of a railroad.

COMMERCIAL GENERAL LIABILITY



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> FARM LIABILITY COVERAGE PART

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

b. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

c. Arise out of any claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form HC 21 21 03 90**   Printed in U.S.A. **(NS)**

Copyright Hartford Fire Insurance Company, 1990



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - AIRCRAFT PRODUCTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The following Exclusion is added:

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operation hazard" and arising out of:

**1.** "Aircraft products";

**2.** Reliance upon any representation or warranty made with respect to "aircraft products";

**3.** The "grounding" of any "aircraft"; or

**4.** Liability assumed by you under any contract or agreement if such liability arises out of "aircraft products".

**B. LIMITED EXCEPTION**

This exclusion does not apply to "bodily injury" to persons operating, maintaining, repairing or installing any "aircraft products" provided such "bodily injury" does not occur while the "aircraft" is in motion.

**C.** For the purposes of this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Aircraft" includes but is not limited to:

**a.** Heavier-than-air flying vehicles;

**b.** Lighter-than-air flying vehicles;

**c.** Helicopters;

**d.** Gliders;

**e.** Missiles; or

**f.** Spacecraft.

**2.** "Aircraft products" means:

**a.** "Aircraft"; or

**b.** Any other goods or products, other than real property, designed, manufactured, sold, handled or distributed, or services produced or recommended by:

**(1)** You; or

**(2)** Others trading under your name;

for use in the manufacture, repair, operation, maintenance or use of any "aircraft".

**3.** "Grounding" means:

**a.** The withdrawal of one or more "aircraft" from flight operations; or

**b.** The imposition of speed, passenger or load restrictions on "aircraft".

© 2014, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM

Exclusion **j.** is replaced by the following:

**j.(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations;

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

© 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc. with its permission.)

**POLICY NUMBER:** 81 UUN BK0052



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# PER LOCATION - AMENDMENT OF GENERAL AGGREGATE SUBJECT TO MAXIMUM ANNUAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**LIMITS OF INSURANCE:**

The Limits of Insurance shown in the Declarations are amended by the following:

The Limits of Insurance, subject to all the terms of this policy that apply, are:

| | | |
|---|---|---|
| Each Occurrence Limit | $ | See Declarations Page |
| Personal and Advertising Injury Limit | $ | See Declarations Page |
| Damage to Premises Rented to You – Any One Premises | $ | See Declarations Page |
| Medical Expense Limit - Any One Person | $ | See Declarations Page |
| General Aggregate Limit | $ | 2,000,000 |
| Location General Aggregate Limit | $ | 2,000,000 |
| Maximum Annual Aggregate Limit | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | See Declarations Page |

In return for the payment of the premium when due and subject to all the terms of the Commercial General Liability Coverage Part not expressly modified herein, we agree with you as follows:

**A.** The **LIMITS OF INSURANCE (SECTION III)** is deleted in its entirety and replaced with the following:

**1. The Most We Will Pay**

The Limits of Insurance shown in the above Schedule and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2. Maximum Annual Aggregate**

The Maximum Annual Aggregate Limit is the most we will pay for the sum of:

**a.** Damages under the General Aggregate Limit; and

**b.** Damages under any one or more Location General Aggregate Limit(s), as described in paragraph **4.** below.

**3. General Aggregate Limit**

Subject to **2.** above, the General Aggregate Limit is the most we will pay for the sum of:

**a.** Damages under **Coverage B Personal and Advertising Injury Liability**; and

@ 2008, The Hartford
(Includes copyrighted material of Insurance Services Office, Inc., with its permission.)

**b.** Damages under **Coverage C Medical Payments**, and **Coverage A Bodily Injury and Property Damage Liability**, with the following exceptions:

**(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

**(2)** "Bodily injury" or "property damage" attributed solely to ongoing operations at a single "location";

**c.** "Property damage" included as **Damage to Premises Rented to You**.

**4. Location General Aggregate Limit**

Subject to **2.** above:

**a.** A separate Location General Aggregate Limit applies to each single "location", in lieu of and not in addition to, the General Aggregate. Such Location General Aggregate is the most we will pay for all damages under **Coverage A Bodily Injury and Property Damage Liability**, or **Coverage C Medical Payments**, with the following exceptions:

**(1)** "Bodily injury" or "property damage" included in the "products-completed operations hazard"; or

**(2)** "Property damage" included in the Damage to Premises Rented to You coverage; or

**(3)** "Bodily injury", "property damage", or medical expenses under **Coverage C**, which cannot be attributed solely to the ongoing operations at a single "location". Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**b.** The Location General Aggregate Limit:

**(1)** Applies only to "occurrences" attributed solely to ongoing operations at a single "location"; and

**(2)** Does not include damages for **Coverage B Personal and Advertising Injury Liability,** no matter where or in how many "locations" the offense or offenses may be committed. Such damages will erode the General Aggregate Limit as provided in paragraph **3.** above.

**c.** Any payments made under this paragraph **4.,** for damages for "bodily injury", "property damage", or medical expenses under Coverage **C**, shall reduce the Maximum Annual Aggregate Limit and the Location General Aggregate for that "location". Such payments shall not reduce the General Aggregate Limit or the Products-Completed Operations Aggregate Limit nor shall they reduce any other Location General Aggregate Limit.

**5. Products-Completed Operations Aggregate Limit**

The Products-Completed Operations Aggregate Limit is the most we will pay for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**6. Personal And Advertising Injury Limit**

Subject to **3.** above, the Personal and Advertising Injury Limit is the most we will pay under **Coverage B Personal and Advertising Injury Liability** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**7. Occurrence Limit**

Subject to **3., 4.,** or **5.** above, whichever applies, the Each Occurrence Limit is the most we will pay for damages under "bodily injury" or "property damage" arising out of any one "occurrence".

**8. Damage To Premises Rented To You Limit**

Subject to **7.** above, the Damage to Premises Rented to You Limit is the most we will pay for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, lightning or explosion, while rented to you or temporarily occupied by you with permission of the owner.

In the case of damage by fire, lightning or explosion, the Damage to Premises Rented to You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of these.

The Damage to Premises Rented to You Coverage is not subject to any Location General Aggregate Limit, but will erode the General Aggregate Limit.

**9. Medical Expense Limit**

Subject to **3.** or **4.** above, whichever applies, the Medical Expense Any One Person Limit is the most we will pay under **Coverage C Medical Payments** for all medical expenses because of "bodily injury" sustained by any one person.

Such Medical Payments Coverage is subject to either the Location General Aggregate Limit or

the General Aggregate Limit as provided in paragraphs **3.** or **4.** above.

**10. How Limits Apply When To Additional Insureds**

If you have agreed in a written contract or written agreement that another person or organization be added as an additional insured on your policy, the most we will pay on behalf of such additional insured is the lesser of:

    **(1)** The limits of insurance specified in the written contract or written agreement; or

    **(2)** The Limits of Insurance shown in the Declarations.

Such amount shall be a part of and not in addition to Limits of Insurance shown in the Declarations and described in this Section.

**11. If More Than One Limit of Insurance Applies**

If more than one limit of insurance under this Coverage Part and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this Coverage Part and such endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit".

However, this paragraph **11.** does not apply to the Medical Expense Limit for Coverage **C.**

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**B.** For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right of way of a railroad.

COMMERCIAL GENERAL LIABILITY



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> FARM LIABILITY COVERAGE PART

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

a. May be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

b. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

c. Arise out of any claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

**Form HC 21 21 03 90**   Printed in U.S.A. **(NS)**

Copyright Hartford Fire Insurance Company, 1990

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD®**

DATE (MM/DD/YYYY)
4/28/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Noelle Fish | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc.<br>300 Ottawa NW, Suite 301<br>Grand Rapids MI 49503 | PHONE (A/C, Ext): 616-233-0928 | | FAX (A/C, No): 616-233-0923 |
| | E-MAIL ADDRESS: noelle_fish@ajg.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Hartford Fire Insurance Company | | 19682 |
| INSURED                                GARICHA-01 | INSURER B : Trumbull Insurance Company | | 27120 |
| Harbor Industries, Inc.<br>14170 172nd Ave.<br>Grand Haven, MI 49417 | INSURER C : Hartford Casualty Insurance Company | | 29424 |
| | INSURER D : Hartford Accident and Indemnity Com | | 22357 |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES
CERTIFICATE NUMBER: 925515776     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | 81UUNBK0052 | 12/31/2016 | 12/31/2017 | EACH OCCURRENCE | $1,000,000 |
| | | CLAIMS-MADE [X] OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | POLICY [ ] PRO-JECT [X] LOC | | | | | | PRODUCTS - COMP/OP AGG | $1,000,000 |
| | | OTHER: | | | | | | | $ |
| B | X | AUTOMOBILE LIABILITY | | | 81UENBJ9896 | 12/31/2016 | 12/31/2017 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | | OWNED AUTOS ONLY / SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | | HIRED AUTOS ONLY / NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | | $ |
| C | X | UMBRELLA LIAB [X] OCCUR | | | 81RHUBJ7046 | 12/31/2016 | 12/31/2017 | EACH OCCURRENCE | $10,000,000 |
| | | EXCESS LIAB [ ] CLAIMS-MADE | | | | | | AGGREGATE | $10,000,000 |
| | | DED [X] RETENTION $10,000 | | | | | | | $ |
| D | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY    Y/N | N/A | | 81WEIC4091 | 1/1/2017 | 1/1/2018 | [X] PER STATUTE / OTH-ER | |
| | | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Balkamp, Inc., National Automotive Parts Association and its' member Companies are shown as additional Insured solely with respects to general liability coverage per form HG 00 01 09 16 as evidenced herein as required by written contract with the named insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Balkamp, Inc.<br>2601 S. Holt Road<br>ATTN: A.R.D. Department<br>Indianapolis IN 46241 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD

32C01-2003-PL-000038
Hendricks Circuit Court

## CT Corporation

**Service of Process Transmittal**
02/20/2018
CT Log Number 532826947

**TO:**  Scott Smith, Corporate Counsel
Genuine Parts Company
2999 Wildwood Parkway
Atlanta, GA 30339

**RE:**  **Process Served in California**

**FOR:**  GENUINE PARTS COMPANY  (Domestic State: GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | THOMAS MACCARTEE, etc., Pltf. vs. GENUINE PARTS COMPANY, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Attachment(s), Complaint |
| **COURT/AGENCY:** | San Diego County - Superior Court - San Diego, CA |
| | Case # 37201800001135CUPOCTL |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Barn Door |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 02/20/2018 at 15:00 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Sean M. Foldenauer |
| | FOLDENAUER LAW GROUP |
| | 2550 Fifth Avenue, Suite 630 |
| | San Diego, CA 92103 |
| | 619-564-8877 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 02/21/2018, Expected Purge Date: 02/26/2018 |
| | Image SOP |
| | Email Notification,  Scott Smith  SCOTT_SMITH@GENPT.COM |
| | Email Notification,  Kathleen Eidbo  KATHLEEN_EIDBO@GENPT.COM |
| | Email Notification,  Christopher Galla  chris_galla@genpt.com |
| | Email Notification,  Patsy Green  patsy_green@genpt.com |
| | Email Notification,  Ernie Wetzler  Ernie_Wetzler@genpt.com |
| | Email Notification,  Norma Pittillo  norma_pittillo@genpt.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street |
| | Los Angeles, CA 90017 |

Page 1 of  2 / MP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
02/20/2018
CT Log Number 532826947

**TO:**    Scott Smith, Corporate Counsel
           Genuine Parts Company
           2999 Wildwood Parkway
           Atlanta, GA 30339

**RE:**    **Process Served in California**

**FOR:**   GENUINE PARTS COMPANY  (Domestic State: GA)

**TELEPHONE:**              213-337-4615

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

THOMAS MACCARTEE, an individual;

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/09/2018** at 03:20:26 PM
Clerk of the Superior Court
By Connie Hines,Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of San Diego, Central District<br>330 West Broadway, San Diego, CA 92101 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>37-2018-00001135-CU-PO-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean Foldenauer, Foldenauer Law Group, 2550 Fifth Ave., Ste. 630, San Diego, CA 92103 (619) 564-8877

| DATE:<br>*(Fecha)* | 01/10/2018 | Clerk, by<br>*(Secretario)* | C. Hines | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* genuine parts company dba napa auto parts - (LA - 685)

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| MacCartee v. Genuine Parts Company, et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

GENUINE PARTS COMPANY dba NAPA AUTO PARTS -(LA-685);
G.A. RICHARDS GROUP, an unknown business entity; and
DOES 1 through 100, inclusive;

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sean M. Foldenauer (SBN 187541)<br>Dawill D. Schwender (SBN 253419)<br>FOLDENAUER LAW GROUP, APLC<br>2550 5th Avenue, Suite 630 San Diego, AC 92103<br>TELEPHONE NO.: (619) 564-8877    FAX NO.: (619) 564-8879<br>ATTORNEY FOR *(Name):* Plaintiff Thomas MacCartee | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/09/2018 at 03:20:26 PM**<br><br>Clerk of the Superior Court<br>By Connie Hines, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:
MAILING ADDRESS: 300 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: CENTRAL JUDICIAL DISTRICT

CASE NAME:
MacCartee v. Genuine Parts Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 37-2018-00001135-CU-PO-CTL |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE: Judge Randa Trapp<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [✓] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[ ] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):* 2
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 9, 2018
Danwill D. Schwender
_____
(TYPE OR PRINT NAME)                                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2018-00001135-CU-PO-CTL        CASE TITLE: Maccartee vs Genuine Parts Company [IMAGED]

**NOTICE**: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:

        (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
        (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), **and**
        (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR

ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

### Most Common Types of ADR

You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, Individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR</u>: Visit the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at <u>www.ncrconline.com</u> or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at <u>www.nclifeline.org</u> or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at <u>www.courtinfo.ca.gov/selfhelp/lowcost</u>.



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 30 days. After that time it will be destroyed and recycled. **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.** Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| **STREET ADDRESS:** 330 W Broadway | |
| **MAILING ADDRESS:** 330 W Broadway | |
| **CITY AND ZIP CODE:** San Diego, CA 92101-3827 | |
| **BRANCH NAME:** Central | |
| **TELEPHONE NUMBER:** (619) 450-7070 | |

| PLAINTIFF(S) / PETITIONER(S): Thomas MacCartee |
|---|

| DEFENDANT(S) / RESPONDENT(S): Genuine Parts Company et.al. |
|---|

| MACCARTEE VS GENUINE PARTS COMPANY [IMAGED] |
|---|

| NOTICE OF CASE ASSIGNMENT and CASE MANAGEMENT CONFERENCE | CASE NUMBER: 37-2018-00001135-CU-PO-CTL |
|---|---|

## CASE ASSIGNMENT

Judge: Randa Trapp            Department: C-70

**COMPLAINT/PETITION FILED:** 01/09/2018

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 08/24/2018 | 10:20 am | C-70 | Randa Trapp |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

1  Sean M. Foldenauer, Esq., (SBN: 187541)
2  Danwill D. Schwender, Esq., (SBN: 253419)
   **FOLDENAUER LAW GROUP**
   *A Professional Law Corporation*
3  2550 Fifth Avenue, Suite 630
   San Diego, California 92103
4  Tel.: (619) 564-8877
   Fax.: (619) 564-8879
5
6  Robert E. La Croix, Esq., (SBN: 86281)
   **La CROIX LAW GROUP, APC**
   4241 Jutland Drive, Suite 315
7  San Diego, California 92117
   Tel.: (858) 272-2027
8  Fax.: (858) 272-2026

9  Attorneys for Plaintiff, THOMAS MACCARTEE

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/09/2018** at 03:20:26 PM

Clerk of the Superior Court
By Connie Hines, Deputy Clerk

10

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12       **COUNTY OF SAN DIEGO [CENTRAL JUDICIAL DISTRICT]**

13

| | |
|---|---|
| 14  THOMAS MACCARTEE, an individual; | Case No.:   37-2018-00001135-CU-PO-CTL |
| 15          Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| 16 | **1. NEGLIGENCE (Premises Liability);** |
| 17     v. | **2. STRICT LIABILITY** |
| 18 | **DEMAND FOR JURY** |
| 19  GENUINE PARTS COMPANY dba NAPA AUTO PARTS -(LA-685); G.A. RICHARDS GROUP, an unknown business entity; and | [UNLIMITED CIVIL CASE – Amount Demanded Exceeds $25,000] |
| 20  DOES 1 through 100, inclusive; | |
| 21          Defendants. | |
| 22 | |

23

24     Plaintiff, THOMAS MACCARTEE, hereby complains and alleges as follows:

25                                 **I.**

26                          **INTRODUCTION**

27  1.     This is an action to recover damages for personal injuries suffered when a retail product display rack

28  at a Napa Auto Parts store toppled onto Plaintiff. Plaintiff was impaled by steel pegs and crushed, resulting

*(Left margin, vertical text:)* FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-8877  Fax: (619) 564-8879

---

1

*Thomas Maccartee v. Napa Auto Parts, et al.*

**COMPLAINT FOR DAMAGES**

1  in multiple surgical operations, lifelong disabilities, and related economic and non-economic damages.

2  Plaintiff sues for negligence and strict product liability.

3                                               **II.**

4                                        **THE PARTIES**

5  2.      Plaintiff THOMAS MACCARTEE is, and at all times herein mentioned was, an individual residing

6  in San Diego County, California.

7  3.      Plaintiff is informed and believes, and thereon alleges, that Defendant GENUINE PARTS

8  COMPANY dba NAPA AUTO PARTS – (LA-685) is, and at all times herein mentioned was, a foreign

9  corporation doing business in the County of San Diego, California, with its principal place of business

10 located at 1171 West Morena Boulevard, San Diego, CA 92110.

11 4.      Plaintiff is informed and believes, and thereon alleges, that Defendant G.A. RICHARDS GROUP,

12 is, and at all times herein mentioned was, a business entity, form unknown, with a principal place of business

13 at 1060 Ken O Sha Ind Park Drive SE, Grand Rapids, Michigan.

14                                              **III.**

15                                   **DOE ALLEGATION**

16 5.      The true names or capacities, whether individual, corporate, associate, or otherwise of Defendants

17 named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who is informed and believes,

18 and thereon alleges that each of the fictitiously named Defendants is in some way liable to Plaintiff, and

19 Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to

20 show the true and correct names and capacities of said fictitiously named Defendants when the same have

21 been ascertained.

22                                              **IV.**

23                                  **AGENCY ALLEGATION**

24 6.      Plaintiff is informed and believes, and based upon such information and belief, alleges that at

25 all times relevant herein, each of the Defendants herein, including any predecessor, successor, parent,

26 subsidiary, and/or closely related business partner thereof, including the DOE Defendants herein, were acting

27 as an agent and/or employee for each of the other Defendants, and in doing the things alleged herein, were

28 acting within the scope of such agency or employment in furtherance of common business interests.

<div style="text-align:left; font-size:small;">FOLDENAUER LAW GROUP, APLC<br>2550 Fifth Avenue, Suite 630, San Diego, California 92103<br>Tel: (619) 564-8877 Fax: (619) 564-8879</div>

---

2

*Thomas Maccartee v. Napa Auto Parts, et al.*

COMPLAINT FOR DAMAGES

## V.

## CORPORATE ALTER EGO ALLEGATION

7.       Plaintiff is informed and believes, and based upon such information and belief, alleges that the natural Defendants named herein (including the later named natural DOE Defendants) were at all times relevant hereto, and are, the shareholders, principal members, owners, managers, directors, and/or officers of the business Defendants named, or to be named herein. These natural Defendants completely controlled and dominated said business Defendants which merely exist as their alter ego, there being a unity of interest in ownership between said natural and business Defendants such that any separateness as recognized in law has ceased to exist. Said natural Defendants have utilized said business Defendants names and assets as their own, and without regard to the business entities and the formalities required thereof, in order to evade responsibility on obligations and contracts. Adherence to the fiction of a separate existence for said limited liability company Defendants would permit an abuse of limited liability company/corporate privilege and sanction a fraud. By reason of the above, said natural Defendants should be, and in all respects are, personally liable for any damages and awards of which said corporate and/or limited liability company Defendants are found liable.

8.       Plaintiff is informed and believes, and based upon such information and belief, alleges that the natural Defendants named herein (including the later named natural DOE Defendants) primarily owned and managed and formed corporate and/or limited liability companies to evade responsibility for debts and obligations while pilfering valuable assets thereof, including the contracts with Plaintiff. As a result, there is no distinction and separateness between the natural Defendants and their numerous fictitious entities in that they all share business locations, business information, and have coordinated their activities as described herein pursuant to a unified scheme to cheat and defraud Plaintiff.

## VI.

## CONSPIRACY ALLEGATION

9.       Plaintiff is informed and believes, and based upon such information and belief, alleges that the Defendants, and each of them, knowingly and willingly conspired and agreed among themselves to commit the wrongful acts alleged herein. The Defendants, and each of them, did the acts and things alleged herein pursuant to, and in furtherance of this conspiracy. Furthermore, each of the Defendants furthered said

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-8877 Fax: (619) 564-8879

1   conspiracy by cooperating, lending aid and encouragement, and by ratifying and adopting the acts of the

2   other Defendants as part of their common scheme and design.

3   10.      At all times herein mentioned, each of the Defendants herein named was an agent and employee

4   of his or her co-Defendants and, in doing the things herein mentioned, was acting in the course and scope

5   of that agency and employment and with the permission and consent of his or her co-Defendants, including

6   those herein fictitiously named, and is jointly and severally liable to Plaintiff.

7                                              **VII.**

8                                  **JURISDICTION & VENUE**

9   11.      This Court has proper jurisdiction and venue over this matter because the accident which is the

10  subject of this law suit occurred within the City and County of San Diego and because a Defendant conducts

11  business in California, and maintains its principal place of business at 1171 West Morena Boulevard in the

12  City and County of San Diego, California.

13                                             **VIII.**

14                                 **GENERAL ALLEGATIONS**

15  12.      The National Automotive Parts Association, also known as "NAPA Auto Parts" or "NAPA," is an

16  American retailers' cooperative distributing automotive replacement parts, accessories, and service items

17  in North America, as a division of "Genuine Parts Company," a publically traded company. There are

18  approximately 6,000 NAPA Auto Parts stores in the United States, including 1,000 company owned stores.

19  Plaintiff is informed and believes that Defendant, GENUINE PARTS COMPANY dba NAPA AUTO

20  PARTS -(LA-685) ("NAPA"), is such a company owned retail store, with its retail store situated at 1171

21  West Morena Boulevard, San Diego, California 92110.

22  13.      Plaintiff, THOMAS MACCARTEE, is a 49 year old male that resides in San Diego, California. On

23  or about February 19, 2017, Plaintiff visited NAPA AUTO PARTS -(LA-685) for the purpose of purchasing

24  automotive parts and tools, and specifically a large socket wrench. On said date and at said location, Plaintiff

25  entered the NAPA Defendant's West Morena Boulevard retail store and asked a NAPA sales associate

26  whether a specific socket wrench was in stock. The NAPA sales associate directed Plaintiff to a tall

27  merchandise display panel, with affixed shelf brackets, which held merchandise. This particular display

28  panel was unique, in that it was hung on "barn door" type sliding roller mounts. The "barn door" feature

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-8877 Fax: (619) 564-8879

4

*Thomas Maccartee v. Napa Auto Parts, et al.*

COMPLAINT FOR DAMAGES

1   allowed the panel to slide horizontally on roller mounts, which enhanced the visual display and allowed
2   NAPA to stock additional product behind the panel. This meant NAPA could display more product and
3   merchandise on the sales floor within a limited space – all to the financial benefit of NAPA. In locating the
4   tool he wished to purchase, Plaintiff, in a reasonable and foreseeable manner, moved the sliding "barn door"
5   panel to the side to pick up the merchandise. Suddenly, and without warning, the display panel toppled down
6   on top of Plaintiff. Plaintiff attempted to hold the panel up so that it would not crash down, but the panel
7   was too heavy. Plaintiff was crushed, incurring serious injuries resulting in multiple surgeries, disabilities
8   and substantial damages.

9   14.   Defendant, G.A. RICHARDS GROUP, is in the business of designing and manufacturing, among
10  other things, commercial furniture components for various global manufacturers. Plaintiff is informed and
11  believes and based thereon alleges that Defendant, G.A. RICHARDS GROUP, designed, manufactured,
12  transported, sold, installed and maintained the display panel with the "barn door" sliding mount identified
13  in this Complaint, specifically in Paragraph 13, *et seq.*, which toppled down on Plaintiff causing serious
14  injuries.

### IX.

### FIRST CAUSE OF ACTION

(Negligence)

(Plaintiff against All Defendants)

19  15.   Plaintiff hereby realleges and incorporates by reference Paragraphs 1 though 14, inclusive, as if set
20  forth in full herein.

21  16.   Plaintiff is informed and believes and based thereon alleges that on or about February 19, 2017,
22  Defendant GENUINE PARTS COMPANY dba NAPA AUTO PARTS -(LA-685) and DOES 1 through 100
23  owned, leased, occupied, and/or controlled the NAPA Auto Parts retail store located at 1171 West Morena
24  Boulevard, San Diego, CA 92110. As a result, said Defendants, and each of them, were under a duty to
25  exercise ordinary care of such premises in order to avoid exposing persons to unreasonable risks of harm.
26  Specifically, this included a duty of care with respect to the design, selection, manufacture, transport,
27  installation, maintenance, and/or warning of the commercial display racks Defendants utilized to display
28  products and merchandise.

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-5877 Fax: (619) 564-5879

5

17.     Upon information and belief, Defendants GENUINE PARTS COMPANY dba NAPA AUTO PARTS -(LA-685) and DOES 1 through 100 breached their duty of care and were negligent in the design, selection, manufacture, transport, installation, maintenance, and/or warning of the above-described "barn door" display racks, which had unreasonably dangerous flaws. Said Defendants were further negligent in failing to cure the dangerous conditions that were created, were negligent in failing to warn its customers of the danger the display racks posed, and were negligent in failing to train their employees about the dangerous conditions.

18.     Plaintiff is further informed and believes and based thereon alleges that Defendant, G.A. RICHARDS GROUP, and DOES 1 through 100, distributed, designed, manufactured, transported, installed, and/or maintained the sliding "barn door" display racks located at NAPA's West Morena Boulevard retail store. As a result, said Defendants were also under a duty to exercise ordinary care, including to avoid exposing persons to unreasonable risks of harm. Specifically, this included a duty of due care to comply with applicable standards with respect to the design, selection, manufacture, transport, installation, maintenance, and/or warning of the "barn door" display racks located at NAPA's West Morena Boulevard retail store. Said Defendants breached their duty of care and were negligent in the design, selection, manufacture, transport, installation, maintenance, and/or warning of above-described "barn door" display racks, which had unreasonably dangerous flaws. Said Defendants were further negligent in failing to cure the dangerous conditions that were created, were negligent in failing to warn its customers of the danger the display racks posed, and were negligent in failing to train their employees about the dangerous conditions.

19.     As a direct and proximate result of the negligence of Defendants GENUINE PARTS COMPANY dba NAPA AUTO PARTS -(LA-685), G.A. RICHARDS GROUP, and DOES 1 through 100, Plaintiff was seriously harmed. Said Defendants' negligence was a substantial factor in causing Plaintiff's harm.

20.     As a direct and proximate result of said Defendants' negligence, including the negligence of Doe Defendants 1 through 100, and each of them, Plaintiff was compelled to, and did, incur expenses for medical care, hospitalization, and other incidental expenses and will have to incur additional like expenses in the future, all in amounts presently unknown to him. Plaintiff, therefore, asks leave of Court either to amend this Complaint so as to show the amount of his medical expenses, when ascertained, or to prove said amount at the time of trial.

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-4877  Fax: (619) 564-4879

---

6

1  21.    As a direct and proximate result of Defendants' negligence, including the negligence of Doe

2  Defendants 1 through 100, and each of them, Plaintiff was injured in his health, strength, and activity,

3  sustaining severe shock and injury, and causing Plaintiff mental, physical, and nervous pain and suffering

4  and resulting in his disability, all to general damage in a sum which will be shown according to proof.

5  22.    As a direct and proximate result of Defendants' negligence, including the negligence of Doe

6  Defendants 1 through 100, and each of them, Plaintiff was disabled and/or may be disabled in the future

7  and would thereby be prevented from attending to the duties of his usual occupation. Plaintiff has, therefore,

8  lost earnings and may continue to lose earnings in the future, all in amounts presently unknown to him.

9  Plaintiff asks for leave of Court either to show the amount of his lost earnings, when ascertained, or to prove

10  said amount at the time of trial.

11  ### X.

12  ### THIRD CAUSE OF ACTION

13  (Strict Liability – Design Defect, Manufacturing Defect, Failure to Warn)

14  (Plaintiff against all Defendants)

15  23.    Plaintiff realleges and incorporates by that reference paragraphs 1 through 22 of the allegations

16  herein above as though fully set forth herein.

17  24.    Defendants, including Does 1 though 100, are or were in the business of designing, manufacturing,

18  selling, distributing, installing, and/or maintaining products, including the above-described "barn door"

19  display rack at the NAPA store located at 1171 West Morena Boulevard, San Diego, CA 92110.

20  25.    Defendants, and each of them, designed, manufactured, sold, transported, installed, and/or

21  maintained the above-described "barn door" display rack product knowing it would be used by store

22  customers, including Plaintiff, without inspection for defects.

23  26.    The above-described "barn door" display rack product contained a manufacturing defect at the time

24  of the manufacture, distribution, sale, and use of the product.

25  27.    The above-described "barn door" display rack product did not perform as safely as an ordinary

26  consumer or user would have expected it to perform when used or misused in an intended or reasonably

27  foreseeable way, such as by Plaintiff.

28  28.    The above-described "barn door" display rack product had potential risks that were known and/or

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-8877  Fax: (619) 564-8879

7

*Thomas Maccartee v. Napa Auto Parts, et al.*

COMPLAINT FOR DAMAGES

1   knowable in light of the of the scientific knowledge that was generally accepted in the scientific community

2   at the time of the manufacture, distribution, sale, and use and that these potential risks presented a substantial

3   danger when the product is used or misused in an intended or reasonably foreseeable way that ordinary users

4   and bystanders of the product would not have recognized. Defendants, including Does 1 through 100,

5   however, failed to adequately warn or instruct of the potential risk.

6   29.      Plaintiff utilized the product in a reasonable and foreseeable manner as intended by Defendants,

7   including Does 1-100.

8   30.      As a direct and proximate cause of Plaintiff's use of the product in a fashion intended and anticipated

9   by the Defendants, including Does 1 through 100, Plaintiff was compelled to and did incur expenses for

10   medical care, hospitalization, and other incidental expenses and will have to incur additional like expenses

11   in the future, all in amounts presently unknown to him. Plaintiff, therefore, asks leave of Court either to

12   amend this Complaint so as to show the amount of his medical expenses, when ascertained, or to prove said

13   amount at the time of trial.

14   31.      As a direct and proximate cause of Plaintiff's use of the product in a fashion intended and anticipated

15   by the Defendants, including Does 1 through 100, Plaintiff was injured in his health, strength, and activity,

16   sustaining severe shock and injury, and causing Plaintiff mental, physical, and nervous pain and suffering

17   and resulting in his disability, all to general damage in a sum which will be shown according to proof.

18   32.      As a direct and proximate cause of Plaintiff's use of the product in a fashion intended and anticipated

19   by the Defendants, including Does 1 through 100, Plaintiff was disabled and/or may be disabled in the future

20   and would thereby be prevented from attending to the duties of his usual occupation. Plaintiff has, therefore,

21   lost earnings and may continue to lose earnings in the future, all in amounts presently unknown to him.

22   Plaintiff asks for leave of Court either to show the amount of her lost earnings, when ascertained, or to prove

23   said amount at the time of trial.

24   33.      The product's defect, the product's failure to perform safely, and the lack of sufficient instructions

25   or warnings were a substantial factor in causing Plaintiff's harm.

26                              **XI.**

27                         **PRAYER**

28       WHEREFORE, Plaintiff, THOMAS MACCARTEE, demands judgment as follows:

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 630, San Diego, California 92103
Tel: (619) 564-4877 Fax: (619) 564-4879

---

8

*Thomas Maccartee v. Napa Auto Parts, et al.*

COMPLAINT FOR DAMAGES

1    1.  For special damages, past and future, including medical and related expenses, according to proof;

2    2.  For general damages, past and future, according to proof;

3    3.  For lost earnings, past and future, according to proof;

4    4.  For interest as allowed by law;

5    5.  For costs of suit herein incurred; and

6    6.  For such other and further relief as the court may deem just and proper.

7

8    Respectfully Submitted,

9                    **FOLDENAUER LAW GROUP**

10                    *A Professional Law Corporation*

11    Dated: January 9, 2018

12                    Sean M. Foldenauer

13                    Danwill D. Schwender
                        Attorneys for Plaintiff

14                    THOMAS MACCARTEE

15

16

17

18                    **JURY DEMAND**

19    Plaintiff hereby request trial by jury pursuant to *California Code of Civil Procedure* section 631.

20

21    Respectfully Submitted,

22                    **FOLDENAUER LAW GROUP**

23                    *A Professional Law Corporation*

24    Dated: January 9, 2018

25                    Sean M. Foldenauer
                        Danwill D. Schwender

26                    Attorneys for Plaintiff
                        THOMAS MACCARTEE

27

28

FOLDENAUER LAW GROUP, APLC
2550 Fifth Avenue, Suite 650, San Diego, California 92103
Tel: (619) 564-3377 Fax: (619) 564-8879

9

*Thomas Maccartee v. Napa Auto Parts, et al.*

COMPLAINT FOR DAMAGES

32C01-2003-PL-000038

Hendricks Circuit Court

LAW OFFICES

# FORD, WALKER, HAGGERTY & BEHAR

LIMITED LIABILITY PARTNERSHIP

SOUTHERN CALIFORNIA

## LONG BEACH

ONE WORLD TRADE CENTER
TWENTY-SEVENTH FLOOR
LONG BEACH, CALIFORNIA  90831-2700
TELEPHONE (562) 983-2500
FACSIMILE (562) 983-2555
WEBSITE: WWW.FWHB.COM

JEFFREY S. BEHAR
WILLIAM G. HAGGERTY
PATRICK J. GIBBS
JAMES D. SAVAGE
ROBERT L. REISINGER
TINA I. MANGARPAN
SHAYNE L. WULTERIN *
TIMOTHY P. McDONALD
STEPHEN W. MOORE
CHARLES J. SCHMITT
JON A. HAMMERBECK
MITCHELL D. KAYLOR
WILLIAM O. WOODLAND
JOHN K. PAULSON
SEAN GANDHI *
MARY B. PENDLETON
TEJAS B. PATEL
STACY A. BRADFIELD
JENNIFER L. RUSSELL
KATHERINE M. HARWOOD
ARMEN A. AVAKIAN
DEBORAH J. TADDEUCCI
VICTORIA A. SILCOX
TODD R. BECKER
ADAM C. HACKETT
JEET SEN
STEPHEN E. FRISCH
NICOLE R. CARROLL
MARK P. LaSCOLA
JENNIE L. KRUEMPEL
ARTHUR W. SCHULTZ
RENEE E. JENSEN *
MARGARET K. SHELTON
KELLY A. WARD

STACY M. YOUNG
MARK S. LEVINE
KRISTINE M. GAMBOA
ERIN L. BENLER-WARD
DANIEL N. STEIN
STEPHANIE M. BLACK
JOSHUA D. MOUNTAIN
MICHAEL D. GOODMAN
EVELYN LEVINE SOLIS
ANDREW B. LEAL
RACHEL E. BODEN
JENNIFER N. TAYLOR**
EDYE A. HILL
CHIAYU V. CHANG
SHARON K. WEBB
SETA SARABEKIAN
KEVIN R. LAZAR**
JOHN P. PEARSON*
BAHAREH HABIBI
ENNY VAN
ASHLEY PICKARD
JOHN M. E. RYAN
JANE WIN-THU
NATHANIEL J. PATTERSON
SHIRLEY CARPENTER-BRIDWELL
JUSTIN P. HARRISON
CRAIG A. HUMPHREY
CORY L. O'YANG
TRISTAN C. OROZCO
JOHN C. DORAME**
HALA A. MOUSA
DEBBIE YEN
JEFFREY J. OLIN

June 13, 2018

COUNSEL
TIMOTHY L. WALKER
DONNA ROGERS KIRBY
NEIL S. TARDIFF
WILLIAM C. OCKEN

RETIRED
G. RICHARD FORD

THEODORE P. SHIELD  (1920 - 2010)

* ALSO ADMITTED IN NEVADA
** ADMITTED IN NEVADA

WRITER'S EMAIL ADDRESS

tmangarpan@fwhb.com

WRITER'S DIRECT DIAL NUMBER

(562) 983-2507

WRITER'S DIRECT FAX NUMBER

(562) 590-3525

Harbor Industries, Inc.
14170 172nd Avenue
Grand Haven, MI 49417

Re:   **Thomas MacCartee v. Genuine Parts Company**
Case Number 37-2018-00001135-CU-PO-CTL
Our File No.:  01618-003

To Whom It May Concern:

The law firm of Ford, Walker, Haggerty & Behar has been retained to defend
Genuine Parts Company with reference to the above entitled matter.  Plaintiff has also
recently named Balkamp, Inc. as a doe defendant and we will be defending this entity as
well once and if it is served.  We enclose a copy of the Complaint for your reference.

On or about January 17, 2007, Balkamp, Inc. and Harbor Industries, Inc. entered
into an Indemnity Agreement.  A copy of the Indemnity Agreement is enclosed for your
convenience.  The pertinent provisions of the Indemnity Agreement state as follows:

FORD, WALKER, HAGGERTY & BEHAR

Harbor Industries, Inc.
**MacCartee v Genuine Parts Company**
June 13, 2018
Page 2

### 1.    INDEMNIFICATION

SUPPLIER will protect, defend ad indemnify BALKAMP, its parent
company and affiliated business entities, National Automotive Parks Association
and its members, and their respective employees, agents, officers, directors and
customers who purchase the Products (together, the "Indemnified Parties") from
and hold them harmless against all liability, losses, damages, costs or expenses of
any nature, including without limitation, reasonable attorney's fees, which they
may at any time suffer, incur, or be required to pay resulting from or arising out of
(i) any claim that the Products are defective, negligently designed or manufactured
in any manner, or otherwise determined to be the cause of injury or death to
persons, or damage to property, or both; (ii) any claim that the Products or the
manufacture, sale or labeling of the Products, or on or within the packaging for any
Products (including any instructions or warnings thereon), is inadequate in any
manner; (iii) any claim that the Products should have been recalled pursuant to any
governmental requirement; (iv) SUPPLIER's negligence or willful misconduct in
supplying the Products; or (v) any claim, action, suit or proceeding by any person,
firm, governmental agency or corporation resulting from or arising out of (i)
through (iv) above.  This indemnification shall not apply if and to the extent that
such injury, death or damage is directly caused solely by any of the following: (a)
failure on the part of BALKAMP to furnish instruction materials provided by
SUPPLIER for inclusion in packages in which Products are sold; (b) sale of
Products by BALKAMP without packaging where packaging is provided by
SUPPLIER and where such packaging contains the required labeling and
instructions on the use of the Product; (c) alteration of any Products by
BALKAMP; (d) negligent installation or repair of Products by BALKAMP; or (e)
willful misconduct of BALKAMP.

. . . .

### 3.    LEGAL ACTION

BALKAMP will give SUPPLIER prompt notice of any claims, actions,
suits, or proceedings instituted against BALKAMP with respect to the subject of
the indemnity contained herein, and shall provide to SUPPLIER reasonable
information and assistance in the defense thereof.  SUPPLIER agrees at its own
expense to defend against any such claims, actions, suits or proceedings, rightfully
or wrongfully instituted with legal counsel reasonably acceptable to BALKAMP;
provided however, that SUPPLIER shall not settle any claim, action, suit or
proceeding which imposes upon BALKAMP any obligation, or in any way
prejudices the rights of BALKAMP, other than as set forth herein, without

FORD, WALKER, HAGGERTY & BEHAR

Harbor Industries, Inc.
**MacCartee v Genuine Parts Company**
June 13, 2018
Page 3

BALKAMP's written consent.  SUPPLIER agrees to satisfy any and all judgments which may be rendered against the Indemnified Parties or SUPPLERI with respect thereto.

5.    LIABILITY INSURANCE

During the term of the business relationship between SUPPLIER and BALKAMP, SUPPLIER will procure and maintain in full force and effect a product liability insurance policy or policies, naming BALKAMP and National Automotive Parts Association and its member corporations as additional named insureds, covering all goods and products supplied to BALKAMP by SUPPLIER under this Indemnity Agreement.

Pursuant to the terms of the Indemnity Agreement demand is hereby made that Harbor Industries, Inc.  agree to defend and indemnify both Genuine Parts Company and Balkamp for the accident involving the Harbor Industries toolboard which plaintiff contends fell onto him. Genuine Parts Company is the parent company to Balkamp Inc.

We look forward to hearing from you.

Very truly yours,

TINA I. MANGARPAN
Of FORD, WALKER, HAGGERTY & BEHAR

TIM:bae
Enclosures
016\18\003\Tender Letters\ce.Harbor Industries.01.doc



**Prepare. Protect. Prevail.™**

THE
**HARTFORD**

Business Insurance
Employee Benefits
Auto
Home

May 10, 2019

**CERTIFIED MAIL-RETURN RECEIPT REQUESTED**
**AND VIA EMAIL: tina@fwhb.com**
Tina Mangarpan
Ford Walker Haggerty & Behar
One World Trade Center
Twenty Seventh Floor
Long Beach, California   90831-2700

RE:   *Thomas MacCartee v. Genuine Parts Company*
       San Diego County, CA Superior Court Case No. 37-2018-00001135-CU-PO-CTL
       Our Insured:       Harbor Industries
       Plaintiff:          Thomas MacCartee
       Claim Number:    Y53 L 51093
       DOL:             2/19/2017

Dear Attorney Mangarpan:

Hartford Underwriters Insurance Company ("Hartford") is the products liability insurer of Harbor
Industries, Inc. ("Harbor") regarding the above captioned claim. You previously tendered the
defense of Genuine Parts Company ("Genuine") and Balkamp, Inc. ("Balkamp") for defense and
indemnity relative to a lawsuit styled *Thomas MacCartee v. Genuine Parts Company et al,* which
is filed in the Superior Court of the State of California. The tender was pursuant to a contract
executed between Harbor and Balkamp dated January 17, 2007. Our investigation has determined
that the sale of the product in question was pursuant to a new Terms and Conditions of Sale of
Products by Harbor Industries, Inc. ("Terms"), which were included with all purchase orders since
2015. I have attached a copy of the Terms that are applicable to the products liability claim being
made by Mr. MacCartee. You will note the Terms do not contain indemnity language or additional
insured status requirements favorable to Genuine and/or Balkamp. Further, the Terms clearly void
any prior agreements. Genuine nor Balkamp qualify as an insured under the Hartford policy.
Therefore we must respectfully deny your tender of the defense of Genuine and Balkamp in this
lawsuit.

The Hartford hereby reserves all its rights, positions and defenses in the matter, including, but not
limited to, the right to supplement and/or to amend its coverage positions should facts and
circumstances indicate the need to do so. Neither this communication, nor any prior or subsequent
communications, should be construed as a waiver of any rights, positions or defenses held by
Hartford. If you have additional information that you believe may alter our coverage position in
this matter, please forward the same for our review and consideration.

© 2019 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published or used without the permission of The Hartford.

Page **2**

If you believe your claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance.  You may write the Department of Insurance or call them at:

> California Department of Insurance
> 300 South Spring Street, Sixth Floor
> Los Angeles, California  90013
> 1-800-927-4357
> From outside of California, you must call 1-213-897-8921

Sincerely,

Debbie Bradshaw
Sr. Home Office Consultant-MCU, Liability
The Hartford Financial Services Group, Inc.
One Hartford Plaza / Tower 17
Hartford, CT 06155
Phone: (860)547-2532
Fax: (860)756-8582
Email: deborah.bradshaw2@thehartford.com

Cc:     Scott Blackstone via email
Cc:     John Gallagher via email

Enc:    Terms and Conditions of Sale of Products By Harbor Industries, Inc.

© 2019 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published or used without the permission of The Hartford.

LAW OFFICES

## FORD, WALKER, HAGGERTY & BEHAR

LIMITED LIABILITY PARTNERSHIP

SOUTHERN CALIFORNIA

LONG BEACH

ONE WORLD TRADE CENTER

27TH FLOOR

LONG BEACH, CALIFORNIA 90831-2700

TELEPHONE (562) 983-2500

FACSIMILE (562) 983-2555

WEBSITE: WWW.FWHB.COM

May 16, 2019

JEFFREY S. BEHAR
WILLIAM C. HAGGERTY
PATRICK J. GIBBS
JAMES D. SAVAGE
ROBERT L. REISINGER
TINA I. MANGARPAN
SHAYNE L. WULTERIN*
TIMOTHY P. McDONALD
STEPHEN W. MOORE
CHARLES J. SCHMITT
JON A. HAMMERBECK
MITCHELL D. KAYLOR
WILLIAM O. WOODLAND
JOHN K. PAULSON
SEAN GANDHI*
MARY B. PENDLETON
TEJAS B. PATEL
STACY A. BRADFIELD
JENNIFER L. RUSSELL
KATHERINE M. HARWOOD
ARMEN A. AVAKIAN
DEBORAH J. TADDEUCCI
VICTORIA A. SILCOX
TODD R. BECKER
ADAM C. HACKETT
JEET SEN
STEPHEN E. FRESCH
MARK P. LaSCOLA
JENNIE L. KRUEMPEL
WIN D. DOAN
LISSA D. LAFFEY
ARTHUR W. SCHULTZ
RENEE E. JENSEN*
MARGARET K. SHELTON
KELLY A. WARD
MARK S. LEVINE
KRISTINE M. GAMBOA
SARAH E. SINGER
DANIEL N. STEIN

STEPHANIE M. BLACK
MICHAEL D. GOODMAN
ANDREW B. LEAL
RACHEL E. BODEN
JENNIFER N. TAYLOR**
EDYE A. HILL
CHIAYU V. CHANG
SHARON K. WEBB
SETA SARABEKIAN
KEVIN R. LAZAR**
JOHN P. PEARSON*
ENNY VAN WANG
ASHLEY PICKARD
SHIRLEY CARPENTER-BRIDWELL
DEBBIE YEN
JEFFREY J. OLIN
ROBERT A. KUBLER
CATHERINE SUN
JOHN C. ELLIS
ARTHUR C. VILLEGAS
ASHLEY S. FEDER
CHRISTOPHER P. CHANG
CINDY PHAM
SHAWN S. ROKNI
KEVIN D. POUSH
EDGAR F. NAVARRETE
CATHERINE PARADA
KRYSTA MAIGUE
EDUARDO BALDERAS
MONIQUE J. POSADA
STEVE KIM
TYLER J. SAN JUAN
GAREN H. KASPARIAN
BLAKE BARROW
JOHNNY T. PARSEGHIAN
JEFF M. YOSTANTO
MARIA ELENA PARADA
JOHN A. KELLY
JEANETTE D. LAWRENCE

COUNSEL
TIMOTHY L. WALKER
DONNA ROGERS KIRBY
NEIL S. TARDIFF
WILLIAM C. OCKEN

RETIRED
G. RICHARD FORD

THEODORE P. SHIELD (1920 – 2010)

* ALSO ADMITTED IN NEVADA
** ADMITTED IN NEVADA

WRITER'S EMAIL ADDRESS

tmangarpan@fwhb.com

WRITER'S DIRECT DIAL NUMBER

(562) 983-2507

WRITER'S DIRECT FAX NUMBER

(562) 590-3525

## Via Email & Certified Mail

Debbie Bradshaw
Sr. Home Office Consultant-MCU, Liability
**The Hartford Financial Services Group, Inc.**
One Hartford Plaza / Tower 17
Hartford, CT 06155
Deborah.Bradshaw2@thehartford.com

      **Re:**    **MacCartee v. Harbor Industries, Inc.**
            San Diego Superior Court Case No. 37-2018-00001135-CU-PO-CTL
            Your Insured:     Harbor Industries
            Plaintiff:         Thomas MacCartee
            Your Claim Number:  Y53 L 51093
            DOL:           2/19/2017

Dear Ms. Bradshaw:

      We have received your letter dated May 10, 2019 concerning our clients' tender of defense of the above noted action to Harford Insurance Company's insured, Harbor Industries, Inc. Hartford has rejected that tender on the basis the TERMS AND CONDITIONS OF SALE OF PRODUCTS BY HARBOR INDUSTRIES, INC. ("Terms & Conditions") does not include an Indemnity Agreement and supersedes the prior agreement between Balkamp, Inc. and Harbor Industries. Hartford misreads the Terms & Conditions.

FORD, WALKER, HAGGERTY & BEHAR

Debbie Bradshaw
**MacCartee v. Harbor Industries, Inc.**
May 16, 2019
Page 2

Nothing in the Terms & Conditions expunges the prior Indemnity Agreement between Harbor Industries, Inc. and Balkamp, Inc.

The Terms & Conditions expressly states, in pertinent part, as follows:

> "1.    Applicability. The following Terms and Conditions ("Terms") are applicable to all sales by Harbor Industries, Inc. ("HI") to a third party ("Purchaser") of HI's products ("Products") and are the only conditions applying to the sale of the Products except written conditions contained on a proposal or acknowledgement of sale relating to price, quantities, delivery schedules, terms of payment, invoicing, shipping instructions, and the description and specification of the Products, together with other written conditions which may be mutually agreed upon in writing that are signed by the parties. . . . Prior courses of dealings, trade usage and verbal agreements not reduced to a writing signed by HI, to the extent they differ from, modify, add to or detract from these Terms shall not be binding on HI. . ."

On or about January 17, 2007 Balkamp, Inc. and Harbor Industries, Inc. entered into a written Indemnity Agreement.  This agreement contained "other written conditions" that were "mutually agreed upon in writing" that was signed by the parties.  Thus, they contain additional conditions that apply to Balkamp., Inc. purchase of Harbor Industries, Inc, products. Once again, the pertinent provisions of the Indemnity Agreement state as follows:

> "1.    **INDEMNIFICATION**
>
> SUPPLIER will protect, defend ad indemnify BALKAMP, its parent company and affiliated business entities, National Automotive Parks Association and its members, and their respective employees, agents, officers, directors and customers who purchase the Products (together, the "Indemnified Parties") from and hold them harmless against all liability, losses, damages, costs or expenses of any nature, including without limitation, reasonable attorney's fees, which they may at any time suffer, incur, or be required to pay resulting from or arising out of (i) any claim that the Products are defective, negligently designed or manufactured in any manner, or otherwise determined to be the cause of injury or death to persons, or damage to property, or both; (ii) any claim that the Products or the manufacture, sale or labeling of the Products, or on or within the packaging for any Products (including any instructions or warnings thereon), is inadequate in any manner; (iii) any claim that the Products should have been recalled pursuant to any governmental requirement; (iv) SUPPLIER's negligence or willful misconduct in supplying the Products; or (v) any claim,

FORD, WALKER, HAGGERTY & BEHAR

Debbie Bradshaw
**MacCartee v. Harbor Industries, Inc.**
May 16, 2019
Page 3

action, suit or proceeding by any person, firm, governmental agency or corporation resulting from or arising out of (i) through (iv) above. This indemnification shall not apply if and to the extent that such injury, death or damage is directly caused solely by any of the following: (a) failure on the part of BALKAMP to furnish instruction materials provided by SUPPLIER for inclusion in packages in which Products are sold; (b) sale of Products by BALKAMP without packaging where packaging is provided by SUPPLIER and where such packaging contains the required labeling and instructions on the use of the Product; (c) alteration of any Products by BALKAMP; (d) negligent installation or repair of Products by BALKAMP; or (e) willful misconduct of BALKAMP.

. . .

3.    **LEGAL ACTION**

BALKAMP will give SUPPLIER prompt notice of any claims, actions, suits, or proceedings instituted against BALKAMP with respect to the subject of the indemnity contained herein, and shall provide to SUPPLIER reasonable information and assistance in the defense thereof. SUPPLIER agrees at its own expense to defend against any such claims, actions, suits or proceedings, rightfully or wrongfully instituted with legal counsel reasonably acceptable to BALKAMP; provided however, that SUPPLIER shall not settle any claim, action, suit or proceeding which imposes upon BALKAMP any obligation, or in any way prejudices the rights of BALKAMP, other than as set forth herein, without BALKAMP's written consent. SUPPLIER agrees to satisfy any and all judgments which may be rendered against the Indemnified Parties or SUPPLIER with respect thereto.

. . .

5.    **LIABILITY INSURANCE**

During the term of the business relationship between SUPPLIER and BALKAMP, SUPPLIER will procure and maintain in full force and effect a product liability insurance policy or policies, naming BALKAMP and National Automotive Parts Association and its member corporations as additional named insureds, covering all goods and products supplied to BALKAMP by SUPPLIER under this Indemnity Agreement.

Harbor Industries, Inc. provided Balkamp, Inc. with certificates of insurance pursuant to this Indemnity Agreement well after the Sale of Products agreement in 2015. Copies of those certificates for the 2016-2017 and 2017-2018 policy terms are

FORD, WALKER, HAGGERTY & BEHAR

Debbie Bradshaw
**MacCartee v. Harbor Industries, Inc.**
May 16, 2019
Page 4


enclosed. Note that Balkamp, Inc. is listed on both as an additional insured "as required by written contract with the named insured." These evidence the parties understanding that the prior Indemnity Agreement remained in effect.

Our client, Balkamp, Inc. and its parent company, Genuine Parts Company, once again tender their defense to Harbor Industries.

Since Balkamp, Inc. is an additional insured under the Hartford policies issued to Harbor Industries, Inc. for the claims being made against Balkamp, Inc. in the above noted litigation, Balkamp, Inc. and its parent company, Genuine Parts Company, hereby tenders their defense directly to Hartford.

We look forward to Hartford's prompt reconsideration of its denial.

Very truly yours,

TINA I. MANGARPAN
Of FORD, WALKER, HAGGERTY & BEHAR

TIM:bae
Enclosures
016\18\003\Tender Letters\ce-Hartford.01.docx


cc:

Scott S. Blackstone, Esq.
**Law Offices of John A. Hauser**
Scott.blackstone@thehartford.com

**From:** Bradshaw, Debbie (Liab + Finl Products Claims) <Deborah.Bradshaw2@thehartford.com>
**Sent:** Friday, June 07, 2019 9:49 PM
**To:** Tina Mangarpan <tina@fwhb.com>
**Cc:** Blackstone, Scott S (Claims Solutions and Analytics) <Scott.Blackstone@thehartford.com>
**Subject:** RE: Thomas MacCartee v Genuine Parts et al Hartford Claim #: Y53 L 51093 [CONFIDENTIAL]

Attorney Mangarpan:

We disagree with your analysis of the "Terms & Conditions" provided by Harbor Industries, Inc. to Balkamp with the purchase of the product involved in this loss.  Furthermore, under Section 14 (Indemnification), the Purchaser agrees to indemnify Harbor Industries for any damages and expenses, including attorney fees, arising out of ... (iii) the action or inaction of Purchaser or its employees, customer, or agents which may cause injuries or damages giving rise to claims against Harbor Industries". As you are aware, the product in question was assembled by employees of Napa Auto Parts, who also stocked and maintained the display in the store. The facts of the loss support an indemnification claim by Harbor Industries.

With regard to the Certificate of Insurance you provided in support of your contention that your clients are additional insureds under the Harbor Industries policy, it was issued more than two months after the date of the loss.

**DEBBIE BRADSHAW**
Senior Home Office Consultant
MCU - Liability



The Hartford Financial Services Group, Inc.
One Hartford Plaza | Tower 16
Hartford, Connecticut  06155
W: 860-547-2532
F:  860-756-8582
**deborah.bradshaw2@thehartford.com**

www.thehartford.com
www.facebook.com/thehartford
www.twitter.com/thehartford

THE HARTFORD

Business Insurance
Employee Benefits
Auto
Home

**STATE OF INDIANA** ) **IN THE HENDRICKS CIRCUIT COURT**
) **SS:**
**COUNTY OF HENDRICKS** ) **CASE NUMBER: 32C01-**

BALKAMP, INC. AND GENUINE
PARTS COMPANY,

        Plaintiffs,

  vs.

HARBOR INDUSTRIES, INC., GA
RICHARDS COMPANY and HARTFORD
UNDERWRITERS INSURANCE
COMPANY,

      Defendants.

## SUMMONS FOR SERVICE BY CERTIFIED MAIL

The State of Indiana to Defendant

    Harbor Industries, Inc.
    c/o National Registered Agents, Inc.
    150 W. Market Street, Suite 800
    Indianapolis, IN 46204

    You have been sued by the person(s) named "plaintiff", in the court stated above.
    The nature of the suit against you is stated in the Complaint which is attached to this document. It also states the demand which the plaintiff has made and wants from you.
    You must answer the Complaint in writing, by you or your attorney, within twenty-three (23) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.
    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Date: 3/13/2020

                   *Debbie Hoskins*
        Clerk, _____ Superior Court (Seal)

Meghan E. Ruesch, #32473-49
*Attorney for Plaintiff*
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200

Indianapolis, IN 46202
Telephone      317-237-0500
Facsimile       317-630-2790
E-Mail    mruesch@lewiswagner.com

CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this Summons and a copy of the Complaint to each of the defendant(s)
by (registered or certified) mail requesting a return receipt signed by the addressee only addressed to each of said defendant(s)
at the address(es) furnished by the plaintiff.

Date:_____                    _____
                                                Clerk, _____Superior Court (Seal)

RETURN OF SERVICE OF SUMMONS BY MAIL

I hereby certify that service of summons with return receipt requested was mailed on the _____ day of _____, 20___, and that a copy of return receipt was received on the _____ day of _____, 20____, which copy is attached herewith.

Date:_____                    _____
                                                Clerk, _____Superior Court (Seal)

CERTIFICATE OF CLERK OF SUMMONS NOT ACCEPTED BY MAIL

I hereby certify that on the _____ day of _____, 20___, I mailed a copy of this summons and a copy of the Complaint to the defendant(s)
by (registered or certified) mail, and the same was returned without acceptance this _____ day of _____, 20___, and I did deliver said summons and copy of Complaint to the Sheriff of _____ County, Indiana.

Date:_____                    _____
                                                Clerk, _____Superior Court (Seal)

RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

1.      By delivering on the _____ day of _____, 20___, a copy of this summons and a copy of the Complaint to each of the within-named defendant(s) _____.
2.      By leaving on the _____ day of _____, 20___, for each of the within-named defendants _____, a copy of the Complaint at the respective dwelling house or usual place of abode with _____, a person of suitable age and discretion residing therein whose usual duties or activities include prompt communication of such information to the person served.
3.

and by mailing a copy of the summons without the Complaint to
at _____, the last known address of defendant(s).

All done in _____ County, Indiana.

Fees:    $_____                       _____
                                                 Sheriff of _____, County, Indiana
Mileage  _____

Total    $_____                       By: _____
                                                 Deputy

SERVICE ACKNOWLEDGED

A copy of the within summons and a copy of the Complaint attached thereto were received by me at
_____, this _____ day of _____, 20___.

                                                 _____
                                                 Signature of Defendant

Q:\JMJ\FORMS\word\summons cert.doc

| | | |
|---|---|---|
| **STATE OF INDIANA** | ) | **IN THE HENDRICKS CIRCUIT COURT** |
| | ) | **SS:** |
| **COUNTY OF HENDRICKS** | ) | **CASE NUMBER: 32C03-** |

BALKAMP, INC. AND GENUINE
PARTS COMPANY,

       Plaintiffs,

   vs.

HARBOR INDUSTRIES, INC., G.A.
RICHARDS COMPANY and HARTFORD
UNDERWRITERS INSURANCE
COMPANY,

      Defendants.

### SUMMONS FOR SERVICE BY CERTIFIED MAIL

The State of Indiana to Defendant

      G.A. Richards Company
      1060 Ken O Sha Ind. Park Dr. SE
      Grand Rapids, MI 49508

      You have been sued by the person(s) named "plaintiff", in the court stated above.
      The nature of the suit against you is stated in the Complaint which is attached to this document.  It also states the demand which the plaintiff has made and wants from you.
      You must answer the Complaint in writing, by you or your attorney, within twenty-three (23) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.
      If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Date: 3/13/2020

                        *Debbie Hoskins*
              Clerk, _____ Superior Court (Seal)

Meghan E. Ruesch, #32473-49
*Attorney for Plaintiff*
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
Telephone   317-237-0500

Facsimile       317-630-2790
E-Mail     mruesch@lewiswagner.com

## CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this Summons and a copy of the Complaint to each of the defendant(s)
by (registered or certified) mail requesting a return receipt signed by the addressee only addressed to each of said defendant(s)
at the address(es) furnished by the plaintiff.

Date:_____                    _____

                                                  Clerk, _____Superior Court (Seal)

## RETURN OF SERVICE OF SUMMONS BY MAIL

I hereby certify that service of summons with return receipt requested was mailed on the _____ day of _____,
20___, and that a copy of return receipt was received on the _____ day of _____, 20____, which copy is attached herewith.

Date:_____                    _____

                                                  Clerk, _____Superior Court (Seal)

## CERTIFICATE OF CLERK OF SUMMONS NOT ACCEPTED BY MAIL

I hereby certify that on the _____ day of _____, 20___, I mailed a copy of this summons and a copy of the Complaint to the defendant(s)
by (registered or certified) mail, and the same was returned without acceptance this _____ day of _____, 20___, and I did deliver
said summons and copy of Complaint to the Sheriff of _____ County, Indiana.

Date:_____                    _____

                                                  Clerk, _____Superior Court (Seal)

## RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

1.       By delivering on the _____ day of _____, 20___, a copy of this summons and a copy of the Complaint to each
of the within-named defendant(s) _____.

2.       By leaving on the _____ day of _____, 20___, for each of the within-named defendants
_____, a copy of the Complaint at the
respective dwelling house or usual place of abode with _____, a person of suitable age and discretion residing therein
whose usual duties or activities include prompt communication of such information to the person served.

3.

and by mailing a copy of the summons without the Complaint to
at _____, the last known address  of defendant(s).

All done in _____ County, Indiana.

Fees:     $_____                        _____

Mileage     _____                       Sheriff of _____, County, Indiana

Total     $_____                        By: _____
                                                   Deputy

## SERVICE ACKNOWLEDGED

A copy of the within summons and a copy of the Complaint attached thereto were received by me at
_____, this _____ day of _____, 20___.
.

                                                  _____

                                                  Signature of Defendant

Q:\JMJ\FORMS\word\summons cert.doc

| STATE OF INDIANA | ) | IN THE HENDRICKS CIRCUIT COURT |
|---|---|---|
| | ) | SS: |
| COUNTY OF HENDRICKS | ) | CASE NUMBER: 32C03- |

BALKAMP, INC. AND GENUINE
PARTS COMPANY,

       Plaintiffs,

   vs.

HARBOR INDUSTRIES, INC., GA
RICHARDS COMPANY and HARTFORD
UNDERWRITERS INSURANCE
COMPANY,

       Defendants.

### SUMMONS FOR SERVICE BY CERTIFIED MAIL

The State of Indiana to Defendant

      Hartford Underwriters Insurance Company
      c/o CT Corporation System
      150 W. Market Street, Suite 800
      Indianapolis, IN 46204-2814

    You have been sued by the person(s) named "plaintiff", in the court stated above.
    The nature of the suit against you is stated in the Complaint which is attached to this document.  It also states the demand which the plaintiff has made and wants from you.
    You must answer the Complaint in writing, by you or your attorney, within twenty-three (23) days, commencing the day after you receive this summons, or judgment will be entered against you for what the plaintiff has demanded.
    If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Date: 3/13/2020

                          Clerk, _____ Superior Court (Seal)

Meghan E. Ruesch, #32473-49
*Attorney for Plaintiff*
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200



Indianapolis, IN 46202
Telephone      317-237-0500
Facsimile        317-630-2790
E-Mail    mruesch@lewiswagner.com

### CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this Summons and a copy of the Complaint to each of the defendant(s)
by (registered or certified) mail requesting a return receipt signed by the addressee only addressed to each of said defendant(s)
at the address(es) furnished by the plaintiff.

Date:_____      _____
Clerk, _____Superior Court (Seal)

### RETURN OF SERVICE OF SUMMONS BY MAIL

I hereby certify that service of summons with return receipt requested was mailed on the _____ day of _____,
20___, and that a copy of return receipt was received on the _____ day of _____, 20____, which copy is attached herewith.

Date:_____      _____
Clerk, _____Superior Court (Seal)

### CERTIFICATE OF CLERK OF SUMMONS NOT ACCEPTED BY MAIL

I hereby certify that on the _____ day of _____, 20____, I mailed a copy of this summons and a copy of the Complaint to the defendant(s)
by (registered or certified) mail, and the same was returned without acceptance this _____ day of _____, 20___, and I did deliver
said summons and copy of Complaint to the Sheriff of _____ County, Indiana.

Date:_____      _____
Clerk, _____Superior Court (Seal)

### RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

1.      By delivering on the _____ day of _____, 20___, a copy of this summons and a copy of the Complaint to each
of the within-named defendant(s) _____.
2.      By leaving on the _____ day of _____, 20___, for each of the within-named defendants
_____, a copy of the Complaint at the
respective dwelling house or usual place of abode with _____, a person of suitable age and discretion residing therein
whose usual duties or activities include prompt communication of such information to the person served.
3.

and by mailing a copy of the summons without the Complaint to
at _____, the last known address  of defendant(s).

All done in _____ County, Indiana.

Fees:      $_____          _____
Sheriff of _____, County, Indiana
Mileage      _____

Total      $_____          By: _____
Deputy

### SERVICE ACKNOWLEDGED

A copy of the within summons and a copy of the Complaint attached thereto were received by me at
_____, this _____ day of _____, 20___.

_____
Signature of Defendant

Q:\JMJ\FORMS\word\summons cert.doc

**UNITED STATES POSTAL SERVICE**

March 17, 2020

Dear Danielle Wood:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9489 0090 0027 6166 6330 34**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | March 16, 2020, 10:20 am |
| **Location:** | INDIANAPOLIS, IN 46204 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| | Up to $50 insurance included |

## Recipient Signature



| | |
|---|---|
| Signature of Recipient: | |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**UNITED STATES**
**POSTAL SERVICE**

March 17, 2020

Dear Danielle Wood:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9489 0090 0027 6166 6330 41**.

| Item Details | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 17, 2020, 10:28 am |
| **Location:** | GRAND RAPIDS, MI 49508 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| | Up to $50 insurance included |

| Recipient Signature | |
|---|---|
| Signature of Recipient: | *Denise Popma* |
| Address of Recipient: | |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

**UNITED STATES POSTAL SERVICE**

March 17, 2020

Dear Danielle Wood:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9489 0090 0027 6166 6330 27**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | March 16, 2020, 10:20 am |
| **Location:** | INDIANAPOLIS, IN 46204 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| | Up to $50 insurance included |

## Recipient Signature



Signature of Recipient:

Address of Recipient:

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

STATE OF INDIANA              )          IN THE HENDRICKS CIRCUIT COURT
                             ) SS:
COUNTY OF HENDRICKS          )              HENDRICKS COUNT, INDIANA

BALKAMP, INC. and GENUINE PARTS )
COMPANY,                        )
                                )
              Plaintiffs,       )      Cause No. 32C01-2003-PL-000038
                                )
v.                              )
                                )
HARBOR INDUSTRIES, INC., G.A.   )
RICHARDS COMPANY and HARTFORD   )
UNDERWRITERS INSURANCE COMPANY, )
                                )
              Defendants.       )

**<u>APPEARANCE</u>**

Party Classification:  Initiating ☐  Responding ☒  Intervening ☐

1.    The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member:  **HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY**

2.    Applicable attorney information for service as required by Trial Rule 5(B) (2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

Name:     Patrick P. Devine          Atty No.   (19075-45)
Address:  322 Indianapolis Blvd,Suite 201   Phone:    219-864-5051
          Schererville, IN  46375     FAX:      219-864-5052
                                      pdevine@hinshawlaw.com

[List on continuation page the additional attorneys appearing for above party member(s)]

3.    There are other party members:  Yes ☐ No ☒ (If yes, list on continuation page.) All Parties listed above.

4.    If first initiating party filing this case, the Clerk is requested to assign this case the following Case Type under Administrative Rule 8(b) (3):

5.    I will accept service by FAX at the above noted number: Yes ☐  No ☒.

6.    This case involves support issues.  Yes ☐ No ☒ (If yes, supply social security numbers for all family members on continuation page.)

7.    There are related cases:  Yes ☐ No ☒ (If yes, list on continuation page.)

1030035\305463525.v1

8.      This form has been served on all other parties.  Certificate of Service is attached: Yes ☒ No ☐

9.      Additional information required by local rule: _____

_/s/Patrick P. Devine_____
Attorney-at-Law
Attorney information shown above

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of March, 2020, service of a true and complete copy of the foregoing pleadings or papers were made upon each attorney of record via the Court's electronic filing system.

**HINSHAW & CULBERTSON LLP**

BY:_/s/Patrick P. Devine_____

2

Filed: 3/30/2020 5:41 PM
Clerk
Hendricks County, Indiana

STATE OF INDIANA         )           IN THE HENDRICKS CIRCUIT COURT
                             ) SS:
COUNTY OF HENDRICKS      )           HENDRICKS COUNT, INDIANA

BALKAMP, INC. and GENUINE PARTS )
COMPANY,                                )
                                   )
          Plaintiffs,             )      Cause No. 32C01-2003-PL-000038
                                   )
v.                                          )
                                   )
HARBOR INDUSTRIES, INC., G.A. )
RICHARDS COMPANY and HARTFORD )
UNDERWRITERS INSURANCE COMPANY, )
                                   )
          Defendants.          )

## **APPEARANCE**

Party Classification: Initiating ☐ Responding ☒ Intervening ☐

1.      The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member: **HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY**

2.      Applicable attorney information for service as required by Trial Rule 5(B) (2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

     Name:      Sam S. Zabaneh            Atty No.      (26660-49)
     Address:    322 Indianapolis Blvd, Suite 201    Phone:       219-864-5051
                 Schererville, IN 46375          FAX:         219-864-5052
                                                   szabaneh@hinshawlaw.com

     [List on continuation page the additional attorneys appearing for above party member(s)]

3.      There are other party members: Yes ☐ No ☒ (If yes, list on continuation page.) All Parties listed above.

4.      If first initiating party filing this case, the Clerk is requested to assign this case the following Case Type under Administrative Rule 8(b) (3):

5.      I will accept service by FAX at the above noted number: Yes ☐ No ☒.

6.      This case involves support issues. Yes ☐ No ☒ (If yes, supply social security numbers for all family members on continuation page.)

7.      There are related cases: Yes ☐ No ☒ (If yes, list on continuation page.)

8.      This form has been served on all other parties.  Certificate of Service is attached:
Yes ☒ No ☐

9.      Additional information required by local rule: _____

_____/s/Sam S. Zabaneh_____
Attorney-at-Law
Attorney information shown above

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of March, 2020, service of a true and complete copy of the foregoing pleadings or papers were made upon each attorney of record via the Court's electronic filing system.

**HINSHAW & CULBERTSON LLP**

BY:/s/Patrick P. Devine_____

2

STATE OF INDIANA       )             IN THE HENDRICKS CIRCUIT COURT
                            ) SS:
COUNTY OF HENDRICKS     )            HENDRICKS COUNT, INDIANA

|  |  |  |
|---|---|---|
| BALKAMP, INC. and GENUINE PARTS COMPANY, | ) ) | |
| | ) | |
| Plaintiffs, | ) | Cause No. 32C01-2003-PL-000038 |
| | ) | |
| v. | ) | |
| | ) | |
| HARBOR INDUSTRIES, INC., G.A. RICHARDS COMPANY and HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION FOR ENLARGEMENT OF TIME</u>

NOW COME Defendants, HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY, by counsel, Hinshaw & Culbertson LLP, and herein move this Honorable Court for an enlargement of time to respond to Plaintiffs' Complaint. In support of said motion, Defendants state as follows:

1.      Plaintiffs' Complaint was served upon Defendant HARBOR INDUSTRIES, INC. by registered mail on March 16, 2020.

2.      The original due date for Defendant HARBOR INDUSTRIES, INC. responsive pleading is April 8, 2020.

3.      Plaintiffs' Complaint was served upon Defendant G.A. RICHARDS COMPANY by registered mail on March 17, 2020.

4.      The original due date for Defendant G.A. RICHARDS COMPANY responsive pleading is April 9, 2020.

5.      Defense counsel is still collecting the necessary information to properly respond to Plaintiffs' Complaint, and Plaintiffs will not be prejudiced by the granting of this motion.

6.      Defendants request a 30 day enlargement of time up to and including May 8, 2020.

WHEREFORE, Defendants, HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY, respectfully request that this Court enter an Order granting them an enlargement of 30 days to May 8, 2020 to respond to Plaintiffs' Complaint.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


By:  /s/ Patrick P. Devine
_____
Patrick P. Devine (19075-45)
pdevine@hinshawlaw.com
Attorney for Defendants, HARBOR
INDUSTRIES, INC. and G.A. RICHARDS
COMPANY,
322 Indianapolis Blvd., Suite 201
Schererville, IN 46375
219-864-5051


## CERTIFICATE OF SERVICE

I certify that on the 30th day of March, 2020, a copy of the foregoing pleading or paper was served upon all attorneys of record/appropriate parties via the Court's electronic filing system.

HINSHAW & CULBERTSON LLP

BY: /s/Patrick P. Devine
_____

2

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE HENDRICKS CIRCUIT COURT |
| | ) SS: | |
| COUNTY OF HENDRICKS | ) | HENDRICKS COUNT, INDIANA |

BALKAMP, INC. and GENUINE PARTS )
COMPANY, )
                       )
          Plaintiffs, )    Cause No. 32C01-2003-PL-000038
                       )
v. )
                       )
HARBOR INDUSTRIES, INC., G.A. )
RICHARDS COMPANY and HARTFORD )
UNDERWRITERS INSURANCE COMPANY, )
                       )
          Defendants. )

## **ORDER**

NOW COME Defendants, HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY, having filed their Motion for Enlargement of Time, due notice having been given, and the Court being fully advised in the premises:

IT IS HEREBY ORDERED:  That the above motion is GRANTED.  Defendants, HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY, are granted an enlargement of time up to and including May 8, 2020 within which to file any responsive pleading.

SO ORDERED THIS_____

FILED
April 1, 2020

*Dan Zielinski*

Judge Hendricks Circuit Court
DZ

1030035\305463675.v1

STATE OF INDIANA ) IN THE HENDRICKS CIRCUIT COURT
)
COUNTY OF HENDRICKS ) CAUSE NO. 32C01-2003-PL-000038

BALKAMP, INC. and GENUINE )
PARTS COMPANY, )
)
   Plaintiffs, )
)
  vs. )
)
HARBOR INDUSTRIES, INC., G.A. )
RICHARDS COMPANY and HARTFORD )
UNDERWRITERS INSURANCE )
COMPANY, )
)
   Defendants. )

## <u>APPEARANCE BY ATTORNEY IN CIVIL CASE</u>

1.  The party on whose behalf this form is being filed is:
  Initiating _____ Responding XXXXXX Intervening _____; and

 The undersigned attorney and all attorneys listed on this form now appear in this case for the following parties:

 **HARTFORD UNDERWRITERS INSURANCE COMPANY**

2.  Applicable attorney information for service as required by Trial Rule 5(B)(2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

 **Pamela A. Paige, Attorney No. 16163-49**   **Email: ppaige@plunkettcooney.com**
 **PLUNKETT COONEY, P.C.**       **Telephone: (317) 964-2730**
 **300 N. Meridian Street, Suite 990**     **Fax: (317) 964-2744**
 **Indianapolis, IN 46204**

 **IMPORTANT**: Each attorney specified on this appearance:

 (a) certifies that the contact information listed for him/her on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this Appearance;

 (b) **acknowledges that all orders, opinions, and notices from the court in this matter that are served under Trial Rule 86(G) will be sent to the attorney at the email address(es) specified by the attorney on the Roll of Attorneys**

      (c)      **regardless of the contact information listed above for the attorney**; and understands that he/she is solely responsible for keeping his/her Roll of Attorneys contact information current and accurate, see Ind. Admis. Disc. R. 2(A).

Attorneys can review and update their Roll of Attorneys contact information on the Courts Portal at http://portal.courts.in.gov.

3.     If first initiating party filing this case, the Clerk is requested to assign this case the following Case Type under Administrative Rule 8(b)(3):  **n/a**

4.     This case involves child support issues: Yes _____ No **XX**

5.     This case involves a protection from abuse order, a workplace violence restraining order, or a no – contact order: Yes ___ No **XX**

6.     This case involves a petition for involuntary commitment: Yes _____ No **XX**

7.     There are related cases: Yes _____ No ___**XX**___ (If yes, list on continuation page.)

8.     Additional information required by local rule:

9.     There are other party members: Yes _____ No **XX**

10.    This form has been served on all other parties. Certificate of Service is attached: Yes **XX** No ____

                       Respectfully Submitted,

                       PLUNKETT COONEY, P.C.

                       /s/  Pamela A. Paige
                       Pamela A. Paige, Attorney No. 16163-49
                       *Counsel for Defendant, Hartford Underwriters Insurance Company*

PLUNKETT COONEY, P.C.
300 N. Meridian Street, Suite 990
Indianapolis, IN 46204
(317) 974-5744
(317) 964-2744 (Fax)

2

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 6, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

Meghan E. Ruesch                          Patrick P. Devine
Jordan T. Crabtree                        Sam S. Zabaneh
LEWIS WAGNER, LLP                         HINSHAW & CULBERTSON LLP
501 Indiana Avenue, Suite 200             322 Indianapolis Blvd., Suite 201
Indianapolis, IN 46204                    Schererville, IN 46375


/s/  Pamela A. Paige
Pamela A. Paige (16163-49)


Open.17606.01654.23909310-1

3

STATE OF INDIANA      )      IN THE  HENDRICKS CIRCUIT COURT
     )
COUNTY OF HENDRICKS      )      CAUSE NO. 32C01-2003-PL-000038


|  |  |
|---|---|
| BALKAMP, INC. and GENUINE PARTS COMPANY, | ) ) ) |
|      Plaintiffs, | ) ) |
|      vs. | ) ) |
| HARBOR INDUSTRIES, INC., G.A. RICHARDS COMPANY and HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) |
|      Defendants. | ) ) |

## <u>DEFENDANT HARTFORD UNDERWRITERS INSURANCE COMPANY'S UNOPPOSED MOTION FOR ENLARGEMENT OF TIME TO MOVE OR PLEAD IN RESPONSE TO PLAINTIFF'S COMPLAINT</u>

Defendant Hartford Underwriters Insurance Company ("Hartford") by and through undersigned counsel and pursuant to Trial Rule 6(B)(1) of the Indiana Rules of Procedure, requests an motion or answer in response to Plaintiffs' Complaint to, and including, May 8, 2020.

This Motion is based on the following grounds:

1.     Plaintiffs' Complaint was filed on March 12, 2020 and served upon Hartford by registered  certified mail on March 16, 2020.

2.     Defendant's answer is due April 8, 2020.

3.     Defense counsel will need additional time to adequately investigate and respond to the allegations contained in Plaintiffs' Complaint.

4.     Counsel for Plaintiff has no objection to this Motion.

5.     This motion is being made in good faith and not for purposes of delay.

WHEREFORE, Defendant, Hartford Underwriters Insurance Company, by counsel, requests that the Court grant an enlargement of time, to and including May 8, 2020, within which Defendant, Hartford Underwriters Insurance Company, may respond or plead to Plaintiff's Complaint.

Respectfully submitted,

PLUNKETT COONEY, P.C.

/s/  Pamela A. Paige
Pamela A. Paige (#16163-49)
300 N. Meridian St., Suite 990
Indianapolis, IN  46204
PH:   317-964-2730
Fax:  317-964-2744
Email: ppaige@plunkettcooney.com
*Counsel for Defendant,*
*Hartford Underwriters Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 6, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

Meghan E. Ruesch                           Patrick P. Devine
Jordan T. Crabtree                         Sam S. Zabaneh
LEWIS WAGNER, LLP                          HINSHAW & CULBERTSON LLP
501 Indiana Avenue, Suite 200              322 Indianapolis Blvd., Suite 201
Indianapolis, IN 46204                     Schererville, IN 46375

/s/  Pamela A. Paige
Pamela A. Paige (16163-49)

Open.17606.01654.23909525-1

2

Open.17606.01654.23909525-1

STATE OF INDIANA          )          IN THE  HENDRICKS CIRCUIT COURT
                          )
COUNTY OF HENDRICKS       )          CAUSE NO. 32C01-2003-PL-000038


BALKAMP, INC. and GENUINE          )
PARTS COMPANY,                     )
                                   )
        Plaintiffs,       )
                                   )
   vs.                          )
                                   )
HARBOR INDUSTRIES, INC., G.A.      )
RICHARDS COMPANY and HARTFORD      )
UNDERWRITERS INSURANCE             )
COMPANY,                           )
                                   )
        Defendants.       )

## ORDER GRANTING UNOPPOSED MOTION FOR ENLARGEMENT OF TIME TO MOVE OR PLEAD IN RESPONSE TO PLAINTIFF'S COMPLAINT

This cause came before the Court upon the motion of Defendant, Hartford Underwriters Insurance Company, for an enlargement of time to move or plead.  And the Court, being duly advised in the premises, NOW FINDS that said motion should be granted.

IT IS THEREFORE ORDERED, that Defendant, Hartford Underwriters Insurance Company, is hereby granted an enlargement of time to, and including, May 8, 2020, within which to move or plead in response to Plaintiffs' Complaint.

FILED
April 7, 2020

DATED:_____ *Dan Zielinski*
     Judge Hendricks Circuit Court
         DZ

_____
JUDGE, HENDRICKS CIRCUIT COURT


Distribution:
All Counsel and Parties of Record

Open.17606.01654.23909737-1

| | | | |
|---|---|---|---|
| STATE OF INDIANA | ) | | IN THE HENDRICKS CIRCUIT COURT |
| | ) SS: | | |
| COUNTY OF HENDRICKS | ) | | HENDRICKS COUNT, INDIANA |

BALKAMP, INC. and GENUINE PARTS )
COMPANY, )
                               )
        Plaintiffs,                 )       Cause No.  cc
                                 )
v.                                      )
                                     )
HARBOR INDUSTRIES, INC., G.A. )
RICHARDS COMPANY and HARTFORD )
UNDERWRITERS INSURANCE COMPANY, )
                                 )
        Defendants.             )

## **APPEARANCE**

Party Classification:  Initiating ☐  Responding ☒  Intervening ☐

1.    The undersigned attorney and all attorneys listed on this form now appear in this case for the following party member:  **HARBOR INDUSTRIES, INC. and G.A. RICHARDS COMPANY**

2.    Applicable attorney information for service as required by Trial Rule 5(B) (2) and for case information as required by Trial Rules 3.1 and 77(B) is as follows:

| | | | |
|---|---|---|---|
| Name: | Jennifer Kalas | Atty No. | (17396-64) |
| Address: | 322 Indianapolis Blvd,Suite 201 | Phone: | 219-864-5051 |
| | Schererville, IN  46375 | FAX: | 219-864-5052 |
| | | | jkalas@hinshawlaw.com |

[List on continuation page the additional attorneys appearing for above party member(s)]

3.    There are other party members:  Yes ☐ No ☒ (If yes, list on continuation page.) All Parties listed above.

4.    If first initiating party filing this case, the Clerk is requested to assign this case the following Case Type under Administrative Rule 8(b) (3):

5.    I will accept service by FAX at the above noted number: Yes ☐  No ☒.

6.    This case involves support issues.  Yes ☐ No ☒ (If yes, supply social security numbers for all family members on continuation page.)

7.    There are related cases:  Yes ☐ No ☒ (If yes, list on continuation page.)

1030035\305539553.v1

8.      This form has been served on all other parties.  Certificate of Service is attached:
Yes ☒ No ☐

9.      Additional information required by local rule: _____

/s/Jennifer Kalas
Attorney-at-Law
Attorney information shown above

**CERTIFICATE OF SERVICE**

I certify that on the 9th day of April 2020, service of a true and complete copy of the foregoing pleadings or papers were made upon each attorney of record via the Court's electronic filing system.

**HINSHAW & CULBERTSON LLP**

BY:/s/Jennifer Kalas

2