UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BALKAMP, INC. and GENUINE PARTS COMPANY, | ) ) ) |
| *Plaintiffs*, | ) ) |
| vs. | ) )   1:20-cv-1141-JMS-MJD ) |
| HARBOR INDUSTRIES, INC., G.A. RICHARDS COMPANY, and HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) ) |
| *Defendants*. | ) |

**ORDER**

Plaintiffs Balkamp Inc. ("Balkamp") and Genuine Parts Company ("Genuine") bring this action against Defendants Harbor Industries Inc. ("Harbor Industries"), G.A. Richards Company ("GA Richards"), and their insurer, Hartford Underwriters Insurance Company ("Hartford"), seeking contractual indemnification for costs stemming from a separate personal injury lawsuit filed by a customer who was allegedly injured in Plaintiffs' store by a display panel purchased from Harbor Industries. Hartford filed a Motion to Dismiss, [Filing No. 10], and Harbor Industries and GA Richards jointly filed a Motion to Dismiss, [Filing No. 17]. Both motions are now ripe for the Court's decision.

**I.**
**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. A complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the

sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations contained in the Complaint, which the Court must accept as true at this time.

On September 30, 2004, Balkamp executed an indemnity agreement with Harbor Industries ("2004 Indemnity Agreement"), a copy of which is attached as an exhibit to the Complaint. [Filing No. 1-2 at 3; Filing No. 1-2 at 15-18.] The 2004 Indemnity Agreement contemplated that Balkamp would purchase products from Harbor Industries for use in its National Automotive Parts Association ("NAPA") stores, and Harbor Industries would indemnify Balkamp, NAPA, and any affiliated business entities from any and all liability, losses,

damages, costs, or expenses of any nature arising out of a claim that any of the products purchased by Balkamp from Harbor Industries were defective, negligently designed or manufactured, or otherwise determined to be the cause of injury or death to persons or damage to property. [Filing No. 1-2 at 4; Filing No. 1-2 at 15.] The 2004 Indemnity Agreement also required Harbor Industries to procure and maintain a products liability insurance policy or policies naming Balkamp, NAPA, and any other affiliated entities as additional named insureds with coverage amounting to not less than $5,000,000. [Filing No. 1-2 at 4; Filing No. 1-2 at 16.]

After the execution of the 2004 Indemnity Agreement, Harbor Industries was purchased by GA Richards. [Filing No. 1-2 at 4.] GA Richards obtained a commercial general liability policy from Hartford (the "Policy"), which was effective from December 31, 2016 through December 31, 2017. [Filing No. 1-2 at 4.] A copy of the Policy is attached as an exhibit to the Complaint. [Filing No. 1-2 at 19-245.] The Policy provided additional insured status to any person or organization that agreed, in a written contract, to be added as an additional insured to the Policy. [Filing No. 1-2 at 5; Filing No. 1-2 at 173.] The Accord Certificate of Liability Insurance (the "Certificate"), which is also attached to the Complaint, named Balkamp, NAPA, and their member companies as additional insureds solely with respect to general liability coverage under the Policy. [Filing No. 1-2 at 4-5; Filing No. 1-2 at 246.]

On or about January 8, 2018, Thomas MacCartee filed a lawsuit in the Superior Court of San Diego County, California against Genuine, GA Richards, and 100 John Doe Defendants (the "MacCartee Action"). [Filing No. 1-2 at 6; Filing No. 1-2 at 257-65.] Mr. MacCartee alleged that, in February 2017, he visited a NAPA auto parts store in San Diego and was injured when a display panel fell on top of him. [Filing No. 1-2 at 7.] It was later determined that the display panel had been purchased by Balkamp from Harbor Industries. [Filing No. 1-2 at 7.]

Accordingly, on June 13, 2018, Genuine and Balkamp sent a letter to Harbor Industries, demanding defense and indemnity. [Filing No. 1-2 at 7.] Genuine and Balkamp believe that this letter was forwarded to Hartford by Harbor Industries. [Filing No. 1-2 at 7.] After receiving no response, Genuine filed a cross-complaint against Harbor Industries in the MacCartee Action seeking indemnification and contribution. [Filing No. 1-2 at 7.] Hartford responded to the demand letter on May 10, 2019, denying Genuine and Balkamp's request for defense and indemnity. [Filing No. 1-2 at 8.]

Copies of the correspondence between the parties concerning defense and indemnity in connection with the MacCartee Action are attached to the Complaint. [Filing No. 1-2 at 266-75.] Notably, in these letters, Balkamp and Genuine seek indemnification pursuant to an agreement signed in 2007 (the "2007 Indemnity Agreement"), rather than the 2004 Indemnity Agreement. [*See* Filing No. 1-2 at 266-75.] Hartford maintained that the 2007 Indemnity Agreement did not apply, and that the purchase of the display panel was instead subject to the terms and conditions that were imposed on all of Harbor Industries' sales beginning in 2015 (the "2015 Terms and Conditions"). [Filing No. 1-2 at 8.] Balkamp and Genuine, on the other hand, contended that the 2015 Terms and Conditions were unilaterally imposed, that the 2007 Indemnity Agreement controlled, and that they were additional insureds under the Policy, as evidenced by the Certificate. [Filing No. 1-2 at 8.]

The defendants in the MacCartee Action have "globally resolved" all of Mr. MacCartee's claims. [Filing No. 1-2 at 8.] However, the crossclaims in that action remain pending in the California court. [Filing No. 1-2 at 9.]

Balkamp and Genuine filed their Complaint against Harbor Industries, GA Richards, and Hartford in the Hendricks County, Indiana Superior Court on March 12, 2020, asserting claims

for breach of contract and declaratory judgment. [Filing No. 1-2.] Hartford removed the case to this Court, alleging diversity jurisdiction, on April 14, 2020. [Filing No. 1.] On May 14, 2020, Hartford filed a Motion to Dismiss the claims against it. [Filing No. 10.] On May 27, 2020, GA Richards and Harbor Industries filed their own Motion to Dismiss, incorporating the arguments raised in Hartford's motion. [Filing No. 17.] Both of these motions are now ripe for the Court's decision.

### III.
### DISCUSSION

Hartford argues that Plaintiffs have failed to state a claim upon which relief can be granted because they do not qualify as additional insureds under the Policy. [Filing No. 11 at 5.] Specifically, Hartford asserts that according to the express terms of the Policy, Plaintiffs must have a written contract with GA Richards or Harbor Industries that designates them as additional insureds, but no such written contract exists because both the 2004 Indemnity Agreement and the 2007 Indemnity Agreement were voided by the 2015 Terms and Conditions, which do not contain any indemnity provision or additional insured status requirement. [Filing No. 11 at 6-10.] Hartford also contends that the Certificate does not alter the terms of the Policy, nor does it create insurance coverage or any legal rights or duties. [Filing No. 11 at 10-12.] Hartford attaches to its motion copies of the 2007 Indemnity Agreement and the 2015 Terms and Conditions, which it asserts can be considered by the Court because both documents were referenced in the Complaint and in the correspondence attached to the Complaint by Plaintiffs. [Filing No. 10-1; Filing No. 10-2; Filing No. 11 at 3-4 nn.3, 6.]

Harbor Industries and GA Richards also argue that the 2015 Terms and Conditions control and do not obligate them to provide defense or indemnity to Plaintiffs in connection with

the MacCartee Action.  [Filing No. 18 at 3.]  Harbor Industries and GA Richards incorporate by reference Hartford's arguments concerning the 2015 Terms and Conditions.  [Filing No. 18 at 3.]

Plaintiffs filed a single joint response addressing both motions to dismiss.  [Filing No. 31.]  In their response, Plaintiffs argue that the facts alleged in their Complaint state claims upon which relief can be granted and Defendants impermissibly raise additional facts in their motions in an attempt to contradict Plaintiffs' allegations.  [Filing No. 31 at 2-3.]  Plaintiffs maintain that the 2004 Indemnity Agreement governs the relationship between the parties because: (1) the 2007 Indemnity Agreement, which is identical to the 2004 Indemnity Agreement in all relevant respects, was never fully executed by the parties; (2) it is unclear whether the display panel in question was sold before or after the 2015 Terms and Conditions allegedly took effect; and (3) there is no evidence to suggest that Plaintiffs ever received or accepted the 2015 Terms and Conditions, and therefore they are not bound by that document.  [Filing No. 31 at 3-11.] Plaintiffs further argue that even if the 2015 Terms and Conditions control, they are ambiguous as to whether they invalidate prior agreements, and therefore extrinsic evidence may be necessary to resolve that issue, which cannot be decided at this stage in the litigation.  [Filing No. 31 at 11-14.]  Finally, Plaintiffs maintain that Balkamp is an additional insured under the Policy and that Harbor Industries owes it a contractual duty of indemnity under the 2004 Indemnity Agreement.  [Filing No. 31 at 14-15.]  Plaintiffs attach to their response affidavits from two Balkamp employees addressing the sale of products by Harbor Industries to Balkamp.  [Filing No. 31-1; Filing No. 31-2.]

In reply, Hartford asserts that "it is Plaintiffs who have attached improper evidence" to their brief, none of which should be considered by the Court, and only the pleadings and the documents that are attached to or referenced in the Complaint may be considered.  [Filing No. 37

at 1-2.] Hartford maintains that the 2015 Terms and Conditions control and do not render Plaintiffs additional insureds under the Policy or entitle them to indemnification for the MacCartee Action and that the Certificate does not confer additional insured status. [Filing No. 37 at 2-7.] Hartford also asserts that the correspondence attached to the Complaint indicates that the display panel was sold in 2016, after the 2015 Terms and Conditions had taken effect, and that there is no ambiguity regarding the fact that the 2015 Terms and Conditions supersede previous agreements. [Filing No. 37 at 3-4.]

Harbor Industries and GA Richards filed a reply maintaining that the 2015 Terms and Conditions constitute the operative agreement and incorporating the arguments raised in Hartford's reply. [Filing No. 39.]

As an initial matter, in ruling on a motion to dismiss under Rule 12(b)(6), a court may consider the complaint, as well as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

Here, Hartford was entitled to attach copies of the 2015 Terms and Conditions and the 2007 Indemnity Agreement to its Motion to Dismiss because those documents were referenced

in the Complaint and its attachments and are critical to Plaintiffs' claims. On the other hand, it was not appropriate or necessary for Plaintiffs to submit affidavits from Balkamp's employees in support of their response brief, and the Court will not consider those documents.

The parties do not dispute that Indiana substantive contract law applies, as a federal court sitting in diversity must apply the substantive law of the state in which it sits. *E.g.*, *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). "[U]nder Indiana law, a breach of contract claim requires showing the existence of a contract, the defendant's breach, and damages." *SelectSun GmbH v. Porter*, Inc., 928 F.3d 550, 554 (7th Cir. 2019) (citations omitted).

Having considered the appropriate pleadings, arguments, and documents, the Court finds that Plaintiffs' Complaint contains sufficient factual allegations to state claims for breach of contract. Specifically, Plaintiffs allege that the 2004 Indemnity Agreement required Harbor Industries and GA Richards to indemnify and defend against personal injury claims involving products sold by Harbor Industries, and to obtain insurance coverage to pay for those costs. Plaintiffs further allege that they constitute additional insureds under the Policy, which GA Richards obtained from Hartford. Finally, Plaintiffs allege that Defendants breached these agreements by failing to indemnify Plaintiffs and wrongfully denying insurance coverage, and Plaintiffs were damaged to the extent they had to bear the costs of the MacCartee Action. These allegations are sufficient to state plausible claims for relief.

Defendants' assertions that the 2004 Indemnity Agreement is void, that the Policy does not cover Plaintiffs as additional insureds, and that the 2015 Terms and Conditions govern the parties' relationships ask the Court to draw conclusions that are prohibited by the applicable standard of review. Specifically, neither the 2007 Indemnity Agreement nor the 2015 Terms and

Conditions that Hartford attaches are signed by Balkamp or Genuine, [Filing No. 10-1; Filing No. 10-2], and nothing in the 2015 Terms and Conditions contradicts or disproves Plaintiffs' express allegation in the Complaint that the 2015 Terms and Conditions were unilaterally imposed and therefore not binding, [Filing No. 1-2 at 8].  Determining which agreement applied to the sale of the display panel—and, particularly, whether Plaintiffs were aware of and agreed to be bound by the 2015 Terms and Conditions—will require a factual inquiry into the circumstances surrounding the sale of the display panel and the purported imposition of the 2015 Terms and Conditions, which the Court is not empowered to engage in at this stage in the litigation.  Because the Court cannot conclude at this time that the 2015 Terms and Conditions document is the operative agreement, the Court also cannot determine whether that document precludes Plaintiffs' claims.  Defendants are certainly free to pursue these issues going forward, but a motion to dismiss is not the proper vehicle for asserting defenses that require factfinding in order to be successful.

The Court reminds the parties that ignoring the standard of review and hoping the Court will do the same is not a proper litigation tactic, as it wastes the Court's and the parties' time and resources.  *See Malin v. Hospira, Inc.*, 762 F.3d 552, 564 (7th Cir. 2014) (reprimanding a party for "bas[ing] its litigation strategy on the hope that neither the district court nor [the appellate court] would take the time to check the record," and stating that such "shenanigans" destroy credibility with the court and are "both costly and wasteful").  Because Plaintiffs sufficiently state claims for breach of contract and declaratory judgment pursuant to the 2004 Indemnity Agreement, and because the documents submitted by Hartford do not, on their face, demonstrate that Plaintiffs are not entitled to relief, both motions to dismiss must be denied.

## IV.
### CONCLUSION

Based on the foregoing, Hartford's Motion to Dismiss, [10], and GA Richards' and Harbor Industries' Motion to Dismiss, [17], are both **DENIED**.

Date: 8/14/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**